# EXHIBIT A
## (PART 1 OF 5)



# Notice of Service of Process

**A3M / ALL**
**Transmittal Number: 19117484**
**Date Processed: 12/19/2018**

**Primary Contact:**  Pamela Beyer
The Travelers Companies, Inc.
385 Washington Street,  9275-LC12L
Saint Paul, MN 55102

| | |
|---|---|
| **Entity:** | The Travelers Indemnity Company<br>Entity ID Number  2317465 |
| **Entity Served:** | The Travelers Indemnity Company |
| **Title of Action:** | Wolverine World Wide, Inc., f/k/a Wolverine Shoe & Tanning Corporation vs. The American Insurance Company |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Kent County Circuit Court, MI |
| **Case/Reference No:** | 18-11116 |
| **Jurisdiction Served:** | Michigan |
| **Date Served on CSC:** | 12/18/2018 |
| **Answer or Appearance Due:** | 21 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Charles M. Denton<br>616-742-3930 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

| Approved, SCAO | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY PROBATE | SUMMONS | CASE NO.<br>$18-11116-CB^B$ |
|---|---|---|
| Court address | | *Court telephone no. |

| Plaintiff's name(s), address(es), and telephone no(s).<br><br>Wolverine World Wide, Inc.<br>9341 Courtland Drive N.E.<br>Rockford, MI 49351<br>(616) 866-5500 | v | Defendant's name(s), address(es), and telephone no(s).<br><br>The Travelers Indemnity Company<br>c/o CSC-Lawyers Incorporating Service Company<br>601 Abbot Road<br>East Lansing, MI 48823<br>(866) 403-5272 |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no. | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. Attached is a completed case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☑ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____Court, where

it was given case number _____and assigned to Judge _____

The action ☐ remains ☐ is no longer   pending.

Summons section completed by court clerk.   | **SUMMONS** |

**NOTICE TO THE DEFENDANT**: In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>DEC 1 4 2018 | Expiration date<br>MAR 1 5 2019 | Court clerk<br>LISA POSTHUMUS LYONS |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01   (8/18)   **SUMMONS**

MCR 1.109(D), MCR 2.102(B), MCR 2.104, MCR 2.105

| PROOF OF SERVICE | **SUMMONS** |
|---|---|
| | Case No. |

TO PROCESS SERVER:  You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons.  You must make and file your return with the court clerk.  If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☐ OFFICER CERTIFICATE | OR | ☐ AFFIDAVIT OF PROCESS SERVER |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:   (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:   (notarization required) |

☐ I served personally a copy of the summons and complaint,

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____

List all documents served with the summons and complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Fee $ | | Signature |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled | Fee $ | TOTAL FEE $ | Name (type or print) |
| | | | | Title |

Subscribed and sworn to before me on _____, _____County, Michigan.

Date

My commission expires: _____   Signature: _____

Date                                        Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____

Attachments

_____ on _____

Day, date, time

_____ on behalf of _____.

Signature

## STATE OF MICHIGAN
### IN THE CIRCUIT COURT FOR THE COUNTY OF KENT

WOLVERINE WORLD WIDE, INC., a
Delaware corporation f/k/a Wolverine Shoe &
Tanning Corporation,

        Plaintiff,

    v.

THE AMERICAN INSURANCE
COMPANY, an Ohio corporation;
INSURANCE COMPANY OF NORTH
AMERICA, a Pennsylvania corporation;
FIRST STATE INSURANCE COMPANY, a
Connecticut corporation; AMERICAN
EMPLOYERS' INSURANCE COMPANY,
n/k/a SPARTA Insurance Company, a
Connecticut corporation; LIBERTY MUTUAL
INSURANCE COMPANY, a Massachusetts
corporation; THE TRAVELERS
INDEMNITY COMPANY, a Connecticut
corporation; EMPLOYERS INSURANCE
COMPANY OF WAUSAU, a Wisconsin
corporation; NORTH RIVER INSURANCE
COMPANY, a New Jersey corporation;
PACIFIC EMPLOYERS INSURANCE
COMPANY, a Pennsylvania corporation;
FEDERAL INSURANCE COMPANY, an
Indiana corporation; and DOE INSURANCE
COMPANIES 1-10;

        Defendants.

Case No. _18_ – 1 1 1 1 6 –𝒸ℓℬ

**COMPLAINT AND JURY DEMAND**

CHRISTOPHER P. YATES
(P-41017)

    Plaintiff Wolverine World Wide, Inc., f/k/a Wolverine Shoe & Tanning Corporation,

(hereinafter "Wolverine" or "Plaintiff"), by and through its undersigned counsel of record, for its

Complaint against the above-named Defendant-Insurers, alleges as follows:

## Nature of the Action

1.    Plaintiff Wolverine brings this action for declaratory judgment and for breach of contract under comprehensive general, umbrella, and excess liability insurance policies issued by Defendants and enclosed in **Exhibits A-1 through A-11** attached hereto (the "Policies").

2.    As of the filing of this Complaint, Wolverine has been named as a defendant in three class actions and approximately 220 individual tort actions brought by current and/or former Michigan residents who have allegedly suffered bodily injury, property damage, personal injury, or some combination thereof, which they attribute to exposure to certain chemicals and waste byproducts allegedly caused by Wolverine's historic operations at or around a former leather tannery Wolverine operated near its principal place of business in Rockford, Michigan (the "Rockford Site"), and/or its property located at 1855 House Street N.E., in Belmont, Michigan (the "Belmont Site") (collectively, the "Tort Actions").  Specifically, the plaintiffs in the Tort Actions allege that Wolverine's use of Scotchgard™, a chemical that contains certain per- and polyfluoroalkyl substances ("PFAS"), in its leather treatment process led to the increased presence of certain PFAS compounds in the soil and/or groundwater and allegedly caused plaintiffs' alleged injuries and/or damages.

3.    Wolverine has also been named as a defendant in two government actions related to its alleged disposal of certain PFAS compounds.  On January 10, 2018, the Michigan Department of Environmental Quality ("MDEQ") filed a complaint against Wolverine in federal court seeking declaratory and injunctive relief under various environmental statutes based on increased presence of certain PFAS compounds on and around the Rockford and Belmont Sites allegedly due to Wolverine's historic operations.  Also on January 10, 2018, the U.S. Environmental Protection Agency ("EPA") served on Wolverine a Unilateral Administrative

Order, ordering Wolverine to comply with its work plan to investigate and remediate certain PFAS compounds allegedly located at the Rockford and Belmont Sites (together with the MDEQ action, the "Government Actions").

4.      In addition, Wolverine is named as a defendant in an action brought by Boulder Creek Development Co., LLC ("Boulder Creek"), the owner of a nearby gravel pit and licensed landfill where Wolverine allegedly disposed of waste byproducts several decades ago.    The plaintiff in that suit seeks damages related to the clean-up and investigation of its property based on causes of action sounding in environmental statute, negligence, fraud, and nuisance. (This action collectively with the Government Actions and the Tort Actions are referred to herein as the "Underlying Actions").

5.      The Defendants' Policies described herein and enclosed in **Exhibits A-1 through A-11** consist of primary, umbrella, and excess comprehensive general liability insurance policies for policy periods spanning from 1957 through 1986 requiring the Defendant-Insurers to defend and indemnify Wolverine, in full, from suits alleging property damage, bodily injury, and/or personal injury (the "Policies").    Certain of the Policies, including all of the primary policies and certain of the excess and umbrella policies, contain a duty to defend, which requires each of the applicable insurers to provide a full defense to Wolverine in connection with each of the Underlying Actions.    As discussed herein, each of the primary insurer Defendants whose Policies contain such a duty to defend and those excess and umbrella insurer Defendants whose Policies require that they defend Wolverine where, for example, the underlying insurer has failed or refused to honor their respective duty to defend, have each failed or refused to provide Wolverine with a full defense in breach of each of their obligations under the Policies and applicable law.

6.     The Policies also provide insurance coverage to Wolverine requiring each of the insurers to pay all costs and expenses incurred by Wolverine in connection with any indemnity incurred by Wolverine in connection with the Underlying Actions, including any settlements or judgments.  As discussed more fully herein, all of the Defendants have failed to acknowledge or agree to honor their indemnity obligations under the Policies to pay or reimburse Wolverine for any indemnity costs, which Wolverine may be legally obligated to pay in connection with any settlements or judgments for covered damages alleged in the Underlying Actions.

7.     Each of the Underlying Actions alleges a covered, or potentially covered, Occurrence and seeks damages from Property Damage, Bodily Injury and/or Personal Injury, as those terms are defined in the Policies, during the period of each of the Policies.  Accordingly, each of the primary insurer Defendants, and certain of the excess and umbrella insurer Defendants, has a duty to defend Wolverine in full and to provide a complete indemnity to Wolverine on a joint and several, "all sums" basis, in connection with each of the Underlying Actions under each of the primary Policies.  Each of the umbrella and excess insurer Defendants have an obligation to acknowledge coverage and agree to indemnify Wolverine in the Underlying Actions upon exhaustion of the applicable underlying coverage or – where required by the Policies – immediately provide Wolverine with a full defense where, for example, the applicable underlying primary insurer Defendant has failed or refused to defend Wolverine in full for the Underlying Actions.

8.     To date, each of the Defendants has failed and/or refused to provide Wolverine with a full defense in connection with each of the Underlying Actions under each of the Policies, and each of the Defendants also has failed and/or refused to agree to provide Wolverine with a

complete indemnity on a joint and several, "all sums" basis, in connection with any settlements and/or judgments in the Underlying Actions.

9.      Wolverine brings this action for declaratory judgment pursuant to MCR 2.605, seeking a declaration that each of the primary insurer Defendants is obligated to (1) provide Wolverine with a full defense in connection with the Underlying Actions; and/or (2) pay in full the costs and expenses of the investigation and defense of the Underlying Actions; and (3) pay in full for any of Wolverine's legal liabilities incurred, to be incurred, or paid in connection with the Underlying Actions, including any settlements and/or judgments. Wolverine further seeks a declaration that each of the umbrella and excess insurer Defendants with a duty to defend or obligation to pay defense costs must: (1) provide Wolverine with a full defense in connection with the Underlying Actions; and/or (2) pay in full the costs and expenses of the investigation and defense of the Underlying Actions.  Wolverine further seeks a declaration that all of the umbrella and excess insurer Defendants must pay in full any of Wolverine's legal liabilities incurred, to be incurred, or paid in connection with the Underlying Actions, including any settlements and/or judgments.  Wolverine also seeks other declarations as to its rights under the Policies, all in accordance with the contractual provisions of these Policies, insuring obligations imposed or implied by law, and the reasonable expectations of Wolverine as an insured.

10.     Wolverine further seeks damages for breach of contract. The primary insurer Defendants each have breached their Policies by failing or refusing to undertake or honor their contractual obligations fully to provide a complete defense to Wolverine and/or to pay in full Wolverine's costs and expenses of investigation and defense.  Each of the excess and umbrella insurer Defendants with a duty to defend also have breached their Policies by failing or refusing to undertake or honor their contractual obligations fully to provide a complete defense to

Wolverine and/or to pay in full Wolverine's costs and expenses of investigation and defense. Additionally, each of the Defendants has breached its respective duties of good faith and fair dealing owed to Wolverine in connection with their handling of Wolverine's claims.

11.     Wolverine has performed all acts and preconditions necessary and/or required under the Policies, specifically including, but not limited to, payment of premiums and providing timely and proper notice of all claims and/or suits, which have been satisfied by, among other things, the filing of this Complaint. All conditions and conditions precedent to Defendants' performance of their obligations under the Policies have been satisfied or performed by Wolverine, or their performance is or has been waived or excused by the conduct of these Defendants or by operation of law.

## Parties

12.     Plaintiff Wolverine, whose principal place of business is located in Rockford, Michigan, is incorporated under the laws of the State of Delaware and is engaged in the business of designing, manufacturing, and marketing a broad line of quality footwear.

13.     Defendant The American Insurance Company ("AIC") is an insurance company organized under the laws of the State of Ohio, with its principal place of business in Chicago, Illinois.

14.     Defendant Insurance Company of North America ("INA") is an insurance company organized under the laws of the State of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania.

15.     Defendant First State Insurance Company ("First State") is an insurance company organized under the laws of the State of Connecticut, with its principal place of business in Boston, Massachusetts.

16.     Defendant American Employers' Insurance Company ("AEIC"), n/k/a SPARTA Insurance Company, is an insurance company organized under the laws of the State of Connecticut, with its principal place of business in Farmington, Connecticut.

17.     Defendant Liberty Mutual Insurance Company ("Liberty") is an insurance company organized under the laws of the State of Massachusetts, with its principal place of business in Boston, Massachusetts.

18.     Defendant The Travelers Indemnity Company ("Travelers") is an insurance company organized under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut.

19.     Defendant Employers Insurance Company of Wausau ("Wausau") is an insurance company organized under the laws of the State of Wisconsin, with its principal place of business in Boston, Massachusetts.

20.     Defendant North River Insurance Company ("North River") is an insurance company organized under the laws of the State of New Jersey, with its principal place of business in Morristown, New Jersey.

21.     Defendant Pacific Employers Insurance Company ("Pacific") is an insurance company organized under the laws of the State of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania.

22.     Defendant Federal Insurance Company ("Federal") is an insurance company organized under the laws of the State of Indiana, with its principal place of business in Philadelphia, Pennsylvania.

23.     At all times pertinent, AIC, INA, First State, AEIC, Liberty, Travelers, Wausau, North River, Pacific, and Federal (collectively, "Defendants") were, and are, licensed to do

business, and were and are doing and transacting business, in the State of Michigan. Defendants each issued Policies to Wolverine under which relief is being sought herein.

24.     Doe Insurance Companies 1 through 10 are insurance companies whose identities are currently unknown to Plaintiff that issued general liability insurance policies (including primary, umbrella, and excess insurance policies) responsive to the Underlying Actions for which relief is being sought herein. When the true identities of such insurance companies become known to Plaintiff, this Complaint will be amended to identify such Defendant insurance companies.

## Jurisdiction and Venue

25.     This Court has subject matter jurisdiction over this civil action, with the amount in controversy in excess of $25,000, pursuant to MCL § 600.605, which confers this Court with general jurisdiction over all matters not expressly assigned to other courts. Pursuant to MCR 2.112(O), Plaintiff verifies that this case involves a business dispute as defined by MCL 600.8031.

26.     Venue for this action is proper in this Court pursuant to MCL § 600.1621 because Defendants conduct business in this County, and because Wolverine resides, maintains a place of business, and maintains a registered office in this County.

## Background

27.     Wolverine is engaged in the business of designing, manufacturing, and marketing a broad line of quality footwear.

28.     As alleged in the Underlying Actions, Wolverine has operated a leather tannery at the Rockford Site, and has utilized or maintained property in furtherance of this business at the Belmont Site.

29.     As alleged in the Underlying Actions, in approximately 1958 Wolverine began incorporating Scotchgard$^{TM}$, a chemical that contains certain PFAS compounds, into or part of its tannery process. Wolverine disposed of tanning by-products at or around the Belmont Site after it

began incorporating Scotchgard™ into its tannery process and did so until around 1970, when it began disposing at landfills.

30.     Wolverine properly and timely provided notice to all the Defendants of the Underlying Actions, including but not limited to in correspondence dated November 2, 2017, January 8, 2018, February 13, 2018, March 6, 2018, April 10, 2018, June 20, 2018, October 12, 2018, December 6, 2018, and December 7, 2018.  Wolverine also promptly and timely provided all Defendants with all complaints and any amendments thereto from the Underlying Actions received by Wolverine to date and Wolverine has and continues to cooperate with the Defendants with respect to its claim(s).

31.     All of the Underlying Actions constitute claims and/or demands and/or suits alleging that the acts and/or omissions of Wolverine, a named insured under the Policies, constitute an occurrence, occurrences, or series of continuous occurrences, all of which occurred within the policy periods of the Policies.  Those occurrence(s) are alleged to have caused bodily injury, property damage, personal injury, and/or some combination thereof.  As such, all of the Underlying Actions, and potentially forthcoming actions not yet filed, trigger each of the primary insurer Defendants', and certain of the excess and umbrella insurer Defendants', obligations to fully defend and all of the insurer Defendants' obligations to fully indemnify Wolverine for any settlements or judgments in the Underlying Actions on a joint and several, "all sums" basis, under each of the Policies.

## I.     The MDEQ Action

32.     The MDEQ informed Wolverine that it had allegedly detected certain PFAS compounds in or around Wolverine's property through its investigation into the presence of certain PFAS compounds in groundwater near the Belmont Site.  The Kent County Health Department

initiated a similar investigation.

33.     On January 10, 2018, the MDEQ filed a complaint against Wolverine in federal court seeking declaratory and injunctive relief under various environmental statutes, *Michigan Department of Environmental Quality v Wolverine World Wide, Inc*, Case No 1:18-cv-00039 (WD Mich). The complaint in the MDEQ action is attached hereto as **Exhibit B-1**.

34.     The MDEQ asks the court to impose various obligations for the investigation, remediation, clean-up, and mitigation of those areas, homes, and residents allegedly impacted by the disposal of certain PFAS compounds, including by asking the court to require Wolverine to provide short-term and long-term drinking water supplies to impacted wells.

35.     The gravamen of the MDEQ complaint is that "Wolverine has contributed and continues to contribute to the past and present handling, storage, treatment, transportation, and/or disposal of solid waste at properties owned by Wolverine, and also at properties owned by others, in such a manner that resulted in releases of [certain PFAS compounds] at levels that resulted in detections that exceed applicable Michigan cleanup criteria . . . and which may present an imminent and substantial endangerment to human health and the environment." Ex. B-1, ¶ 4.

36.     The MDEQ seeks declaratory and injunctive relief, and other damages to be determined by the court, and requests the court to compel Wolverine to:

        a.     Investigate and assess the location and extent of releases or threatened releases of certain PFAS compounds into the environment;

        b.     Develop and implement plans for the continued sampling and analysis of impacts to drinking water wells from certain PFAS compounds released or disposed of by Wolverine;

c.      Provide alternate drinking water supplies to users of drinking water wells impacted by certain PFAS compounds for which Wolverine is responsible;

d.      Provide long-term, reliable drinking water supplies to users of drinking water wells, including by connecting residents to municipal drinking water supplies, to address unacceptable risks posed by a release or threat of release of certain PFAS compounds allegedly attributable to Wolverine;

e.      Perform response activities required under the Michigan Natural Resources and Environmental Protection Act to abate any endangerment to human health and the environment from exposure to certain PFAS compounds at locations where they have come to be located; and

f.      Payment of the State's past and future response activity costs of surveillance and enforcement.

Ex. B-1, ¶¶ 5-6, and at 20.

37.     The MDEQ action alleges a covered occurrence, occurrences, or series of occurrences under the Policies and seeks damages from property damage, bodily injury, and/or personal injury during the policy periods of the Policies.  The allegations in the MDEQ action triggered the primary insurer Defendants', and certain of the excess and umbrella insurer Defendants', respective duties to fully defend Wolverine and/or to pay in full Wolverine's defense and investigation costs in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein.  The allegations in the MDEQ action also require each of the insurer Defendants to agree to fully indemnify Wolverine on a joint and several, "all sums" basis, for any settlements or judgments in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein.

## II.   The EPA Action

38.   Also on January 10, 2018, the EPA served on Wolverine a Unilateral Administrative Order ("UAO"), *In the Matter of Wolverine Worldwide Tannery and House Street Disposal Site*, CERCLA Docket No V-W-18-C-004 (US EPA), ordering Wolverine to comply with its work plan to investigate and remediate contamination at the Rockford and Belmont Sites. The UAO in the EPA action is attached hereto as **Exhibit B-2**

39.   The UAO provided that the EPA had evaluated the data from the MDEQ's investigation, and Wolverine's own investigation, compared the results to the list of CERCLA hazardous substances (as provided in 40 C.F.R. Part 302), and found that "[l]isted hazardous substances were detected at levels above typical background concentrations and at levels that exceeded applicable State action levels in all soil, groundwater and surface water sediment samples." Ex. B-2, ¶ 7(k). The EPA ordered Wolverine to implement and complete a work plan to remediate the Rockford and Belmont Sites.

40.   The EPA action alleges a covered occurrence, occurrences, or series of occurrences under the Policies and seeks damages from property damage, bodily injury, and/or personal injury during the policy periods of the Policies. The allegations in the EPA action triggered the primary insurer Defendants', and certain of the excess and umbrella insurer Defendants', respective duties to fully defend Wolverine and/or to pay in full Wolverine's defense and investigation costs in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein. The allegations in the EPA action also require each of the insurer Defendants to agree to fully indemnify Wolverine on a joint and several, "all sums" basis, for any settlements or judgments in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein

41.     The EPA action alleges a covered occurrence or series of occurrences under the Policies and seeks damages from property damage, bodily injury, and/or personal injury during the policy periods of the Policies, which has triggered the primary insurer Defendants' respective duties to defend and indemnify Wolverine, triggered the obligation of each applicable umbrella insurer to defend and indemnify Wolverine in the event of denial of coverage by the relevant primary insurer, and obligated each applicable umbrella and excess insurer to assume the primary insurer's obligations upon exhaustion of the relevant underlying policy.

III.    **The Boulder Creek Action**

42.     On November 14, 2018, Wolverine was named as a defendant in an action brought by Boulder Creek, the owner of a sanitary landfill and gravel mining operation located at 4300 Cannonsburg Rd. NE, Belmont, MI 49306 (the "NE Gravel Site"), where Wolverine allegedly disposed of waste byproducts several decades ago, *Boulder Creek Development Co, LLC v Wolverine World Wide, Inc*, Case No. 18-10212-CE (Kent Cty Mi Cir Ct) (the "Boulder Creek Action"). The complaint in the Boulder Creek Action is attached hereto as **Exhibit B-3**.

43.     The Boulder Creek Action alleges that in or around 1958, Wolverine "began incorporating PFAS compounds . . . in its own manufacturing operations by treating leather and finished shoes with Scotchgard$^{TM}$ in order to weatherproof its products" and that "[i]n order to effect disposal of its waste [related to the tanning process], Wolverine utilized several dumpsites and dumping methods in Kent County, including, but certainly not limited to, the use of the now-infamous House Street dump, spreading the waste on farmland, and the NE Gravel site." Ex. B-3, ¶¶ 26, 29.

44.     The Boulder Creek Action alleges that the presence of PFAS and other chemical compounds at the NE Gravel Site from approximately the 1950s to present has caused property

damage and personal injury. The plaintiff in the Boulder Creek Action seeks damages related to the clean-up and investigation of its property based on causes of action sounding in environmental statute, negligence, fraud, and nuisance.

45.     The Boulder Creek Action alleges a covered occurrence, occurrences, or series of occurrences under the Policies and seeks damages from property damage, bodily injury, and/or personal injury during the policy periods of the Policies. The allegations in the Boulder Creek Action triggered the primary insurer Defendants', and certain of the excess and umbrella insurer Defendants', respective duties to fully defend Wolverine and/or to pay in full Wolverine's defense and investigation costs in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein. The allegations in the Boulder Creek Action also require each of the insurer Defendants to agree to fully indemnify Wolverine on a joint and several, "all sums" basis, for any settlements or judgments in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein.

**IV.    The Class Actions**

46.     Wolverine has been named as a defendant in three class actions brought by current and/or former Michigan residents who have allegedly suffered bodily injury, property damage, personal injury, or some combination thereof, which they attribute to exposure to soil and/or groundwater containing certain PFAS compounds allegedly originating from Wolverine's historic operations at or around the Rockford and Belmont Sites. Those plaintiffs allege that the presence of certain PFAS compounds in the soil and/or groundwater caused their alleged injuries and/or damages.

47.     On December 1, 2017, Wolverine was named as a defendant in *Beverly Zimmerman et al v The 3M Company et al*, Case No 1:17-cv-01062 (WD Mich) (the "Zimmerman Class Action"). The complaint in the Zimmerman Class Action is attached hereto as **Exhibit B-4**.

48.     The Zimmerman Class Action alleges that Wolverine began using Scotchgard™ in 1958, that thereafter, "Wolverine engaged in a number of grossly negligent practices including the disposal and maintenance of toxic waste and sludge, that led to the contamination of the surrounding environment and drinking water with PFAS and other hazardous chemicals," and that "[t]he ongoing presence of PFAS contamination has impacted Plaintiffs and the Class Members' properties, is a blight on the affected communities and deprives Plaintiffs and Class Members of their free use and enjoyment of their property." Ex. B-4, ¶¶ 59, 128.

49.     The Zimmerman Class Action alleges that the presence of certain PFAS and other chemical compounds at and around the properties, and in the water supply, of the plaintiffs and class members from approximately the 1950s to present has caused property damage, bodily injury, and/or personal injury. The plaintiffs in the Zimmerman Class Action seek damages based on causes of action sounding in trespass, negligence, nuisance, products liability, fraud, and emotional distress, among others.

50.     The Zimmerman Class Action alleges a covered occurrence, occurrences, or series of occurrences under the Policies and seeks damages from property damage, bodily injury, and/or personal injury during the policy periods of the Policies.  The allegations in the Zimmerman Class Action triggered the primary insurer Defendants', and certain of the excess and umbrella insurer Defendants', respective duties to fully defend Wolverine and/or to pay in full Wolverine's defense and investigation costs in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein.  The allegations in the Zimmerman Class Action also require

each of the insurer Defendants to agree to fully indemnify Wolverine on a joint and several, "all sums" basis, for any settlements or judgments in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein.

51. On March 5, 2018, Wolverine was named as a defendant in *Megan Johns et al v Wolverine World Wide, Inc.*, Case No 18-02078-CE (Kent Cty Mi Cir Ct) (the "Johns Class Action"). The complaint in the Johns Class Action is attached hereto as **Exhibit B-5**.

52. The Johns Class Action, which was recently removed to federal court (*see Megan Johns et al v Wolverine World Wide, Inc*, Case No 1:18-cv-01302 (WD Mich)) alleges that Wolverine began using Scotchgard™ in 1958, that thereafter, "Wolverine engaged in grossly negligent practices including the dumping and disposal of its tannery and manufacturing waste [containing certain PFAS compounds] into the environment throughout Kent County, Michigan," and that "Plaintiffs' [sic] and the Class have, and continue, to experience harms resulting from Wolverine's negligent use, handling, disposal and dumping of PFAS into the environment, including interference with their property rights." Ex. B-5, ¶¶ 14, 35.

53. The Johns Class Action further alleges that the presence of certain PFAS and other chemical compounds at and around the properties, and in the water supply, of the plaintiffs and class members from approximately the 1950s to present has caused property damage, bodily injury, and/or personal injury. The plaintiffs in the Johns Class Action seek damages based on causes of action sounding in negligence, nuisance, fraud, and emotional distress, among others.

54. The Johns Class Action alleges a covered occurrence, occurrences, or series of occurrences under the Policies and seeks damages from property damage, bodily injury, and/or personal injury during the policy periods of the Policies. The allegations in the Johns Class Action triggered the primary insurer Defendants', and certain of the excess and umbrella insurer

Defendants', respective duties to fully defend Wolverine and/or to pay in full Wolverine's defense and investigation costs in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein.  The allegations in the Johns Class Action also require each of the insurer Defendants to agree to fully indemnify Wolverine on a joint and several, "all sums" basis, for any settlements or judgments in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein.

55.    On December 4, 2018, Wolverine was named as a defendant in *Susan Henry v Wolverine World Wide, Inc et al*, Case No 1:18-cv-01924-UNA (D Del) (the "Henry Class Action").  The complaint in the Henry Class Action is attached hereto as **Exhibit B-6**.

56.    The Henry Class Action alleges that Wolverine used Scotchgard$^{TM}$ "[f]rom the late 1950's until about 2002," that during this time, Wolverine "unreasonably dispos[ed] of materials containing toxic chemicals, including [certain PFAS compounds], in a manner that guaranteed they would enter the environment, including ground and water," and that "Plaintiff and Putative Classes have suffered exposure, personal injury, bioaccumulation of PFCs in their blood which causes known cancers and diseases, property damage, and the diminution of property value as a result of the [certain PFAS compounds] contamination caused by Defendants, including of drinking water supplies." Ex. B-6, ¶¶ 46, 154, 285.

57.    The Henry Class Action alleges that the presence of certain PFAS and other chemical compounds at and around the properties, and in the water supply, of the plaintiffs and class members from approximately the 1950s to present has caused property damage, bodily injury, and/or personal injury. The plaintiffs in the Henry Class Action seek damages based on causes of action sounding in negligence, medical monitoring, products liability, nuisance, and emotional distress, among others.

58.     The Henry Class Action alleges a covered occurrence, occurrences, or series of occurrences under the Policies and seeks damages from property damage, bodily injury, and/or personal injury during the policy periods of the Policies.  The allegations in the Henry Class Action triggered the primary insurer Defendants', and certain of the excess and umbrella insurer Defendants', respective duties to fully defend Wolverine and/or to pay in full Wolverine's defense and investigation costs in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein.  The allegations in the Henry Class Action also require each of the insurer Defendants to agree to fully indemnify Wolverine on a joint and several, "all sums" basis, for any settlements or judgments in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein.

## V.     The Individual Actions

59.     Wolverine has been named as a defendant in over 220 individual actions[1] brought by current and/or former Michigan residents who have allegedly suffered bodily injury, property damage, personal injury, or some combination thereof, which they attribute to exposure to soil and/or groundwater containing certain PFAS compounds allegedly originating from Wolverine's historic operations at or around the Rockford and Belmont Sites.  Those plaintiffs allege that the presence of certain PFAS compounds in the soil and/or groundwater caused their alleged injuries and/or damages.

60.     The vast majority of the individual actions were brought by the same law firm and, as such, the allegations across individual actions are substantially similar.[2]  In many instances, the

---

[1] A list of all individual actions received by Wolverine at the time of the filing of this Complaint is attached hereto as **Exhibit C**.

[2] Out of the approximately 220 individual actions received by Wolverine to date, approximately 213 of them were filed by the law firm Varnum LLP.  The remaining individual actions were filed by Sommers Schwartz, P.C. (among others), the same firm that filed the *Johns* class action lawsuit.

key allegations that trigger coverage under the Policies are identical across individual actions. Accordingly, Wolverine discusses herein an exemplar individual action as representative of the entire universe of individual actions.

61.     In *John D. Stewart et al v Wolverine World Wide, Inc, et al*, Case No 18-09087-C2 (Kent Cty Mi Cir Ct) (the "Stewart Exemplar Action"),[3] the plaintiffs allege that from 1939 to 1970, "Wolverine dumped sludge, liquid, and barrels containing hazardous tannery waste into unlined seepage pits and trenches, which Wolverine understood would leach into groundwater," and that "[t]he aquifer from which Plaintiffs' [sic] obtain drinking water is contaminated with tannery waste containing toxic chemicals called [certain PFAS compounds] [because] Wolverine used and then dumped [certain PFAS compounds] into the bare ground." Ex. B-7, ¶¶ 1-2.

62.     With respect to the geographic area of concern, the Stewart Exemplar Action alleges disposal at areas north of the House Street property "in an unlicensed dump area off of Jewell Avenue NE" and "in the area to the west of Wolven Avenue NE, in an old gravel pit and onto farmland," both in Algoma Township, Michigan.  Ex. B-7 at ¶¶ 125, 126 (Kent Cty Mi Cir Ct).

63.     The Stewart Exemplar Action further alleges that "due to contaminated drinking water, the residents' use, enjoyment, and value of their properties has been substantially impaired, and the residents and their children face an increased risk to a host of deadly and severe health problems, some of which have already materialized. Wolverine's contamination has caused severe diminution in property value, extreme anxiety, adverse health effects, and an increased risk to future injuries." Ex. B-7, ¶ 7.

---

[3] The complaint in the Stewart Exemplar Action is attached hereto as **Exhibit B-7**.

64.     The Stewart Exemplar Action, like all of the individual actions, alleges that the presence of certain PFAS compounds and other chemical compounds at and around the properties, and in the water supply, of the plaintiffs has caused property damage, bodily injury, and/or personal injury. The plaintiffs in the Stewart Exemplar Action seek damages based on causes of action sounding in nuisance, negligence, ultrahazardous activity, products liability, and environmental statute, among others.

65.     The Stewart Exemplar Action and each of the individual actions allege a covered occurrence, occurrences, or series of occurrences under the Policies and seek damages from property damage, bodily injury, and/or personal injury during the policy periods of the Policies. The allegations in the Stewart Exemplar Action and each of the individual actions triggered the primary insurer Defendants', and certain of the excess and umbrella insurer Defendants', respective duties to fully defend Wolverine and/or to pay in full Wolverine's defense and investigation costs in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein.  The allegations in the Stewart Exemplar Action and each of the individual actions also require each of the insurer Defendants to agree to fully indemnify Wolverine on a joint and several, "all sums" basis, for any settlements or judgments in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein.

### The Policies

### I.     Wolverine's Primary Insurance Policies

66.     Defendants AIC, INA, Liberty, Travelers, and Wausau ("Primary Insurers") issued primary insurance policies to Wolverine during the relevant policy periods, each of which, upon information and belief, contains a duty to defend Wolverine in connection with each of the Underlying Actions immediately upon receiving notice of a suit alleging a potentially covered

occurrence, occurrences, or series of occurrences.  To date, AIC, INA, Liberty, Travelers, and Wausau have failed and/or refused, in breach of their Policies, to honor in full their duty to defend Wolverine in each of the Underlying Actions under each of their Policies.

67.     To the extent the primary policies issued by Defendants AIC, INA, Liberty, Travelers, and/or Wausau contain self-insured retentions, on information and belief, such self-insured retentions have been or will be satisfied and Defendants are obligated to honor in full their duty to defend and to provide Wolverine with a full defense in connection with each of the Underlying Actions.

68.     Defendant Liberty issued the following primary insurance policies to Wolverine ("Liberty Policies") that, on information and belief, each contain a duty to defend Wolverine for all of the Underlying Actions and an obligation to fully indemnify Wolverine for all settlements and/or judgements on a joint and several, "all sums" basis arising from the Underlying Actions:

| Policy Periods | Policy Number |
|---|---|
| 4/6/1957 – 4/6/1958 | LP1-141-050531-028 |
| 4/6/1958 – 4/6/1959 | LP1-141-050531-029 |
| 4/6/1959 – 4/6/1960 | LP1-141-050531-020 |
| 4/6/1960 – 4/6/1961 | LP1-141-050531-021 |
| 4/6/1961 – 4/6/1962 | LP1-141-050531-022 |
| 4/6/1962 – 4/6/1963 | LP1-141-050531-023 |
| 4/6/1963 – 4/6/1964 | LP1-141-050531-024 |
| 4/6/1964 – 4/6/1965 | LP1-141-050531-025 |
| 1/1/1966 – 4/6/1966 | LP1-141-050531-026 |
| 4/6/1967 – 4/6/1968 | LG1-141-050531-087 |
| 4/6/1968 – 1/1/1969 | LG1-141-050531-088 |
| 1/1/1969 – 1/1/1970 | LG1-141-050531-089 |
| 1/1/1970 – 1/1/1971 | LG1-141-050531-080 |
| 1/1/1971 – 1/1/1972 | LG1-141-050531-081 |
| 1/1/1972 – 2/28/1973 | LG1-141-050531-082 |

69.     Attached as **Exhibit A-1** are true and correct copies of those Liberty Policies and/or certain evidence thereof currently in Wolverine's possession.

70.     The Liberty Policies contained in Exhibit A-1 each provide insurance coverage on an occurrence basis for all suits alleging property damage, bodily injury, and/or personal injury during the policy periods and they each contain a duty to defend Wolverine and an obligation to indemnify Wolverine on an "all sums" basis for any settlements and/or judgments.   Upon information and belief, the remaining Liberty Policies contain substantially identical terms, conditions and obligations including a duty to defend and indemnify Wolverine on an "all sums" basis from any suits alleging property damage, bodily injury, and/or personal injury during the policy periods.

71.     Each of the Underlying Actions alleges a covered, or potentially covered, occurrence, occurrences, or series of occurrences under the Liberty Policies contained in Exhibit A-1 and allege property damage, bodily injury, and/or personal injury during the policy periods of the Liberty Policies.  As such, the allegations in the Underlying Actions require Liberty to provide Wolverine with a full defense and to indemnify Wolverine on an "all sums" basis.  Each of the Underlying Actions also allege a covered, or potentially covered, occurrence, occurrences, or series of occurrences under the remaining Liberty Policies based on alleged property damage, bodily injury, and/or personal injury during the policy periods of the Liberty Policies.  As such, the allegations in the Underlying Actions require Liberty to provide Wolverine with a full defense and to indemnify Wolverine on an "all sums" basis under the remaining Liberty Policies.

72.     The Liberty Policies contained in Exhibit A-1 include coverage terms that are identical, or substantially similar, to the following exemplary coverage terms:

> The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as **damages** because of...**bodily injury** or...**property damage** to which this insurance applies, caused by an **occurrence**, and the company shall have the right and duty to defend any suit against the **insured** seeking **damages** on account of such **bodily injury** or **property damage**,

> even if any of the allegations of the suit are groundless, false or
> fraudulent, and may make such investigation and settlement of any
> claim or suit as it deems expedient....

(Ex. A-1, Policy LG1-141-050531-082, Pt. I.)  These Liberty Policies define bodily injury as "bodily injury, sickness or disease sustained by any person" and property damage as "injury to or destruction of tangible property." (*Id.*, Definitions.)

73.     The Liberty Policies contained in Exhibit A-1 define occurrence as "an accident, including injurious exposure to conditions, which results, during the policy period, in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **insured**." (*Id.*)

74.     In addition to bodily injury and property damage coverage, the Liberty Policies contained in Exhibit A-1 provide coverage for personal injury liability:

> The Company will pay on behalf of the **insured** all sums which the
> **insured** shall become legally obligated to pay as **damages** because
> of **personal injury**, and the company shall have the right and duty
> to defend any suit against the **insured** seeking **damages** on account
> of such **personal injury**, even if any of the allegations of the suit
> are groundless, false or fraudulent, and may make such investigation
> and settlement of any claim or suit as it deems expedient....

(*Id.*, Personal Injury Liability Insurance Endorsement, Pt. I.) These Liberty Policies define personal injury as including "(1) any injury to the feelings or reputation of a natural person, including mental anguish, and (2) any injury to intangible property sustained by an organization as the result of false eviction, malicious prosecution, libel, slander or defamation; but the term '**personal injury**' shall not include injury included within the definitions of '**bodily injury**' and '**property damage**'" (*Id.*, Personal Injury Liability Insurance Endorsement, Pt. IV.)

75.     The Liberty Policies not contained in Exhibit A-1, upon information and belief, contain substantially identical terms, conditions and obligations as those alleged in the preceding paragraphs.

76.     To date, Liberty has failed and/or refused to honor in full its duty to defend or to pay for a full and complete defense of Wolverine under the Liberty Policies with respect to each of the Underlying Actions.

77.     Wolverine, upon information and belief, has performed all of its obligations and satisfied all the conditions of the foregoing Liberty Policies, or such performance or satisfaction has been waived and/or excused by the conduct of Liberty or by operation of law.

78.     Wolverine has conducted a diligent and thorough search for the insurance policies issued by Liberty in its care, custody, and control.  Wolverine also requested that Defendant Liberty conduct a diligent search for any insurance policies in its possession that were issued to Wolverine at any time and provide coverage for comprehensive (or commercial) general liability. Despite Wolverine's reasonable request, Defendant Liberty has failed and/or refused to conduct a diligent and thorough search for insurance policies in its possession, care, custody and control issued by Liberty to Wolverine.

79.     Defendant AIC issued the following primary insurance policy to Wolverine (the "AIC Primary Policy") that, upon information and belief, contains a duty to defend Wolverine for all of the Underlying Actions and an obligation to indemnify Wolverine for all settlements and/or judgements on a joint and several, "all sums" basis arising from the Underlying Actions:

| Policy Period | Policy Number |
|---|---|
| 4/6/1966 – 4/6/1967 | K2342252 |

80.     Upon information and belief, the AIC Primary Policy provides insurance coverage on an occurrence basis for all suits alleging property damage, bodily injury, and/or personal injury during the policy period and contains a duty to defend Wolverine and to indemnify Wolverine for any settlements and/or judgments.

81.     Upon information and belief, each of the Underlying Actions alleges a covered occurrence, occurrences, or series of occurrences under the AIC Primary Policy and seeks damages from property damage, bodily injury, and/or personal injury during the policy period of the AIC Primary Policy, which has triggered AIC's duty to defend and indemnify Wolverine.

82.     To date, AIC has failed and/or refused to honor in full its duty to defend or to pay for a full and complete defense to Wolverine under the AIC Primary Policy with respect to each of the Underlying Actions.

83.     Wolverine, upon information and belief, has performed all of its obligations and satisfied all the conditions of the foregoing Policy, or such performance or satisfaction has been waived and/or excused by the conduct of AIC or by operation of law.

84.     Wolverine has conducted a diligent and thorough search for the insurance policies issued by AIC in its care, custody, and control. Wolverine also requested that Defendant AIC conduct a diligent search for any insurance policies in its possession that were issued to Wolverine at any time and that provide coverage for comprehensive (or commercial) general liability. Despite Wolverine's reasonable request, Defendant AIC has failed and/or refused to conduct a diligent and thorough search for insurance policies issued by AIC to Wolverine.

85.     Attached at **Exhibit A-2** are true and correct copies of policies issued by AIC to Wolverine and/or certain evidence thereof currently in Wolverine's possession.

86.     Defendant INA issued the following primary insurance policies to Wolverine (the "INA Primary Policies") that each contain a duty to defend Wolverine for all of the Underlying Actions and an obligation to indemnify Wolverine for all settlements and/or judgements on a joint and several, "all sums" basis, arising from the Underlying Actions:

| Policy Periods | Policy Number |
|---|---|
| 3/1/1977 – 3/1/1978 | GAL 331483 |

| 3/1/1978 – 3/1/1979 | GAL 376803 |
| 3/1/1979 – 3/1/1980 | GAL 376812 |

87.     Attached at **Exhibit A-3** are true and correct copies of the INA Primary Policies and/or certain evidence thereof currently in Wolverine's possession.

88.     The INA Primary Policies each provide insurance coverage on an occurrence basis for all suits alleging property damage, bodily injury, and/or personal injury during the policy periods and they each contain a duty to defend Wolverine and to indemnify Wolverine for any settlements and/or judgments.

89.     Each of the Underlying Actions alleges a covered occurrence, occurrences, or series of occurrences under the INA Primary Policies and seeks damages from property damage, bodily injury, and/or personal injury during the policy periods of the INA Primary Policies, which has triggered INA's duty to defend and indemnify Wolverine.

90.     The INA Primary Policies include coverage terms that are identical, or substantially similar, to the following exemplary coverage terms:

> The company will pay on behalf of the Insured all sums which the insured shall become legally obligated to pay as damages because of...bodily injury or...property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient....

(Ex. A-3, Policy GAL 376803, Coverage Part, Pt. I.)  The INA Primary Policies define bodily injury as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom" and property damage as "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which

has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period." (*Id.*, Definitions.)

91.     The INA Primary Policies define occurrence as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." (*Id.*)

92.     In addition to bodily injury and property damage coverage, the INA Primary Policies provide coverage for personal injury liability:

> The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury (therein called "personal injury") sustained by any person or organization, and arising out of one or more of the following offenses committed in the conduct of the Named Insured's business:… wrongful entry or eviction, or other invasion of the right of private occupancy; if such offense is committed during the policy period…and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such personal injury even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient….

(*Id.*, Personal Injury Liability Insurance Coverage Part.)

93.     To date, INA has failed and/or refused to honor in full its duty to defend or to pay for a full and complete defense of Wolverine under the INA Primary Policies with respect to each of the Underlying Actions.

94.     Wolverine has performed all of its obligations and satisfied all the conditions of the INA Primary Policies, or such performance or satisfaction has been waived and/or excused by the conduct of INA or by operation of law.

95.     Defendant Travelers issued the following primary insurance policies to Wolverine (the "Travelers Policies") that, upon information and belief, each contain a duty to defend Wolverine for all of the Underlying Actions and an obligation to indemnify Wolverine for all

settlements and/or judgements on a joint and several, "all sums" basis, arising from the Underlying Actions:

| Policy Periods | Policy Number |
|---|---|
| 1/1/1980 – 1/1/1981 | TR-SLG-168T045-4-80 |
| 1/1/1981 – 1/1/1982 | TR-SLG-168T045-4-81 |
| 1/1/1982 – 1/1/1983 | TR-SLG-168T045-4-82 |
| 1/1/1983 – 1/1/1984 | TR-SLG-168T045-4-83 |
| 1/1/1984 – 1/1/1985 | TR-SLG-168T045-4-84 |
| 1/1/1985 – 1/1/1986 | TR-SLG-168T045-4-85 |

96.     Attached at **Exhibit A-4** is a true and correct copy of one of the Travelers Policies (the "Travelers Policy") and/or certain evidence thereof currently in Wolverine's possession.

97.     The Travelers Policy contained in Exhibit A-4 provides insurance coverage on an occurrence basis for all suits alleging property damage, bodily injury, and/or personal injury during the policy periods and contains a duty to defend Wolverine and to indemnify Wolverine for any settlements and/or judgments.  Upon information and belief, the remaining Travelers Policies contain substantially identical terms, conditions and obligations.

98.     Each of the Underlying Actions alleges a covered occurrence, occurrences, or series of occurrences under the Travelers Policy contained in Exhibit A-4 and seeks damages from property damage, bodily injury, and/or personal injury during the policy periods of the Travelers Policies, which has triggered Travelers' duty to defend and indemnify Wolverine.  Upon information and belief, each of the Underlying Actions alleges a covered occurrence, occurrences, or series of occurrences under the remaining Travelers Policies and seeks damages from property damage, bodily injury, and/or personal injury during the policy periods of the Travelers Policies, which has triggered Travelers' duty to defend and indemnify Wolverine under the remaining Travelers Policies.

99.     The Travelers Policy includes the following coverage terms:

> The company will pay on behalf of the *insured* all sums which the
> *insured* shall become legally obligated to pay as damages because
> of...*bodily injury* or...*property damage* to which this insurance
> applies, caused by an *occurrence*, and the company shall have the
> right and duty to defend any suit against the *insured* seeking
> damages on account of such *bodily injury* or *property damage*, even
> if any of the allegations of the suit are groundless, false or
> fraudulent, and may make such investigation and settlement of any
> claim or suit as it deems expedient....

(Ex. A-4, Policy TR-SLG-168T045-4-82, Comprehensive General Liability Coverage Part, Pt. I.)

The Travelers Policy defines bodily injury as "bodily injury, sickness or disease sustained by any

person which occurs during the policy period, including death at any time resulting therefrom" and

property damage as "(1) physical injury to or destruction of tangible property which occurs during

the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of

use of tangible property which has not been physically injured or destroyed provided such loss of

use is caused by an *occurrence* during the policy period."  (*Id.*, Definitions.)

100.   The Travelers Policy defines occurrence as "an accident, including continuous or

repeated exposure to conditions, which results in *bodily injury* or *property damage* neither

expected nor intended from the standpoint of the *insured*." (*Id.*)

101.   In addition to bodily injury and property damage coverage, the Travelers Policy

provides coverage for personal injury liability:

> The Company will pay on behalf of the *insured* all sums which the
> *insured* shall become legally obligated to pay as damages because
> of *personal injury* or *advertising injury* to which this insurance
> applies, sustained by any person or organization and arising out of
> the conduct of the *named insured*'s business...and the Company
> shall have the right and duty to defend any suit against the *insured*
> seeking damages on account of such injury, even if any of the
> allegations of the suit are groundless, false or fraudulent, and may
> make such investigation and settlement of any claim or suit as it
> deems expedient....

(*Id.*, Broad Form Comprehensive General Liability Endorsement, Pt. II.) The Travelers Policies define personal injury as including "wrongful entry or eviction or other invasion of the right of private occupancy." (*Id.*)

102.    Upon information and belief, the Travelers Policies not contained in Exhibit A-4 contain substantially identical terms, conditions and obligations as those alleged in the preceding paragraphs.

103.    To date, Travelers has failed and/or refused to honor in full its duty to defend or to pay for a full and complete defense of Wolverine under the Travelers Policies with respect to each of the Underlying Actions.

104.    Wolverine has performed all of its obligations and satisfied all the conditions of the Travelers Policy, or such performance or satisfaction has been waived and/or excused by the conduct of Travelers or by operation of law.   Upon information and belief, Wolverine has performed all of its obligations and satisfied all the conditions of each of the Travelers Policies, or such performance or satisfaction has been waived and/or excused by the conduct of Travelers or by operation of law.

105.    Wolverine has conducted a diligent and thorough search for the insurance policies issued by Travelers in its care, custody, and control.   Wolverine also requested that Defendant Travelers conduct a diligent search for any insurance policies in its possession that were issued to Wolverine at any time and provide coverage for comprehensive (or commercial) general liability. Despite Wolverine's reasonable request, Defendant Travelers has failed and/or refused to conduct a diligent and thorough search for insurance policies issued by Travelers to Wolverine.

106.    Defendant Wausau issued the following primary insurance policies to Wolverine (the "Wausau Policies") that each contain a duty to defend Wolverine for all of the Underlying

Actions and an obligation to indemnify Wolverine for all settlements and/or judgements on a joint and several, "all sums" basis, arising from the Underlying Actions:

| Policy Periods | Policy Number |
|---|---|
| 2/28/1973 – 1/1/1974 | 1724 00 045849 |
| 1/1/1974 – 1/1/1975 | 1725 00 045849 |
| 1/1/1975 – 1/1/1976 | 1726 00 045849 |
| 1/1/1976 – 1/1/1977 | 1727 00 045849 |

107.    Attached at Exhibit A-5 are true and correct copies of the Wausau Policies and/or certain evidence thereof currently in Wolverine's possession.

108.    The Wausau Policies each provide insurance coverage on an occurrence basis for all suits alleging property damage, bodily injury, and/or personal injury during the policy periods and they each contain a duty to defend Wolverine and to indemnify Wolverine for any settlements and/or judgments.

109.    Each of the Underlying Actions alleges a covered occurrence, occurrences, or series of occurrences under the Wausau Policies and seeks damages from property damage, bodily injury, and/or personal injury during the policy periods of the Wausau Policies, which has triggered Wausau's duty to defend and indemnify Wolverine.

110.    The Wausau Policies include coverage terms that are identical, or substantially similar, to the following exemplary coverage terms:

> The company will pay on behalf of the **insured** all sums which the insured shall become legally obligated to pay as damages because of…**bodily injury** or…**property damage** to which this insurance applies, caused by an **occurrence**, and the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **bodily injury** or **property damage**, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient….

(Ex. A-5, Policy 1726 00 045849, Coverages, Pt. I.)  The Wausau Policies define bodily injury as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom" and property damage as "(1) physical injury or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period."  (*Id.*, Definitions.)

111.    The Wausau Policies define occurrence as "an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **insured**." (*Id.*)

112.    In addition to bodily injury and property damage coverage, the Wausau Policies provide coverage for personal injury liability:

> THE COMPANY WILL PAY ON BEHALF OF THE INSURED ALL SUMS WHICH THE INSURED SHALL BECOME LEGALLY OBLIGATED TO PAY AS DAMAGES BECAUSE OF PERSONAL INJURY SUSTAINED BY ANY PERSON OR ORGANIZATION, AND ARISING OUT OF ANY ACT OR OMISSION COMMITTED IN THE CONDUCT OF THE NAMED INSURED'S BUSINESS, IF SUCH ACTS OR OMISSIONS OCCUR DURING THE POLICY PERIOD...AND THE COMPANY SHALL HAVE THE RIGHT AND DUTY TO DEFEND ANY SUIT AGAINST THE INSURED SEEKING DAMAGES ON ACCOUNT OF SUCH PERSONAL INJURY EVEN IF ANY OF THE ALLEGATIONS OF THE SUIT ARE GROUNDLESS, FALSE OR FRAUDULENT, AND MAY MAKE SUCH INVESTIGATION AND SETTLEMENT OF ANY CLAIM OR SUIT AS IT DEEMS EXPEDIENT....

(*Id.*, End. 2.)  The Wausau Policies define personal injury as "(1) any injury to the feelings or reputation of a natural person, including mental anguish, and (2) any injury to intangible property sustained by any person or organization as a result of libel, slander, defamation, wrongful entry or eviction or malicious prosecution; but the term 'personal injury' shall not include injury included within the definitions of 'bodily injury' and 'property damage.'" (*Id.*)

113.   To date, Wausau has failed and/or refused to honor in full its duty to defend or to pay for a full and complete defense of Wolverine under the Wausau Policies with respect to each of the Underlying Actions.

114.   Wolverine has performed all of its obligations and satisfied all the conditions of the Wausau Policies, or such performance or satisfaction has been waived and/or excused by the conduct of Wausau or by operation of law.

## II.   Wolverine's Excess and Umbrella Insurance Policies

115.   Defendants AIC, INA, First State, AEIC, North River, Pacific, and Federal issued excess and/or umbrella insurance policies to Wolverine during the relevant policy periods that contain a duty to defend and/or indemnify Wolverine in connection with each of the Underlying Actions upon the exhaustion, satisfaction, and/or reduction of the limits of the Primary Policies.

116.   Certain of the umbrella policies additionally require that the insurer Defendant immediately provide Wolverine with a full defense where the applicable underlying primary insurer Defendant has failed and/or refused to defend Wolverine in full for the Underlying Actions.

117.   To date, AIC, INA, Liberty, Travelers, and Wausau have failed and/or refused to acknowledge coverage and agree to defend and/or indemnify Wolverine in the Underlying Actions upon exhaustion of the applicable underlying coverage or – where required by the Policies – immediately provide Wolverine with a full defense where the applicable underlying primary insurer Defendant has failed or refused to defend Wolverine in full for the Underlying Actions. Those umbrella insurer Defendants who issued Policies requiring them to defend Wolverine in the Underlying Actions where the underlying primary insurer has denied coverage have breached their contractual obligations by refusing and/or failing to do so.

118.     Defendant AIC issued the following excess insurance policies to Wolverine (the "AIC Excess Policies"):

| Policy Periods | Policy Number |
|---|---|
| 1/1/1980 – 1/1/1981 | XLX 1362260 |
| 1/1/1981 – 1/1/1982 | XLX 1363840 |
| 1/1/1982 – 1/1/1983 | XLX 1440544 |
| 1/1/1983 – 1/1/1984 | XLX 1532184 |
| 1/1/1984 – 1/1/1985 | XLX 1484189 |
| 1/1/1985 – 1/1/1986 | XLX 1621365 |

119.     Attached at **Exhibit A-2** are true and correct copies of the AIC Excess Policies and/or certain evidence thereof currently in Wolverine's possession.

120.     The AIC Excess Policies contained in Exhibit A-2 each provide insurance coverage on an occurrence basis for all suits alleging property damage, bodily injury, and/or personal injury during the policy periods, obligating AIC to "indemnify [Wolverine] for [Wolverine's] ultimate net loss in excess of" the applicable underlying insurance.  (Ex. A-2, Policy XLX 1621365, Insuring Agreements, Pt. 1.)  Upon information and belief, the AIC Excess Policies not contained in Exhibit A-2 contain substantially identical terms, conditions and obligations as those alleged herein.

121.     Upon information and belief, each of the Underlying Actions alleges a covered occurrence, occurrences, or series of occurrences under the AIC Policies and seeks damages from property damage, bodily injury, and/or personal injury during the policy periods of the AIC Policies, which shall trigger AIC's duty to pay ultimate net loss upon exhaustion of the applicable underlying policies.

122.     AIC has an obligation to investigate Wolverine's claims in connection with the Underlying Actions and to acknowledge coverage and agree to indemnify Wolverine in the Underlying Actions upon exhaustion of the applicable underlying coverage.

123.    Wolverine has conducted a diligent and thorough search for the insurance policies issued by AIC that are in its care, custody, and control.  Wolverine also requested that Defendant AIC conduct a diligent search for any insurance policies in its possession that were issued to Wolverine at any time and provide coverage for comprehensive (or commercial) general liability. Despite Wolverine's reasonable request, Defendant AIC has failed and/or refused to conduct a diligent and thorough search for insurance policies in its possession, care, custody and control issued by AIC to Wolverine.

124.    Defendant INA issued the following umbrella insurance policy to Wolverine (the "INA Umbrella Policy"):

| Policy Period | Policy Number |
|---|---|
| 1/1/1985 – 1/1/1986 | XBC 155081 |

125.    Attached at **Exhibit A-6** is true and correct copy of the INA Umbrella Policy and/or certain evidence thereof currently in Wolverine's possession.

126.    The INA Umbrella Policy provides insurance coverage on an occurrence basis for all suits alleging property damage and/or personal injury, "or any combination thereof." (Ex. A-6, Policy XBC 155081, Limits of Liability.)

127.    Upon information and belief, each of the Underlying Actions alleges a covered occurrence, occurrences, or series of occurrences under the INA Umbrella Policy and seeks damages for property damage and/or personal injury during the policy period of the INA Umbrella Policy, which triggers INA's duty to defend and/or indemnify Wolverine upon exhaustion of the applicable underlying policies.

128.    INA has an obligation to investigate Wolverine's claims in connection with the Underlying Actions and to acknowledge coverage and agree to defend and/or indemnify Wolverine in the Underlying Actions upon exhaustion of the applicable underlying coverage.

129. Defendant First State issued the following umbrella and excess insurance policies to Wolverine (the "First State Policies") that, on information and belief, each contain a "drop down" duty to defend Wolverine for all of the Underlying Actions and an obligation to indemnify Wolverine for all settlements and/or judgements on a joint and several, "all sums" basis, in connection with the Underlying Actions:

| Policy Periods | Policy Number |
|---|---|
| 1/1/1980 – 1/1/1981 | 945753 |
| 1/1/1981 – 1/1/1982 | 947882 |
| 1/1/1982 – 1/1/1983 | 951220 |
| 1/1/1982 – 1/1/1983 | 933764 |
| 1/1/1983 – 1/1/1984 | 953392 |
| 1/1/1983 – 1/1/1984 | 933764 |
| 1/1/1984 – 1/1/1985 | 955050 |
| 1/1/1984 – 1/1/1985 | EU001432 |

130. Attached at **Exhibit A-7** are true and correct copies of the First State Policies and/or certain evidence thereof currently in Wolverine's possession.

131. The First State Policies contained in Exhibit A-7 include coverage terms that are identical, or substantially similar, to the following exemplary coverage terms, which require First State to:

> [I]ndemnify the INSURED for ULTIMATE NET LOSS . . . in excess of the RETAINED LIMIT . . . [for] all sums which the INSURED shall be obligated to pay by reason of the liability imposed upon the INSURED by law or liability assumed by the INSURED under contract or agreement for damages and expenses, because of:
> A.    PERSONAL INJURY, as hereinafter defined;
> B.    PROPERTY DAMAGE, as hereinafter defined;
> ***
> To which this policy applies, caused by an OCCURRENCE, as hereinafter defined, happening anywhere in the world.

(Ex. A-7, Policy 955050, Insuring Agreement, Section I.)  These Policies define PERSONAL INJURY in relevant part as "bodily injury, sickness, disease, disability or shock, including death

at any time resulting therefrom, mental anguish and mental injury . . . which occurs during the policy period." (*Id.*, Definitions, Section I.) These Policies define PROPERTY DAMAGE as:

1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, and
2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an OCCURRENCE during the policy period.

(*Id.*, Definitions, Section K.)

132.   The First State Policies contained in Exhibit A-7 define an OCCURRENCE in relevant part as "an accident or event including continuous repeated exposure to conditions, which results, during the policy period, in PERSONAL INJURY or PROPERTY DAMAGE neither expected nor intended from the stand-point of the INSURED." (*Id.*, Definitions, Section H.)

133.   The First State Policies contained in Exhibit A-7 provide that First State "shall be liable only for the ULTIMATE NET LOSS in excess of the greater of the INSURED's . . . UNDERLYING LIMIT . . . ; or RETAINED LIMIT. (*Id.*, Insuring Agreement, Section II.) However, these First State Policies state in relevant part that:

[W]ith respect to any OCCURRENCE not covered, as warranted, by the underlying policies listed in Schedule A hereof, whether collectible or not, or not covered by any other underlying insurance collectible by the INSURED, but covered by the terms and conditions of this policy, except for the RETAINED LIMIT, [Hartford] shall . . . defend any suit against the insured alleging PERSONAL INJURY, [or] PROPERTY DAMAGE . . . and seeking damages therefore, even if such suit is groundless, false or fraudulent.

(*Id.*, Insuring Agreement, Section IV.)

134.   Upon information and belief, the First State Policies not contained in Exhibit A-7 contain substantially identical terms, conditions and obligations as those alleged in the preceding paragraphs.

135.     Each of the Underlying Actions alleges a covered occurrence, occurrences, or series of occurrences under the First State Policies contained in Exhibit A-7 and seeks damages from property damage and/or personal injury during the policy periods of the First State Policies. Upon information and belief, each of the Underlying Actions alleges a covered occurrence, occurrences, or series of occurrences under the remaining First State Policies and seeks damages from property damage and/or personal injury during the policy periods of the First State Policies.

136.     Based on the foregoing, First State is required to "drop down" to provide a defense and indemnification where the underlying insurance has not or will not respond, has been reduced, or has been exhausted, requiring First State to provide a full defense and to completely indemnify Wolverine on a joint and several, "all sums" basis, with respect to each of the Underlying Actions.

137.     Because some or all of the insurance underlying the First State Policies has not agreed to or will not respond to provide coverage to Wolverine for the Underlying Actions, or has been reduced or otherwise exhausted, First State is, upon information and belief, presently obligated to defend Wolverine in full for each of the Underlying Actions and to fully indemnify Wolverine on a joint and several, "all sums" basis, for any settlements and/or judgments in connection with each of the Underlying Actions.

138.     First State has failed and/or refused to provide Wolverine with a complete defense from each of the Underlying Actions and has failed and/or refused to fully indemnify Wolverine on a joint and several, "all sums" basis, for any settlements and/or judgments in connection with each of the Underlying Actions.

139.     Wolverine has performed all of its obligations and satisfied all the conditions of the First State Policies, or such performance or satisfaction has been waived and/or excused by the conduct of First State or by operation of law.

140.    Wolverine has conducted a diligent and thorough search for the insurance policies issued by First State in its care, custody, and control.  Wolverine also requested that Defendant First State conduct a diligent search for any insurance policies in its possession that were issued to Wolverine at any time and provide coverage for comprehensive (or commercial) general liability. Despite Wolverine's reasonable request, Defendant First State has failed and/or refused to conduct a diligent and thorough search for insurance policies issued by First State to Wolverine.

141.    Defendant AEIC issued the following umbrella insurance policies to Wolverine (the "AEIC Policies") that each contain a "drop down" duty to pay Wolverine's defense expenses and an obligation to indemnify Wolverine for all settlements and/or judgements on a joint and several, "all sums" basis, arising from the Underlying Actions:

| Policy Periods | Policy Number |
|---|---|
| 4/6/1966 – 4/6/1967 | A22-8477-001 |
| 4/6/1967 – 4/6/1968 | A22-8477-001 |
| 4/6/1968 – 4/6/1969 | A22-8477-001 |
| 4/6/1969 – 4/6/1970 | A22-8500-288 |
| 4/6/1970 – 4/6/1971 | A22-8500-288 |
| 4/6/1971 – 4/6/1972 | A22-8500-288 |

142.    Attached at **Exhibit A-8** is a true and correct copy of AEIC Policy A22-8500-288 and/or certain evidence thereof currently in Wolverine's possession.

143.    AEIC Policy A22-8500-288 obligates AEIC to:

> [I]ndemnify the Insured for all sums which the Insured shall be obligated to pay by reason of the liability imposed upon him by law or liability assumed by him under contract or agreement for damages, and expenses, all as included in the definition of 'ultimate net loss,' because of:
>
> (a) Personal injuries, as hereinafter defined;
> (b) Property damage, as hereinafter defined;
>                                          * * *

(Ex. A-8, Policy A22-8477-001, Insuring Agreements, Section I.)  AEIC Policy A22-8500-288 defines personal injuries in relevant part as "bodily injury, sickness or disease, mental injury,

mental anguish, shock, disability . . . invasion of the right of privacy . . . including death at any time resulting therefrom" and defines property damage as "physical injury to, or physical destruction of, tangible property, including the loss of use thereof." (*Id.*)

     144.   AEIC Policy A22-8477-001 provides that AEIC:

> shall be liable only for ultimate net loss in excess of either:
>
> (a) except as provided in sub-paragraph (b) hereof, the applicable limits of liability of the policies of underlying insurance set forth in Item 3 of the Declarations; or
>
> (b) as respects each occurrence not covered by such underlying insurance, or where each occurrence is covered by such under-lying insurance but in recoverable amounts less than the Underlying Limits set forth in Item 4 of the Declarations, the amount of ultimate net loss set forth in the Declarations as 'Underlying Limits,'
>
> but in no event shall the company be held liable for an amount in excess of the applicable limit of liability set forth in Item 5 of the Declarations.

(*Id.*, Conditions, Section 5.)

     145.   Upon information and belief, the AEIC Policy not contained in Exhibit A-8 contains substantially identical terms, conditions and obligations as those alleged in the preceding paragraphs.

     146.   Each of the Underlying Actions alleges a covered occurrence, occurrences, or series of occurrences under the AEIC Policy A22-8477-001 and seeks damages from property damage and/or personal injuries during the policy periods of the AEIC Policies. Upon information and belief, each of the Underlying Actions alleges a covered occurrence, occurrences, or series of occurrences under the AEIC Policy not contained in Exhibit A-8 and seeks damages from property damage and/or personal injuries during the policy periods of the AEIC Policies.

     147.   Based on the foregoing, AEIC is required to "drop down" to pay for Wolverine's defense expenses and indemnify Wolverine where the underlying insurance has not or will not

respond, has been reduced, or has been exhausted, requiring AEIC to provide payment to Wolverine for a full defense and to completely indemnify Wolverine on a joint and several, "all sums" basis, with respect to each of the Underlying Actions.

148.    Because some or all of the insurance underlying the AEIC Policies has not or will not respond to provide coverage to Wolverine for the Underlying Actions, or has been reduced or otherwise exhausted, AEIC is, upon information and belief, AEIC presently is obligated to provide payment to Wolverine for a full defense for each of the Underlying Actions and to fully indemnify Wolverine on a joint and several, "all sums" basis, for any settlements and/or judgments in connection with each of the Underlying Actions.

149.    AEIC has failed and/or refused to provide payment to Wolverine for a full defense for each of the Underlying Actions and has failed and/or refused to fully indemnify Wolverine on a joint and several, "all sums" basis, for any settlements and/or judgments in connection with each of the Underlying Actions.

150.    Wolverine has performed all of its obligations and satisfied all the conditions of the AEIC Policies, or such performance or satisfaction has been waived and/or excused by the conduct of AEIC or by operation of law.

151.    Because some or all of the insurance underlying the AEIC Policies has not or will not respond to provide coverage to Wolverine for the Underlying Actions, or has been reduced or otherwise exhausted, AEIC is presently obligated to defend Wolverine in full for each of the Underlying Actions and to fully indemnify Wolverine on a joint and several, "all sums" basis, for any settlements and/or judgments in connection with each of the Underlying Actions.

152.    Wolverine has conducted a diligent and thorough search for the insurance policies issued by AEIC in its care, custody, and control.  Wolverine also requested that Defendant AEIC

conduct a diligent search for any insurance policies in its possession that were issued to Wolverine at any time and provide coverage for comprehensive (or commercial) general liability. Despite Wolverine's reasonable request, Defendant AEIC has failed and/or refused to conduct a diligent and thorough search for insurance policies issued by AEIC to Wolverine.

153. Defendant North River issued the following umbrella insurance policy to Wolverine (the "North River Policy") which contains a "drop down" duty to pay Wolverine's defense expenses and an obligation to indemnify Wolverine for all settlements and/or judgements on a joint and several, "all sums" basis, in connection with the Underlying Actions:

| Policy Periods | Policy Number |
|---|---|
| 2/1/1977 – 2/1/1978 | JU 0286 |
| 2/1/1978 – 2/1/1979 | JU 0286 |
| 2/1/1979 – 2/1/1980 | JU 0286 |

154. Attached at **Exhibit A-9** are true and correct copies of the North River Policy.

155. The North River Policy provides that North River will "indemnify the Insured for all Sums which the Insured shall be obligated to pay by reason of the liability . . . imposed by law . . . for damages on account of . . . (i) personal injuries [and] (ii) Property Damage . . . caused by or arising out of each occurrence happening anywhere in the world." (Ex. A-9, North River Policy, Insuring Agreements, Pt. I.)

156. The North River Policy further provides that North River "shall only be liable for ultimate net loss the excess of either (a) the limits of the underlying insurances . . . in respect of each occurred covered by said underlying insurances, or (b) $25,000 ultimate not loss in respect of each occurrence not covered by said underlying insurances . . . and then only up to a further sum as stated in Item 2 (a) of the Declarations in all in respect of each occurrence . . .." (*Id.*, Insuring Agreements, Pt. II.)

157. The North River Policy defines "ultimate net loss" in relevant part as:

the total sum which the Insured, or his Underlying Insurers as scheduled, or both, become obligated to pay by reason of personal injuries [or] property damage . . . and shall also include . . . all sums paid as . . . compensation, fees, charges and law costs . . . expenses for . . . lawyers . . . and investigators and other persons, and for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder . . .

(*Id.*, Definitions, Pt. 7.)

158.    Each of the Underlying Actions alleges a covered occurrence, occurrences, or series of occurrences under the North River Policy and seeks damages from property damage and/or personal injuries during the policy periods of the AEIC Policies.

159.    Based on the foregoing, North River is required to "drop down" to pay for Wolverine's defense expenses and indemnify Wolverine where the underlying insurance has not or will not respond, has been reduced, or has been exhausted, and Wolverine has incurred in excess of $25,000 of "ultimate net loss"; requiring North River to provide payment to Wolverine for a full defense and to completely indemnify Wolverine on a joint and several, "all sums" basis, with respect to each of the Underlying Actions.

160.    Because some or all of the insurance underlying the North River Policies has not or will not respond to provide coverage to Wolverine for the Underlying Actions, or has been reduced or otherwise exhausted, Wolverine has incurred in excess of $25,000 of "ultimate net loss" as that term is defined in the North River Policy in connection with the Underlying Actions, North River is presently obligated to provide payment to Wolverine for a full defense for each of the Underlying Actions and to fully indemnify Wolverine on a joint and several, "all sums" basis, for any settlements and/or judgments in connection with each of the Underlying Actions.

161.    North River has failed and/or refused to provide payment to Wolverine for a full defense for each of the Underlying Actions and has failed and/or refused to fully indemnify

Wolverine on a joint and several, "all sums" basis, for any settlements and/or judgments in connection with each of the Underlying Actions.

163.    Wolverine has performed all of its obligations and satisfied all the conditions of the North River Policy, or such performance or satisfaction has been waived and/or excused by the conduct of AEIC or by operation of law.

163.    Defendant Pacific issued the following excess insurance policies to Wolverine (the "Pacific Policies"):

| Policy Periods | Policy Number |
|---|---|
| 1/22/1980 – 1/1/1981 | XCC 003306 |
| 1/1/1981 – 1/1/1982 | XCC 011177 |
| 1/1/1982 – 1/1/1983 | XCC 011293 |
| 1/1/1983 – 1/1/1984 | XCC 012870 |
| 1/1/1984 – 1/1/1985 | XCC 013002 |

164.    Attached at **Exhibit A-10** are true and correct copies of the Pacific Policies and/or certain evidence thereof currently in Wolverine's possession.

165.    Upon information and belief, the Pacific Policies provide insurance coverage on an occurrence basis for all suits alleging property damage, bodily injury, and/or personal injury.

166.    Upon information and belief, each of the Underlying Actions alleges a covered occurrence, occurrences, or series of occurrences under the Pacific Policies and seeks damages for property damage, bodily injury, and/or personal injury during the policy periods of the Pacific Policies, which shall trigger Pacific's duty pay for Wolverine's defense and/or indemnify Wolverine in the Underlying Actions upon exhaustion of the applicable underlying policies.

167.    Pacific has an obligation to investigate Wolverine's claims in connection with the Underlying Actions and to acknowledge coverage and agree to pay for Wolverine's defense and/or indemnify Wolverine in the Underlying Actions upon exhaustion of the applicable underlying coverage.

168.     Wolverine has conducted a diligent and thorough search for the insurance policies issued by Pacific in its care, custody, and control.  Wolverine also requested that Defendant Pacific conduct a diligent search for any insurance policies in its possession that were issued to Wolverine at any time and provide coverage for comprehensive (or commercial) general liability.  Despite Wolverine's reasonable request, Defendant Pacific has failed and/or refused to conduct a diligent and thorough search for insurance policies issued by Pacific to Wolverine.

169.     Defendant Federal issued the following excess insurance policy to Wolverine (the "Federal Policy") that contains  an obligation to indemnify Wolverine for all "Loss" on a joint and several, "all sums" basis, arising from the Underlying Actions:

| Policy Periods | Policy Number |
|---|---|
| 1/1/1985 – 1/1/1986 | 7929-05-17 |

170.     Attached at **Exhibit A-11** is a true and correct copy of the Federal Policy.

171.     The Liberty Policy provide insurance coverage on an occurrence basis for "Loss" that is "in excess of any UNDERLYING INSURANCE**"** that "result[ed] from any occurrence insured by the terms and provisions of" the underlying insurance.  (Ex. A-11, Policy 7929-05-17, Insuring Agreement.)

172.     Each of the Underlying Actions alleges a covered occurrence, occurrences, or series of occurrences under the Liberty Policy and all policies underlying the Liberty Policy and seeks damages for property damage, bodily injury, and/or personal injury during the policy periods of the Liberty Policy, which trigger Liberty's duty pay for "Loss" in the Underlying Actions upon exhaustion of the applicable underlying policies.

173.     Liberty has an obligation to investigate Wolverine's claims in connection with the Underlying Actions and to acknowledge coverage and agree to pay for Wolverine's defense and/or

indemnify Wolverine in the Underlying Actions upon exhaustion of the applicable underlying coverage.

## III.    The Doe Insurer Defendants

174.    Doe Insurance Companies 1 through 10 are insurance companies whose identities are currently unknown to Plaintiff that issued general liability insurance policies (including primary, umbrella, and excess insurance policies) providing insurance coverage with a duty to defend and/or indemnify Wolverine in connection with the Underlying Actions for which relief has been sought herein. When the true identifies of such insurance companies become known to Plaintiff, this complaint will be amended to identify such defendant insurance companies.

## IV.    Duty to Defend and Indemnify Wolverine

175.    Wolverine is an insured under each of the Policies.

176.    The Primary Insurers currently have an obligation, and/or on information and belief currently have an obligation, by contract and by law to: (1) immediately investigate and provide a full and complete defense to Wolverine in connection with each of the Underlying Actions; and/or (2) pay in full the costs and expenses of the investigation and defense of the Underlying Actions; and (3) pay in full for any of Wolverine's legal liabilities incurred, to be incurred, or paid in connection with the Underlying Actions, including any settlements and/or judgments.

177.    The Primary Insurers currently have an obligation, and/or on information and belief currently have an obligation, contractually and by law to assume their respective duties to defend a suit in its entirety even where that suit alleges a mere potential for coverage and even if some of the other claims in that suit do not trigger coverage in and of themselves.

178.    Each of the excess and umbrella insurer Defendants with a duty to defend – First State, AEIC and North River – must, on information and belief, undertake or honor their

contractual obligations to provide a complete defense to Wolverine and/or to pay in full Wolverine's costs and expenses of investigation and defense where – as here – the Primary Insurers have failed and refused to do so.

179.   Federal, Pacific, INA (under the INA Umbrella Policies) and AIC (under the AIC Excess Policies), on information and belief, are obligated to immediately investigate and acknowledge their respective duties and must pay in full any of Wolverine's legal liabilities incurred, to be incurred, or paid in connection with the Underlying Actions, including any settlements and/or judgments, upon Wolverine's exhaustion of the applicable underlying insurance.

180.   In connection with the Court's analysis of the Defendants' aforementioned duties, any ambiguities in and of the Policies must be construed against each insurer Defendant and resolved in favor of coverage. Further, any exclusionary language or provisions, including, but not limited to, so-called "pollution exclusions," cannot defeat an insurers duty to defend and should be applied in a manner that best affords coverage rather than limit or preclude it.

181.   Any and all purported "pollution exclusions" that appear in the Policies do not apply to preclude or limit coverage for the Underlying Actions. To the extent that the Court must determine the applicability and scope of such exclusions, the Primary Insurers and – in the alternative – First State, AEIC, and North River, first must provide a full and complete defense to Wolverine and are not entitled to recoup any defense costs at a later date.

182.   All of the Underlying Actions allege an occurrence, occurrences, or series of occurrences that fall within the policy periods of all of the Policies discussed herein and listed in Exhibit A.

183.     In consideration of premiums paid by Wolverine with respect to each of the Policies, Defendants issued the Policies to Wolverine with the expectation that Wolverine would receive a full and complete defense and complete indemnification on a joint and several, "all sums" basis, with respect to all suits, such as the Underlying Actions, alleging property damage, bodily injury, and/or personal injury arising from an occurrence, occurrences, or series of occurrences under the Policies.

184.     On information and belief, under each of the Policies issued by the Primary Insurers, Wolverine is entitled to a full defense for each of the Underlying Actions and is entitled to complete indemnity for all sums, including all settlements and/or judgments, arising out of the Underlying Actions.  On information and belief, where – as here – the Primary Insurers have failed and refused to provide Wolverine with a full defense, First State, AEIC, and North River must, under their respective Policies, provide Wolverine with a full defense in connection with the Underlying Actions.

185.     On information and belief, under each of the Policies issued by Federal and Pacific and certain of the Policies issued by INA and AIC, Wolverine is entitled to a decision from each Defendant acknowledging coverage and agreeing to pay in full any of Wolverine's legal liabilities incurred, to be incurred, or paid in connection with the Underlying Actions, including any settlements and/or judgments upon exhaustion of the applicable underlying coverage.

186.     To date, each applicable Defendant has failed and/or refused to honor their obligations in connection with each of the Underlying Actions.

### Count I – Against All Defendants
### (Breach of Contract – Duty to Defend)

187.     Wolverine repeats and realleges the allegations in the foregoing paragraphs, as if fully set forth herein.

188.    All of the Underlying Actions constitute claims and/or demands and/or suits alleging that the acts and/or omissions of Wolverine, a named insured under the Policies, constitute an occurrence, occurrences, or a series of occurrences, all of which occurred within the policy periods of the Policies.  The Underlying Actions further allege that Wolverine has caused bodily injury, property damage, personal injury, and/or some combination thereof as a result of an occurrence, occurrences, or a series of occurrences.  As such, all of the Underlying Actions, and potentially forthcoming actions not yet filed, trigger each of the Primary Insurers' duty to defend Wolverine in full under each of the Primary Insurers' Policies.

189.    Each of the Primary Insurers, under each of their specified Policies, are required to provide a complete defense and/or to pay in full for all of Wolverine's costs and expenses incurred in connection with the investigation and defense of each of the Underlying Actions, inclusive of on-going remediation, clean-up, and/or mitigation costs incurred with the intent to reduce and/or eliminate Wolverine's liability and/or damages in the Underlying Actions.

190.    Each of the Primary Insurers has failed and/or refused under each of their respective Policies to acknowledge, accept, or undertake a complete defense of Wolverine in connection with each of the Underlying Actions and/or to pay in full all of the costs, fees and expenses incurred by Wolverine to investigate and defend each of the Underlying Actions.  Each of the Primary Insurers' failures and/or refusals to honor in full their duty to defend constitute independent breaches of the Policies, which are continuing, up through and including the date of this Complaint.

191.    Each of the Primary Insurers have repudiated their contractual obligations set forth in each of the Policies in their entirety by stating and/or declaring that they will not and/or do not intend to honor in full and without reservation all of their contractual obligations to Wolverine. Each of the Primary Insurers have stated that they will not and/or do not intend (i) to provide a

- 49 -

complete defense and/or to pay for all defense and investigation costs paid or incurred by Wolverine, including, without limitation, mitigation, remediation, and clean-up costs and (ii) to otherwise acknowledge, accept, and undertake fully, without reservation, all of their obligations under each of the Policies with respect to Wolverine's defense of the Underlying Actions.  Each of the Primary Insurers' failures and/or refusals to honor in full their duties and obligations constitute independent breaches of the Policies, which are continuing, up through and including the date of this Complaint.

192.    First State, AEIC, and North River, under each of their specified Policies, are obligated and required to pay in full all of the costs, fees, and expenses incurred by Wolverine in investigating and defending the Underlying Actions, inclusive of remediation, clean-up, and/or mitigation costs incurred with the intent to reduce and/or eliminate Wolverine's liability and/or damages in the Underlying Actions where, as here, the applicable underlying primary insurer Defendant have failed and/or refused to defend Wolverine in full for the Underlying Actions.

193.    First State, AEIC, and North River each have failed and/or refused under each of the Policies to acknowledge, accept, undertake and/or pay in full for a complete defense of Wolverine in connection with each of the Underlying Actions despite the failure and refusal by each of the underlying Primary Insurers to defend Wolverine in full for the Underlying Actions. failures are continuing, up through and including the date of this Complaint.  Each of First State's, AEIC's, and North River's failures and/or refusals to honor their obligations to provide and/or pay in full for all of the costs, fees and expenses incurred by Wolverine to investigate and defend the Underlying Actions constitutes independent breaches of the Policies, which are continuing, up through and including the date of this Complaint.

194. The foregoing conduct by Primary Insurers, First State, AEIC, and North River have effectively rendered Wolverine without insurance coverage for its defense in the Underlying Actions, including its investigative costs and remediation, clean-up, and/or mitigation cost incurred with the intent to reduce and/or eliminate Wolverine's liability and/or damages in the Underlying Actions.

195. Wolverine has performed all of its duties and obligations under the previously specified Policies and complied with and fully satisfied all applicable terms and conditions under the Policies, including the payment of premiums. In the alternative, Wolverine's performance of or compliance with such duties, terms, and/or conditions has been waived or otherwise excused by the conduct of the aforementioned Defendants or by operation of law. Thus, Wolverine is entitled to the full benefits and protections of each of the specified Policies with respect to the Underlying Actions.

196. Inherent in each and every contract is a duty of good faith and fair dealing among the parties to that contract. Each of the Defendants is bound by a duty of good faith and fair dealing with Wolverine by virtue of each of the Policies.

197. Each of the Defendants has arbitrarily, recklessly, and unreasonably withheld from Wolverine the full benefits of the insurance coverage under the Policies, and has breached the Policies by, among other things: (1) failing and/or refusing to honor their duty to defend with respect to each of the Underlying Actions; (2) failing and/or refusing to pay Wolverine's defense and investigation costs in full for each of the Underlying Actions; (3) unreasonably and improperly misinterpreting and misapplying the terms, provisions, conditions of and insurance coverage provided by the Policies; (4) arbitrarily, recklessly, and unilaterally denying and/or limiting their duties and obligations under the Policies; (5) arbitrarily, recklessly, and indifferently failing and/or

refusing to provide or agree to provide Wolverine with the full benefits of the promised indemnity under each of the Policies with respect to "all sums" incurred by Wolverine in the Underlying Actions including any settlements or judgments; (6) arbitrarily, recklessly and indifferently insisting that any payments made by the Defendants for Wolverine's defense and investigation costs are subject to recoupment at a later date; (7) arbitrarily, recklessly, and indifferently failing and/or refusing to conduct a complete and thorough search for any insurance policies, or evidence thereof, in their possession, custody and control that were issued to Wolverine; and/or (8) refusing and/or failing to acknowledge the existence of Policies which provide coverage for this claim despite having previously acknowledged and agreed to the existence of coverage under those Policies in connection with prior claims by Wolverine.

198.   The foregoing conduct by each of the Defendants constitutes independent breaches of each of the Policies and amounts to arbitrary, reckless, indifferent, and/or intentional disregard of the interests of Wolverine.

199.   The foregoing conduct by each of the Defendants constitutes a breach of each insurer Defendants' duty of good faith and fair dealing.

200.   As a direct and proximate result of the Defendants' individual and collective breaches of their duty of good faith and fair dealing, Wolverine has sustained damages, damages which are continuing, and damages which Wolverine is entitled to recovery from Defendants under the Policies, at law, and in equity.   Wolverine also is entitled to all other direct, indirect, consequential, special, and compensatory damages as are appropriate as a result of Defendants' breaches of contract and breaches of their duty of good faith and fair dealing.

**Count II – All Defendants**
**(Declaratory Judgment Pursuant to MCR 2.605)**

201.    Wolverine repeats and realleges each of the allegations in the foregoing paragraphs, as if fully set forth herein.

202.    Each of the Underlying Actions alleges a covered, or at least a potentially covered, occurrence, occurrences, or series of occurrences under each of the Policies issued by each of the Defendants.

203.    Each of the Primary Insurers has an immediate duty to defend and/or an obligation to fully pay Wolverine's costs, fees, and expenses as incurred in connect with the investigation and defense of the Underlying Actions under each of their Policies. Each of the Primary Insurers has failed and/or refused to honor their duty to defend Wolverine in each of the Underlying Actions under each of the Policies.

204.    First State, AEIC, and North River agreed in each of their attached Policies to provide a complete defense to Wolverine and/or to fully pay Wolverine's costs of investigating and defending any suits alleging or potentially alleging any occurrence arising from property damage, bodily injury, and/or personal injury under each of the Policies where the underlying insurance, as is the case here, has not or will not respond, has been reduced, or has been exhausted. Because each of the Primary Insurers underlying the Policies issued by First State, AEIC, and North River have failed and/or refused to honor their duty to defend Wolverine in each of the Underlying Actions, First State, AEIC, and North River must honor their duty to defend Wolverine and/or are obligated to provide a complete defense to Wolverine and/or to fully pay Wolverine's costs of investigating and defending each of the Underlying Actions.

205.    The Primary Insurers, First State, AEIC, and North River have individually and collectively failed and/or refused to honor their duty to defend and/or to provide a complete

- 53 -

defense to Wolverine and/or to pay fully all costs incurred by Wolverine in defending and investigating the Underlying Actions.

206.    Each of the Defendants agreed in each of their Policies, and has a present obligation, to fully and completely indemnify Wolverine on a joint and several, "all sums" basis, for any and all liabilities incurred, to be incurred, or paid by Wolverine in the Underlying Actions, including any settlements and/or judgments, under each of the Policies.

207.    Each of the Defendants has refused and/or failed to honor their obligations to provide, under each of their Policies, a complete indemnification to Wolverine and/or has failed and/or refused to acknowledge or agree to accept its obligations to pay in full on a joint and several, "all sums" basis, for any liabilities incurred or to be incurred by Wolverine with respect to the Underlying Actions, including, but not limited to, any settlements and/or judgments.

208.    An actual and justiciable controversy presently exists between Wolverine and each of the Defendants concerning Defendants' respective duties and obligations under each of the Policies with respect to the Underlying Actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Wolverine respectfully requests judgment against Defendants as follows:

1.    That this Court determine and declare that the Primary Insurers are obligated to: (A) honor their duty to defend by providing Wolverine with a complete defense in connection with the Underlying Actions; and/or (B) pay in full the costs, fees, and expenses as they are incurred by Wolverine in connection with the investigation and defense of the Underlying Actions; and (C) pay in full for any of Wolverine's liabilities incurred, to be incurred, or paid in connection with the Underlying Actions, including, but not necessarily limited  to, any settlements and/or judgments.  Specifically, that this Court declare that the Primary Insurers are joint and severally

liable for all sums incurred to date, and all future sums, incurred or paid by Wolverine in the Underlying Actions, including, but not limited to:

        a.      All costs, fees and expenses related to the investigation and defense of the Underlying Actions;

        b.      All liabilities incurred or to be incurred by Wolverine in connection with the Underlying Actions, including, but not limited to, settlement costs, costs related to a consent decree or similar, and/or damages imposed by any judgment or order of a court of law, inclusive of fees and interest;

        c.      Costs of any and all appeals related to the Underlying Actions; and

        d.      All costs expended for remediation, mitigation, and/or clean-up, including, but not limited to, those costs expended in complying with, or related to, the Government Actions or any consent decree or any administrative order or similar order entered in any of the Underlying Actions.

2.      That this Court determine and declare that First State, AEIC, and North River have, under their respective Policies, a duty to defend and/or reimburse Wolverine in full for its costs, fees, and expenses incurred in connection with Wolverine's defense and investigation of the Underlying Actions.  Specifically, that this Court declare that First State, AEIC, and North River are joint and severally liable for all sums incurred to date, and all future sums, incurred or paid by Wolverine in the Underlying Actions, including, but not limited to:

        a.      All costs, fees and expenses related to the investigation and defense of the Underlying Actions;

        b.      All liabilities incurred or to be incurred by Wolverine in connection with the Underlying Actions, including, but not limited to, settlement costs, costs

related to a consent decree or similar, and/or damages imposed by any judgment or order of a court of law, inclusive of fees and interest;

c. Costs of any and all appeals related to the Underlying Actions; and

d. All costs expended for remediation, mitigation, and/or clean-up, including, but not limited to, those costs expended in complying with, or related to, the Government Actions or any consent decree or any administrative order or similar order entered in any of the Underlying Actions.

3. That this Court determine and declare that each Defendant is obligated to indemnify Wolverine in full on a joint and several, "all sums" basis, for any liabilities incurred or to be incurred by Wolverine in connection with the Underlying Actions, including any settlements and/or judgments. Where necessary, this Court's determination and declaration concerning each excess and/or umbrella insurer Defendant's obligations to indemnify Wolverine should take into account the specific attachment point and/or exhaustion of underlying limits of insurance in accordance with the specific terms of each excess and/or umbrella Policy.

4. That this Court determine and declare that each of the Defendants are obligated to pay and/or reimburse Wolverine in full for all costs, fees, and expenses incurred or to be incurred by Wolverine in connection with any remediation, mitigation, and/or clean-up associated with the alleged damage, including, but not limited to, those costs incurred in complying with, or related to, the Government Actions or any consent decree or any administrative order or similar order entered in any of the Underlying Actions.

5. That this Court determine and declare that each and every Defendant waived its ability to enforce any contractual obligation, limitations, exclusion, or other provisions running in favor of the breaching party, including without limitation any purported contractual obligation,

limitation, or exclusion on the limits of liability, any so-called "pollution exclusion," any purported duty to give notice of a claim or occurrence, any requirement to cooperate or any similar obligation, by virtue of their respective breaches of contract and/or failures and/or refusals to fully acknowledge and/or assume their obligations under each of the Policies with respect to each of the Underlying Actions.

6.     That this Court enter an Order that the Defendant Primary Insurers have individually and collectively breached their respective Policies by and through each of their respective failures and/or refusals to honor their duty to defend Wolverine in the Underlying Actions.

7.     That this Court enter an Order that Defendants First State, AEIC, and North River have individually and collectively breached their respective Policies by and through each of their respective failures and/or refusals to honor their duty to defend Wolverine in the Underlying Actions.

8.     That this Court enter an Order that each of the Defendants breached their duty of good faith and fair dealing.

9.     For Wolverine's actual damages according to proof at trial, including but not limited to compensatory damages in an amount or amounts to be determined by the trier of fact at trial.

10.     On all Counts, that Wolverine is entitled to ancillary relief including:

a.     Such orders, including injunctive relief, as are necessary to preserve this Court's jurisdiction over the parties and issues herein;

b.     Prejudgment and post-judgment interest according to law; and

c.     Wolverine's attorneys' fees, costs, and expenses incurred in bringing this

lawsuit.

11.     On all Counts, such other and further legal and equitable relief as this Court deems

just and proper.

Dated: December 14, 2018

Charles M. Denton (P33269)
Erika P. Weiss (P78552)
Barnes & Thornburg LLP
171 Monroe Ave. NW, Suite 1000
Grand Rapids, MI 49503
Telephone: (616) 742-3930
Facsimile: (616) 742-3999
Charles.Denton@btlaw.com
Erika.Weiss@btlaw.com

**Lead Counsel:**

Kevin B. Dreher (*pro hac vice* forthcoming)
James M. Davis (*pro hac vice* forthcoming)
Reed Smith LLP
10 South Wacker Drive, 40th Floor
Chicago, IL  60606-7507
Telephone: (312) 207-1000
Facsimile: (312) 207-6400
kdreher@reedsmith.com
jdavis@reedsmith.com

*Counsel for Plaintiff Wolverine World Wide,
Inc., f/k/a Wolverine Shoe & Tanning
Corporation*

## JURY TRIAL DEMAND

Plaintiff hereby demands trial by jury of any issue and all issues so triable; and as to any issues not triable to a jury as of right Plaintiff requests that an advisory jury be empaneled.

Dated: December 14, 2018

Charles M. Denton (P33269)
Erika P. Weiss (P78552)
Barnes & Thornburg LLP
171 Monroe Ave. NW, Suite 1000
Grand Rapids, MI 49503
Telephone: (616) 742-3930
Facsimile: (616) 742-3999
Charles.Denton@btlaw.com
Erika.Weiss@btlaw.com

**Lead Counsel:**

Kevin B. Dreher (*pro hac vice* forthcoming)
James M. Davis (*pro hac vice* forthcoming)
Reed Smith LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606-7507
Telephone: (312) 207-1000
Facsimile: (312) 207-6400
kdreher@reedsmith.com
jdavis@reedsmith.com

*Counsel for Plaintiff Wolverine World Wide, Inc., f/k/a Wolverine Shoe & Tanning Corporation*



100% Recycled   30% PCW

**DECLARATIONS**



## LIBERTY MUTUAL
### INSURANCE COMPANY
Home Office: Boston

**COMPREHENSIVE GENERAL LIABILITY POLICY**

| cy No. | TD Code | Sales Office | Code | Salesman | Code | N/R | 1st Year |
|---|---|---|---|---|---|---|---|
| 31-141-050531-082 | 93 | Gr. Rapids | 474 | O'Connell | 6316 | 2 | 67 |

**m 1.** Named Insured  Wolverine World Wide, Inc. and as per End. #1

Address  9341 Courtland Dr., Rockford, Mich.  49341

The named insured is: Individual ☐, Partnership ☐, Corporation ☒, Other ☐

Business of named insured is: Manufacture of Shoes, Gloves and Hats

**m 2.** Policy Period: From  Mo. 1  Day 1  Year '72  to  Mo. 1-2  Day 28  Year 73
12:01 A.M., standard time at the address of the named insured as stated herein.

Audit Basis: At Expiration ☐, Annual ☒, Semi-Annual ☐, Quarterly ☐, Monthly ☐, Flat Charge ☐

**m 3.** The insurance afforded is only with respect to such of the following Coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such Coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| COVERAGES | LIMITS OF LIABILITY | | ADVANCE PREMIUMS |
|---|---|---|---|
| **A — BODILY INJURY LIABILITY** | $ 100,000 | each person | $ 14,336. |
| | $ 300,000 | each occurrence | |
| | $ 300,000 | aggregate | |
| | $ 50,000 | each occurrence | $ 3,136. |
| **B — PROPERTY DAMAGE LIABILITY** | $ 50,000 | aggregate | |
| MINIMUM PREMIUMS: | Bodily Injury | Property Damage Liability | |
| | $ | $ | TOTAL ADVANCE PREMIUM $ 17,472. |

*THIS POLICY WAS ADJUSTED*
*SEP 27 1973*
*AND AUDIT STATEMENT PASSED TO BOOKKEEPER*

*THIS POLICY WAS ADJUSTED*
*JUL 10 1973*
*AUDIT STATEMENT PASSED TO BOOKKEEPER*

*CANCELLED*

*SEE OTHER SIDE*

**tem 4.** Computation of Premiums

| Classification and Locations | Code No. | Premium Base | | Rates | | Advance Premiums | |
|---|---|---|---|---|---|---|---|
| | | | | Bodily Injury Liability | Property Damage Liability | Bodily Injury Liability Code 318 | Property Damage Liability Code 338 |
| See Schedules Attached | | FILE 4-172 | | | | | |

*FILE 4-172*

*INITIALS*
FIRE  AUTO  GEL  A & H  FID.
Pol. & End.  Corres.
Bills & Aud.  Rat. Data

*DUPLICATE*

*PERMANENT*

The policy, including all endorsements issued therewith, is hereby countersigned by_____
Authorized Representative

| Work Units | Typed | Periodic Payment | Rating Basis | Audit Basis | Home State | Pol. H.G. | Renewal of | Accounting Entry |
|---|---|---|---|---|---|---|---|
| 1- 12 | JW 4-4-72 | $ | R ☐  NR ☒ | 1 | Mich. | S- ☐ | LG1-081 | Dividend for Exp. Period |

GPO 2739 RI  Printed in U.S.A.

COMPREHENSIVE GENERAL LIABILITY POLICY



# LIBERTY MUTUAL
## INSURANCE COMPANY
### Home Office: Boston

FOR PROMPT INSURANCE SERVICE — CALL YOUR SERVICE OFFICE

(A mutual Insurance company, herein called the company)

THIS POLICY IS CLASSIFIED IN DIVIDEND CLASS 1
GENERAL CLASS

●

The named insured is hereby notified that by virtue of this policy he is a member of Liberty Mutual Insurance Company and is entitled to vote either in person or by proxy at any and all meetings of said company.

●

The annual meetings are held at its home office, Boston, Massachusetts, on the second Wednesday of April in each year, at eleven o'clock in the morning.

In consideration of the payment of the premium, in reliance upon the statements in the declarations made a part hereof and subject to all of the terms of this policy, agrees with the named insured as follows:

**COVERAGE A—BODILY INJURY LIABILITY**

**COVERAGE B—PROPERTY DAMAGE LIABILITY**

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

Coverage A. bodily injury or

Coverage B. property damage

to which this policy applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**Exclusions**

This policy does not apply:

(a) to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;

(b) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of
(1) any automobile or aircraft owned or operated by or rented or loaned to the named insured, or
(2) any other automobile or aircraft operated by any person in the course of his employment by the named insured;
but this exclusion does not apply to the parking of an automobile on premises owned by, rented to or controlled by the named insured or the ways immediately adjoining, if such automobile is not owned by or rented or loaned to the named insured;

(c) to bodily injury or property damage arising out of and in the course of the transportation of mobile equipment by an automobile owned or operated by or rented or loaned to the named insured;

(d) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft, if the bodily injury or property damage occurs away from premises owned by, rented to or controlled by the named insured; but this exclusion does not apply to bodily injury or property damage included within the products hazard or the completed operations hazard or resulting from operations performed for the named insured by independent contractors or to liability assumed by the insured under an incidental contract;

(e) to bodily injury or property damage due to war, whether or not declared, civil war, insurrection, rebellion or revolution

or to any act or condition incident to any of the foregoing, with respect to
(1) liability assumed by the insured under an incidental contract, or
(2) expenses for first aid under the Supplementary Payments provision;

to bodily injury or property damage for which the insured or his indemnitee may be held liable, as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages or as an owner or lessor of premises used for such purposes, by reason of the selling, serving or giving of any alcoholic beverage
(1) in violation of any statute, ordinance or regulation,
(2) to a minor,
(3) to a person under the influence of alcohol, or
(4) which causes or contributes to the intoxication of any person;

(g) to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(h) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured; but this exclusion does not apply to liability assumed by the insured under an incidental contract;

(i) to property damage to
(1) property owned or occupied by or rented to the insured,
(2) property used by the insured, or
(3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control;
but parts (2) and (3) of this exclusion do not apply with respect to liability under a written sidetrack agreement and part (3) of this exclusion does not apply with respect to property damage (other than to elevators) arising out of the use of an elevator at premises owned by, rented to or controlled by the named insured;

(j) to property damage to premises alienated by the named insured arising out of such premises or any part thereof;

(k) to bodily injury or property damage resulting from the failure of the named insured's products or work completed by or for the named insured to perform the function or serve the purpose intended by the named insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by any insured; but this exclusion does not apply to bodily injury or property damage resulting from the active malfunctioning of such products or work;

(l) to property damage to the named insured's products arising out of such products or any part of such products;

(m) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof,

or out of materials, parts or equipment furnished in connection therewith;

(n) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

## II SUPPLEMENTARY PAYMENTS

The company will pay, in addition to the applicable limit of liability:

(a) all expenses incurred by the company, all costs taxed against the insured in any suit defended by the company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon;

(b) premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, and the cost of bail bonds required of the insured because of accident or traffic law violation arising out of the use of any vehicle to which this policy applies, not to exceed $250 per bail bond, but the company shall have no obligation to apply for or furnish any such bonds;

(c) expenses incurred by the insured for first aid to others at the time of an accident, for bodily injury to which this policy applies;

(d) reasonable expenses incurred by the insured at the company's request, including actual loss of wages or salary (but not loss of other income) not to exceed $25 per day because of his attendance at hearings or trials at such request.

## III PERSONS INSURED

Each of the following is an insured under this policy to the extent set forth below:

(a) If the named insured is designated in the declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor;

(b) If the named insured is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) If the named insured is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;

(d) any person (other than an employee of the named insured) or organization while acting as real estate manager for the named insured; and

(e) with respect to the operation, for the purpose of locomotion upon a public highway, of mobile equipment registered under any motor vehicle registration law,

(i) an employee of the named insured while operating any such equipment in the course of his employment, and

(ii) any other person while operating with the permission of the named insured any such equipment registered in the name of the named insured and any person or organization legally responsible for such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization;

provided that no person or organization shall be an insured under this paragraph (e) with respect to:

(1) bodily injury to any fellow employee of such person injured in the course of his employment, or

(2) property damage to property owned by, rented to, in charge of or occupied by the named insured or the employer of any person described in subparagraph (i).

---

This insurance does not apply to bodily injury or property damage arising out of the conduct of any partnership or joint venture of which the insured is a partner or member and which is not designated in this policy as a named insured.

## LIMITS OF LIABILITY

Regardless of the number of (1) insureds under this policy, (2) persons or organizations who sustain bodily injury or property damage, or (3) claims made or suits brought on account of bodily injury or property damage, the company's liability is limited as follows:

**Coverage A**—The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one occurrence; but subject to the above provision respecting "each person", the total liability of the company for all damages because of bodily injury sustained by two or more persons as the result of any one occurrence shall not exceed the limit of bodily injury liability stated in the declarations as applicable to "each occurrence".

Subject to the above provisions respecting "each person" and "each occurrence", the total liability of the company for all damages because of (1) all bodily injury included within the completed operations hazard and (2) all bodily injury included within the products hazard shall not exceed the limit of bodily injury liability stated in the declarations as "aggregate".

**Coverage B**—The total liability of the company for all damages because of all property damage sustained by one or more persons or organizations as the result of any one occurrence shall not exceed the limit of property damage liability stated in the declarations as applicable to "each occurrence".

Subject to the above provision respecting "each occurrence", the total liability of the company for all damages because of all property damage to which this coverage applies and described in any of the numbered subparagraphs below shall not exceed the limit of property damage liability stated in the declarations as "aggregate":

(1) all property damage arising out of premises or operations rated on a remuneration basis or contractor's equipment rated on a receipts basis, including property damage for which liability is assumed under any incidental contract relating to such premises or operations, but excluding property damage included in subparagraph (2) below;

(2) all property damage arising out of and occurring in the course of operations performed by the named insured by independent contractors and general supervision thereof by the named insured, including any such property damage for which liability is assumed under any incidental contract relating to such operations, but this subparagraph (2) does not include property damage arising out of maintenance or repairs at premises owned by or rented to the named insured or structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

(3) all property damage included within the products hazard and all property damage included within the completed operations hazard.

Such aggregate limit shall apply separately to the property damage described in subparagraphs (1), (2) and (3) above, and under subparagraphs (1) and (2), separately with respect to each project away from premises owned by or rented to the named insured.

**Coverages A and B**—For the purpose of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

## POLICY PERIOD; TERRITORY

This policy applies only to bodily injury or property damage which occurs during the policy period within the policy territory.

## DEFINITIONS

When used in this policy (including endorsements forming a part hereof):



# PAGE 3

"automobile" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include "mobile equipment."

"bodily injury" means bodily injury, sickness or disease sustained by any person.

"completed operations hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,

(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

The completed operations hazard does not include bodily injury or property damage arising out of

(a) operations in connection with the transportation of property, unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,

(b) the existence of tools, uninstalled equipment or abandoned or unused materials; or

(c) operations for which the classification stated in the policy or in the company's manual specifies "including completed operations".

"damages" includes damages for death and for care and loss of services resulting from bodily injury and damages for loss of use of tangible property resulting from property damage.

"elevator" means any hoisting or lowering device to connect floors or landings, whether or not in service, and all appliances thereof including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery; but does not include an automobile servicing hoist, or a hoist without a platform outside a building if without mechanical power or if not attached to building walls, or a hod or material hoist used in alteration, construction or demolition operations, or an inclined conveyor used exclusively for carrying property or a dumbwaiter used exclusively for carrying property and having a compartment height not exceeding four feet.

"insured" means any person or organization qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the company's liability.

"insured contract" means any written (1) lease of premises, (2) easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) sidetrack agreement, or (5) elevator maintenance agreement;

"mobile equipment" means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, (1) not subject to motor vehicle registration, or (2) maintained for use exclusively on premises owned by or rented to the named insured, including the ways immediately adjoining, or (3) designed for use principally off public roads, or (4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills); concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment.

"named insured" means the person or organization named in Item 1 of the declarations of this policy;

"named insured's products" means goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, including any container thereof (other than a vehicle), but "named insured's products" shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold.

"occurrence" means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

"policy territory" means:

(1) The United States of America, its territories or possessions, or Canada, or

(2) International waters or air space, provided the bodily injury or property damage does not occur in the course of travel or transportation to or from any other country, state or nation, or

(3) Anywhere in the world with respect to damages because of bodily injury or property damage arising out of a product which was sold for use or consumption within the territory described in paragraph (1) above, provided the original suit for such damages is brought within such territory.

"products hazard" includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others.

"property damage" means injury to or destruction of tangible property.

## CONDITIONS

**1. Premium.** All premiums for this policy shall be computed in accordance with the company's rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

The premium designated in this policy as "advance premium" is a deposit premium only which shall be credited to the amount of the earned premium due at the end of the policy period. At the close of each period (or part thereof terminating with the end of the policy period) designated in the declarations as the audit period the earned premium shall be computed for such period and, upon notice thereof to the named insured, shall become due and payable. If the total earned premium for the policy period is less than the premium previously paid, the company shall return to the named insured the unearned portion paid by the named insured.

**2. Inspection and Audit.** The company shall be permitted but not obligated to inspect the named insured's property and operations at any time. Neither the company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the named insured or others, that the property or operations are safe.

The company may examine and audit the named insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**3. Financial Responsibility Laws.** When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy for bodily injury liability or for property damage liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law. The insured agrees to reimburse the company for any payment

made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

**4 Insured's Duties in the Event of Occurrence, Claim or Suit**

(a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable. The named insured shall promptly take at his expense all reasonable steps to prevent other bodily injury or property damage from arising out of the same or similar conditions, but such expense shall not be recoverable under this policy.

(b) If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

(c) The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of bodily injury or property damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

**5 Action Against Company** No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the company as a party to any action against the insured to determine the insured's liability, nor shall the company be impleaded by the insured or his legal representative. Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder.

**6 Other Insurance** The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) **Contribution by Equal Shares.** If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount

of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each insurer has paid its limit in full or the full amount of the loss is paid.

(b) **Contribution by Limits.** If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

**7 Subrogation** In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.

**8 Changes** Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by the President or a Vice President, and the Secretary or an Assistant Secretary of the company and, if such signatures are facsimile signatures, countersigned by a duly authorized representative of the company.

**9 Assignment** Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; if, however, the named insured shall die, such insurance as is afforded by this policy shall apply (1) to the named insured's legal representative, as the named insured, but only while acting within the scope of his duties as such, and (2) with respect to the property of the insured, to the person having proper temporary custody thereof, as insured, but only until the appointment and qualification of the legal representative.

**10 Three Year Policy** If this policy is issued for a period of three years, the limits of the company's liability shall apply separately to each consecutive annual period thereof.

**11 Cancellation** This policy may be cancelled by the named insured by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the named insured at the address shown in this policy, written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.

If the named insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**12 Declarations** By acceptance of this policy, the named insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance.

**13 Mutual Policy Conditions** This policy is nonassessable. The policyholder is a member of the company and shall participate, to the extent and upon the conditions fixed and determined by the board of directors in accordance with the provisions of law, in the distribution of dividends so fixed and determined.

In witness whereof, the company has caused this policy to be signed by its President and Secretary at Boston, Massachusetts, and countersigned on the declarations page by a duly authorized representative of the company.

*Bruce E. Boorman*
SECRETARY

*Frank L. Farwell*
PRESIDENT

**PAGE 4**
(See Page 5)

THIS ENDORSEMENT APPLIES TO ALL LIABILITY AND MEDICAL PAYMENTS COVER-
AGES AFFORDED BY THIS POLICY, INCLUDING ANY SUCH COVERAGES ADDED BY
ENDORSEMENT EITHER AT INCEPTION OR DURING THE POLICY PERIOD, EXCEPT
UNDER COMPREHENSIVE PERSONAL AND FARMER'S COMPREHENSIVE PERSONAL
INSURANCE.

### NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
(Broad Form)

It is agreed that:

I. The policy does not apply:

A. Under any Liability Coverage, to bodily injury or property damage

(1) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

C. Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

(1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (b) has been discharged or dispersed therefrom;

(2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(3) the bodily injury or property damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

II. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

LIBERTY MUTUAL INSURANCE COMPANY

*Bruce E. Boorman*

SECRETARY

*Frank L. Farwell*

PRESIDENT

A0009
G320
10/1/66

PAGE 5

## SHORT RATE CANCELATION TABLE

| Days Policy in Force | Per Cent of One Year Premium | Days Policy in Force | Per Cent of One Year Premium |
|---|---|---|---|
| 1 | 5 | 154–156 | 53 |
| 2 | 6 | 157–160 | 54 |
| 3– 4 | 7 | 161–164 | 55 |
| 5– 6 | 8 | 165–167 | 56 |
| 7– 8 | 9 | 168–171 | 57 |
| 9– 10 | 10 | 172–175 | 58 |
| 11– 12 | 11 | 176–178 | 59 |
| 13– 14 | 12 | 179–182 (6 mos.) | 60 |
| 15– 16 | 13 | 183–187 | 61 |
| 17– 18 | 14 | 188–191 | 62 |
| 19– 20 | 15 | 192–196 | 63 |
| 21– 22 | 16 | 197–200 | 64 |
| 23– 25 | 17 | 201–205 | 65 |
| 26– 29 | 18 | 206–209 | 66 |
| 30– 32 (1 mo.) | 19 | 210–214 (7 mos.) | 67 |
| 33– 36 | 20 | 215–218 | 68 |
| 37– 40 | 21 | 219–223 | 69 |
| 41– 43 | 22 | 224–228 | 70 |
| 44– 47 | 23 | 229–232 | 71 |
| 48– 51 | 24 | 233–237 | 72 |
| 52– 54 | 25 | 238–241 | 73 |
| 55– 58 | 26 | 242–246 (8 mos.) | 74 |
| 59– 62 (2 mos.) | 27 | 247–250 | 75 |
| 63– 65 | 28 | 251–255 | 76 |
| 66– 69 | 29 | 256–260 | 77 |
| 70– 73 | 30 | 261–264 | 78 |
| 74– 76 | 31 | 265–269 | 79 |
| 77– 80 | 32 | 270–273 (9 mos.) | 80 |
| 81– 83 | 33 | 274–278 | 81 |
| 84– 87 | 34 | 279–282 | 82 |
| 88– 91 (3 mos.) | 35 | 283–287 | 83 |
| 92– 94 | 36 | 288–291 | 84 |
| 95– 98 | 37 | 292–296 | 85 |
| 99–102 | 38 | 297–301 | 86 |
| 103–105 | 39 | 302–305 (10 mos.) | 87 |
| 106–109 | 40 | 306–310 | 88 |
| 110–113 | 41 | 311–314 | 89 |
| 114–116 | 42 | 315–319 | 90 |
| 117–120 | 43 | 320–323 | 91 |
| 121–124 (4 mos.) | 44 | 324–328 | 92 |
| 125–127 | 45 | 329–332 | 93 |
| 128–131 | 46 | 333–337 (11 mos.) | 94 |
| 132–135 | 47 | 338–342 | 95 |
| 136–138 | 48 | 343–346 | 96 |
| 139–142 | 49 | 347–351 | 97 |
| 143–146 | 50 | 352–355 | 98 |
| 147–149 | 51 | 356–360 | 99 |
| 150–153 (5 mos.) | 52 | 361–365 (12 mos.) | 100 |

If the policy has been in effect for twelve months or less, the above table applies. If the policy has been in effect for more than twelve months, the earned premium shall be determined as follows: (1) Determine full annual premium as for a policy written for a term of one year. (2) Deduct such premium from the full policy premium, and on the remainder calculate the pro rata earned premium on the basis of the ratio of the length of time beyond one year the policy has been in effect to the length of time beyond one year for which the policy was originally written. (3) Add premium produced in accordance with provisions (1) and (2) to obtain earned premium during period policy has been in effect.



OFFICES

IN

PRINCIPAL CITIES

THROUGHOUT

THE

UNITED STATES

AND

CANADA

## SCHEDULE OF LOCATIONS

**Ark.**

    Jonesboro

    Monette

    Walnut Ridge

**Conn.**

    228 Trumbull St., Hartford

    973A Farmington Ave., W. Hartford

    Route 12, North Gosvenordale

    Yantic St., Norwich

**Fla.**

    950 - 41st St., Miami Beach

**Ill.**

    4635 W. Madison St., Chicago

**Ind.**

    Plymouth

**Iowa**

    501 Musser St., Muscatine

**Mass.**

    Stoughton

    Park St., Webster

**Mich.**

    *1150 E. Superior, Alma*

    537 Cypress St., Manistee

    9341 Courtland Dr., Rockford

    450 E. Division, Rockford

    181 No. Main St., Rockford

    9225 Courtland Dr., Rockford

    485 Wolverine St., Rockford

    465 Wolverine St., Rockford

Policy No.  LG1-141-050531-082

## SCHEDULE OF LOCATIONS

<u>Mich.</u> - (Continued)

509 Wolverine St., Rockford

1005 Baldwin, Big Rapids

9345 Courtland Dr., Rockford

515 No. Union, Utica, Mich.

435 No. Michigan, Big Rapids

420 No. Lafayette St., Greenville

263 No. Main, Rockford

209 E. Fifth St., Reed City

235 No. Main, Rockford

123 No. Main, Rockford

700 Wealthy, Grand Rapids
*16v Bagley aw., Detroit*
*16v So. Woodward ave., Birmingham*
**N.H.**   *a branch dipl. at wagner Company, ann arbor*

110 Congress St., Portsmouth

429 Central Ave., Dover

North Main St., Rochester

**N.Y.**

40 Duane St., Malone

W/S Rear 99-113 Catherine St., Malone

121-123 Catherine St., Malone

109 Catherine St., Malone

E/S Constable St., Malone

52-60 Front St., Malone

N/S Marion St., Malone

Corner of Elm & Raymond St., Malone

Empire State Bldg., 350 Fifth Ave. at 34th St., N.Y.

*Bombay*

LG1-141-050531-082

*Declarations — Schedule —*
*Liability Hazards*

| CLASSIFICATION AND LOCATIONS | PREMIUM BASE (a)Remuneration Per 1000 Sales (b) Sales | RATES | | ADVANCE PREMIUMS | |
|---|---|---|---|---|---|
| | | BODILY INJURY LIABILITY | PROPERTY DAMAGE LIABILITY | BODILY INJURY LIABILITY Code 318 | PROPERTY DAMAGE LIABILITY Code 338 |
| 'LVERINE WORLD WIDE INC; WOLVERINE 'ATHER DIVISION HUSH PUPPIES :ODUCTS DIVISION; WOLVERINE BRAND ·VISION; SPORTING GOODS DIVISION, ID HP DIVISION | | | | | |
| 1 operations of the Named Insured Code 9380 | (b) 75,000,000 | .128 | .028 | 9,600 | 2,100 |

Minimum Premium

LG1-141-050531-082

Page No. 2

*Declarations — Schedule —*
*Liability Hazards*

| Classification and Locations | Premium Base (a)Remuneration Per 1000 of Sales (b) Sales | Rates | | Advance Premiums | |
|---|---|---|---|---|---|
| | | Bodily Injury Liability | Property Damage Liability | Bodily Injury Liability 318 | Property Damage Liability 338 |
| 3 SHOE COMPANY, A DIVISION OF ERINE WORLD WIDE, INC.  operations of the Named Insured Code 9380 | (b) 10,000,000 | .128 | .028 | 1,280. | 280. |

Minimum Premium

. *Declarations — Schedule —*
*l Liability Hazards*

| CLASSIFICATION AND LOCATIONS | PREMIUM BASE (a)Remuneration (b) Sales | RATES Per 1000 of Sales | | ADVANCE PREMIUMS | |
|---|---|---|---|---|---|
| | | BODILY INJURY LIABILITY | PROPERTY DAMAGE LIABILITY | BODILY INJURY LIABILITY | PROPERTY DAMAGE LIABILITY |
| | | | | 318 | 338 |
| AY SLIPPER, A DIVISION OF WOLVERINE D WIDE & TRU-STITCH FOOTWEAR, A SION OF WOLVERINE WORLD WIDE, INC. Operations of the Named Insured Code 9380 | (b) 10,000,000 | .128 | .028 | 1,280. | 280. |

Minimum Premium

LG1-141-050531-082

*O 2758   Printed in U.S.A.

Page No. 4

*Declarations — Schedule —*
*Liability Hazards*

| CLASSIFICATION AND LOCATIONS | PREMIUM BASE (a)Remuneration (b) Sales | RATES Per 1000 of Sales | | ADVANCE PREMIUMS | |
|---|---|---|---|---|---|
| | | BODILY INJURY LIABILITY | PROPERTY DAMAGE LIABILITY | BODILY INJURY LIABILITY 318 | PROPERTY DAMAGE LIABILITY 338 |
| IC FOOTWEAR, INC. operations of the Named Insured Code 9380 | (b) 15,000,000 | .128 | .028 | 1,920. | 420. |

Minimum Premium

*Declarations — Schedule —*
*Liability Hazards*

| CLASSIFICATION AND LOCATIONS | PREMIUM BASE (a) Remuneration (b) Sales | RATES Per 1000 of Sales | | ADVANCE PREMIUMS | |
|---|---|---|---|---|---|
| | | BODILY INJURY LIABILITY | PROPERTY DAMAGE LIABILITY | BODILY INJURY LIABILITY 318 | PROPERTY DAMAGE LIABILITY 338 |
| SHOE COMPANY, A DIVISION OF RINE WORLD WIDE, INC. | | | | | |
| operations of the Named Insured Code 9380 | (b) 1,000,000 | .128 | .028 | 128 | 28 |

Minimum Premium

O 2758    Printed in U.S.A.

*Declarations — Schedule —*
*Liability Hazards*

| CLASSIFICATION AND LOCATIONS | PREMIUM BASE (a)Remuneration (b) Sales | RATES Per 1000 of Sales | | ADVANCE PREMIUMS | |
|---|---|---|---|---|---|
| | | BODILY INJURY LIABILITY | PROPERTY DAMAGE LIABILITY | BODILY INJURY LIABILITY 318 | PROPERTY DAMAGE LIABILITY 338 |
| W. RETAIL, INC. | | | | | |
| operations of the Named Insured Code 9330 | (t) 1,000,000 | .128 | .028 | 128. | 28. |

Minimum Premium

# AMENDATORY ENDORSEMENT

It is agreed that the Policy is amended as indicated by typed entries hereunder:

☐  Policy Number to read:

☐  Name:

☐  Address:

☐  Legal Status:  ☐ Individual  ☐ Partnership  ☐ Corporation  ☐ _____
                                                                  (Other)

☒  Policy Period: From     1-1-72          to     2-28-73          12:01 A.M. Standard Time.

☐  Occupation or Business of Insured:

☐  Loss Payee: The interest of the following Loss Payee has ceased:

☐  Locations:

This endorsement is executed by the company below designated by an entry in the box opposite its name.

☒ LIBERTY MUTUAL INSURANCE COMPANY        ☐ LIBERTY MUTUAL FIRE INSURANCE COMPANY

*Bruce E. Boorman — Frank L. Farwell*        *Bruce E. Boorman — Frank L. Farwell*
        SECRETARY          PRESIDENT                  SECRETARY         PRESIDENT

Effective Date    1-1-72
Expiration Date  2-28-73 (Formerly 1-1-73)
Audit Basis  1
For attachment
to Policy No.  LG1-141-050531-082

Issued to  Wolverine World Wide, Inc., Etal

Countersigned by _____
                                       AUTHORIZED REPRESENTATIVE

**1227** ED. 4    Issued  dbm 6-4-73    Sales Office and No.  Gr.Rapids 474  End. Serial No.   24
Printed In U.S.A.

## Name of Insured Endorsement

Wolverine World Wide, Inc.;

Hush Puppies Products Division; Wolverine Brand Division, Sporting Goods Division and H.P. Division

*Wolverine Western Hemisphere Corp.;

Wolverine Leather Division

*Clarino Sales Corporation of America, a Division of Wolverine World Wide, Inc.;

Bates Shoe Company, a Division of Wolverine World Wide, Inc.;

Bombay Slipper, a Division of Wolverine World Wide, Inc. and Tru-Stitch Footwear, a Division of Wolverine World Wide, Inc.;

Frolic Footwear, a Division of Wolverine World Wide, Inc.;
*Hush Puppies A.G. (Chur, Switzerland)

Verde Shoe Company, a Division of Wolverine World Wide, Inc.;

*Clarino Sales Corporation of Canada;

W.W.W. Retail, Inc.;

United Parts Distributors of Michigan, Inc.;

Bates - Trendsetter

Voids and Supersedes End. #1

This endorsement is executed by the company below designated by an entry in the box opposite its name.

☒ LIBERTY MUTUAL INSURANCE COMPANY     ☐ LIBERTY MUTUAL FIRE INSURANCE COMPANY

*Bruce E. Doorman   Frank L. Farwell*          *Bruce E. Doorman   Frank L. Farwell*
        SECRETARY        PRESIDENT                        SECRETARY        PRESIDENT

Countersigned by_____          Countersigned by_____
              AUTHORIZED REPRESENTATIVE                             AUTHORIZED REPRESENTATIVE

Effective Date   1-1-72              Expiration Date   1-1-73
Audit Basis   1
Premium $   xxx
For attachment to Policy or Bond No.  LG1-141-050531-082
Issued to    Wolverine World Wide, Inc., etal

Endorsement Serial No. 23

Work Units 1=        Issued   6-1-73        Sales Office & No.  Gr  Rapids 171

## EMPLOYEE BENEFITS LIABILITY INSURANCE
### ENDORSEMENT

The company, in consideration of the payment of the premium, and subject to all of the provisions of the policy not expressly modified herein, agrees with the **named insured** as follows:

### I. COVERAGE W — EMPLOYEE BENEFITS LIABILITY

The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as **damages** because of injury to the rights or interests of employees or their beneficiaries in **employee benefits programs** caused by any improper advice, error or omission in the **administration** of such programs by persons authorized by the **insured**, and the company shall have the right and duty to defend any suit against the **insured** seeking **damages** on account of such injury, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**Exclusions:** This coverage does not apply to:

(a) any claim based upon an allegedly unfairly discriminatory, dishonest, fraudulent or malicious act;

(b) any claim with respect to which insurance is afforded in whole or in part under any other coverage afforded by the policy or any endorsement thereto;

(c) any claim based upon the failure of the **named insured** or any insurer to pay or provide the benefits allegedly due under any contract relating to **employee benefits programs**, whether such failure is due to oversight or miscalculation or to a difference of opinion as to what benefits are in fact due under the contract;

(d) any claim based upon the failure of stock or any compensation, investment or savings program to produce the financial gain represented.

### II. COVERAGE W — LIMITS OF LIABILITY

The limit of liability stated in the schedule as applicable to "each claim" is the limit of the company's liability for all **damages** arising out of any one claim; but subject to the above provision respecting "each claim", the total liability for all **damages** arising out of all claims made during the endorsement period shall not exceed the limit of liability stated in the schedule as "aggregate."

If a deductible amount is stated in the schedule, the company's liability under this endorsement shall not attach to that portion of any claim which is within the deductible amount, provided, however, that irrespective of the amount of any claim, notice of the claim shall be given by or on behalf of the **insured** to the company as soon as practicable and the company may, at its option, investigate and settle the claim, in which event the **named insured** agrees to reimburse the company for all amounts paid by the company within the deductible amount.

### III. COVERAGE W — ENDORSEMENT PERIOD

This endorsement applies only to claims first made against the **insured** after the effective date hereof and during the policy period.

If during the endorsement period the **insured** shall become aware of any incident which may subsequently give rise to a claim covered by this insurance, the **insured** shall give notice thereof in writing to the company as soon as practicable and any claim which may subsequently arise out of such incident shall be deemed to have been first made during the effective period of the endorsement in which such notice is given.

### IV. COVERAGE W — DEFINITIONS     When used in reference to this insurance

**"administration"** means, with respect to **employee benefits programs**, the determination of the eligibility of employees to participate in such programs, the enrollment of employees therein, the handling and keeping of records pertaining thereto, the interpreting of the provisions thereof and the giving of advice or counsel to employees or their beneficiaries with respect to their rights or interests therein.

**"damages"** means those damages which are payable because of injury to the rights or interests of employees or their beneficiaries in **employee benefits programs.**

**"employee benefits programs"** means those group life insurance, group accident or health insurance, pension, employee stock subscription, workmen's compensation, unemployment insurance, social security, disability benefits or similar plans described in the attached schedule of **employee benefits programs.** Should the **insured**, during the endorsement period, institute additional similar programs, such programs are included within the meaning of the term **"employee benefits programs"** provided the company is notified of such additional program or programs within a period of thirty days after the effective date thereof.

**"insured"** also includes any employee of the **named insured** who is authorized to act in the **administration** of the **named insured's employee benefits programs.**

### V. PREMIUM

The earned premium shall be determined on the basis of the average number of employees actually employed during the endorsement period. The **named insured** shall furnish the number of his employees to the company at the close of each annual period of the policy to which this endorsement is attached.

L-G2005 (10/1/66)
LC LG LM LO
Page 1 of 2

SCHEDULE

(a) List of employee benefits programs "Any Employee Benefits Program as described under Paragraph IV Definitions."

(b) Limits of Liability:   $100,000      each claim

                           $100,000      aggregate

(c) Deductible per claim:  $  1,000

(d) Number of Employees    5,300

(e) Rate Per Employee      Included in Composite Code No. 1111
                           Line Code 322
                           Advance Premium      $ Included in Composite

Premium $ Included in Composite

Effective Date 1-1-72
Expiration Date 1-1-73
Audit Basis 1
For attachment
to Policy No. LG1-141-050531-082
Issued to Wolverine World Wide, Inc., etal

LIBERTY MUTUAL INSURANCE COMPANY

*Bura E. Doorman*   *Frank L. Farwell*
            Secretary                     President

Work Units
1 —

Countersigned by ...........................................................................
                                          Authorized Representative

L-G2005  (10/1/66)          11-27-72 mn          Sales Office and No. Gr. Rapids      End. Serial No. 22
LC  LG  LM  LO                                              474
Page 2 of 2
Printed
in
U.S.A.

AMENDATORY ENDORSEMENT


It is agreed that the Name of Insured Endorsement Serial No. 1
is amended as indicated hereunder:

    Add:

        Phillip Layne Shoes Division of W. W. W. Retail, Inc.


This endorsement is executed by the company below designated by an entry in the box opposite its name.

☒ LIBERTY MUTUAL INSURANCE COMPANY    ☐ LIBERTY MUTUAL FIRE INSURANCE COMPANY

*Bruce E. Boorman*  *Frank L. Farwell*    *Bruce E. Boorman*  *Frank L. Farwell*
SECRETARY    PRESIDENT        SECRETARY    PRESIDENT

Countersigned by_____    Countersigned by_____
      AUTHORIZED REPRESENTATIVE           AUTHORIZED REPRESENTATIVE

Effective Date 1-1-72        Expiration Date 1-1-73
Audit Basis 1
Premium $X X X
For attachment to Policy or Bond No. LG1-141-050531-082
Issued to Wolverine World Wide, Inc., Etal

                        Endorsement Serial No. 21

Work Units 1—      Issued 11-27-72 mn  Sales Office & No. Gr. Rapids 474

## MISCELLANEOUS CHANGE ENDORSEMENT
### (General Liability)

The policy declarations are amended by the changes entered below:

Change A — Policy Period:  From                          To

Change B — Mail Address

Location: (Enter same if same Location as above address)

Change C — Hazard(s)                                    Coverage Code: B. I. 318   P. D. 338

| | Terr. | Premium Bases | Annual Rates | | Advance Premiums | | | |
|---|---|---|---|---|---|---|---|---|
| | Code No. | Sales | Coverage A | Coverage B | Coverage A | Coverage B | Coverage A | Coverage B |
| AY SLIPPER, INC. operations of Named Insured | 9880 | 3,000,000 | 138 | 031 | To be | | | |
| LIP LAYNE SHOES SION OF W. W. W. JL, INC. operations of Named Insured | 9880 | if any | 138 | 031 | Adjusted on Audit | | | |
| — Minimum Premium | | | | | | | | |

If Policy Period more than one year, premium is payable:
On effective date of policy $            1st Anniversary $            2nd Anniversary $

justment of premium shall be made at Expiration ☐, Annual ☐, Semi-Annual ☐, Quarterly ☐, Monthly ☐, Flat Charge ☐

Periodic Payment $

Premium $ To be Adjusted on Audit
Effective Date 1-1-72        Expiration Date 1-1-73
For attachment to Policy or Bond No. LG1-141-050531-082
Audit Basis 1
Issued to Wolverine World Wide, Inc. , Etal

LIBERTY MUTUAL INSURANCE COMPANY

*Bruce E. Boorman*   *Frank L. Farwell*

Work Units 1 —

Countersigned by ........................................................
                                    Authorized Representative

L-G 6006   Issued 11-27-72  mn Sales Office and No. Gr. Rapid Ind. Serial No. 20
(2/69)     Printed in U.S.A.                          474

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**COVERAGE A — BODILY INJURY LIABILITY**

**COVERAGE B — PROPERTY DAMAGE LIABILITY**

### ADDITIONAL INSURED
#### (Premises Leased to the Named Insured)

It is agreed that the "Persons Insured" provision is amended to include as an insured the person or organization designated below, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises designated below leased to the named insured, and subject to the following additional exclusions:

The insurance does not apply:

1. to any occurrence which takes place after the named insured ceases to be a tenant in said premises;

2. to structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated below.

### SCHEDULE

| Loca-tion No. | Designation of Premises (Part Leased to Named Insured) | Name of Person or Organization (Additional Insured) | Premiums | |
|---|---|---|---|---|
| | | | Coverage A Bodily Injury Liability | Coverage B Property Damage Liability |
| | 1250 E. Superior, Alma, MI | N. Victor Fetzner and Naomi Fetzner 805 Wright Ave., Alma, MI | | |

LIBERTY MUTUAL INSURANCE COMPANY

Premium $ Included in Composite

Effective Date 1-1-72

Expiration Date 1-1-73

Audit Basis 1

For attachment to Policy No. LG1-141-050531-082

Issued to Wolverine World Wide, Inc., Etal

*Frank L. Farwell*
PRESIDENT

*Bruce E. Doorman*
SECRETARY

Countersigned by ..................................................
Authorized Representative

G109 (10/1/66)
LC LG EL ALO

Issued 11-27-72 mn S.O. & No.
Gr. Rapids
474

Endorsement No. 19

Amendatory Endorsement

It is agreed that Such Insurance as is afforded by the policy for the Retail Stores operated by W.W.W. Retail, Inc. at the locations listed below, does not apply for the period from January 1, 1972 to Sept. 5, 1972.

Locations:
NH
110 Congress St., Portsmouth
429 Central Ave., Dover
35 N. Main St., Rochester

This endorsement is executed by the company below designated by an entry in the box opposite its name.

☒ LIBERTY MUTUAL INSURANCE COMPANY          ☐ LIBERTY MUTUAL FIRE INSURANCE COMPANY

*Bura E. Doorman*   SECRETARY      *Frank L. Farwell*   PRESIDENT          *Bura E. Doorman*   SECRETARY      *Frank L. Farwell*   PRESIDENT

Countersigned by_____                    Countersigned by_____
                    AUTHORIZED REPRESENTATIVE                                          AUTHORIZED REPRESENTATIVE

Effective Date  1-1-72                    Expiration Date  1-1-73
Audit Basis  1
Premium $  xxxx
For attachment to Policy or Bond No.  LG1-141-050531-082
Issued to  Wolverine World Wide, Inc., etal

                                                            Endorsement Serial No.   18

Work Units 1 —         Issued jd 10-25-72  Sales Office & No.  Gr. Rapids 474

# AMENDATORY ENDORSEMENT

It is agreed that the Policy is amended as indicated by typed entries hereunder:

☐ Policy Number to read:

☐ Name:

☐ Address:

☐ Legal Status: ☐ Individual   ☐ Partnership   ☐ Corporation   ☐ _____
(Other)

☐ Policy Period: From _____ to _____ 12:01 A.M. Standard Time.

☐ Occupation or Business of Insured:

☐ Loss Payee: The interest of the following Loss Payee has ceased:

☒ Locations: Add:   1250 E. Superior, Alma, MI

This endorsement is executed by the company below designated by an entry in the box opposite its name.

☒ LIBERTY MUTUAL INSURANCE COMPANY        ☐ LIBERTY MUTUAL FIRE INSURANCE COMPANY

*Bruce E. Boorman*   *Frank L. Farwell*        *Bruce E. Boorman*   *Frank L. Farwell*
SECRETARY       PRESIDENT            SECRETARY       PRESIDENT

Effective Date 1-1-72
Expiration Date 1-1-73
Audit Basis 1
For attachment
to Policy No. LG1-141-050531-082

Issued to   Wolverine World Wide, Inc., Etal

Countersigned by _____
AUTHORIZED REPRESENTATIVE

**1227** ED. 4     Issued 11-27-72 mn     Sales Office and No. Gr. Rapids.     End. Serial No. 18A
Printed in U.S.A.                                              474          (Company records only)

## MISCELLANEOUS CHANGE ENDORSEMENT
### (General Liability)

The policy declarations are amended by the changes entered below:

Change A — Policy Period: From                          To

Change B — Mail Address

Location: (Enter same if same Location as above address)

Change C — Hazard(s)                                      Coverage Code: B. I.

| | Terr. | Premium Bases | Annual Rates | | Advance Premiums | | | |
|---|---|---|---|---|---|---|---|---|
| | Code No. | Sales | Per $1000 of Sales | | | | | |
| | | | Coverage A | Coverage B | Coverage A | Coverage B | Coverage A | Coverage B |
| | 9380 | | Revised .138 | | | | | |
| ld: meron Athletic rporation | | | | | | | | |
| ll operations of he Named Insured | 9380 | 300,000 | .138 | .031 | To be adjusted at audit | | | |
| — Deposit | | | | | | | | |
| — Minimum Premium | | | | | | | | |

If Policy Period more than one year, premium is payable:
On effective date of policy $        1st Anniversary $        2nd Anniversary $

djustment of premium shall be made at Expiration ☐, Annual ☐, Semi-Annual ☐, Quarterly ☐, Monthly ☐, Flat Charge ☐

Periodic Payment $

Premium $  To be adjusted at audit
Effective Date     6-23-72       Expiration Date 1-1-73
For attachment to Policy or Bond No.  LG1-141-050531-082
Audit Basis   1
Issued to  Wolverine World Wide, Inc., etal

LIBERTY MUTUAL INSURANCE COMPANY

*Bruce E. Boorman*    *Frank L. Farwell*

Work Units 1 —

Countersigned by .............................................................
                                        Authorized Representative

**L-G 6006**    Issued jd 10-12-72 Sales Office and No. Gr. RapidsEnd. Serial No.   17
(2/69)    Printed in U.S.A.                              474

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COVERAGE A — BODILY INJURY LIABILITY

COVERAGE B — PROPERTY DAMAGE LIABILITY

COVERAGE P — PERSONAL INJURY LIABILITY

ADDITIONAL INSURED — PRODUCTS LIABILITY

It is agreed that the "Persons Insured" provision is amended to include as an insured the organization named below, but only with respect to the product designated below.

Name of Organization                    Applicable Product

Cameron Athletic Corporation            "SWIVLER TM
2719 Hillcraft, Houston, Texas           ATHLETIC SHOE."

Code 9380 — 300,000 sales — Premium Included in Composite note.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

☒ LIBERTY MUTUAL INSURANCE COMPANY        ☐ LIBERTY MUTUAL FIRE INSURANCE COMPANY

*Bruce E. Boorman* SECRETARY  *Frank L. Farwell* PRESIDENT        *Bruce E. Boorman* SECRETARY  *Frank L. Farwell* PRESIDENT

Countersigned by_____        Countersigned by_____
                AUTHORIZED REPRESENTATIVE                                 AUTHORIZED REPRESENTATIVE

Effective Date    6-23-72            Expiration Date    1-1-73
Audit Basis    1
Premium $  Included in Composite
For attachment to Policy or Bond No.    LG1-141-050531-082
Issued to  Wolverine World Wide, Inc., etal

Endorsement Serial No.    16

Work Units I —            Issued jd 10-12-72  Sales Office & No.  Gr. Rapids 474

## CHANGE OF LIMITS OF LIABILITY ENDORSEMENT

It is agreed that the limit of the company's liability against any coverage below with respect to which a typewritten entry appears shall be as stated by such typewritten entry, subject to all of the terms of the policy having reference thereto and to any special provisions stated herein.   The rates and advance premiums for the coverages to which this endorsement applies are stated in the schedule attached.

| COVERAGES* | LIMITS OF LIABILITY | |
|---|---|---|
| COVERAGE A — Bodily Injury Liability | $   250,000 | each person |
| | $   500,000 | each occurrence |
| | $   500,000 | aggregate |
| COVERAGE B — Property Damage Liability | $   100,000 | each occurrence |
| | $   100,000 | aggregate |
| COVERAGE E — Premises Medical Payments | $ | each person |
| | $ | each accident |
| COVERAGE P — Personal Injury | $ | each person aggregate |
| | $ | general aggregate |

*NOTE:   The particular policy to which this endorsement applies may not include all coverages listed.

### SPECIAL PROVISIONS

1.   **PROJECT OR PREMISES:**   If a project or premises are designated herein, the above limits of liability apply only to loss arising out of such project or premises.

2.   **OTHER** (Specify):

Premium $   To be adjusted by audit

Effective Date   4-6-72
Expiration Date   1-1-73
Audit Basis   1
For attachment
to Policy No.   LG1-141-050531-082

Issued to   Wolverine World Wide Ind., etal

LIBERTY MUTUAL INSURANCE COMPANY

*Frank L. Farwell*
PRESIDENT

*Brua E. Boorman*
SECRETARY

Work Units

1-

L-G 6002 (10/1/66)
LC   LG   LM   LO
Page 1
Printed
in
U.S.A.

Issued   Gr. Rapids 474
5-16-72 cls

Countersigned by .......................................................................
Authorized Representative

Endorsement Serial No. 15

*4. Declarations — Schedule —*
*ral Liability Hazards*

| CLASSIFICATION AND LOCATIONS | PREMIUM BASE (a) Remuneration (b) Sales | RATES Per 1000 Sales | | ADVANCE PREMIUMS | |
|---|---|---|---|---|---|
| | | BODILY INJURY LIABILITY | PROPERTY DAMAGE LIABILITY | BODILY INJURY LIABILITY Code 318 | PROPERTY DAMAGE LIABILITY Code 338 |
| )LVERINE WORLD WIDE INC; WOLVERINE ZATHER DIVISION HUSH PUPPIES RODUCTS DIVISION; WOLVERINE BRAND :VISION; SPORTING GOODS DIVISION, ID HP DIVISION | | REVISED | | | |
| ll operations of the Named Insured                    Code 9380 | (b) 75,000,000 | .137 | .031 | to be adjusted at audit | to be adj at audi |

= Minimum Premium

*4. Declarations — Schedule —*
*ral Liability Hazards*

| CLASSIFICATION AND LOCATIONS | PREMIUM BASE (a) Remuneration (b) Sales | RATES Per 1000 Sales | | ADVANCE PREMIUMS | |
|---|---|---|---|---|---|
| | | BODILY INJURY LIABILITY | PROPERTY DAMAGE LIABILITY | BODILY INJURY LIABILITY 318 | PROPERTY DAMAGE LIABILITY 338 |
| ATES SHOE COMPANY, A DIVISION OF OLVERINE WORLD WIDE, INC. | | REVISED | | To be adjusted at audit | |
| ll operations of the Named Insured Code 9380 | (b) 10,000,000 | .137 | .031 | | |

= Minimum Premium

*4. Declarations — Schedule —*
*ral Liability Hazards*

| CLASSIFICATION AND LOCATIONS | PREMIUM BASE (a) Remuneration (b) Sales | RATES Per 1000 of Sales | | ADVANCE PREMIUMS | |
|---|---|---|---|---|---|
| | | BODILY INJURY LIABILITY | PROPERTY DAMAGE LIABILITY | BODILY INJURY LIABILITY 318 | PROPERTY DAMAGE LIABILITY 338 |
| )MBAY SLIPPER, A DIVISION OF WOLVERINE )RLD WIDE & TRU-STITCH FOOTWEAR, A :VISION OF WOLVERINE WORLD WIDE, INC. | | REVISED | | TO BE ADJUSTED AT AUDIT | |
| ll operations of the Named Insured Code 9380 | (b) 10,000,000 | .137 | .031 | | |

Minimum Premium

*4. Declarations — Schedule —*
*al Liability Hazards*

| CLASSIFICATION AND LOCATIONS | PREMIUM BASE (a) Remuneration (b) Sales | RATES Per 1000 of Sales | | ADVANCE PREMIUMS | |
|---|---|---|---|---|---|
| | | BODILY INJURY LIABILITY | PROPERTY DAMAGE LIABILITY | BODILY INJURY LIABILITY 318 | PROPERTY DAMAGE LIABILITY 338 |
| ROLIC FOOTWEAR, INC. | | REVISED | | TO BE ADJUSTED AT AUDIT | |
| l operations of the Named Insured Code 9380 | (a) 15,000,000 | .137 | .031 | | |

: Minimum Premium

4. *Declarations — Schedule —*
*-al Liability Hazards*

| CLASSIFICATION AND LOCATIONS | PREMIUM BASE (a) Remuneration (b) Sales | RATES Per 1000 of Sales | | ADVANCE PREMIUMS | |
|---|---|---|---|---|---|
| | | BODILY INJURY LIABILITY | PROPERTY DAMAGE LIABILITY | BODILY INJURY LIABILITY 318 | PROPERTY DAMAGE LIABILITY 338 |
| RDE SHOE COMPANY, A DIVISION OF <u>LVERINE WORLD WIDE, INC.</u> | | <u>REVISED</u> | | TO BE ADJUSTED AT AUDIT | |
| l operations of the Named Insured Code 9380 | (b) 1,000,000 | .137 | .031 | | |

= Minimum Premium

Page No. 6 of End.  Serial #15

4. *Declarations — Schedule —*
*-al Liability Hazards*

| CLASSIFICATION AND LOCATIONS | PREMIUM BASE (a) Remuneration (b) Sales | RATES Per 1000 of Sales | | ADVANCE PREMIUMS | |
|---|---|---|---|---|---|
| | | BODILY INJURY LIABILITY | PROPERTY DAMAGE LIABILITY | BODILY INJURY LIABILITY 318 | PROPERTY DAMAGE LIABILITY 338 |
| W.W. RETAIL, INC. | | REVISED | | TO BE ADJUSTED AT AUDIT | |
| l operations of the Named Insured Code 9380 | (b) 1,000,000 | .137 | .031 | | |

= Minimum Premium

## AMENDMENT OF CANCELLATION CONDITION
### (Michigan)

It is agreed that the first paragraph of the Cancellation Condition is amended to read as follows:

This policy may be cancelled by the **named insured** by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the **named insured** at his address last known to the company or its authorized agent written notice stating when not less than ten days thereafter such cancellation shall be effective. The effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the **named insured** or by the company shall be equivalent to mailing.

LIBERTY MUTUAL INSURANCE COMPANY

*Frank L. Farwell*

PRESIDENT

*Bruce E. Boorman*

SECRETARY

Effective Date

Expiration Date

For attachment
to Policy No. LG1-141-050531-082
Issued to

A0002, G503 (10/1/66)

Printed
in
U.S.A.

Countersigned by _____

Authorized Representative

Endorsement No. 14

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**COMPREHENSIVE GENERAL LIABILITY INSURANCE**
**COMPLETED OPERATIONS AND PRODUCTS LIABILITY INSURANCE**
**CONTRACTUAL LIABILITY INSURANCE**
**MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE**
**OWNERS' AND CONTRACTORS' PROTECTIVE LIABILITY INSURANCE**
**OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE**
**SPECIAL PROTECTIVE AND HIGHWAY LIABILITY INSURANCE—**
**NEW YORK DEPARTMENT OF PUBLIC WORKS**
**STOREKEEPER'S INSURANCE**

## EXCLUSION

### (Contamination or Pollution)

It is agreed that the insurance does not apply to **bodily injury** or **property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

This endorsement does not apply to operations or occurrences in the following states:

Maryland
New Hampshire
North Carolina
Vermont

Premium $
Effective Date
For attachment to Policy or Bond No.  LG1-141-050531-082
Audit Basis
Issued to

Expiration Date

LIBERTY MUTUAL INSURANCE COMPANY

*Bruce E. Boorman* — *Frank L. Farwell*
SECRETARY                    PRESIDENT

Work Units 1 —

Countersigned by .................................................................
Authorized Representative

**G335 Ed 2**  Printed in U.S.A.  Issued        Sales Office and No.        End. Serial No.  13

NOTICE OF CANCELLATION

This insurance will not be cancelled by this insurance company nor any changes made in the policy which change, restrict, or reduce the insurance provided or change the name of the insured, without first giving ten days notice in writing to the Consumers Power Company, Jackson, Michigan, as evidenced by receipt of registered letter.

It is agreed that the above Notice of Cancelation applies in respect to the following designated premises:

Designation of Premises for Consumers Power Company
(Part Leased to Named Insured)

A parcel of land in the $N\frac{1}{2}$ of the $NE\frac{1}{4}$ of Sec. 22, T13N, R11W, Described as beginning at a point on the center line of the former Whitney Bridge Road 100' Southeasterly of the water's edge of the Muskegon River (Hardy Pond), measured along the center line of said former Whitney Bridge Road; thence Southeasterly along the center line of said road 240'; thence N 56 degrees 00'00'' E., 480'; thence N 20 degrees 00'00'' W, 270' to the water's edge of said Muskegon River (Hardy Pond); thence Southwesterly along the water's edge of said Muskegon River (Hardy Pond) 400', more or less, to a point 300' Northeasterly of the center line of said former Whitney Bridge Road, measured along the water's edge of said Muskegon River (Hardy Pond); thence Southeasterly parallel with the center line of said former Whitney Bridge Road 100'; thence Southwesterly parallel with and 100' distant from the water's edge of said Muskegon River (Hardy Pond) to the place of beginning.

It is agreed that:

The designation of premises as shown above is amended to include the following:

The entire grounds, buildings and all equipment used thereon, including but not specifically limited to saddle horses, sailboats, canoes, rowboats and motor-boats, if any, used on or off said premises.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

☒ LIBERTY MUTUAL INSURANCE COMPANY       ☐ LIBERTY MUTUAL FIRE INSURANCE COMPANY

*Bruce E. Boorman*  *Frank L. Farwell*            *Bruce E. Boorman*  *Frank L. Farwell*
SECRETARY         PRESIDENT                   SECRETARY         PRESIDENT

Countersigned by_____      Countersigned by_____
AUTHORIZED REPRESENTATIVE                          AUTHORIZED REPRESENTATIVE
Effective Date                Expiration Date
Audit Basis
Premium $
For attachment to Policy or Bond No. LG1-141-050531-082
Issued to

Endorsement Serial No. 12

Work Units 1 —        Issued        Sales Office & No.

## PREMIUM DISCOUNT ENDORSEMENT
### (Automobile and General Liability Insurance)

It is agreed that the Total Standard Premium for this policy is subject to discount in accordance with the company's manuals, subject to the following:

1.   The Total Standard Premium for this policy shall be the premium (average annual premium for policy terms of more than one year) for Liability, Elevator Collision and Medical Payments insurance computed in accordance with the provisions of the policy other than this or any other premium discount endorsement and exclusive of the adjustments resulting from the application of any retrospective rating plan.

2.   The following elements of the Total Standard Premium are not subject to discount:
    (a)   Any premium for insurance in the state of Louisiana;
    (b)   Any premium for Automobile Liability insurance in the Commonwealth of Massachusetts;
    (c)   Any premium subject to retrospective rating.

3.   With respect to the application of the premium discount percentage to Virginia insurance premium, the applicable discount percentage for General Liability premium is based on the total standard premium for General Liability insurance and the applicable discount percentage for Automobile Liability is based on the total standard premium for Automobile Liability, including Garage Liability.

4.   The premium discount percentages for Texas insurance premium are to be computed in accordance with the provisions of the Texas Premium Discount Plan.

5.   The provisions of this endorsement also apply with respect to the policies designated below:

| POLICY NUMBERS | ESTIMATED STANDARD PREMIUM |
|---|---|
| LG1-141-050531-082 | 17,442. |
| AE1-141-050531-092 | To be determined |

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date            Expiration Date

For attachment to Policy or Bond No.   LG1-141-050531-082

Audit Basis

Issued to

☒ LIBERTY MUTUAL INSURANCE COMPANY
☐ LIBERTY MUTUAL FIRE INSURANCE COMPANY

_Secretary_       _President_

Work Units I —

Countersigned by..................................................................
                     Authorized Representative

2271    printed in U.S.A.    Issued      Sales Office and No.      End. Serial No. 11

## MALPRACTICE ENDORSEMENT

It is agreed that malpractice, error or mistake in rendering or failing to render medical, surgical, dental, x-ray, cosmetic, tonsorial or other professional or sanatory service or treatment shall be deemed an occurrence, and that all malpractice, error or mistake in the rendering or omission of such services or treatment to any one person shall be deemed one occurrence.

It is further agreed that the provisions of this endorsement also apply to physicians and registered nurses, as insureds, only provided such physicians or registered nurses are employed by the named insured and are acting within their capacity as such in behalf of the named insured.

The inclusion of such insureds shall not operate to increase the limits of the Company's liability.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

☒ LIBERTY MUTUAL INSURANCE COMPANY          ☐ LIBERTY MUTUAL FIRE INSURANCE COMPANY

*Bruce E. Boorman*   *Frank L. Farwell*          *Bruce E. Boorman*   *Frank L. Farwell*
SECRETARY            PRESIDENT                   SECRETARY            PRESIDENT

Countersigned by_____          Countersigned by_____
               AUTHORIZED REPRESENTATIVE                          AUTHORIZED REPRESENTATIVE
Effective Date                Expiration Date
Audit Basis
Premium $ Included in Composite
For attachment to Policy or Bond No.  LG1-141-050531-082
Issued to

                                        Endorsement Serial No.   10

Work Units 1 —            Issued            Sales Office & No.

## PERSONAL INJURY LIABILITY INSURANCE
### ENDORSEMENT

The company, in consideration of the payment of the premium, and subject to all of the provisions of the policy not expressly modified herein, agrees with the named insured as follows:

### I.  COVERAGE P — PERSONAL INJURY LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**Exclusions:**  This coverage does not apply to personal injury arising out of:

(a) acts committed by or at the direction of the insured for the purpose of causing injury;

(b) breach of contract or agreement;

(c) advertising, broadcasting or telecasting activities conducted by or on behalf of the named insured;

(d) discrimination by reason of race, color or creed which is unlawful under State or Federal law.

### II.  COVERAGE P — LIMITS OF LIABILITY; INSURED'S PARTICIPATION

The total liability of the company for all damages because of all personal injury to which this coverage applies, sustained by any one person or organization, shall not exceed the limit of personal injury liability stated in the schedule as "each person aggregate." Subject to the above provision respecting "each person aggregate," the total limit of the company's liability under this coverage for all damages shall not exceed the limit of personal injury liability stated in the schedule as "general aggregate."

If a participation percentage is stated in the schedule for the insured, such percentage of the loss shall be borne by the insured; provided the company may pay the insured's portion of a loss to effect settlement of the loss, and, upon notification of the action taken, the named insured shall promptly reimburse the company therefor.

### III.  COVERAGE P — POLICY PERIOD; TERRITORY

This policy also applies to personal injury which occurs during the policy period within the policy territory; provided, however, that personal injury arising out of a series of publications or utterances of the same or similar defamatory material shall not be considered as occurring during the policy period unless the first publication or utterance thereof occurs during the policy period.

### IV.  COVERAGE P — DEFINITIONS

"damages" also includes any damages which are payable because of personal injury to which this policy applies;

"personal injury" means (1) any injury to the feelings or reputation of a natural person, including mental anguish, and (2) any injury to intangible property sustained by any organization as the result of false eviction, malicious prosecution, libel, slander or defamation; but the term "personal injury" shall not include injury included within the definitions of "bodily injury" and "property damage."

|  | Schedule | | |
|---|---|---|---|
| **Limits of Liability** | $ | 100,000 | each person aggregate |
|  | $ | 300,000 | general aggregate |
| **Insured's Participation** | | | per cent |
| **Code 9840** | | | |

LIBERTY MUTUAL INSURANCE COMPANY

Premium $  Included in Composite

*Frank L. Farwell*
PRESIDENT

Effective Date

Expiration Date

*Bruce E. Boorman*
SECRETARY

Audit Basis

For attachment

to Policy No.  LG1−141−050531−082

Issued to

Countersigned by ..................................................................
Authorized Representative

L-G2004  (10/1/66)
LC  LG  LM  LO
Printed
in
U.S.A.

Endorsement No.  9

> This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:
>
> ### COVERAGE A — BODILY INJURY LIABILITY
> ### COVERAGE B — PROPERTY DAMAGE LIABILITY

### CONTRACTUAL LIABILITY INSURANCE
### ENDORSEMENT
#### (All Written Contracts Except Incidental Contracts)

It is agreed that:

### I. CONTRACTUAL LIABILITY

Coverages A and B also apply to liability assumed by the **named insured** under an **insured contract**, subject to the limits of liability and other provisions of the policy applicable to Coverages A and B, except as expressly modified by this endorsement.

The company will defend any claim or suit against the **indemnitee** which the **named insured** is required to defend by the specific terms of an **insured contract**, but only to the same extent and on the same terms as if the **indemnitee** were the **insured** under the policy and then only if all of the following conditions are satisfied: (1) the claim or suit seeks **damages** for which the **indemnitee** is legally entitled to indemnification under the **insured contract**, (2) the policy covers such **damages** and (3) the applicable limit of the company's liability with respect to such **damages** has not been exhausted by payment of judgments or settlements.

### II. EXCLUSIONS

All exclusions, including exclusion (e), applicable to Coverages A and B apply to liability assumed under an **insured contract**, except exclusions (a), (b), (c) and (h). The following additional exclusions apply to such liability:

The insurance does not apply

(1) to any **bodily injury** or **property damage** which does not arise out of (a) operations performed or services furnished by the **named insured** or (b) operations performed for or property furnished to the **named insured** or (c) the maintenance or use of real or personal property owned by or rented to the **named insured** or of easements or other property rights or privileges granted to the **named insured** or (d) the handling or use of or the existence of any condition in the **named insured's products**;

(2) if the **indemnitee** is an architect, engineer or surveyor, to **bodily injury** or **property damage** arising out of any professional services performed by or for the **indemnitee**, including (a) the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications and (b) supervisory, inspection or engineering services; provided that with respect to the Architect, his agents or employees described in the indemnification clause of any Standard American Institute of Architects Contract Documents forming a part of an **insured contract**, the following exclusion is substituted: The insurance does not apply to the liability of the Architect, his agents or employees arising out of (1) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, or (2) the giving or failure to give directions or instructions by the Architect, his agents or employees, provided such giving or failure to give is the primary cause of the **bodily injury** or **property damage**.

(3) to any agreement (a) to pay for **property damage** to property owned by, rented to or used by the **indemnitee** arising out of operations performed for the **named insured** by the **indemnitee** or (b) to pay any fines, penalties or liquidated damages or (c) to pay any amounts or benefits on account of **bodily injury** or **property damage** in excess of such compensatory damages as would be recoverable therefor in an action of tort for ordinary negligence or (d) if the **indemnitee** is an employee of the **named insured**, to pay any amounts or benefits on account of his **bodily injury** in excess of those for which the **named insured** or any carrier as his insurer may be held liable under any applicable workmen's compensation, unemployment compensation, disability benefits or similar law or (e) if the **indemnitee** is an employee of the **named insured**, to pay on behalf of or to indemnify the **indemnitee** with respect to **bodily injury** sustained by a fellow employee arising out of and in the course of his employment by the **named insured**.

### III. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

**"indemnitee"** means the person or organization claiming indemnification from the **named insured**.

**"insured contract"** means any written contract made prior to the **occurrence** giving rise to the **bodily injury** or **property damage** with respect to which indemnification is claimed, but **insured contract** does not include (1) an **incidental contract**, (2) a warranty of fitness or quality of the **named insured's products** or (3) a warranty that work performed by or on behalf of the **named insured** will be done in a workmanlike manner.

### IV. ARBITRATION

The word "suit" includes an arbitration proceeding to which the **insured** is required to submit by the terms of the **insured contract** or to which the **insured** has submitted with the company's consent, provided the company is entitled to exercise all of the **insured's** rights in the choice of arbitrators and in the conduct of any arbitration proceedings.

### V. LIMITS OF LIABILITY

The limits of liability stated in the declarations as applicable under Coverage A—Bodily Injury Liability—to "each person" and "each occurrence" and under Coverage B—Property Damage Liability—to "each occurrence" also include, respectively, any liability assumed under an **insured contract** with respect to **bodily injury** or **property damage**.

Subject to the above provision and the provisions of the policy respecting "each occurrence", the total liability of the company for all **damages** because of all **property damage** for which liability is assumed under all **insured contracts** shall not exceed the limit of liability for Coverage B stated in the declarations as "aggregate", or if no such limit is therein stated, the limit stated in this endorsement as "aggregate." Such aggregate limit shall apply separately with respect to each project away from premises owned by or rented to the **named insured**.

L-G2006b (2/1/68)
LC LG LM LO
Page 1 of 2

Schedule

| Limit of Liability | | | | | | $ | | aggregate |

If no entry appears herein the schedule is completed on the schedules forming a part of the policy and designated "General Liability Hazards."

| Classification | Code | Premium Bases | Rates | | Advance Premium | |
|---|---|---|---|---|---|---|
| | | | B.I. | P.D. | B.I. 316 | P.D. |
| Contractual Liability | 0521 | | | | | |

Total Advance Premium:

Premium $ Included in Composite

Effective Date
Expiration Date
Audit Basis
For attachment
to Policy No. LG1-141-050531-032

Issued to

Work Units
1-
L-G2006b (2/1/68)
LC  LG  LM  LO
Page 2 of 2      Printed in U.S.A.

LIBERTY MUTUAL INSURANCE COMPANY

*Frank L. Farwell*
PRESIDENT

*Bruce E. Doorman*
SECRETARY

Countersigned by ...................................................................
Authorized Representative
Endorsement No.  8

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**MANUFACTURER'S AND CONTRACTOR'S LIABILITY INSURANCE
COMPREHENSIVE GENERAL LIABILITY INSURANCE**

LOADING AND UNLOADING OF WATERCRAFT
(Scope of Coverage for Certain Classifications)

It is agreed that the exclusion (if any) relating to the ownership, maintenance, operation, use, loading or unloading of watercraft does not apply to **bodily injury** or **property damage** arising out of loading or unloading operations identified under any of the classifications described below:

**Description of Classifications**

Freight Handling Classified as:   Warehouses–Code 3432

Premium $

Effective Date
Expiration Date
Audit Basis
For attachment
to Policy No.   LG1-141-050531-082

Issued to

LIBERTY MUTUAL INSURANCE COMPANY

*Frank L. Farwell*

PRESIDENT

*Bruce E. Boorman*

SECRETARY

Countersigned by..........................................................................................
Authorized Representative

MB G003
(9-25-68)                    Issued
Printed in U.S.A.

Endorsement Serial No.   7

<u>FREIGHT HANDLING – STEVEDORING – WAREHOUSING</u>

It is agreed that such insurance as is afforded by the policy with respect to the classification, Freight Handling classified as: Warehouses – Code 3432, does not apply to the ownership, maintenance or use of any wharf and water-front property owned by or rented to the insured.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

☒ LIBERTY MUTUAL INSURANCE COMPANY          ☐ LIBERTY MUTUAL FIRE INSURANCE COMPANY

*Bura E. Boorman*   *Frank L. Farwell*            *Bura E. Boorman*   *Frank L. Farwell*
SECRETARY              PRESIDENT                         SECRETARY              PRESIDENT

Countersigned by_____              Countersigned by_____
                    AUTHORIZED REPRESENTATIVE                                      AUTHORIZED REPRESENTATIVE

Effective Date                          Expiration Date
Audit Basis
Premium $
For attachment to Policy or Bond No. LG1-141-050531-082
Issued to

                                                      Endorsement Serial No.   6

Work Units 1 –            Issued            Sales Office & No.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**COVERAGE A — BODILY INJURY LIABILITY**

**COVERAGE B — PROPERTY DAMAGE LIABILITY**

**COVERAGE P — PERSONAL INJURY LIABILITY**

### FOREIGN COVERAGE ENDORSEMENT

It is agreed that:

**I. POLICY TERRITORY**

With respect to claims made or suits brought against any person or organization who is an **insured** under subdivisions (a), (b) or (c) of the **"PERSONS INSURED"** Section, the term **"policy territory"** is amended by adding the following subdivision (4):

(4) anywhere in the world; except with respect to loss arising out of foreign based operations of the **named insured.** As used herein "foreign based operations" means (1) the ownership, maintenance or use of premises outside the United States of America, its territories or possessions or Canada, or (2) the manufacture, sale or distribution of goods or products at or from such premises.

**II. INVESTIGATION; DEFENSE; SETTLEMENT — FOREIGN CLAIMS OR SUITS**

The company shall have the right but not the duty to investigate, settle or defend any claim made or suit brought against the **insured** outside the United States of America, its territories or possessions, or Canada. If the company elects not to investigate, settle or defend any such claim or suit, the **insured** under the supervision of the company shall arrange for such investigation and defense as are reasonably necessary, and subject to prior authorization of the company, shall effect such settlement thereof as the company and the **insured** deem expedient. The company shall reimburse the **insured** for the reasonable costs of such investigation and defense and, within the applicable limit of the company's liability, for the amount of any settlement so authorized.

**III. OTHER INSURANCE**

With respect to loss to which this policy applies by reason of subdivision (4) of the definition of **"policy territory"**, the insurance afforded by this policy does not apply to that portion of the loss for which the **insured** has other valid and collectible insurance, whether on a primary, excess or contingent basis.

It is further agreed that coverage as provided by this endorsement does not apply to the following:

Hush Puppies A.G. (Chur, Switzerland)

LIBERTY MUTUAL INSURANCE COMPANY

*Frank L. Farwell*

PRESIDENT

*Bruce E. Boorman*

SECRETARY

Premium $

Effective Date

Expiration Date

Audit Basis

For attachment

to Policy No.  LG1-141-050531-082

Issued to

Countersigned by .......................................................................

Authorized Representative

Endorsement No.  5

L-G2001  (10/1/66)

LC  LG  LM  LO

Printed in USA

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

ALL INSURANCE EXCEPT TO THE EXTENT OTHERWISE
SPECIFICALLY STATED BELOW OR IN THE POLICY

COMPOSITE RATING PLAN

It is agreed that:

1.   All premiums for this policy shall be computed on the following basis:

Sales

2.   If under Coverage B – Property Damage Liability – an aggregate limit
of the company's liability applies with respect to premises or
operations rated on a remuneration basis or contractor's equipment
rated on a receipts basis, such aggregate limit applies to all
premises, operations, and contractor's equipment rated on the basis
set forth in paragraph 1 above.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

☒ LIBERTY MUTUAL INSURANCE COMPANY          ☐ LIBERTY MUTUAL FIRE INSURANCE COMPANY

*Bruce E. Boorman*  SECRETARY     *Frank L. Farwell*  PRESIDENT          *Bruce E. Boorman*  SECRETARY     *Frank L. Farwell*  PRESIDENT

Countersigned by_____          Countersigned by_____
                    AUTHORIZED REPRESENTATIVE                                    AUTHORIZED REPRESENTATIVE

Effective Date                           Expiration Date
Audit Basis
Premium $
For attachment to Policy or Bond No. LG1-141-050531-082
Issued to

                                         Endorsement Serial No.  4

Work Units 1 —           Issued            Sales Office & No.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**COVERAGE A — BODILY INJURY LIABILITY**

**COVERAGE B — PROPERTY DAMAGE LIABILITY**

**COVERAGE P — PERSONAL INJURY LIABILITY**

## ADDITIONAL INSURED

### (Named Insured's Operations)

It is agreed that the "Persons Insured" provision is amended to include as an insured the person or organization named below, but only with respect to acts or omissions of the named insured in connection with the named insured's operations at the applicable location designated below.

**Name of Person or Organization**                                    **Applicable Location**

Wolverine Service Club, Inc.                                 Picnic Grounds
                                                             Big Prairie Township
                                                             Newago County, Mich.

Puerto Rico Industrial Development Co.                        Palmer Word
                                                             Aquadilla, Puerto Rico

LIBERTY MUTUAL INSURANCE COMPANY

*Frank L. Farwell*

PRESIDENT

*Bruce E. Boorman*

SECRETARY

Premium $

Effective Date
Expiration Date
Audit Basis
For attachment
to Policy No.  LG1-141-050531-082

Issued to

Countersigned by ...............................................................................
                                   Authorized Representative

Endorsement No.   3

L-G1001
LC LG LM LO
(10/1/66)
Printed in U.S.A.

... insurance as is afforded by the provisions of the policy relating
to the ...

**COVERAGE A — BODILY INJURY LIABILITY**

**COVERAGE B — PROPERTY DAMAGE LIABILITY**

---

## ADDITIONAL INSURED
### (Vendors — Broad Form)

It is agreed that the "Persons Insured" provision is amended to include any person or organization (herein referred to as "vendor"), as an insured, but only with respect to the distribution or sale in the regular course of the vendor's business of the named insured's products subject to the following additional provisions:

1. The insurance with respect to the vendor does not apply to:

   (a) any express warranty unauthorized by the named insured;

   (b) bodily injury or property damage arising out of

      (i) any physical or chemical change in the form of the product made intentionally by the vendor,

      (ii) repacking, unless unpacked solely for the purpose of inspection, demonstration, testing or the substitution of parts under instruction from the manufacturer and then repacked in the original container,

      (iii) demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product, or

      (iv) products which after distribution or sale by the named insured have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

2. The insurance does not apply to any person or organization, an insured, from whom the named insured has acquired such products or any ingredient part or container entering into, accompanying or containing such products.

LIBERTY MUTUAL INSURANCE COMPANY

*Frank L. Farwell*

PRESIDENT

*Bruce E. Boorman*

SECRETARY

Premium $

Effective Date
Expiration Date
Audit Basis
For attachment
to Policy No. LC1-141-050051-002
Issued to

Countersigned by _____

_____
Authorized Representative

G113 (10/1/66)

LC   LG   LB

Endorsement No. 2

It is agreed that the term the Insured is as follows:

Wolverine World Wide, Inc.;

Hush Puppies Products Division; Wolverine Brand Division, Sporting Goods Division and H.P. Division

Wolverine Western Hemisphere Corp.;

Wolverine Leather Division

Clarino Sales Corporation of America, a Division of Wolverine World Wide, Inc.;

Bates Shoe Company, a Division of Wolverine World Wide, Inc.;

Bombay Slipper, a Division of Wolverine World Wide, Inc. and Tru-Stitch Footwear, a Division of Wolverine World Wide, Inc.;

Frolic Footwear, a Division of Wolverine World Wide, Inc.; Hush Puppies A.G. (Chur, Switzerland)

Verda Shoe Company, a Division of Wolverine World Wide, Inc.;

Clarino Sales Corporation of Canada;

W.W.W. Retail, Inc.; and
*Phillip Layne Shoe Division of W.W.W. Retail, Inc.*
any company or business entity incorporated or organized under the laws of the United State of America (including any state thereof) its territories or possessions or Canada (including any Province thereof) while the person or organization named in Item I of the declarations or the aforenamed owns, during the policy period, an interest in such entity of more than fifth per cent (50%).

This endorsement is issued by the company below designated by an entry in the box opposite its name.
☒ LIBERTY MUTUAL INSURANCE COMPANY          ☐ LIBERTY MUTUAL FIRE INSURANCE COMPANY

*Bruce E. Sorensen*          *Frank L. Farwell*          *Bruce E. Sorensen*     *Frank L. Farwell*
Secretary          President          Secretary          President

Countersigned by ........          Countersigned by _____
                    AUTHORIZED REPRESENTATIVE                    AUTHORIZED REPRESENTATIVE
Effective Date                              Expiration Date
Audit Basis
Premium $
For attachment to Policy or Bond No.     LG1-141-050531-082   TD93
Issued to

Endorsement Serial No. 1

Work Units 1 —          Issued          Sales Office & No.

## AMENDATORY ENDORSEMENT

It is agreed that the Schedule of Locations attached to the
Declarations is amended as indicated hereunder:

<u>NY</u>
Add:
Bombay

<u>MI</u>
Add:
162 Bagley Ave., Detroit
162 So. Woodward Ave., Birmingham;
A leased dept. at Wagner & Company, Ann Arbor

This endorsement is executed by the company below designated by an entry in the box opposite its name.

☒ LIBERTY MUTUAL INSURANCE COMPANY          ☐ LIBERTY MUTUAL FIRE INSURANCE COMPANY

*Bruce E. Boorman*    *Frank L. Farwell*          *Bruce E. Boorman*    *Frank L. Farwell*
SECRETARY          PRESIDENT                    SECRETARY          PRESIDENT

Countersigned by_____          Countersigned by_____
AUTHORIZED REPRESENTATIVE                              AUTHORIZED REPRESENTATIVE

Effective Date 1-1-72          Expiration Date 1-1-73
Audit Basis 1
Premium $X X X
For attachment to Policy or Bond No. LG1-141-050531-082
Issued to    Wolverine World Wide, Inc., Etal

Endorsement Serial No.  Company Records
Only

Work Under —          Issued 11-27-72 mn  Sales Office & No. Gr. Rapids 474

30% PCW

100% Recycled

2

20 211 013 . Frank B. Hall - Boston, MA . XLX 136 38 40 XLX-144 US 44

## BLANKET EXCESS LIABILITY POLICY (FOLLOWING FORM)

BSN

Coverage is provided in the Company designated by number, a stock insurance company (herein called the Company)

**18**

### DECLARATIONS

ITEM 1. INSURED'S NAME AND ADDRESS (NO., STREET, TOWN, COUNTY, STATE)

Wolverine World Wide, Inc., etal.
(See Endorsement #1)
9341 Courtland Drive
Rockford, Michigan 49351

| | |
|---|---|
| 01 | FIREMAN'S FUND INSURANCE COMPANY SAN FRANCISCO, CALIFORNIA |
| 18 | THE AMERICAN INSURANCE COMPANY PARSIPPANY, NEW JERSEY |
| 07 | NATIONAL SURETY CORPORATION CHICAGO, ILLINOIS |
| 13 | ASSOCIATED INDEMNITY CORPORATION SAN FRANCISCO, CALIFORNIA |
| 15 | AMERICAN AUTOMOBILE INSURANCE COMPANY CREVE COEUR, MISSOURI |

**FIREMAN'S FUND INSURANCE COMPANIES**
MAIL ADDRESS
SAN FRANCISCO
CALIFORNIA

**Frank B. Hall & Co. of Massachusetts, Inc.**
89 Broad Street, Boston, Mass. 02110
(617) 482-3100
(formerly Bolt, Dalton & Church)

POLICY PERIOD:

ITEM 2. 1/1/82 / 1/1/83
INCEPTION (MO. DAY YR.) EXPIRATION (MO. DAY YR.)
12:01 A.M., STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN.

ITEM 3.
LIMIT OF LIABILITY:

| | | |
|---|---|---|
| $ 15,000,000. | . EACH OCCURRENCE |
| $ 15,000,000. | . AGGREGATE |

ITEM 4.
UNDERLYING INSURANCE LIMIT OF LIABILITY

| | | |
|---|---|---|
| $ 5,000,000. | . EACH OCCURRENCE |
| $ 5,000,000. | . AGGREGATE |

ITEM 5. PREMIUM BASIS
$ Flat Charge

ITEM 6.
ADVANCE PREMIUM: $ 12,495.
ANNUAL MINIMUM PREMIUM: $ 12,495.

IN THE EVENT OF CANCELLATION BY THE NAMED INSURED, THE COMPANY SHALL RECEIVE AND RETAIN NOT LESS THAN $ 2,500. AS THE POLICY MINIMUM PREMIUM.

ITEM 7. SCHEDULE OF UNDERLYING INSURANCE:

See Endorsement #2

### FOLLOWING FORM BLANKET EXCESS LIABILITY POLICY

The Company designated above, a stock insurance company, (herein called the Company) agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

#### INSURING AGREEMENTS

**1. Coverage.** To indemnify the Insured for the Insured's ultimate net loss in excess of the insurance afforded under the Blanket Excess Liability or "Umbrella" policies specified in Item 7 of the Declarations, hereafter called underlying insurance, in full force and effect at the inception of this policy, provided that the insurance for injury to or destruction of property under this policy and underlying policies shall not apply except as respects injury to or destruction of corporeal property, including loss of use thereof.

**2. Limit of Liability.** The Company shall be liable only for the limit of liability stated in Item 3 of the Declarations in excess of the limit or limits of liability of the applicable underlying insurance policy or policies all as stated in the declarations of this policy. The limit of the liability stated in the declarations as applicable to "each occurrence" shall be the total limit of the Company's liability for all damages sustained as the result of any one occurrence, provided, however, in the event of reduction or exhaustion of the applicable aggregate limit or limits of liability under said underlying policy or policies solely by reason of losses paid thereunder on account of occurrences during this policy period, this
(Continued on Page Two)

policy shall in the event of reduction, apply as excess of the reduced limit of liability thereunder. Subject to the applicable limit of liability as respects each occurrence, the limit of liability stated in the declarations as "aggregate" shall be the total limit of the Company's liability for all damages sustained during each annual period of this policy.

**3. Policy Period.** This policy applies only to occurrences which take place during the policy period.

#### DEFINITIONS

"Ultimate net loss" means all sums actually paid, or which the Insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded by this policy, after proper deduction of all recoveries or salvage.

#### CONDITIONS

**1. Maintenance of Primary Insurance.** The Insured warrants, and it is a condition of this policy, that at the inception of this policy, insurance afforded by the underlying policies of insurance (apply-

COUNTERSIGNATURE DATE
1/7/82 fw

COUNTERSIGNATURE OF AUTHORIZED AGENT
of Massachusetts Inc.

PAGE ONE

(Continued from Preceding Page)

ing as excess over various policies of primary insurance) with combined limits of liability for said underlying insurance stated in Item 4 of the declarations, or renewals or replacements thereof not affording coverages other than those at inception of this policy, shall be maintained in full effect during the period of this policy, except for reduction of aggregate limits solely as a result of payment of claims arising out of occurrences during this policy period. If such underlying insurance is not maintained in full effect by the Insured or if there is any change in the scope of coverage under any underlying insurance, the insurance afforded by this policy shall apply in the same manner as though such underlying policies had been so maintained and unchanged.

The insurance afforded by this policy is subject to the same warranties, terms (including the terms used to describe the application of the limits of liability), conditions and exclusions as are contained in the underlying insurance on the effective date of this policy, except, unless otherwise specifically provided in this policy, any such warranties, terms, conditions or exclusions relating to premium, the obligation to investigate and defend, the amount and limits of liability, and any renewal agreement.

**2. Notice of Occurrence.** The Insured shall immediately advise the Company of any occurrence or disaster which will probably result in liability under this policy. The Company shall not, however, be called upon to assume charge of the settlement or defense of any claims made, or suits brought, or proceedings instituted against the Insured, but shall have the right and opportunity to be associated with the Insured in the defense and trial of any such claims, suits or proceedings relative to any occurrence which, in the opinion of the Company, may create liability on the part of the Company under the terms of the policy. If the Company avails itself of such right and opportunity, the Insured and the Company shall cooperate in all respects so as to effect a final determination of the claim or claims.

**3. Payment of Loss.** It is a condition of this policy that the insurance afforded under this policy shall apply only after all underlying insurance has been exhausted. Upon final determination by settlement, award or verdict of the liability of the Insured, the Company shall promptly pay the Insured as the Insured shall pay, or be required to pay, the amounts of any losses falling within the terms or limits of this insurance. All losses covered under this policy shall be due and payable by the Company within 30 days after they are respectively claimed and proof of loss filed with the Company in conformity with this policy. Bankruptcy or insolvency of the Insured shall not relieve the Company of any of its obligations hereunder.

**4. Payment of Expenses.** Loss expenses and legal expenses, including court costs and interest, if any, which may be incurred by the Insured with the consent of the Company in the adjustment or defense of claims, suits or proceedings shall be borne by the Company and the Insured in the proportion that each party's share of loss bears to the total amount of said loss. Loss expense hereunder shall not include salaries and expense of the Insured's employees incurred in investigation, adjustment and litigation.

**5. Appeal.** In the event the Insured or any underlying insurer elects not to appeal a judgment in excess of the amount of the underlying insurance, the Company may elect to appeal at its expense and shall be liable for the expenses incidental thereto, but in no event shall the liability of the Company for ultimate net loss exceed the amount set forth in the policy plus the expenses incidental to such appeal.

**6. Subrogation.** In the event of any payment of this policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

Any amount recovered as subrogation shall be apportioned in the inverse order of payment of loss to the extent of actual payment. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries. If there is no recovery in proceedings conducted solely by the Company, the Company shall bear the expenses thereof.

**7. Premium.** The premium for this policy shall be computed upon the basis stated in the Declarations. The advance premium stated in the Declarations, unless otherwise specified is an estimated premium only. Upon termination of this policy the earned premium shall be computed and if the earned premium is more than the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion, subject to the annual minimum premium stated in the Declarations for each twelve months of the policy period, and subject further to the policy minimum premium as stated in the Declarations.

**8. Cancellation.** This policy may be cancelled by either party upon 30 days' notice in writing to the other stating the date cancellation shall be effective. If cancellation is at the request of the Insured, adjustment of premium shall be at short rate, and if cancelled by the Company, adjustment shall be made pro rata. However, in the event of cancellation or termination of the underlying insurance, this policy shall cease to apply at the same time without notice to the Insured. Notice shall be given by the Company to the Insured at the address shown in the declarations. Payment or tender of unearned premium is not a condition of cancellation.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

## (BROAD FORM)

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

III. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material," "special nuclear material," and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the delineation of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating

(Continued on Next Page)

| PRODUCER'S CODE | NAME AND LOCATION | PREVIOUS POLICY NUMBER | POLICY NUMBER |
|---|---|---|---|

**(Continued from Preceding Page)**

the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to contain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

IN WITNESS WHEREOF, FIREMAN'S FUND INSURANCE COMPANY has caused this Policy to be signed by its President and Secretary but this Policy shall not be valid unless countersigned by a duly authorized Agent of the Company.

Robert P. J. Cooney
SECRETARY

Myron Du Bain
PRESIDENT

FINAL PAGE

END. #1

NAMED INSURED

| INSURED | POLICY NUMBER |
|---|---|
| Wolverine World Wide, Inc., etal. | XLX 144 05 44 |
| **PRODUCER** | **EFFECTIVE DATE** |
| Frank B. Hall & Co. | 1/1/82 |

Item #1 of the Declarations is completed to read as follows:

Named Insured;    Wolverine World Wide, Inc.
Institutional Shoe Corporation
Wolverine International, Inc.
Aquadilla Shoe Corporation
Seaboard Sales Corporation
WWW Retail, Inc.
Little Falls Footwear, Inc.
Wolverine World Wide Employees Federal Credit Union
Wolverine Service Club, Inc.
Indianapolis Glove Company
Thompson Safety Equipment Company
Wolverine Boot Corporation
V.B.I., Inc.
Viner Brothers, Inc.
Lustig's, Inc.
Town & Country Shoes, Inc.
Brooks Shoe, Inc.

And all subsidiaries (including subsidiary thereof) and/or
divisions or entities of Wolverine World Wide, Inc., now
existing or which Wolverine World Wide, Inc., may create,
acquire, organize or control.

| ONE OF THE | | COUNTERSIGNATURE OF AUTHORIZED AGENT |
|---|---|---|
| 1/7/82 fw | FIREMAN'S FUND INSURANCE COMPANIES AS NAMED IN THE POLICY | *Myron Du Bain* |
| | | PRESIDENT 10-X |

*Frank B. Hall & Co.*
*of Massachusetts, Inc.*

180001---1-65

END. #2

SCHEDULE OF UNDERLYING INSURANCE

| INSURED | POLICY NUMBER |
|---|---|
| Wolverine World Wide, Inc., etal. | XLX 144 05 44 |
| PRODUCER | EFFECTIVE DATE |
| Frank B. Hall & Co. | 1/1/82 |

Item #7 of the Declarations is completed to read as follows:

Schedule of Underlying Insurance:  $5,000,000. single limit any one
occurrence combined Personal Injury and/or Property Damage and/or
Advertising Liability and/or Aircraft Liability as provided by
First State Insurance Company, Policy No. to be advised, in excess
of various scheduled primary limits or self-insured retentions.

| ONE OF THE FIREMAN'S FUND INSURANCE COMPANIES AS NAMED IN THE POLICY | *Myron Du Bain* PRESIDENT   10-X | COUNTERSIGNATURE OF AUTHORIZED AGENT *Frank B. Hall & Co. of Massachusetts, Inc.* |
|---|---|---|

1/7/82 fw

180001—1-65

END. #3

EMPLOYEE BENEFITS – FIDUCIARY EXCLUSION (ERISA)

| INSURED | POLICY NUMBER |
|---------|---------------|
| Wolverine World Wide, Inc., etal. | XLX 144 05 44 |
| PRODUCER | EFFECTIVE DATE |
| Frank B. Hall & Co. | 1/1/82 |

The following exclusion is added to this policy:

> to any liability of any insured as a fiduciary under the provisions
> of The Employee Retirement Income Securities Act of 1974, Public
> Law 93-406, commonly referred to as The Pension Reform Act of 1974
> or amendments thereto, or The Internal Revenue Code of 1954 as
> amended.  Fiduciary activities include but are not limited to the
> exercise of discretionary authority or discretionary control res-
> pecting management of a plan, exercise of authority and control
> respecting the management or disposition of a plan's assets, invest-
> ment advice with respect to assets of a plan, any discretionary
> authority or responsibility in administration of a plan.

All other terms and conditions of this policy remain unchanged.

ONE OF THE
FIREMAN'S FUND INSURANCE COMPANIES
AS NAMED IN THE POLICY

*PRESIDENT*    10-X

COUNTERSIGNATURE OF AUTHORIZED AGENT

1/7/82 fw

180001---1-65

END. #4

## CROSS LIABILITY EXCLUSION

| INSURED | POLICY NUMBER |
|---|---|
| Wolverine World Wide, Inc., etal. | XLX 144 05 44 |
| PRODUCER | EFFECTIVE DATE |
| Frank B. Hall & Co. | 1/1/82 |

In consideration of the premium charged, it is understood and agreed
that such coverage as is afforded by this policy shall not apply to
any claim, action or suit brought by or on behalf of any Insured
under this policy against any other Insured under this policy.

1/7/82  LW

ONE OF THE
FIREMAN'S FUND INSURANCE COMPANIES
AS NAMED IN THE POLICY

*Myron Du Bain*
PRESIDENT                10-X

COUNTERSIGNATURE OF AUTHORIZED AGENT
*Frank B. Hall & Co.
of Massachusetts, Inc.*

180001—1-65

END. #5

## AMENDATORY ENDORSEMENT — LIMIT OF LIABILITY

In consideration of the premium charged, it is agreed Insuring Agreement 2, Limit of Liability, is changed to read as follows:

### 2. Limit of Liability.

The Company shall be liable only for the limit of liability stated in Item 3 of the Declarations in excess of the limit or limits of liability of the applicable underlying insurance policy or policies all as stated in the declarations of this policy. The limit of the liability stated in the declarations as applicable to "each occurrence" shall be the total limit of the Company's liability for all damages sustained as the result of any one occurrence, provided, however, in the event of reduction or exhaustion of the applicable aggregate limit or limits of liability under said underlying policy or policies solely by reason of losses paid thereunder on account of occurrences during this policy period, this policy shall in the event of reduction, apply as excess of the reduced limit of liability thereunder. Subject to the applicable limit of liability as respects each occurrence, the limit of liability stated in the declarations as "aggregate" shall be the total limit of the Company's liability for all damages sustained during each annual period of this policy because of (i) personal injury and property damage arising out of the completed operations hazard and products hazard, combined; or (ii) advertising whenever occurring by whatever media, on account of all occurrences; or (iii) injury arising out of any hazard, other than as described in (i) and (ii), to which the underlying policy affords coverage subject to an aggregate limit and to which this policy also applies.

All other terms and conditions of the policy remain the same and unchanged.

| POLICY NUMBER | INSURED | EFFECTIVE |
|---|---|---|
| XLX 144 05 44 | Wolverine World Wide, Inc., etal. | 1/1/82 |

| ONE OF THE | PRODUCER |
|---|---|
| FIREMAN'S FUND INSURANCE COMPANIES<br>AS NAMED IN THE POLICY | Frank B. Hall & Co |
| 1/7/82 fw *Myron Du Bow*<br>PRESIDENT    10 X | *COUNTERSIGNATURE OF AUTHORIZED AGENT*<br>*of Massachusetts, Inc.* |

End. #6

---

ADDITIONAL NAMED INSURED

| INSURED | POLICY NUMBER |
|---------|---------------|
| Wolverine World Wide, Inc., et al. | XLX 144 05 44 |
| **PRODUCER** | **EFFECTIVE DATE** |
| Frank B. Hall & Co. of Mass. | 10/28/82 |

It is understood and agreed that Item #1 of the Declarations,
Named Insured, is amended to include the following:

Bick Manufacturing Company

All other terms and conditions of this policy remain unchanged.

| ONE OF THE<br>FIREMAN'S FUND INSURANCE COMPANIES<br>AS NAMED IN THE POLICY | _Myron du Bain_<br>PRESIDENT        10-X | COUNTERSIGNATURE OF AUTHORIZED AGENT |
|---|---|---|

100001—1-65         11/10/82 cam

End. #7

| DELETION OF NAMED INSURED | |
|---|---|

| INSURED<br>Wolverine World Wide, Inc., et al. | POLICY NUMBER<br>XLX 144 05 44 |
|---|---|
| PRODUCER<br>Frank B. Hall & Co. | EFFECTIVE DATE<br>11/5/82 |

In consideration of the premium charged, it is understood and agreed that the following entity is deleted as Named Insured under this policy:

V. B. I., Inc.

All other terms and conditions remain unchanged.

| ONE OF THE<br>FIREMAN'S FUND INSURANCE COMPANIES<br>AS NAMED IN THE POLICY | *Myron Du Bain*<br>PRESIDENT      10-X | COUNTERSIGNATURE OF AUTHORIZED AGENT |
|---|---|---|

180001—1-65

End. #8

---

AMENDMENT OF NAMED INSURED

---

| INSURED | POLICY NUMBER |
|---|---|
| Wolverine World Wide, Inc., et al. | XLX 144 05 44 |
| PRODUCER | EFFECTIVE DATE |
| Frank B. Hall & Co. | 12/16/82 |

In consideration of the premium charged, it is understood and agreed that the following entity is deleted as Named Insured under this policy:

The Indianapolis Glove Company

It is further understood and agreed that the following entity is added as a Named Insured under this policy:

Wolverine Glove Company

All other terms and conditions of this policy remain unchanged.

---

| ONE OF THE FIREMAN'S·FUND INSURANCE COMPANIES AS NAMED IN THE POLICY | *Myron Du Bain* PRESIDENT   10-X | COUNTERSIGNATURE OF AUTHORIZED AGENT |
|---|---|---|

180001—1-65

| PRODUCER'S CODE | NAME AND LOCAL | PREVIOUS POLICY NUMBER | POLICY NUMBER |
|---|---|---|---|
| 20 211 013 | Frank B. Hall & Co. - Boston | XLX 153 21 84    3-62 | XLX- 148 41 89 |

## BLANKET EXCESS LIABILITY POLICY (FOLLOWING FORM)

BSN

**18** Coverage is provided in the Company designated by number, a stock insurance Company (herein called the Company)

### DECLARATIONS

**ITEM 1.** INSURED'S NAME AND ADDRESS (NO., STREET, TOWN, COUNTY, STATE)

Wolverine World Wide, Inc., et al.
(See Endorsement #1)
9341 Courtland Drive
Rockford, Michigan  49351



FIREMAN'S FUND INSURANCE COMPANIES
MAIL ADDRESS
SAN FRANCISCO
CALIFORNIA

| 01 FIREMAN'S FUND | INSURANCE COMPANY | SAN FRANCISCO, CALIFORNIA |
| 18 THE AMERICAN | INSURANCE COMPANY | PARSIPPANY, NEW JERSEY |
| 07 NATIONAL SURETY | CORPORATION | CHICAGO, ILLINOIS |
| 13 ASSOCIATED INDEMNITY | CORPORATION | SAN FRANCISCO, CALIFORNIA |
| 15 AMERICAN AUTOMOBILE | INSURANCE COMPANY | CREVE COEUR, MISSOURI |

**Frank B. Hall & Co. of Massachusetts, Inc.**
89 Broad Street, Boston Mass. 02110
(617) 482-3100
(formerly Boit, Dalton & Church)

**POLICY PERIOD:**

**ITEM 2.**

| 1/1/84 | 1/1/85 |
|---|---|
| INCEPTION (MO. DAY YR.) | EXPIRATION (MO. DAY YR.) |

12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN.

**ITEM 3.** LIMIT OF LIABILITY:

| $ 15,000,000. | . EACH OCCURRENCE |
| $ 15,000,000. | . AGGREGATE |

**ITEM 4.** UNDERLYING INSURANCE LIMIT OF LIABILITY

| $ 5,000,000. | . EACH OCCURRENCE |
| $ 5,000,000. | . AGGREGATE |

| **ITEM 5.** PREMIUM BASIS | **ITEM 6.** |
|---|---|
| $    Flat Charge | ADVANCE PREMIUM: $ 8,400. |
| | ANNUAL MINIMUM PREMIUM: $ 8,400. |

IN THE EVENT OF CANCELLATION BY THE NAMED INSURED, THE COMPANY SHALL RECEIVE AND RETAIN NOT LESS THAN $ 500. AS THE POLICY MINIMUM PREMIUM.

**ITEM 7. SCHEDULE OF UNDERLYING INSURANCE:** $5,000,000. single limit any one occurrence combined Personal Injury and/or Property Damage and/or Advertising Liability and/or Aircraft Liability as provided by First State Insurance Company, Policy No. to be advised, in excess of various scheduled primary limits or self-insured retentions.

### FOLLOWING FORM BLANKET EXCESS LIABILITY POLICY

The Company designated above, a stock insurance company, (herein called the Company) agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

### INSURING AGREEMENTS

**1. Coverage.** To indemnify the Insured for the Insured's ultimate net loss in excess of the insurance afforded under the Blanket Excess Liability or "Umbrella" policies specified in Item 7 of the Declarations, hereafter called underlying insurance, in full force and effect at the inception of this policy, provided that the insurance for injury to or destruction of property under this policy and underlying policies shall not apply except as respects injury to or destruction of corporeal property, including loss of use thereof.

**2. Limit of Liability.** The Company shall be liable only for the limit of liability stated in Item 3 of the Declarations in excess of the limit or limits of liability of the applicable underlying insurance policy or policies all as stated in the declarations of this policy. The limit of the liability stated in the declarations as applicable to "each occurrence" shall be the total limit of the Company's liability for all damages sustained as the result of any one occurrence, provided, however, in the event of reduction or exhaustion of the applicable aggregate limit or limits of liability under said underlying policy or policies solely by reason of losses paid thereunder on account of occurrences during this policy period, this

policy shall in the event of reduction, apply as excess of the reduced limit of liability thereunder. Subject to the applicable limit of liability as respects each occurrence, the limit of liability stated in the declarations as "aggregate" shall be the total limit of the Company's liability for all damages sustained during each annual period of this policy.

**3. Policy Period.** This policy applies only to occurrences which take place during the policy period.

### DEFINITIONS

"Ultimate net loss" means all sums actually paid, or which the Insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded by this policy, after proper deduction of all recoveries or salvage.

### CONDITIONS

**1. Maintenance of Primary Insurance.** The Insured warrants, and it is a condition of this policy, that at the inception of this policy, insurance afforded by the underlying policies of insurance (apply-

**(Continued on Page Two)**

| COUNTERSIGNATURE DATE | COUNTERSIGNATURE OF AUTHORIZED AGENT |
|---|---|
| 1/13/84 cam | FRANK B. HALL & CO. OF MASSACHUSETTS, INC. |
| | By  _Christine Foley_ |

PAGE ONE                                                                                   5902—2-72

(Continued from Preceding Page)

ing as excess over various policies of primary insurance) with combined limits of liability for said underlying insurance stated in Item 4 of the declarations, or renewals or replacements thereof not affording coverages other than those at inception of this policy, shall be maintained in full effect during the period of this policy, except for reduction of aggregate limits solely as a result of payment of claims arising out of occurrences during this policy period. If such underlying insurance is not maintained in full effect by the Insured or if there is any change in the scope of coverage under any underlying insurance, the insurance afforded by this policy shall apply in the same manner as though such underlying policies had been so maintained and unchanged.

The insurance afforded by this policy is subject to the same warranties, terms (including the terms used to describe the application of the limits of liability), conditions and exclusions as are contained in the underlying insurance on the effective date of this policy, except, unless otherwise specifically provided in this policy, any such warranties, terms, conditions or exclusions relating to premium, the obligation to investigate and defend, the amount and limits of liability, and any renewal agreement.

2. **Notice of Occurance.** The Insured shall immediately advise the Company of any occurrence or disaster which will probably result in liability under this policy. The Company shall not, however, be called upon to assume charge of the settlement or defense of any claims made, or suits brought, or proceedings instituted against the Insured, but shall have the right and opportunity to be associated with the Insured in the defense and trial of any such claims, suits or proceedings relative to any occurrence which, in the opinion of the Company, may create liability on the part of the Company under the terms of the policy. If the Company avails itself of such right and opportunity, the Insured and the Company shall cooperate in all respects so as to effect a final determination of the claim or claims.

3. **Payment of Loss.** It is a condition of this policy that the insurance afforded under this policy shall apply only after all underlying insurance has been exhausted. Upon final determination by settlement, award or verdict of the liability of the Insured, the Company shall promptly pay the Insured as the Insured shall pay, or be required to pay, the amounts of any losses falling within the terms or limits of this insurance. All losses covered under this policy shall be due and payable by the Company within 30 days after they are respectively claimed and proof of loss filed with the Company in conformity with this policy. Bankruptcy or insolvency of the Insured shall not relieve the Company of any of its obligations hereunder.

4. **Payment of Expenses.** Loss expenses and legal expenses, including court costs and interest, if any, which may be incurred by the

Insured with the consent of the Company in the adjustment or defense of claims, suits or proceedings shall be borne by the Company and the Insured in the proportion that each party's share of loss bears to the total amount of said loss. Loss expense hereunder shall not include salaries and expense of the Insured's employees incurred in investigation, adjustment and litigation.

5. **Appeal.** In the event the Insured or any underlying insurer elects not to appeal a judgment in excess of the amount of the underlying insurance, the Company may elect to appeal at its expense and shall be liable for the expenses incidental thereto, but in no event shall the liability of the Company for ultimate net loss exceed the amount set forth in the policy plus the expenses incidental to such appeal.

6. **Subrogation.** In the event of any payment of this policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

Any amount recovered as subrogation shall be apportioned in the inverse order of payment of loss to the extent of actual payment. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries. If there is no recovery in proceedings conducted solely by the Company, the Company shall bear the expenses thereof.

7. **Premium.** The premium for this policy shall be computed upon the basis stated in the Declarations. The advance premium stated in the Declarations, unless otherwise specified is an estimated premium only. Upon termination of this policy the earned premium shall be computed and if the earned premium is more than the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion, subject to the annual minimum premium stated in the Declarations for each twelve months of the policy period, and subject further to the policy minimum premium as stated in the Declarations.

8. **Cancellation.** This policy may be cancelled by either party upon 30 days' notice in writing to the other stating the date cancellation shall be effective. If cancellation is at the request of the Insured, adjustment of premium shall be at short rate, and if cancelled by the Company, adjustment shall be made pro rata. However, in the event of cancellation or termination of the underlying insurance, this policy shall cease to apply at the same time without notice to the Insured. Notice shall be given by the Company to the Insured at the address shown in the declarations. Payment or tender of unearned premium is not a condition of cancellation.

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

### (BROAD FORM)

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

III. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material," "special nuclear material," and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the defination of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means
(a) any nuclear reactor,
(b) any equipment or device designed or used for (1) separating

(Continued on Next Page)

**(Continued from Preceding Page)**

the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

IN WITNESS WHEREOF, FIREMAN'S FUND INSURANCE COMPANY has caused this Policy to be signed by its President and Secretary but this Policy shall not be valid unless countersigned by a duly authorized Agent of the Company.

_Guy Benedict_

SECRETARY

_Myron Du Bain_

PRESIDENT

FINAL PAGE

End. #1

| NAMED INSURED |
| --- |

| INSURED | POLICY NUMBER |
| --- | --- |
| Wolverine World Wide, Inc., et al. | XLX 148 41 89 |
| PRODUCER | EFFECTIVE DATE |
| Frank B. Hall & Co. | 1/1/84 |

Item #1 of the Declarations is completed to read as follows:

Named Insured:   Wolverine Mutual Benefit Association

Wolverine World Wide, Inc.

Institutional Shoe Corporation

Wolverine International, Inc.

Aquadilla Shoe Corporation

Seaboard Sales Corporation

WWW Retail, Inc.

Little Falls Footwear, Inc.

Wolverine World Wide Employees Federal Credit Union

Wolverine Service Club, Inc.

Wolverine Glove Company

Thompson Safety Equipment Company

Wolverine Boot Corporation

Viner Brothers, Inc.

Lustig's, Inc.

Town & Country Shoes, Inc.

Brooks Shoe, Inc.

Wolverine World Wide, Ltd.

Bick Manufacturing Co.

O'Connor and Goldberg, Inc.

KAEPA, Inc.

Kara International, Inc.

Quoddy Division of WWW Retail, Inc.

Shoe Center, Inc.

And all subsidiaries (including subsidiary thereof) and/or divisions or entities of Wolverine World Wide, Inc., now existing or which Wolverine World Wide, Inc. may create, acquire, organize or control.

| ONE OF THE FIREMAN'S FUND INSURANCE COMPANIES AS NAMED IN THE POLICY | *Myron Du Bain* PRESIDENT   10-X | COUNTERSIGNATURE OF AUTHORIZED AGENT |
| --- | --- | --- |

180001—1-65

End. #2

## CROSS LIABILITY EXCLUSION

| INSURED | | POLICY NUMBER |
|---|---|---|
| Wolverine World Wide, Inc., et al. | | XLX 148 41 89 |
| **PRODUCER** | | **EFFECTIVE DATE** |
| Frank B. Hall & Co. | | 1/1/84 |

In consideration of the premium charged, it is understood and agreed that such coverage as is afforded by this policy shall not apply to any claim, action or suit brought by or on behalf of any Insured under this policy against any other Insured under this policy.

| ONE OF THE<br>FIREMAN'S FUND INSURANCE COMPANIES<br>AS NAMED IN THE POLICY | *Myron Du Bain*<br>PRESIDENT        10-X | COUNTERSIGNATURE OF AUTHORIZED AGENT |
|---|---|---|

180001—1-65

## AMENDATORY ENDORSEMENT – LIMIT OF LIABILITY

| INSURED | POLICY NUMBER |
|---|---|
| Wolverine World Wide, Inc., et al. | XLX 148 41 89 |
| **PRODUCER** | **EFFECTIVE DATE** |
| Frank B. Hall & Co. | 1/1/84 |

In consideration of the premium charged, it is agreed Insuring Agreement 2, Limit of Liability, is changed to read as follows:

2. Limit of Liability

The Company shall be liable only for the limit of liability stated in Item 3 of the Declarations in excess of the limit or limits of liability of the applicable underlying insurance policy or policies all as stated in the declarations of this policy. The limit of the liability stated in the declarations as applicable to "each occurrence" shall be the total limit of the Company's liability for all damages sustained as the result of any one occurrence, provided, however, in the event of reduction or exhaustion of the applicable aggregate limit or limits of liability under said underlying policy or policies solely by reason of losses paid thereunder on account of occurrences during this policy period, this policy shall in the event of reduction, apply as excess of the reduced limit of liability thereunder. Subject to the applicable limit of liability as respects each occurrence, the limit of liability stated in the declarations as "aggregate" shall be the total limit of the Company's liability for all damages sustained during each annual period of this policy because of (i) personal injury and property damage arising out of the completed operations hazard and products hazard, combined; or (ii) advertising whenever occurring by whatever media, on account of all occurrences; or (iii) injury arising out of any hazard, other than as described in (i) and (ii), to which the underlying policy affords coverage subject to an aggregate limit and to which this policy also applies.

All other terms and conditions of the policy remain the same and unchanged.

| ONE OF THE<br>FIREMAN'S FUND INSURANCE COMPANIES<br>AS NAMED IN THE POLICY | *Myron Du Bain*<br>PRESIDENT    10-X | COUNTERSIGNATURE OF AUTHORIZED AGENT |
|---|---|---|

180001—1-65

PRODUCER'S CODE    NAME AND LOCATION    PREVIOUS POLICY NUMBER    POLICY NUMBER

20 211 013   Frank B. Hall & Co. - Boston   XLX 148 41 89   3-62   **XLX-162 13 65**

## BLANKET EXCESS LIABILITY POLICY
### (FOLLOWING FORM)

BSN

Coverage is provided in the Company designated by number,
**18**   a stock insurance Company (herein called the Company)

### DECLARATIONS

ITEM 1. INSURED'S NAME AND ADDRESS (NO., STREET, TOWN, COUNTY, STATE)

Wolverine World Wide, Inc., et al.
(See Endorsement #1)
9341 Courtland Drive
Rockford, Michigan 49351



01 **FIREMAN'S FUND**   SAN FRANCISCO, CALIFORNIA
   INSURANCE COMPANY
18 **THE AMERICAN**   PARSIPPANY, NEW JERSEY
   INSURANCE COMPANY
07 **NATIONAL SURETY**   CHICAGO, ILLINOIS
   CORPORATION
13 **ASSOCIATED INDEMNITY**   SAN FRANCISCO, CALIFORNIA
   CORPORATION
15 **AMERICAN AUTOMOBILE**   CREVE COEUR, MISSOURI
   INSURANCE COMPANY

**FIREMAN'S FUND INSURANCE COMPANIES**
MAIL ADDRESS
SAN FRANCISCO
CALIFORNIA

**Frank B. Hall & Co. of Massachusetts, Inc.**
89 Broad Street, Boston Mass. 02110
**(617) 482-3100**
*(formerly Boit, Dalton & Church)*

POLICY PERIOD:

ITEM 2.   1/1/85     1/1/86
INCEPTION (MO. DAY YR.)    EXPIRATION (MO. DAY YR.)
12:01 A.M., STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN.

| ITEM 3. | LIMIT OF LIABILITY: | | |
|---|---|---|---|
| | | $ 15,000,000. | EACH OCCURRENCE |
| | | $ 15,000,000. | AGGREGATE |

| ITEM 4. | UNDERLYING INSURANCE LIMIT OF LIABILITY | | |
|---|---|---|---|
| | | $ 5,000,000. | EACH OCCURRENCE |
| | | $ 5,000,000. | AGGREGATE |

| ITEM 5. | PREMIUM BASIS | ITEM 6. | |
|---|---|---|---|
| $   Flat Charge | | ADVANCE PREMIUM: $ 12,500. | |
| | | ANNUAL MINIMUM PREMIUM: $ 12,500. | |

IN THE EVENT OF CANCELLATION BY THE NAMED INSURED, THE COMPANY SHALL RECEIVE AND RETAIN NOT LESS THAN $ 500. AS THE POLICY MINIMUM PREMIUM.

ITEM 7. SCHEDULE OF UNDERLYING INSURANCE:   $5,000,000. Single Limit any one occurrence combined Personal Injury and/or Property Damage and/or Advertising Liability and/or Aircraft Liability as provided by INA, Policy No. to be advised, in excess of various scheduled primary limits or self-insured retentions.

## FOLLOWING FORM BLANKET EXCESS LIABILITY POLICY

The Company designated above, a stock insurance company, (herein called the Company) agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

### INSURING AGREEMENTS

**1. Coverage.** To indemnify the Insured for the Insured's ultimate net loss in excess of the insurance afforded under the Blanket Excess Liability or "Umbrella" policies specified in Item 7 of the Declarations, hereafter called underlying insurance, in full force and effect at the inception of this policy, provided that the insurance for injury to or destruction of property under this policy and underlying policies shall not apply except as respects injury to or destruction of corporeal property, including loss of use thereof.

**2. Limit of Liability.** The Company shall be liable only for the limit of liability stated in Item 3 of the Declarations in excess of the limit or limits of liability of the applicable underlying insurance policy or policies all as stated in the declarations of this policy. The limit of the liability stated in the declarations as applicable to "each occurrence" shall be the total limit of the Company's liability for all damages sustained as the result of any one occurrence, provided, however, in the event of reduction or exhaustion of the applicable aggregate limit or limits of liability under said underlying policy or policies solely by reason of losses paid thereunder on account of occurrences during this policy period, this

policy shall in the event of reduction, apply as excess of the reduced limit of liability thereunder. Subject to the applicable limit of liability as respects each occurrence, the limit of liability stated in the declarations as "aggregate" shall be the total limit of the Company's liability for all damages sustained during each annual period of this policy.

**3. Policy Period.** This policy applies only to occurrences which take place during the policy period.

### DEFINITIONS

"Ultimate net loss" means all sums actually paid, or which the Insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded by this policy, after proper deduction of all recoveries or salvage.

### CONDITIONS

**1. Maintenance of Primary Insurance.** The Insured warrants, and it is a condition of this policy, that at the inception of this policy, insurance afforded by the underlying policies of insurance (apply-

(Continued on Page Two)

| COUNTERSIGNATURE DATE | COUNTERSIGNATURE OF AUTHORIZED AGENT |
|---|---|
| 2/8/85 cam | FRANK B. HALL & CO. of MASSACHUSETTS, INC. |

PAGE ONE      By    Authorized    5902—2-72

(Continued from Preceding Page)

ing as excess over various policies of primary insurance) with combined limits of liability for said underlying insurance stated in Item 4 of the declarations, or renewals or replacements thereof not affording coverages other than those at inception of this policy, shall be maintained in full effect during the period of this policy, except for reduction of aggregate limits solely as a result of payment of claims arising out of occurrences during this policy period. If such underlying insurance is not maintained in full effect by the Insured or if there is any change in the scope of coverage under any underlying insurance, the insurance afforded by this policy shall apply in the same manner as though such underlying policies had been so maintained and unchanged.

The insurance afforded by this policy is subject to the same warranties, terms (including the terms used to describe the application of the limits of liability), conditions and exclusions as are contained in the underlying insurance on the effective date of this policy, except, unless otherwise specifically provided in this policy, any such warranties, terms, conditions or exclusions relating to premium, the obligation to investigate and defend, the amount and limits of liability, and any renewal agreement.

2. Notice of Occurance. The Insured shall immediately advise the Company of any occurrence or disaster which will probably result in liability under this policy. The Company shall not, however, be called upon to assume charge of the settlement or defense of any claims made, or suits brought, or proceedings instituted against the Insured, but shall have the right and opportunity to be associated with the Insured in the defense and trial of any such claims, suits or proceedings relative to any occurrence which, in the opinion of the Company, may create liability on the part of the Company under the terms of the policy. If the Company avails itself of such right and opportunity, the Insured and the Company shall cooperate in all respects so as to effect a final determination of the claim or claims.

3. Payment of Loss. It is a condition of this policy that the insurance afforded under this policy shall apply only after all underlying insurance has been exhausted. Upon final determination by settlement, award or verdict of the liability of the Insured, the Company shall promptly pay the Insured as the Insured shall pay, or be required to pay, the amounts of any losses falling within the terms or limits of this insurance. All losses covered under this policy shall be due and payable by the Company within 30 days after they are respectively claimed and proof of loss filed with the Company in conformity with this policy. Bankruptcy or insolvency of the Insured shall not relieve the Company of any of its obligations hereunder.

4. Payment of Expenses. Loss expenses and legal expenses, including court costs and interest, if any, which may be incurred by the

Insured with the consent of the Company in the adjustment or defense of claims, suits or proceedings shall be borne by the Company and the Insured in the proportion that each party's share of loss bears to the total amount of said loss. Loss expense hereunder shall not include salaries and expense of the Insured's employees incurred in investigation, adjustment and litigation.

5. Appeal. In the event the Insured or any underlying insurer elects not to appeal a judgment in excess of the amount of the underlying insurance, the Company may elect to appeal at its expense and shall be liable for the expenses incidental thereto, but in no event shall the liability of the Company for ultimate net loss exceed the amount set forth in the policy plus the expenses incidental to such appeal.

6. Subrogation. In the event of any payment of this policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

Any amount recovered as subrogation shall be apportioned in the inverse order of payment of loss to the extent of actual payment. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries. If there is no recovery in proceedings conducted solely by the Company, the Company shall bear the expenses thereof.

7. Premium. The premium for this policy shall be computed upon the basis stated in the Declarations. The advance premium stated in the Declarations, unless otherwise specified is an estimated premium only. Upon termination of this policy the earned premium shall be computed and if the earned premium is more than the advance premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion, subject to the annual minimum premium stated in the Declarations for each twelve months of the policy period, and subject further to the policy minimum premium as stated in the Declarations.

8. Cancellation. This policy may be cancelled by either party upon 30 days' notice in writing to the other, stating the date cancellation shall be effective. If cancellation is at the request of the Insured, adjustment of premium shall be made pro rata. However, in the event of cancellation or termination of the underlying insurance, this policy shall cease to apply at the same time without notice to the Insured. Notice shall be given by the Company to the Insured at the address shown in the declarations. Payment or tender of unearned premium is not a condition of cancellation.

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

### (BROAD FORM)

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

III. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material," "special nuclear material," and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means and fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating

PAGE TWO

(Continued on Next Page)

**(Continued from Preceding Page)**

the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

IN WITNESS WHEREOF, FIREMAN'S FUND INSURANCE COMPANY has caused this Policy to be signed by its President and Secretary but this Policy shall not be valid unless countersigned by a duly authorized Agent of the Company.

SECRETARY

PRESIDENT

FINAL PAGE

End. #1

| NAMED INSURED |
| --- |

| INSURED | POLICY NUMBER |
| --- | --- |
| Wolverine World Wide, Inc. | XLX 162 13 65 |
| PRODUCER | EFFECTIVE DATE |
| Frank B. Hall & Co. | 1/1/85 |

Wolverine World Wide, Inc.

Wolverine Service Club

Wolverine Mutual Benefit Assoc.

Wolverine World Wide Employee's
  Federal Credit Union


And all subsidiaries (including subsidiary thereof) and/or
divisions or entities of the Named Insured now existing or
which the Named Insured may create, acquire, organize or
control, and any other company coming under the Named
Insured's control or which it assumes active management.

| ONE OF THE<br>FIREMAN'S FUND INSURANCE COMPANIES<br>AS NAMED IN THE POLICY | *James J. Meenaghan*<br>PRESIDENT    10-X | COUNTERSIGNATURE OF AUTHORIZED AGENT |
| --- | --- | --- |

180001—1-65

End. #2

## CROSS LIABILITY EXCLUSION

| INSURED | POLICY NUMBER |
|---|---|
| Wolverine World Wide, Inc. | XLX 162 13 65 |
| **PRODUCER** | **EFFECTIVE DATE** |
| Frank B. Hall & Co. | 1/1/85 |

In consideration of the premium charged, it is understood and agreed that such coverage as is afforded by this policy shall not apply to any claim, action or suit brought by or on behalf of any Insured under this policy against any other Insured under this policy.

| ONE OF THE<br>**FIREMAN'S FUND INSURANCE COMPANIES**<br>AS NAMED IN THE POLICY | *James J. Meenaghan*<br>PRESIDENT        10-X | COUNTERSIGNATURE OF AUTHORIZED AGENT |
|---|---|---|

180001—1-65

End. # 3

POLLUTION - ABSOLUTE EXCLUSION

| INSURED | POLICY NUMBER |
|---|---|
| Wolverine World Wide, Inc. | XLX 162 13 65 |
| PRODUCER | EFFECTIVE DATE |
| Frank B. Hall & Co. | 1/1/85 |

It is agreed that the insurance afforded under this policy shall
not apply to:

POLLUTION - to any liability (1) arising out of the discharge,
dispersal, release or escape of smoke, vapors, soot, fumes, acids,
alkalis, toxic chemicals, liquids or gases, waste materials or
other irritants, contaminants or pollutants into or upon land,
the atmosphere or any watercourse or body of water; (2) for the
cost of removing, nullifying or cleaning up seeping, polluting
or contaminating substances; or (3) for the payment of fines,
penalties, punitive or exemplary damages;  as respects the
following location only which is the Insured's tannery:

        123 North Main Street
        Rockford, Michigan

| ONE OF THE<br>FIREMAN'S FUND INSURANCE COMPANIES<br>AS NAMED IN THE POLICY | *James J. Meenaghan*<br>PRESIDENT  10-X | COUNTERSIGNATURE OF AUTHORIZED AGENT |
|---|---|---|

180001—1·65

End. #4

AMENDATORY ENDORSEMENT  —  LIMIT OF LIABILITY

| INSURED | POLICY NUMBER |
|---|---|
| Wolverine World Wide, Inc. | XLX 162 13 65 |
| PRODUCER | EFFECTIVE DATE |
| Frank B. Hall & Co. | 1/1/85 |

In consideration of the premium charged, it is agreed Insuring Agreement 2, Limit of Liability , is changed to read as follows:

2.  **LIMIT OF LIABILITY**

The Company shall be liable only for the limit of liability stated in Item 3 of the Declarations in excess of the limit or limits of liability of the applicable underlying insurance policy or policies all as stated in the declarations of this policy.  The limit of liability stated in the declarations as applicable to "each occurrence" shall be the total limit of the Company's liability for all damages sustained as the result of any one occurrence, provided, however, in the event of reduction or exhaustion of the applicable aggregate limit or limits of liability under said underlying policy or policies solely by reason of losses paid hereunder on account of occurrences during this policy period and for which coverage is afforded by this policy, this policy shall in the event of reduction, apply as excess of the reduced limit of liability thereunder. Subject to the applicable limit of liability as respects each occurrence, the limit of liability stated in the declarations as "aggregate" shall be the total limit of the Company's liability for all damages sustained during each annual period of this policy becuase of (i) personal injury and property damage arising out of the completed operations hazard and products hazard, combined; or (ii) advertising whenever occurring by whatever media, on account of all occurrence; or (iii) injury arising out of any hazard, other than as described in (i) and (ii), to which the underlying policy affords coverage subject to an aggregate limit and to which this policy also applies.

Accepted by _____
(Authorized Signature)

Date _____

| ONE OF THE **FIREMAN'S FUND INSURANCE COMPANIES** AS NAMED IN THE POLICY | _Myron Du Bain_ PRESIDENT    10-X | COUNTERSIGNATURE OF AUTHORIZED AGENT |
|---|---|---|

180001—1-85

NOTICE OF CANCELLATION

End. #5

| INSURED | POLICY NUMBER |
|---|---|
| Wolverine World Wide, Inc. | XLX 162 13 65 |
| **PRODUCER** | **EFFECTIVE DATE** |
| Frank B. Hall & Co. | 1/1/85 |

It is understood and agreed that the words "thirty (30) days" as stated in CONDITION, Item #8, CANCELLATION are amended to read sixty (60) days.

All other terms and conditions remain unchanged.

| ONE OF THE **FIREMAN'S FUND INSURANCE COMPANIES** AS NAMED IN THE POLICY | *William H. McCormick* PRESIDENT    10-X | COUNTERSIGNATURE OF AUTHORIZED AGENT |
|---|---|---|

180001—1-65

ENDT. #6

| NAMED INSURED |
|---|

| INSURED | POLICY NUMBER |
|---|---|
| Wolverine World Wide, Inc.,   et al | XLX-162 13 65 |
| PRODUCER | EFFECTIVE DATE |
| Frank B. Hall | 1/1/85 |

The Named Insured as shown in the Declarations is amended to include the following:

        T.S.E., Inc.

| ONE OF THE<br>**FIREMAN'S FUND INSURANCE COMPANIES**<br>AS NAMED IN THE POLICY | _William H. Helmuth_<br>PRESIDENT        10-X | COUNTERSIGNATURE OF AUTHORIZED AGENT |
|---|---|---|

180001—1-65

ENDT. #7

| NAMED INSURED | |
|---|---|

| INSURED Wolverine World Wide, Inc.,    et al | POLICY NUMBER XLX-162 13 65 |
|---|---|
| PRODUCER Frank B. Hall | EFFECTIVE DATE 3/20/85 |

The Named Insured as shown in the Declarations is amended to include the following:

W.G.C., Inc.

| ONE OF THE FIREMAN'S FUND INSURANCE COMPANIES AS NAMED IN THE POLICY    _William H. delmunil_    PRESIDENT    10-X | COUNTERSIGNATURE OF AUTHORIZED AGENT |
|---|---|

180001—1-65



100% Recycled   30% PCW

3

L-DJ    12110:
& McLennan   GL: 10%
Detroit    Auto: 10% Liab.
CT/1s 7-8-77    10% Physical Damage

XX New; ☐ Renewal; ☐ Rewrite of:

Policy No.    Prev. Carrier No.

☆ NEW BUSINESS

## INSURANCE COMPANY OF NORTH AMERICA   MULTIPLE LIABILITY POLICY

GAL 33 14 83

**Named Insured**
WOLVERINE WORLD WIDE, INC., etal
9341 Courtland Drive
Rockford, MI. 49351

**Address**

Rate Basis Composite

Comp 08 15/77

The Named Insured is:
☐ Individual ☐ Partnership ☒ Corporation
☐ Joint Venture ☐ (Other)

Auto renewed by Home #GA 9392158 10%
G.L. renewed by INA-GAL376 ACCT EXEC RLB-DO3

Contact

12:01 A.M., standard time at the address of the Named Insured as stated herein.

**Policy Period: From** 3-1-77 **to** 3-1-78

**Occupation:**

**Audit Period:** Annual, unless otherwise stated

The insurance afforded is only with respect to such of the following Parts and Coverages therein as are indicated by ☒. The limit of the Company's liability against each such Coverage shall be as stated herein, subject to all of the terms of the policy having reference thereto.

| COVERAGE PARTS | LIMITS OF LIABILITY | | | |
|---|---|---|---|---|
| | Bodily Injury Liability | | Property Damage Liability | |
| | each occurrence | aggregate | each occurrence | aggregate |
| ☐ Owners', Landlords' and Tenants' Liability Insurance | | | | |
| ☐ Structural Alterations, New Construction, Demolition | | | | |
| ☐ Manufacturers' and Contractors' Liability Insurance | | | | |
| ☐ Independent Contractors | | | | |
| ☐ Completed Operations and Products Liability Insurance | | | | |
| ☐ Contractual Liability Insurance | | | | |
| ☒ Comprehensive General Liability Insurance | 500,000 | 500,000 | 100,000 | 100,000 |
| ☐ | | | | |
| | each person | each occurrence | each occurrence | |
| ☒☒ Comprehensive Automobile Insurance | 250,000 | 500,000 | 100,000 | |
| ☐ | | | | |
| | Personal Liability | | Personal Medical Payments | |
| | each occurrence | each person | | each accident |
| ☐ Comprehensive Personal Insurance | $ | $ | | $ |
| ☐ Farmer's Comprehensive Personal Insurance | | | | |
| | Physical Damage to Property | | Animal Collision—Farmer's Part Only Market Value not exceeding $300 each animal | |
| | $ | each occurrence | | |
| | each person | | each accident | |
| ☐ Premises Medical Payments Insurance | $ | | $ | |
| ☒☒ Automobile Medical Payments Insurance | $ 1,000 | | ///////// | |
| ☒☒ Insurance Against Uninsured Motorist | $ See Form DA907 | | $ | |
| | each person aggregate | | general aggregate | |
| ☒☒ Personal Injury Liability Insurance | $ 500,000 | | $ 500,000 | |
| ☒☒ Automobile Physical Damage Insurance (Fleet Automatic or Non-Fleet) | (See Additional Declarations attached for Coverages and Limits of Liability) | | | |
| ☐ Automobile Physical Damage Insurance (Dealers) | (See Additional Declarations attached for Coverages and Limits of Liability) | | | |
| ☐ Garage Insurance | (See Additional Declarations attached for Coverages and Limits of Liability) | | | |

**Endorsements attached to policy at inception:**
LC 1032A, D1426B, D2256, DA908, DA8143

During the past three years no insurer has cancelled insurance, issued to the Named Insured, similar to that afforded hereunder, unless otherwise stated herein:

| TOTAL ADVANCE PREMIUM ► $ 133,665 | If the Policy Period is more than one year and the premium is to be paid in installments, premium is payable on: |
|---|---|
| Effective Date $ | |
| 1st Anniversary $ | |
| 2nd Anniversary $ | Countersigned By_____ |
| | Authorized Agent |

This Declarations and Coverage Part(s), with Policy Standard Provisions and Endorsements, if any, issued to form a part thereof, completes the above numbered po

GL-178   Printed in U.S.A.     **AGENT'S COPY**

# INA

## COMPREHENSIVE GENERAL LIABILITY INSURANCE

| ADDITIONAL DECLARATIONS | Policy No. **GAL 33 14 83** |
|---|---|

## SCHEDULE

Location of all premises owned by, rented to or controlled by
the Named Insured **The United States of America, including Puerto Rico**

Interest of Named Insured in such premises ☐ Owner ☐ General Lessee ☐ Tenant **As applicable**

Part occupied by Named Insured **As applicable**

The following discloses all hazards insured hereunder known to exist at the effective date of this policy, unless otherwise stated herein.

| Code No. | Description of Hazards | Premium Bases | Rates B.I. | Rates P.D. | Advance Premiums Bodily Injury | Advance Premiums Property Damage |
|---|---|---|---|---|---|---|
| | **Premises—Operations** | | | | | |
| | Included in composite rate | | | | | |
| | | (a) Area (Sq. Ft.)<br>(b) Frontage<br>(c) Admissions<br>(d) Remuneration<br>(e) Receipts<br>(f) Units | (a) Per 100 Sq. Ft. of Area<br>(b) Per Linear Foot<br>(c) Per 100 Admissions<br>(d) Per $100 of Remuneration<br>(e) Per $100 of Receipts<br>(f) Per Unit | | | |
| | Escalators (Number at Premises)<br>Included in composite rate | Number Insured | Per Landing | | | |
| | Independent Contractors<br>Included in composite rate | Cost | Per $100 of Cost | | | |
| | Completed Operations<br>Included in composite rate | (a) Receipts | (a) Per $1000 of Receipts | | | |
| | Products<br>Included in composite rate | (b) Sales | (b) Per $1000 of Sales | | | |
| | Minimum Premium(s) | | TOTALS | $ | $ | |
| | | | TOTAL ADVANCE PREMIUM ▶ $ | | | |

GL-102 (CGL) (Page 1 of 3) 3/73 PRINTED IN U.S.A.

**AGENT'S COPY**



**INA**  **PEG**

## CONTRACTUAL LIABILITY INSURANCE COVERAGE PART
### (Blanket Coverage) ✓

ADDITIONAL DECLARATIONS | Policy No. __GAL 33 14 83__ ✓

### SCHEDULE

It is agreed that the Limits of Liability set forth in the Policy Declarations for the Contractual Liability Coverage Part shall apply as respects any coverage afforded hereunder unless other specific limits are set forth below.

| Coverage | Limits of Liability (this Coverage Part only) |
|---|---|
| Contractual Bodily Injury Liability | $ 500,000 ✓ each occurrence |
| Contractual Property Damage Liability | $ 100,000 ✓ each occurrence |
| | $ 100,000 ✓ aggregate |

| Code No. | Designation of Contracts on file or known to the Company | Premium Bases | Rates | | Advance Premiums | |
|---|---|---|---|---|---|---|
| | | | B.I. | P.D. | Bodily Injury | Property Damage |
| | **Included in composite rate** ✓ | (a) Sales (b) Cost | (a) Per $1,000 of Sales (b) Per $100 of Cost | | | |
| Minimum Premium(s) | | | TOTALS | | $ | $ |
| | | | TOTAL ADVANCE PREMIUM ► $ | | | |

The following exclusions do not apply with respect to any "construction agreements":

When used as a premium basis:

1.  the word "cost" means the total cost of all work in connection with all contracts of the type designated in the schedule for this insurance with respect to which "cost" is the basis of premium, regardless of whether any liability is assumed under such contracts by the Insured. It includes the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the Insured, or others including all fees, allowances, bonuses or commissions made, paid or due. It shall not include the cost of any operations to which exclusions (o) or (p) apply, unless such exclusions are voided in the schedule.

2.  the word "sales" means the gross amount of money charged by the Named Insured or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the Named Insured and such others collect as a separate item and remit directly to a governmental division.

GL-215 (KB) Printed in U.S.A.

## CONTRACTUAL PROPERTY DAMAGE LIABILITY

The Company will pay on behalf of the Insured all sums which the Insured, by reason of contractual liability assumed by him under any written contract of the type designated in the schedule for this insurance, shall become legally obligated to pay as damages because of

bodily injury or
property damage

to which this insurance applies, caused by an occurrence, except the liability of the indemnitee resulting from his sole negligence and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend (1) any arbitration proceeding wherein the Company is not entitled to exercise the Insured's rights in the choice of arbitrators and in the conduct of such proceedings, or (2) any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

### Exclusions

This insurance does not apply:

(a) to liability assumed by the Insured under any incidental contract;

(b) (1) if the Insured is an architect, engineer or surveyor, to bodily injury or property damage arising out of professional services performed by such Insured, including (i) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, and (ii) supervisory, inspection or engineering services; (2) if the indemnitee of the Insured is an architect, engineer or surveyor, to the liability of the indemnitee, his agents or employees, arising out of (i) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, or (ii) the giving of or failure to give directions or instructions by the indemnitee, his agents or employees, provided such giving or failure to give is the primary cause of the bodily injury or property damage;

(c) to bodily injury or property damage due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing;

(d) to bodily injury or property damage for which the indemnitee may be held liable

    (1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

    (2) if not so engaged, as an owner or lessor of premises used for such purposes,

  if such liability is imposed

    (i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or

    (ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;

    but part (ii) of this exclusion does not apply with respect to liability of the indemnitee as an owner or lessor described in (2) above;

(e) to any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(f) to any obligation for which the Insured may be held liable in an action on a contract by a third party beneficiary for bodily injury or property damage arising out of a project for a public authority; but this exclusion does not apply to an action by the public authority or any other person or organization engaged in the project;

(g) to property damage to (1) property owned or occupied by or rented to the Insured, (2) property used by the Insured, or (3) property in the care, custody or control of the Insured or as to which the Insured is for any purpose exercising physical control;

(h) to property damage to premises alienated by the Named Insured arising out of such premises or any part thereof;

(i) to loss of use of tangible property which has not been physically injured or destroyed resulting from

    (1) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement, or

    (2) the failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance, quality, fitness or durability warranted or represented by the Named Insured;

    but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an Insured;

(j) to property damage to the Named Insured's products arising out of such products or any part of such products;

(k) to property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(l) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the Named Insured's products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

nance, operation, use, loading or unloading of any mobile equipment while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity;

(n) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

Unless stated in the schedule as not applicable, the following exclusions also apply to contractual liability assumed by the Insured under any agreement relating to construction operations.

This insurance does not apply:

(o) to bodily injury or property damage arising out of construction, maintenance or repair of watercraft or loading or unloading thereof;

(p) to bodily injury or property damage arising out of operations, within fifty feet of any railroad property, affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing;

(q) to bodily injury or property damage included within the completed operations hazard or the products hazard;

(r) to property damage included within (1) the explosion hazard, (2) the collapse hazard, or (3) the underground property damage hazard.

### II. PERSONS INSURED

Each of the following is an Insured under this insurance to the extent set forth below:

(a) if the Named Insured is designated in the declarations as an individual, the person so designated and his spouse;

(b) if the Named Insured is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the Named Insured is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such.

This insurance does not apply to bodily injury or property damage arising out of the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not designated in this policy as a Named Insured.

### III. LIMITS OF LIABILITY

Regardless of the number of (1) Insureds under this policy, (2) persons or organizations who sustain bodily injury or property damage, or (3) claims made or suits brought on account of bodily injury or property damage, the Company's liability is limited as follows:

Contractual Bodily Injury Liability—The total liability of the Company for all damages, including damages for care and loss of services, because of bodily injury sustained by one or more persons as a result of any one occurrence shall not exceed the limit of bodily injury liability stated in the schedule or the declarations as applicable to "each occurrence".

Contractual Property Damage Liability—The total liability of the Company for all damages because of all property damage sustained by one or more persons or organizations as the result of any one occurrence shall not exceed the limit of property damage liability stated in the schedule or the declarations as applicable to "each occurrence".

Subject to the above provision respecting "each occurrence", the total liability of the Company for all damages because of all property damage to which this coverage applies shall not exceed the limit of property damage liability stated in the schedule or the declarations as "aggregate". Such aggregate limit of liability applies separately with respect to each project away from premises owned by or rented to the Named Insured.

Contractual Bodily Injury and Property Damage Liability

For the purpose of determining the limit of the Company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

### IV. POLICY TERRITORY

This insurance applies only to bodily injury or property damage which occurs within the policy territory.

### V. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"contractual liability" means liability expressly assumed under a written contract or agreement; provided, however, that contractual liability shall not be construed as including liability under a warranty of the fitness or quality of the Named Insured's products or a warranty that work performed by or on behalf of the Named Insured will be done in a workmanlike manner;

"suit" includes an arbitration proceeding to which the Insured is required to submit or to which the Insured has submitted with the Company's consent.

### VI. ADDITIONAL CONDITION

#### Arbitration

The Company shall be entitled to exercise all of the Insured's rights in the choice of arbitrators and in the conduct of any arbitration proceeding.

#### Premium

The advance premium stated in the schedule is the estimated premium on account of such written contracts as are on file with or known to the Company. The Named Insured shall notify the Company of all other written contracts entered into during the policy period to which this insurance applies.

# PERSONAL INJURY LIABILITY INSURANCE
## COVERAGE PART

ADDITIONAL DECLARATIONS     Policy No. **GAL 33 14 83** ✓

## SCHEDULE

The insurance afforded is only with respect to personal injury arising out of an offense included within such of the following groups of offenses as are indicated by specific premium charge or charges.

| GROUPS OF OFFENSES | | ADVANCE PREMIUM |
|---|---|---|
| A. False Arrest, Detention or Imprisonment, or Malicious Prosecution | — | $_____ |
| B. Libel, Slander, Defamation or Violation of Right of Privacy | — | $_____ |
| C. Wrongful Entry or Eviction or Other Invasion of Right of Private Occupancy | — | $_____ |

Insured's Participation _____%   Minimum Premium $_____   TOTAL ADVANCE PREMIUM ▶   $_____

**Included in Composite Rate** ✓

## I. COVERAGE P—PERSONAL INJURY LIABILITY

The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury (herein called "personal injury") sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the Named Insured's business:

Group A—false arrest, detention or imprisonment, or malicious prosecution;

Group B—the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the Named Insured;

Group C—wrongful entry or eviction, or other invasion of the right of private occupancy;

if such offense is committed during the policy period within the United States of America, its territories or possessions, or Canada, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such personal injury even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

### Exclusions

This insurance does not apply:

(a) to liability assumed by the Insured under any contract or agreement;

(b) to personal injury arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of any Insured;

(c) to personal injury sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the Named Insured;

(d) to personal injury arising out of any publication or utterance described in Group B, if the first injurious publication or utterance of the same or similar material by or on behalf of the Named Insured was made prior to the effective date of this insurance;

(e) to personal injury arising out of a publication or utterance described in Group B, concerning any organization or business enterprise, or its products or services, made by or at the direction of any Insured with knowledge of the falsity thereof.

## II. PERSONS INSURED

Each of the following is an Insured under this insurance to the extent set forth below:

(a) if the Named Insured is designated in the declarations as an individual, the person so designated and his spouse;

(b) if the Named Insured is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the Named Insured is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such.

This insurance does not apply to personal injury arising out of the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not designated in this policy as a Named Insured

## III. LIMITS OF LIABILITY; INSURED'S PARTICIPATION

Regardless of the number of (1) Insureds under this policy, (2) persons or organizations who sustain personal injury, or (3) claims made or suits brought on account of personal injury, the total liability of the Company's liability under this coverage for all damages shall not exceed the limit of personal injury liability stated in the declarations as "aggregate".

If a participation percentage is stated in the schedule for the Insured, the Company shall not be liable for a greater proportion of any loss than the difference between such percentage and one hundred percent and the balance of the loss shall be borne by the Insured; provided, the Company may pay the Insured's portion of a loss to effect settlement of the loss, and, upon notification of the action taken, the Named Insured shall promptly reimburse the Company therefor.

## IV. ADDITIONAL DEFINITION

When used in reference to this insurance:

"damages" means only those damages which are payable because of personal injury arising out of an offense to which this insurance applies.



**AGENT'S COPY**

 **EMPLOYEE BENEFITS LIABILITY**

| Named Insured | | |
|---|---|---|
| Policy No. GAL 33 14 83 ✓ | Policy Period | Effective Date of Endorsement 3-1-77 ✓ |
| Issued by (Name of Insurance Company) | | |

*The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.*

In consideration of the premium and in reliance upon the Statements in the Application and subject to the terms of this endorsement and of the Policy to which this endorsement is attached, the Company agrees with the Insured named in the Declarations of the Policy:

### INSURING AGREEMENTS

I. **COVERAGE.** To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages on account of any claim made against the Insured by any Employee, Former Employee or the beneficiaries or legal representatives thereof and caused by any negligent act, error or omission of the Insured, or any other person for whose acts the Insured is legally liable, in the administration of the Insured's Employee Benefit Programs as defined herein.

II. It is agreed that $1,000.00 shall be deducted from the total amount paid by the Company as the result of each occurrence covered by this policy and the Company shall be liable for loss only in excess of such amount. All loss arising out of continuous or repeated exposure to the same general conditions shall be considered as arising out of one occurrence. It is further understood and agreed that in event of any claim, irrespective of the amount, notice thereof shall be given to the Company, or any of its authorized agents, by or on behalf of the Insured, in accordance with the terms of the Policy and the Company may at its option, investigate such claim or negotiate or settle any claim, and the Insured agrees, if the Company undertakes to negotiate or settle any such claim, to join the Company in such negotiation or settlement to the extent of the amount to be deducted herein provided, or to reimburse the Company for such deductible amount, if and when such claim is paid by the Company.

III. The DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS provisions of the policy shall apply as respects the insurance hereby afforded, except that the Company shall not make settlement or compromise any claim or suit without the written consent of the Insured.

IV. **POLICY PERIOD & TERRITORY.** As respects the insurance hereby afforded this endorsement applies only to claims under the legal jurisdiction of a court of law or a court of equity within the United States of America, its territories or possessions or Canada, resulting from negligent acts, errors or omissions of the Insured, or any person acting on behalf of the Insured in the administration of Employee Benefit Programs provided such claim is brought against the Named Insured during the policy period and the Named Insured at the effective date of this policy, had no knowledge of or could not have reasonably foreseen any circumstances which might result in a claim or suit.

### DEFINITIONS

1. **INSURED.** The unqualified word "Insured" wherever used in relation to the insurance afforded hereby, includes not only the Named Insured, but also any partner, executive officer, director, stockholder or employee, provided such employee is authorized to act in the administration of the Insured's Employee Benefit Programs.

2. **EMPLOYEE BENEFITS.** The term "Employee Benefits" shall mean group life insurance, group health insurance, profit sharing plans, pensions plans, employee stock subscription plans, employee travel, vacation or savings plans, workmen's compensation, unemployment insurance, social security and disability benefits insurance.

3. **ADMINISTRATION.** As respects the insurance afforded hereby, the unqualified word "Administration", wherever used shall mean:

   (a) Giving counsel to employees with respect to the Employee Benefit Programs;

   (b) Interpreting the Employee Benefit Programs;

   (c) Handling of records in connection with the Employee Benefit Programs;

   (d) Effecting enrollment, termination or cancellation of employees under the Employee Benefit Programs;

   provided all such acts are authorized by the Named Insured.

### EXCLUSIONS

The insurance afforded by this endorsement does not apply:

   (a) To any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination, or humiliation;

   (b) To bodily injury to, or sickness, disease, or death, of any person, or to injury to or destruction of any tangible property, including the loss of use thereof;

   (c) To any claim for failure of performance of contract by any Insurer;

   (d) To any claim based upon the Insured's failure to comply with any law concerning Workmen's Compensation, Unemployment Insurance, Social Security or Disability Benefits;

   (e) To any claim based upon failure of stock to perform as represented by an Insured;

   (f) To any claim based upon advice given by an Insured to an employee of the Named Insured to participate or not to participate in stock subscription plans.

   (g) To any claim based upon any actual or alleged error or omission or breach of duty, committed or alleged to have been committed by a trustee, in the discharge of fiduciary duties, obligations or responsibilities imposed by the Federal Employee Retirement Income Security Act of 1974."

### CONDITIONS

The conditions of the policy entitled "Insured's Duties in the Event of Occurrence, Claim or Suit", "Action Against Company", "Other Insurance", "Subrogation", "Changes", "Assignment", and "Cancellation" apply to the insurance afforded hereby and the following Conditions apply:

A. **LIMITS OF LIABILITY.** The Limit of Liability stated in the Declarations as applicable to "each claim" is the limit of the Company's liability for all damages incurred on account of any claim covered hereunder; the limit of liability stated in the Declarations as "aggregate" is, subject to the above provision respecting each claim, the total limit of the Company's liability for all claims covered hereunder and occurring during each policy year. The inclusion herein of more than one Insured shall not operate to increase the limits of the Company's liability.

B. **PREMIUM.** The premium stated in the Declarations is an estimated premium only. Upon termination of each annual period of this Policy the Insured, on request will furnish the Company a statement of the total number of employees at the end of the period and the earned premium shall be computed on the average number of employees at the beginning and the end of such period in accordance with the rates set forth in the Declarations. If the earned premium thus computed exceeds the estimated advance premium paid, the Insured shall pay the excess to the Company; if less, the Company shall return to the Insured the unearned portion paid by such Insured subject to the Minimum Premium for this insurance stated in the Declarations.

C. **TERMS OF ENDORSEMENT CONFORMED TO STATUTE.** Terms of this endorsement which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

**Endorsement #3** ✓

_____
**Authorized Agent**     ✓

111d Ptd. in U.S.A.

**INA**

▶ Issued by ...................................................................................................................................
(Name of Insurance Company)

This Endorsement, effective         Forms a part of Policy No.         Issued to:

▶   3-1-77 ✓              ▶    GAL 33 14 83 ✓       ▶

Insert the policy number. The remainder of the information is to be completed only
when this endorsement is issued subsequent to the preparation of the policy.

GENERAL LIABILITY ✓

COMPOSITE RATE ENDORSEMENT ✓

The premium for Comprehensive General Liability Insurance is based upon

sales as defined herein, and shall be computed by applying to each

$1,000 sales the rate shown below: ✓

| Estimated Sales ✓ | Rate per $1000 of Sales ✓ | Annual Premium |
|---|---|---|
| $140,900,000 ✓ | .61522 | $86,685 ✓ |

The minimum premium for Comprehensive General Liability is $73,682. ✓ ?

*Revised - see endorsement #21F*

Endorsement #1 ✓

Authorized Agent

CC-2808                              AGENT'S COPY

**INA**

▶ Issued by ....................................................................................................................................
(Name of Insurance Company)

This Endorsement, effective          Forms a part of Policy No.          Issued to:

▶ **3-1-77**          ▶ **GAL 33 14 83**          ▶

Insert the policy number. The remainder of the information is to be completed only
when this endorsement is issued subsequent to the preparation of the policy.

## AUTO COMPOSITE RATE ENDORSEMENT

It is agreed that the following rates apply to the vehicles on file with

the company.

| Type of Vehicle | Coverage | No. | Rate/Unit | Total |
|---|---|---|---|---|
| a)  Commercial | BI, PD, PIP, PPI, MED, UM, COMP., COLL. | 83 | $383 | $31,789. |
| b)  Private Passenger | BI, PD, PIP, PPI, MED, UM, COMP, COLL | 22 | $667 | $14,674 |
| Employers Non-Ownership Liability | Flat Charge | | | $   457. |
| Hired Automobile | Flat Charge | | | $    60. |
| | | | | $46,980. |

Endorsement #2

_____
Authorized Agent

CC-2508          **AGENT'S COPY**



**ADDITIONAL INSURED**
(Vendors—Limited Form)

| | |
|---|---|
| Named Insured | |
| Effective   3-1-77 | Policy No.   GAL 33 14 83 |
| Issued by (Name of Insurance Company) | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**COMPREHENSIVE GENERAL LIABILITY INSURANCE**

**COMPLETED OPERATIONS AND PRODUCTS LIABILITY INSURANCE**

---

It is agreed that the "Persons Insured" provision is amended to include any person or organization designated below (herein referred to as "vendor"), as an Insured, but only with respect to the distribution or sale in the regular course of the vendor's business of the Named Insured's products designated below subject to the following additional provisions:

1. The insurance with respect to the vendor does not apply to:

   (a) any express warranty, or any distribution or sale for a purpose, unauthorized by the Named Insured;

   (b) bodily injury or property damage arising out of

      (i) any act of the vendor which changes the condition of the products.

      (ii) any failure to maintain the product in merchantable condition.

      (iii) any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products, or

      (iv) products which after distribution or sale by the Named Insured have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor;

   (c) bodily injury or property damage occurring within the vendor's premises.

2. The insurance does not apply to any person or organization, as Insured, from whom the Named Insured has acquired such products or any ingredient, part or container, entering into, accompanying or containing such products.

---

**SCHEDULE**

| VENDOR(S) | PRODUCTS |
|---|---|

Name of Person or Organization:  Any person or organization purchasing goods or products from the named insured for the purpose of resale.

Named Insured's Products:  All products of the Named Insured.

INCLUDED IN COMPOSITE RATE

Endorsement #4

| | |
|---|---|
| | Authorized Agent |

LC-976 (G114)   7-20-66   Printed in U.S.A.



**ADDITIONAL INSURED**
(Employees)
AND EXECUTIVE OFFICERS

| Named Insured | | |
|---|---|---|
| Policy No. **GAL 33 14 83** | Policy Period | Effective Date of Endorsement **3-1-77** |
| Issued by (Name of Insurance Company) | | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following

**COMPREHENSIVE GENERAL LIABILITY INSURANCE**

**MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE**

**OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE**

**STOREKEEPER'S INSURANCE**

---

It is agreed that the "Persons Insured" provision is amended to include any employee of the Named Insured while acting within the scope of his duties as such, but the insurance afforded to such employee does not apply:

1. to bodily injury to (a) another employee of the Named Insured arising out of or in the course of his employment or (b) the Named Insured or, if the Named Insured is a partnership or joint venture, any partner or member thereof;

2. to property damage to property owned, occupied or used by, rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by (a) another employee of the Named Insured or (b) the Named Insured, or, if the Named Insured is a partnership or joint venture, any partner or member thereof.

3. To personal injury or property damage arising out of the rendering of,

   or failure to render, any professional service.

**Endorsement #5**

Authorized Agent

LC-968 (G105)  7-20-66  Printed in U.S.A.



**ADDITIONAL INSURED**
(Premises Leased to the Named Insured)

| Named Insured | | |
|---|---|---|
| Policy No. GAL 33 14 83 | Policy Period | Effective Date of Endorsement 3-1-77 |
| Issued by (Name of Insurance Company) | | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**COMPREHENSIVE GENERAL LIABILITY INSURANCE**

**MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE**

**OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE**

**STOREKEEPER'S INSURANCE**

---

It is agreed that the "Persons Insured" provision is amended to include as an Insured the person or organization designated below, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises designated below leased to the Named Insured, and subject to the following additional exclusions:

The insurance does not apply:

1. to any occurrence which takes place after the Named Insured ceases to be a tenant in said premises;

2. to structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated below.

**SCHEDULE**

| Designation of Premises (Part Leased to Named Insured) | Name of Person or Organization (Additional Insured) | Premiums | |
|---|---|---|---|
| | | Bodily Injury Liability | Property Damage Liability |
| 1. Land leased to Wolverine Service Club Inc. for Camping Site<br><br>2. All premises leased to named insured and insureds named in endorsement #1 | Consumers Power Company<br><br>Lessors where lease agreement requires lessee to name lessor as additional insured on lessee's policy | INCLUDED IN<br><br>COMPOSITE RATE | |

Endorsement #6

Authorized Agent

LC-971 (G109) 7-20-66 Printed in U.S.A.

**INA**

▶ Issued by ...............................................................................................................................................................

(Name of Insurance Company)

This Endorsement, effective          Forms a part of Policy No.          Issued to:

▶     3-1-77 ✓          ▶     GAL 33 14 83 ✓          ▶

Insert the policy number. The remainder of the information is to be completed only
when this endorsement is issued subsequent to the preparation of the policy.

It is agreed that the following are added to this policy as Additional

Named Insureds, but only as respects General Liability: ✓

NAMES OF ADDITIONAL NAMED INSUREDS ✓

W.W.W. Retail, Inc. ✓

United Parts Distributors of Michigan, Inc./All Parts, Inc. ✓

Wolverine World Wide Employees Federal Credit Union ✓

Wolverine Service Club, Inc. ✓

Any Corporation or Other Business Organization in which the Primary Insured

Acquires an Ownership Interest of at Least 51 Per Cent. ✓

Endorsement #7

_____
Authorized Agent

CC-2508                          AGENT'S COPY

# INA

▶ Issued by .................................................................................................................................................
(Name of Insurance Company)

This Endorsement, effective        Forms a part of Policy No.        Issued to:

▶ 3-1-77                  ▶ GAL 33 14 83          ▶

Insert the policy number. The remainder of the information is to be completed only
when this endorsement is issued subsequent to the preparation of the policy.

It is agreed that the following provisions are hereby made a part of this

policy:

1)  As respects World-Wide Products Liability:

The Bodily Injury and Property Damage Liability Coverages also
apply to bodily injury or property damage which occurs, during
the policy period, outside the policy territory provided:

(A) such injury or damage is included in the products hazard,
and

(B) the original suit for such injury or damage is brought
within the policy territory.

2)  As respects Host Liquor Law Liability:

The Bodily Injury and Property Damage Liability Coverages apply
to bodily injury or property damage arising out of the serving or
giving of alcoholic beverages, by or on behalf of the Named Insured,
provided the Named Insured

(A) is not a person or organization engaged in the business of
manufacturing, distributing, selling or serving alcoholic
beverages, or

(B) is not an owner or lessor of premises used for such purposes
if liability is imposed by, or because of the violation of,
any statute, ordinance or regulation pertaining to the sale,
gift, distribution or use of any alcholic beverage.

Damages includes damages for loss of support resulting from bodily
injury.

3)  As respects Watercraft Non-Ownership:

It is agreed that the policy exclusion relating to the ownership,
maintenance, operation, use, loading or unloading of watercraft
shall not apply to any watercraft under 50 feet in length provided
such watercraft is not owned by the Named Insured and is not being
used to carry persons for a charge.

Endorsement #8

_____
Authorized Agent

CC-2508                          **AGENT'S COPY**

**INA**

▶ Issued by ...............................................................................................................................................
(Name of Insurance Company)

This Endorsement, effective      Forms o a part of Policy No.      Issued to:

▶   **3-1-77**       ▶   **GAL 33 14 83**      ▶

Insert the policy number. The remainder of the information is to be completed only
when this endorsement is issued subsequent to the preparation of the policy.

**Endorsement #8 Continued**

4) **As respects Incidental Malpractice Liability:**

The Bodily Injury and Property Damage Liability Coverages apply
to bodily injury or property damage occurring during the policy period
and arising out of malpractice, error or mistake committed at or in
connection with the premises or operations

(A) in the rendering of or failure to render medical, surgical, dental,
x-ray or nursing service or treatment, or the furnishing of
food or beverages in connection therewith, or

(B) the furnishing or dispensing of drugs or medical, dental or
surgical supplies or appliances

subject to the following provisions:

(1) The following additional exclusion applies:

The insurance does not apply to bodily injury to any person
to or for whom benefits or damages on account thereof are
payable under any valid and collectible voluntary compensation
or employer's liability insurance available to the Insured.

(2) The Supplementary Payments provision of the policy shall not
apply to this insurance in so far as it provides for the
payment of expenses incurred by the Insured for first aid
at the time of accident.

(3) Exclusion (j) does not apply to injury to the emotions or
reputation of a person arising out of the rendering of such
services.

_____
Authorized Agent



CC-2808            **AGENT'S COPY**

**INA**

▶ Issued by ......................................................................................................................
(Name of Insurance Company)

This Endorsement, effective     Forms a part of Policy No.     Issued to:

▶   **3-1-77**     ▶   **GAL 33 14 83**     ▶

Insert the policy number. The remainder of the information is to be completed only
when this endorsement is issued subsequent to the preparation of the policy.

### ADDITIONAL INSUREDS ENDORSEMENT
### (Limited)

It is agreed that the "Persons Insured" provision is amended to include as
an insured the person or organization designated below as an additional
insured, subject to the following provisions:

1) The insurance applies only with respect to liability of the add-
itional insureds arising out of THE OWNERSHIP MAINTENANCE OR
USE OF EQUIPMENT WHILE LEASED TO THE NAMED INSURED.

2) The named insured is authorized to act for such additional insureds
in all matters pertaining to this insurance, including receipt
of notice of cancelation; and

3) Return premium, if any, and such dividends as may be declared by
the company shall be paid to the named insured.

4) Nothing contained herein shall affect any right of recovery as
a claimant which the additional insured would have if not
designated as such.

### Names of Additional Insureds

UNITED STATES LEASING CORPORATION

Endorsement #9

_____
Authorized Agent

CC-2008          **AGENT'S COPY**

**INA**

▶ Issued by ........................................................................................................................................
(Name of Insurance Company)

This Endorsement, effective          Forms a part of Policy No.          Issued to:

▶   3-1-77 ✓          ▶   GAL 33 14 83 ✓          ▶

Insert the policy number. The remainder of the information is to be completed only
when this endorsement is issued subsequent to the preparation of the policy.

It is agreed that the following Cancelation Clause is added to this
policy but only as respects General Liability: ✓

This endorsement modifies the cancelation condition and is applicable to
all insurance afforded by the policy. ✓

CANCELATION BY THE COMPANY ENDORSEMENT ✓

It is agreed the cancelation condition of the policy is amended to provide
that, with respect to cancelation by the company, except for cancelation
for nonpayment of premium, the effective date of cancelation shall be not
less than 60 days after the mailing of notice thereof. ✓

Endorsement #10 ✓

_____
Authorized Agent

CC - 2808                    **AGENT'S COPY**



**COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE**

**COVERAGE PART**

| ADDITIONAL DECLARATIONS | Policy No. ~~CAL 33 14 83~~ ✓ |
| --- | --- |

### SCHEDULE OF AUTOMOBILE LIABILITY HAZARDS

| DESCRIPTION OF HAZARDS | | | | | | ADVANCE PREMIUM | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **1. Owned Automobiles—Premium Basis—Per Automobile** | | | | | | BODILY INJURY | PROPERTY DAMAGE |
| Town or City and State In Which the Automobile Will Be Principally Garaged | Year of Model | Trade Name | Body Type and Model; Truck Size; or Bus Seating Capacity | Identification Number Serial Number Motor Number | Purposes of Use | | |
| **INCLUDED IN COMPOSITE RATE** ✓ | | | | | | | |

| **2. Hired Automobiles—Premium Basis—Total Cost of Hire** | | | | |
| --- | --- | --- | --- | --- |
| Estimated Total Cost of Hire For Each State Where the Named Insured Is Located | | | | |
| State | Estimated Total Cost of Hire | Rates Per $100 Cost of Hire | | |
| | | Bodily Injury | Property Damage | |
| **INCLUDED IN COMPOSITE RATE** ✓ | | | | |

| **3. Non-Owned Automobiles—Premium Basis—Total Number of Employees At All Locations** | | | | |
| --- | --- | --- | --- | --- |
| Total Number of Employees At All Locations: _____ | | | | |
| **INCLUDED IN COMPOSITE RATE** ✓ | | | | |

| Minimum Premiums for 2. and 3. above $ | Bodily Injury | TOTALS | $ | $ |
| --- | --- | --- | --- | --- |
| $ | Property Damage | TOTAL ADVANCE PREMIUM | ► $ | |

**When used as a premium basis:**
"cost of hire" means the total amount incurred for the hire of automobiles not including charges for services performed by motor carriers of property or passengers which are subject to the compulsory insurance requirements of any motor carrier law or regulation.

DA-5138 (CP 00 10 Ed. 10-75) Printed in U.S.A.   **AGENT'S COPY**

## I. COVERAGE C—BODILY INJURY LIABILITY
### COVERAGE D—PROPERTY DAMAGE LIABILITY

The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of

### C. bodily injury or
### D. property damage

to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading, of any automobile, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

### Exclusions

This insurance does not apply:

(a) to liability assumed by the Insured under any contract or agreement;

(b) to any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(c) to bodily injury to any employee of the insured arising out of and in the course of his employment by the Insured or to any obligation of the Insured to indemnify another because of damages arising out of such injury; but this exclusion does not apply to any such injury arising out of and in the course of domestic employment by the Insured unless benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law;

(d) to property damage to

(1) property owned or being transported by the Insured, or

(2) property rented to or in the care, custody or control of the Insured, or as to which the Insured is for any purpose exercising physical control, other than property damage to a residence or private garage by a private passenger automobile covered by this insurance;

(e) to bodily injury or property damage due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing, with respect to expenses for first aid under the Supplementary Payments provision;

(f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acid, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

## II. PERSONS INSURED

Each of the following is an Insured under this insurance to the extent set forth below:

(a) the Named Insured;

(b) any partner or executive officer thereof, but with respect to a non-owned automobile only while such automobile is being used in the business of the Named Insured;

(c) any other person while using an owned automobile or a hired automobile with the permission of the Named Insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an Insured only if he is:

(1) a lessee or borrower of the automobile, or

(2) an employee of the Named Insured or of such lessee or borrower;

(d) any other person or organization but only with respect to his or its liability because of acts or omissions of an Insured under (a), (b) or (c) above.

None of the following is an Insured:

(i) any person while engaged in the business of his employer with respect to bodily injury to any fellow employee of such person injured in the course of his employment;

(ii) the owner or lessee (of whom the Named Insured is a sub-lessee) of a hired automobile or the owner of a non-owned automobile, or any agent or employee of any such owner or lessee;

(iii) an executive officer with respect to an automobile owned by him or by a member of his household;

(iv) any person or organization, other than the Named Insured, with respect to:

(1) a motor vehicle while used with any trailer owned or hired by such person or organization and not covered by like insurance in

the Company (except a trailer designed for use with a private passenger automobile and not being used for business purposes with another type motor vehicle), or

(2) a trailer while used with any motor vehicle owned or hired by such person or organization and not covered by like insurance in the Company;

(v) any person while employed in or otherwise engaged in duties in connection with an automobile business, other than an automobile business operated by the Named Insured.

This insurance does not apply to bodily injury or property damage arising out of (1) a non-owned automobile used in the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not designated in this policy as a Named Insured, or (2) if the Named Insured is a partnership, an automobile owned by or registered in the name of a partner thereof.

## III. LIMITS OF LIABILITY

Regardless of the number of (1) insureds under this policy, (2) persons or organizations who sustain bodily injury or property damage, (3) claims made or suits brought on account of bodily injury or property damage or (4) automobiles to which this policy applies, the Company's liability is limited as follows:

Coverage C—The limit of bodily injury liability stated in the Declarations as applicable to "each person" is the limit of the Company's liability for all damages, including damages for care and loss of services, because of bodily injury sustained by one person as the result of any one occurrence; but subject to the above provision respecting "each person", the total liability of the Company for all damages, including damages for care and loss of services, because of bodily injury sustained by two or more persons as the result of any one occurrence shall not exceed the limit of bodily injury liability stated in the Declarations as applicable to "each occurrence".

Coverage D—The total liability of the Company for all damages because of all property damage sustained by one or more persons or organizations as the result of any one occurrence shall not exceed the limit of property damage liability stated in the Declarations as applicable to "each occurrence".

Coverages C and D—For the purpose of determining the limit of the Company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

## IV. POLICY PERIOD; TERRITORY

This insurance applies only to bodily injury or property damage which occurs within the territory described in paragraph (1) or (2) of the definition of "policy territory".

## V. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

—"automobile business" means the business or occupation of selling, repairing, servicing, storing or parking automobiles;

"hired automobile" means an automobile not owned by the Named Insured which is used under contract in behalf of, or loaned to, the Named Insured, provided such automobile is not owned by or registered in the name of (a) a partner or executive officer of the Named Insured or (b) an employee or agent of the Named Insured who is granted an operating allowance of any sort for the use of such automobile;

"non-owned automobile" means an automobile which is neither an owned automobile nor a hired automobile;

"owned automobile" means an automobile owned by the Named Insured;

"private passenger automobile" means a four wheel private passenger or station wagon type automobile;

"trailer" includes semi-trailer but does not include mobile equipment.

## VI. ADDITIONAL CONDITIONS

### A. Excess Insurance—Hired and Non-Owned Automobiles

With respect to a hired automobile or a non-owned automobile, this insurance shall be excess insurance over any other valid and collectible insurance available to the Insured.

### B. Out of State Insurance

If, under the provisions of the motor vehicle financial responsibility law or the motor vehicle compulsory insurance law or any similar law of any state or province, a non-resident is required to maintain insurance with respect to the operation or use of a motor vehicle in such state or province and such insurance requirements are greater than the insurance provided by the policy, the limits of the Company's liability and kinds of coverage afforded by the policy shall be as set forth in such law, in lieu of the insurance otherwise provided by the policy, but only to the extent required by such law and only with respect to the operation or use of a motor vehicle in such state or province; provided that the insurance under this provision shall be reduced to the extent that there is other valid and collectible insurance under this or any other motor vehicle insurance policy. In no event shall any person be entitled to receive duplicate payments for the same elements of loss.



## AUTOMOBILE MEDICAL PAYMENTS INSURANCE
## COVERAGE PART

ADDITIONAL DECLARATIONS

Policy No. __GAL 33 14 83__

## SCHEDULE

**DESIGNATED PERSON INSURED**

**ADVANCE PREMIUM**

**Included in**
TOTAL ADVANCE PREMIUM ► $ **Composite Rate**

### DESIGNATION OF AUTOMOBILES—Division 1 (Check appropriate box)

☐ Any owned automobile
☐ Any hired automobile **Private Passenger or any**
☒ Any licensed owned private passenger automobile **Automobile leased by the Named Insured on a long term basis**
☐ Any automobile described in the Schedule and designated "M.P."
☐ Any non-owned automobile

### I. COVERAGE F — AUTOMOBILE MEDICAL PAYMENTS

The Company will pay all reasonable medical expense incurred within one year from the date of the accident:

**Division 1.** to or for each person who sustains bodily injury, caused by accident, while occupying a designated automobile which is being used by a person for whom bodily injury liability insurance is afforded under this policy with respect to such use;

**Division 2.** to or for each Insured who sustains bodily injury, caused by accident, while occupying or, while a pedestrian, through being struck by a highway vehicle.

**Exclusions**

This insurance does not apply:

(a) to bodily injury to any person or Insured while employed or otherwise engaged in duties in connection with an automobile business, if benefits therefor are in whole or in part payable or required to be provided under any workmen's compensation law;

(b) to bodily injury due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(c) under Division 1, to any employee of the Named Insured arising out of and in the course of employment by the Named Insured, but this exclusion does not apply to any such bodily injury arising out of and in the course of domestic employment by the Named Insured unless benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law;

(d) under Division 2, to bodily injury sustained while occupying a highway vehicle owned by any Insured, or furnished for the regular use of any Insured by any person or organization other than the Named Insured.

### II. PERSONS INSURED—DIVISION 2

Each of the following is an insured under this insurance to the extent set forth below:

(a) any person designated as Insured in the Schedule;

(b) while residents of the same household as such designated person, his spouse and the relatives of either;

and if such designated person shall die, any person who was an Insured at the time of such death shall continue to be an Insured.

### III. LIMIT OF LIABILITY

Regardless of the number of (1) persons or organizations who are Insureds under this policy, (2) persons who sustain bodily injury, (3) claims made or suits brought on account of bodily injury or (4) designated automobiles to which this policy applies, the limit of liability for medical payments stated in the Declarations as applicable to "each person" is the limit of the Company's liability for all expenses incurred by or on behalf of each person who sustains bodily injury as the result of any one accident.

When more than one medical payments coverage afforded by this policy applies to the loss, the Company shall not be liable for more than the amount of the highest applicable limit of liability.

### IV. ADDITIONAL DEFINITIONS

The additional definitions applicable to automobile bodily injury liability insurance also apply to this insurance, and when used in reference to this insurance (including endorsements forming a part of the policy):

"**designated automobile**" means an automobile designated in the Schedule and includes:

(a) an automobile not owned by the Named Insured while temporarily used as a substitute for an owned automobile designated in the Schedule when withdrawn from normal use for servicing or repair or because of its breakdown, loss or destruction; and

(b) a trailer designed for use with a private passenger automobile, if not being used for business purposes with another type automobile and if not a home, office, store, display or passenger trailer;

"**highway vehicle**" means a land motor vehicle or trailer other than

(a) a farm type tractor or other equipment designed for use principally off public roads, while not upon public roads,

(b) a vehicle operated on rails or crawler-treads, or

(c) a vehicle while located for use as a residence or premises;

"**medical expense**" means expenses for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services;

"**occupying**" means in or upon or entering into or alighting from.

### V. POLICY PERIOD; TERRITORY

This insurance applies only to accidents which occur during the policy period within the territory described in paragraph (1) or (2) of the definition of policy territory.

### VI. ADDITIONAL CONDITIONS

**A. Medical Reports; Proof and Payment of Claim**

As soon as practicable the injured person or someone on his behalf shall give to the Company written proof of claim, under oath if required and shall, after each request from the Company, execute authorization to enable the Company to obtain medical reports and copies of records. The injured person shall submit to physical examination by physicians selected by the Company when and as often as the Company may reasonably require. The Company may pay the injured person or any person or organization rendering the services and such payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute an admission of liability of any person or, except hereunder, of the Company.

**B. Excess Insurance**

Except with respect to an owned automobile, the insurance under Division 1 shall be excess insurance over any other valid and collectible automobile medical payments or automobile medical expense insurance.

The insurance under Division 2 shall be excess insurance over any other valid and collectible automobile medical payments or automobile medical expense insurance available to the Insured under any other policy.

**C. Non-applicability of Subrogation Condition**

The Subrogation Condition does not apply to the Automobile Medical Payments Coverage.

DA-906 (CP 00 15 Ed. 1-74) Printed in U.S.A.

**AGENT'S COPY**





**UNINSURED MOTORISTS INSURANCE
COVERAGE PART**

ADDITIONAL DECLARATIONS   Policy No. _____ **GAL 33 14 83** _____

**Limits**
**$10,000/20,000 Arkansas, New York, Missouri, Iowa**
**$20,000/40,000 Michigan, New Hampshire**   PREMIUM ▶ **$ Included in**
**Composite Rate**
SCHEDULE

**Designated Insured**

**Description of Insured Highway Vehicles (Check appropriate box)**

☒ Any automobile owned by the Named Insured **or leased by the Named Insured on a long term basis**
☐ Any private passenger automobile owned by the Named Insured
☐ Any highway vehicle to which are attached dealers' license plates issued to the Named Insured
☐ Any highway vehicle designated in the declarations of the policy by the letters "UM" and a highway vehicle ownership of which is acquired during the policy period by the Named Insured as a replacement therefor
☐ Any mobile equipment owned or leased by and registered in the name of the Named Insured
☐ _____

## 1. COVERAGE U — UNINSURED MOTORISTS
### (Damages for Bodily Injury)

The Company will pay all sums which the Insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury sustained by the Insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; provided, for the purposes of this coverage, determination as to whether the Insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the Insured or such representative and the Company or, if they fail to agree, by arbitration.

No judgment against any person or organization alleged to be legally responsible for the bodily injury shall be conclusive, as between the Insured and the Company, of the issues of liability of such person or organization or of the amount of damages to which the Insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the Insured with the written consent of the Company.

### Exclusions

This insurance does not apply:

(a) to bodily injury to an Insured with respect to which such Insured, his legal representative or any person entitled to payment under this insurance shall, without written consent of the Company, make any settlement with any person or organization who may be legally liable therefor;

(b) to bodily injury to an Insured while occupying a highway vehicle (other than an insured highway vehicle) owned by the Named Insured, any designated Insured or any relative resident in the same household as the Named or designated Insured, or through being struck by such a vehicle, but this exclusion does not apply to the Named Insured or his relatives while occupying or if struck by a highway vehicle owned by a designated Insured or his relatives;

(c) so as to inure directly or indirectly to the benefit of any workmen's compensation or disability benefits carrier or any person or organization qualifying as a self-insurer under any workmen's compensation or disability benefits law or any similar law.

## II. PERSONS INSURED

Each of the following is an Insured under this insurance to the extent set forth below:

(a) the Named Insured and any designated Insured and, while residents of the same household, the spouse and relatives of either;

(b) any other person while occupying an insured highway vehicle; and

(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this insurance applies sustained by an Insured under (a) or (b) above.

The insurance applies separately with respect to each Insured, except with respect to the limits of the Company's liability.

## III. LIMITS OF LIABILITY

Regardless of the number of (1) persons or organizations who are Insureds under this policy, (2) persons who sustain bodily injury, (3) claims made or suits brought on account of bodily injury, or (4) highway vehicles to which this policy applies,

(a) The limit of liability stated in the declarations as applicable to "each person" is the limit of the Company's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting "each person", the limit of liability stated in the declarations as applicable to "each accident" is the total limit of the Company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident.

(b) Any amount payable under the terms of this insurance because of bodily injury sustained in an accident by a person who is an Insured under this coverage shall be reduced by

(1) all sums paid on account of such bodily injury by or on behalf of
(i) the owner or operator of the uninsured highway vehicle and
(ii) any other person or organization jointly or severally liable together with such owner or operator for such bodily injury,

including all sums paid under the bodily injury liability coverage of the policy, and

(2) the amount paid and the present value of all amounts payable on account of such bodily injury under any workmen's compensation law, disability benefits law or any similar law.

(c) Any payment made under this insurance to or for any Insured shall be applied in reduction of the amount of damages which he may be entitled to recover from any person or organization who is an Insured under the bodily injury liability coverage of the policy.

(d) The Company shall not be obligated to pay under this insurance that part of the damages which the Insured may be entitled to recover from the owner or operator of an uninsured highway vehicle which represents expenses for medical services paid or payable under the medical payments coverage of the policy.

## IV. POLICY PERIOD; TERRITORY

This insurance applies only to accidents which occur during the policy period and within the United States of America, its territories or possessions, or Canada.

## V. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"designated Insured" means an individual named in the schedule under Designated Insured;

"highway vehicle" means a land motor vehicle or trailer other than

(a) a farm type tractor or other equipment designed for use principally off

DA-907 (CP 00 25 Ed. 1-74) Printed in U.S.A.

VI. ADDITIONAL CONDITIONS

A. Premium

If during the policy period the number of insured highway vehicles owned by the Named Insured, or spouse or the number of dealer's license plates issued to the Named Insured changes, the Named Insured shall notify the Company ... and the premium shall be adjusted ... to use by the Company in this ... advance premium paid the Named Insured ... in excess to the Company, if less, the Company shall return to the Named Insured the increased portion paid by such insured.

B. Proof of Claim; Medical Expense

As soon as practicable, the Insured or other person making claim shall give to the Company written proof of claim, under oath if required, including full particulars of the nature and extent of the injuries, treatment, and other details entering into the determination of the amount payable hereunder. The Insured and every other person making claim hereunder shall submit to examinations under oath by any person named by the Company and subscribe the same, as often as may reasonably be required. Proof of claim shall be made upon forms furnished by the Company unless the Company shall have failed to furnish such forms within 15 days after receiving notice of claim. The injured person shall submit to physical examinations by physicians

C. Assistance and Cooperation of the Insured.

D. Notice of Legal Action.

E. Other Insurance

F. Arbitration

G. Trust Agreement.

H. Payment of Loss by the Company.

Any amount due hereunder is payable

(a) to the Insured; or

(b) if the Insured be a minor to his parent or guardian; or

(c) if the Insured be deceased to his surviving spouse, otherwise;

(d) to a person authorized by law to receive such payment or to a person legally entitled to recover the damages which the payment represents;

provided, the Company may at its option pay any amount due hereunder in accordance with division (d) hereof.

(Fleet Automatic or Non-Fleet)

| ADDITIONAL DECLARATIONS | Policy No. **GAL 33 16 83** ✓ |
|---|---|

TOTAL PREMIUM OR TOTAL ADVANCE PREMIUM ► $ .................

**ITEM 1.** Automobile Physical Damage Insurance (Non-Fleet) applies, unless indicated below by ☒ under Item 4.
The insurance afforded is only with respect to such of the following Coverages, and under each such Coverage to such covered automobiles described below, as are indicated by specific premium charge or charges. The limit of the Company's liability against each such Coverage shall be as stated or designated herein, subject to all the terms of this insurance having reference thereto.

Covered Automobiles as of Effective Date of this Insurance (including newly acquired vehicles, subject to the provisions of paragraph (b) of the "covered automobile" definition).

(a) Description: Purposes of use (P&B = Pleasure and Business; C = Commercial)

| Auto No. | Year Model; Trade Name; Body Type—Capacity (Truck Load, Gal's, Bus Seating); Identification(I), Serial(S), Motor(M) No.; Cylinders (No.) Model | Principally Garaged in (Town, State) | Purposes of Use | Classification |
|---|---|---|---|---|
| 1 | | | | |
| 2 | **Schedule of Vehicles on File with Company** ✓ | | | |
| 3 | | | | |
| 4 | | | | |

(b) Facts Respecting Purchase

| Auto No. | $ List Price | $ Actual Cost | Purchased Mo. Yr. (N) (U) | Rating Symbol | Any loss under Coverages other than Towing is payable as interest may appear to the Named Insured and the Loss Payee named below: |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |

(c) Limit of Liability; Net Rates; Premium

| Auto No. | LIMIT OF LIABILITY—Each covered automobile described in (a) above and covered for: | | | | | PREMIUM | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Coverages Other than Collision and Towing | | | Collision | Towing | Compre-hensive O | Collision P | Fire, Light-ning or Transpor-tation Q | Theft R | Windstorm, Hail, Earth-quake or Explosion S | Combined Additional Coverage T | Towing V | Premium For Endorse-ments | ITEM 1 TOTAL PREMIUM |
| | Enter: Amount or "ACV" | Deduct-ible | Net Rates | ACV less Deductible | $25 for Each Disablement | | | | | | | | | |
| 1 | | | | | | | | | | | | | | |
| 2 | | | | | | | | | | | | | | |
| 3 | | | | | | | | | | | | | | |
| 4 | | | | | | | | | | | | | | |
| "ACV"=Actual Cash Value | | | | Totals | | | | | | | | | | |

**ITEM 2.** Except with respect to bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance, the Named Insured is the sole owner of every covered automobile designated in Item 1 as covered under this insurance, unless otherwise stated herein: _____

**ITEM 3.** Business of Named Insured is: _____

The following provisions apply only if an "X" is inserted in the following box:

**ITEM 4.** ☒ Automobile Physical Damage Insurance (Fleet Automatic) applies. ✓
The insurance afforded is only with respect to such of the following Coverages as are indicated by specific premium charge or charges and, under each such Coverage, applies to such covered automobiles as are indicated, by entry herein, of one or more of the designating numerals for that purpose appearing in Item 4a. The limit of the Company's liability against each such Coverage shall be as stated or designated herein, subject to all the terms of this insurance having reference thereto.

| COVERAGES | Covered Automobiles per Item 4a | Deduct-ible | ITEM 4 ADVANCE PREMIUM | Limit of Liability Each Covered Automobile |
|---|---|---|---|---|
| O. COMPREHENSIVE   **See Endorsement #11** ✓ | | | | |
| P. COLLISION | | | | AS INDICATED IN THE SEPARATE |
| Q. FIRE, LIGHTNING OR TRANSPORTATION | | | | SCHEDULE OF AUTOMOBILES |
| R. THEFT | | | | ATTACHED TO THIS POLICY. |
| S. WINDSTORM, HAIL, EARTHQUAKE OR EXPLOSION | | | | |
| T. COMBINED ADDITIONAL COVERAGE | | | | |
| V. TOWING   **Included in Composite Rate** | | | $25. For Each Disablement |

| ITEM 4a. Explanation of entries in above for des-ignating the covered automobiles to which this insurance applies under each coverage afforded: | Advance Premium For Endorsements | $ | Maximum Limit of Liability | | Records to be submitted: | Audit Period |
|---|---|---|---|---|---|---|
| | ITEM 4 TOTAL ADVANCE PREMIUM | $  **INCL** | | | | |
| 1. all covered automobiles | When so entered in addition to numerals 1, 2, 3 or 4: | | Any one covered auto | $_____ | ☐ Monthly | |
| 2. all registered covered automobiles | 5. excluding vehicles leased to the Named Insured | | All covered autos at | | ☐ Quarter | |
| 3. all covered automobiles of the private passenger type | 6. excluding, under Collision Coverage, any vehicle | | any one location | $_____ | ☐ Semi- | |
| 4. all covered automobiles of the commercial type | not having an actual cash value of at least $_____ | | All covered autos | $_____ | ☐ | |

DA-1530   CP 00 30 Ed. 8-74   Printed in U.S.A.
CP 00 35 Ed. 8-74

**AGENT'S COPY**

**INA**

▶ Issued by ..................................................................................................................................
(Name of Insurance Company)

This Endorsement, effective          Forms a part of Policy No.          Issued to:

▶    **3-1-77** ✓          ▶    **GAL 33 14 83** ✓          ▶

Insert the policy number. The remainder of the information is to be completed only
when this endorsement is issued subsequent to the preparation of the policy.

It is agreed that Item 4, Form DA1530, Automobile Physical Damage Insurance

Coverage Part shall be as follows: ✓

        Comprehensive: ✓ $50 deductible ACV – Missouri; ACV – all states

                except Missouri. ✓

        Collision: ✓    **Private Passenger** ✓

              $100 deductible  Regular Form – New Hampshire,

              Georgia, Kansas, New York, Missouri, Arkansas

              $100 deductible Broad Form – All states except

              those shown above. ✓

              **Commercial**

              $250 deductible Regular Form – New York, Iowa,

              New Hampshire, Arkansas

              $250 deductible Broad Form – All states except

              those shown above ✓

**Endorsement #11**

                                        Authorized Agent

CC-2508          **AGENT'S COPY**

**INA**

▶ Issued by ......................................................................................................................................................
(Name of Insurance Company)

This Endorsement, effective          Forms a part of Policy No.          Issued to:

▶    3-1-77 ✓               ▶    GAL 33 14 83 ✓          ▶

Insert the policy number. The remainder of the information is to be completed only
when this endorsement is issued subsequent to the preparation of the policy.

This endorsement modifies such insurance as is afforded by the policy

relating to the following:✓

    UNINSURED MOTORISTS INSURANCE ✓


UNINSURED MOTORISTS INSURANCE AMENDMENT ENDORSEMENT ✓

It is agreed that the Insured shall not be required to arbitrate disputed

claims under Uninsured Motorists Insurance. ✓

Endorsement #12

_____
Authorized Agent

CC-2808                                    **AGENT'S COPY**



# MICHIGAN NO-FAULT INSURANCE ENDORSEMENT

| Named Insured | |
|---|---|
| **Effective** 3-1-77 ✓ | **Policy No.** GAL 33 14 33 ✓ |
| Issued by (Name of Insurance Company) | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

The Company agrees with the Named Insured, subject to all of the provisions of this endorsement, and to all of the provisions of the policy except as modified herein, as follows:

## SECTION I

### PERSONAL PROTECTION INSURANCE BENEFITS (E007, as amended; 10/1/73)

The Company will pay, in accordance with Chapter 31 of the Michigan Insurance Code, to or on behalf of each eligible injured person or his dependent survivors, personal protection benefits consisting of:

(a) allowable expenses,

(b) work loss, and

(c) survivors' loss

as a result of bodily injury caused by accident and arising out of the ownership, operation, maintenance or use, including loading or unloading, of a motor vehicle as a motor vehicle.

### SCHEDULE

Premium applicable to Section I only $~~Included in Composite~~each.

| DEDUCTIBLES | Rate |
|---|---|

If indicated either in the declarations or by an "X" in the following block:

A. ☐ **$300 Deductible Per Accident** applies to the benefits otherwise payable to the Named Insured and relatives.

### EXCLUSIONS

This insurance does not apply:

(a) to any benefits any person would otherwise be entitled to receive hereunder for bodily injury intentionally caused by him to himself or to another;

(b) to bodily injury sustained by any person while using a motor vehicle which he had taken unlawfully, unless he reasonably believed that he was entitled to take and use such motor vehicle;

(c) to bodily injury sustained by any person other than the Named Insured or any relative, while not occupying any motor vehicle, if the accident occurs outside the State of Michigan;

(d) to bodily injury sustained by the Named Insured while occupying, or through being struck by while not occupying, any motor vehicle owned or registered by the Named Insured and which is not an insured motor vehicle;

(e) to bodily injury sustained by any relative while occupying, or through being struck by while not occupying, any motor vehicle if such relative is the owner or registrant of such motor vehicle and has failed to maintain security with respect thereto as required by Chapter 31 of the Michigan Insurance Code;

(f) to bodily injury sustained by an owner or registrant of a motor vehicle involved in the accident with respect to which the security required by Chapter 31 of the Michigan Insurance Code is not in effect;

(g) to bodily injury sustained by any relative, if such relative is entitled to personal protection benefits as a Named Insured under the terms of any other policy with respect to such coverage;

(h) to bodily injury sustained by any person, other than the Named Insured or any relative, if such person is entitled to personal protection benefits as a Named Insured or relative under the terms of any other policy with respect to such coverage;

(i) to bodily injury sustained by any person, other than the Named Insured or any relative, while occupying, or through being struck by while not occupying, any motor vehicle, other than an insured motor vehicle, which is being operated by the Named Insured or relative if the owner or registrant of such motor vehicle has provided security with respect thereto as required by Chapter 31 of the Michigan Insurance Code;

(j) to bodily injury sustained by any person arising out of the ownership, operation, maintenance or use, including loading or unloading, of a parked motor vehicle unless:

1. the motor vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred, or

2. such bodily injury was a direct result of physical contact with

   a. equipment permanently mounted on such motor vehicle while such equipment was being operated or used, or

   b. property being lifted onto or lowered from such motor vehicle in the loading or unloading process, or

3. such bodily injury was sustained by a person while occupying such motor vehicle;

(k) to bodily injury sustained by any person while occupying a motor-vehicle located for use as a residence or premises;

(l) to bodily injury sustained by any person while occupying a public or livery conveyance for which security is maintained as required by Chapter 31 of the Michigan Insurance Code, unless such conveyance is an insured motor vehicle;

(m) to bodily injury sustained by the Named Insured or any relative while occupying a motor vehicle owned or registered by the employer of the Named Insured or such relative for which security is maintained as required by Chapter 31 of the Michigan Insurance Code;

(n) with respect to work loss and survivors' loss, to bodily injury sustained by any person, other than the Named Insured or any relative, while occupying any motor vehicle, other than the insured motor vehicle, which is being operated by the Named Insured or any relative outside the State of Michigan if neither the owner nor the registrant of such motor vehicle is required to provide security with respect thereto under Chapter 31 of the Michigan Insurance Code.

### DEFINITIONS

When used in reference to this insurance:

"allowable expenses" means reasonable charges incurred for reasonably necessary products, services, and accommodations, for an eligible injured person's care, recovery or rehabilitation, including, but not limited to, expenses for medical, hospital, nursing, x-ray, dental, surgical, ambulance, funeral and burial services and prosthetic devices;

"bodily injury" means accidental bodily injury, sickness or disease, including death resulting therefrom;

"dependent survivors" means:

(a) the surviving spouse of the deceased eligible injured person if residing in the same household at the time of death, or if dependent upon such deceased at the time of death, provided that the dependency of such spouse shall terminate upon remarriage or death;

(b) any person who was dependent upon the deceased eligible injured person at the time of such eligible injured person's death, but only while such other person is:

1. under the age of 18 years, or

2. physically or mentally incapacitated from earning, or

3. engaged full-time in a formal program of academic or vocational education or training;

"eligible injured person" means:

(a) the Named Insured or any relative who sustains bodily injury in an accident involving a motor vehicle;

(b) any other person who sustains bodily injury

1. while occupying the insured motor vehicle, or

2. while not occupying any motor vehicle as a result of an accident involving the insured motor vehicle, or

3. as the result of an accident involving any other motor vehicle

   (i) which is being operated by the Named Insured or a relative, and

   (ii) to which the bodily injury liability insurance of the policy applies;

"income" means salary, wages, tips, commissions, fees, and other earnings derived from work or employment;

**Endorsement #13**

DA-831 Printed in U.S.A.

"insured motor vehicle" means a motor vehicle with respect to which

(a) the bodily injury liability insurance of the policy applies and for which a specific premium is charged, and

(b) the Named Insured is required to maintain security under Chapter 31 of the Michigan Insurance Code;

"motor vehicle" means a vehicle, including a trailer, operated or designed for operation upon a public highway by power other than muscular power which has more than two wheels;

"Named Insured" means the person or organization named in the declarations;

"occupying" means in or upon or entering into or alighting from;

"relative" means a person related to the Named Insured by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as the Named Insured;

"survivor's loss" means loss sustained during the first 3 years after the date of the accident by dependent survivors because of the death of an eligible injured person and consisting of:

(a) contributions of tangible things of economic value, not including services, that such dependent survivors would have received for support during their dependency from the deceased had he not sustained the bodily injury causing death, and

(b) expenses reasonably incurred by such dependent survivors during their dependency in obtaining ordinary and necessary services in lieu of those that the deceased person would have performed for their benefit had he not sustained the bodily injury causing death;

"work loss" means loss sustained during the first 3 years after the date of the accident consisting of:

(a) loss of income the eligible injured person would have earned had he not sustained bodily injury, and

(b) reasonable expenses incurred in obtaining ordinary and necessary services from other in lieu of those services that, had he not sustained bodily injury, the eligible injured person would have performed not for income but for benefit of himself or his dependent,

but work loss does not include any loss after the date on which the eligible injured person dies.

## POLICY PERIOD; TERRITORY

This insurance applies only to accidents which occur on or after October 1, 1973 and during the policy period and within the United States of America, its territories or possessions, or Canada.

## LIMITS OF LIABILITY

Regardless of the number of persons insured, policies or bonds applicable, claims made, or insured motor vehicles to which this insurance applies, the Company's liability for personal protection benefits to or on behalf of any one person who sustains bodily injury in any one motor vehicle accident is limited as follows:

1. allowable expenses shall not include charges for a hospital room in excess of a reasonable and customary charge for semi-private accommodations except when the eligible injured person requires special or intensive care;

2. the maximum amount payable for funeral and burial expenses shall not exceed $1,000;

3. the maximum amount payable for all work loss sustained in any single 30 day period, and any income earned from work performed by the eligible injured person within the same 30 day period, together shall not exceed $1,000 or whatever other amount is established under 3107(b) of Chapter 31 of the Michigan Insurance Code and such amount shall apply pro rata to any lesser periods of work loss, provided that

   (a) the maximum amount payable for loss of income because of work loss shall not exceed 85% of such loss of income, unless the eligible injured person presents to the Company reasonable proof of a lower tax advantage, in which case a greater percentage value shall apply;

   (b) the maximum amount payable for work loss, other than loss of income, incurred by the eligible injured person shall not exceed $20 per day;

4. the maximum amount payable for survivors' loss, because of the death of an eligible injured person, sustained in any single 30 day period shall not exceed $1,000, provided that the maximum amount payable for survivors' loss because of reasonable expenses incurred by such eligible injured person's dependent survivors shall not exceed $20 per day;

5. any amount payable by the Company under the terms of this insurance shall be reduced by the amount paid, payable or required to be provided under

   (a) the laws of any state or federal government;

   (b) any elective deductible set forth in the schedule of this endorsement, or in the declarations of this policy or in any endorsement attached to and forming a part of this policy, provided that such deductible shall apply only to the Named Insured and any relative.

## CONDITIONS

A. Action Against Company. No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this endorsement, provided further than an action for recovery of

personal protection benefits payable under this insurance may not be commenced later than 1 year after the date of accident causing the injury unless written notice of injury as provided herein has been given to the Company within 1 year after the accident or unless the Company has previously made a payment of personal protection benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivors' loss has been incurred. However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.

B. Medical Reports; Proof of Claim. As soon as practicable the eligible injured person or someone on his behalf shall give the Company written proof of claim, under oath if required, including full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist the Company in determining the amount due and payable. The eligible injured person shall submit to physical or mental examinations by physicians selected by the Company when and as often as the Company may reasonably require.

If requested by the Company, such eligible injured person, someone on his behalf or his employer shall furnish a sworn statement of earnings by such eligible injured person since the date of the accident and for a reasonable time prior to the accident.

C. Notice. In the event of an accident, written notice containing particulars sufficient to identify the eligible injured person, and also reasonably obtainable information respecting the time, place and circumstances of the accident shall be given by or on behalf of each eligible injured person to the Company or any of its authorized agents as soon as practicable.

If any eligible injured person, dependent survivor or the legal representative of either shall institute legal action to recover damages for injury against a person or organization who is or may be liable in tort therefor, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to the Company by such eligible injured person, dependent survivor or legal representative.

D. Reimbursement and Trust Agreement. Subject to any applicable limitations set forth in Chapter 31 of the Michigan Insurance Code, in the event of any payment of benefits to any person under this insurance, if such person is legally entitled to recover such benefits,

   (a) the Company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any right of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made, and the Company shall have a lien to the extent of such payment, notice of which may be given to the person or organization causing such bodily injury, his agent, his insurer, or a court having jurisdiction in the matter;

   (b) such person shall hold in trust for the benefit of the Company all rights of recovery which he shall have against such other person or organization because of such bodily injury;

   (c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;

   (d) such person shall execute and deliver to the Company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the Company established by this provision.

E. Multiple Policies; Non-Duplication of Benefits. Regardless of the number of motor vehicles insured or insurers (including self-insurers) providing security in accordance with Chapter 31 of the Michigan Insurance Code, or the provisions of any other law providing for direct benefits without regard to fault for motor or any other vehicle accidents, no person shall recover duplicate benefits for the same expenses or loss.

If any eligible injured person is entitled to recover benefits under more than one policy, the maximum recovery under all such policies shall not exceed the amount which would have been payable under the provisions of the policy providing the highest dollar limit of benefits payable.

# SECTION II

## PROPERTY PROTECTION COVERAGE (E008, as amended; 10/1/73)

The Company will pay, in accordance with Chapter 31 of the Michigan Insurance Code, for damage to tangible property caused by accident and arising out of the ownership, operation, maintenance or use, including loading and unloading, of the insured motor vehicle as a motor vehicle.

## EXCLUSIONS

This insurance does not apply to damage to:

(a) any property while the insured motor vehicle is located for use as a residence or premises;

(b) the property of any person while such person is using the insured motor vehicle without the express or implied consent of the Named Insured;

(c) any property owned by the Named Insured or a relative if such Named Insured or relative was the owner, registrant or operator of a vehicle involved in the motor vehicle accident out of which the property damage arose;

(d) any vehicle or trailer, or the contents of either, operated or designed for operation on a public highway by power other than muscular power, unless such

vehicle or trailer is not an insured motor vehicle b.. .s damaged by an insured motor vehicle and is parked in such a way as not to cause unreasonable risk of the damage which occurred;

(e) any property suffered or caused intentionally by the claimant;

(f) any property as a result of an accident involving a motor vehicle not owned by the Named Insured or any relative which is being operated by the Named Insured or any relative to the extent that security as required under Chapter 31 of the Michigan Insurance Code has been provided by or on behalf of the owner or registrant of such motor vehicle;

(g) any property accepted for transportation by a Named Insured who is a motor carrier as defined in Chapter 475 of the Michigan Compiled Laws, if a certificate of insurance or other evidence of security has been filed by or on behalf of such motor carrier with any local, state or federal regulatory authority, to the extent that such insurance or other security is provided for such property or would be provided except for the application of a deductible.

## DEFINITIONS

When used in reference to this insurance:

"damage" means accidental physical injury to or destruction of tangible property including the loss of use of such injured or destroyed property;

"insured motor vehicle" means:

(a) a motor vehicle owned by the Named Insured with respect to which

1. the property damage liability insurance of the policy applies and for which a specific premium is charged, and

2. the Named Insured is required to maintain security under Chapter 31 of the Michigan Insurance Code, or

(b) a motor vehicle operated by the Named Insured or any relative which is not owned by such Named Insured or relative and to which the property damage liability insurance of the policy applies;

"motor vehicle" means a vehicle, including a trailer, operated or designed for operation upon a public highway by power other than muscular power which has more than two wheels;

"Named Insured" means the person or organization named in the declarations;

"relative" means a person related to the Named Insured by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as the Named Insured.

## POLICY PERIOD; TERRITORY

This insurance applies only to accidents which occur on or after October 1, 1973 and during the policy period in the State of Michigan.

## LIMITS OF LIABILITY

Regardless of the number of persons insured, policies or bonds applicable, claims made, or insured motor vehicles to which this insurance applies, the total limit of the Company's liability under this policy for all damage arising from one accident shall not exceed $1,000,000.

Subject to the foregoing, the Company's liability for property protection benefits shall not exceed the lesser of reasonable repair costs or replacement costs less depreciation and, where applicable, the value of loss of use.

## CONDITIONS

A. Action Against the Company. No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this endorsement, provided further than an action for recovery of property protection benefits payable under this insurance may not be commenced later than 1 year after the date of accident.

B. Notice. In the event of an accident, written notice containing particulars sufficient to identify the damaged property, and also reasonably obtainable information respecting the time, place and circumstances of the accident shall be given by or on behalf of the person who sustains loss to the Company or any of its authorized agents as soon as practicable.

C. Duties in Event of Loss. In the event of loss,

(a) the property shall be protected and any further loss due to failure to protect shall not be recoverable under this insurance; however, reasonable expenses incurred in affording such protection shall be deemed incurred at the Company's request;

(b) within a reasonable time after loss, sworn proof of loss in such form and including such information as the Company may reasonably require shall be filed with the Company and, upon the Company's request, the damaged property shall be exhibited and the owner or bailee thereof shall submit to examination under oath.

D. Reimbursement and Trust Agreement. Subject to any applicable limitations set forth in Chapter 31 of the Michigan Insurance Code, in the event of any payment to any person under this insurance:

(a) the Company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any right of recovery of such person against any person or organization legally responsible for the property damage because of which such payment is made and the Company shall have a lien to the extent of such payment,

notice of which may    given to the person or organization causing such property damage, his agent, his insurer, or a court having jurisdiction in the matter;

(b) such person shall hold in trust for the benefit of the Company all rights of recovery which he shall have against such other person or organization because of such damage;

(c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;

(d) such person shall execute and deliver to the Company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the Company established by this provision.

E. Multiple Policies; Non-Duplication of Benefits. Regardless of the number of motor vehicles insured or insurers (including self-insurers) providing security in accordance with Chapter 31 of the Michigan Insurance Code, or the provisions of any other law providing for direct benefits without regard to fault for motor or any other vehicle accidents, no person shall recover duplicate benefits for the same expenses or loss.

## SECTION III

In consideration of the insurance afforded under Section I of this endorsement and the adjustment of applicable rates:

(a) any amount payable under any uninsured motorist coverage shall be reduced by the amount of any personal protection benefits paid or payable under this or any other automobile insurance policy because of bodily injury to an eligible injured person;

(b) any automobile medical payments coverage afforded under this policy is deleted with respect to a motor vehicle which is an insured motor vehicle. (E007, as amended; 10/1/73).

## SECTION IV

It is agreed that any Physical Damage Insurance afforded by this policy does not apply to the extent that Property Protection Insurance benefits are paid or payable as required by Chapter 31 of the Michigan Insurance Code. (E004, 10/1/73).

## SECTION V

## LIMITED COLLISION COVERAGE (E002, 10/1/73)

The Company agrees with the Named Insured that any motor vehicle, subject to the provisions of Chapter 31 of the Michigan Motor Insurance Code, not insured for Collision Coverage as of October 1, 1973 is hereby provided Limited Collision Coverage to the end of the annual policy period, or otherwise as designated on the declarations or any schedule by the letters "LC". The Company further agrees, subject to all the provisions of the policy relating to Collision Coverage except as modified herein, as follows:

The Company will pay for direct and accidental loss which occurs in the State of Michigan and during the policy period to the insured motor vehicle, except while parked in such a way as not to cause unreasonable risk of the damage which occurred, caused by contact with a motor vehicle of which the owner, registrant or operator, or other person or organization legally responsible for his acts or omissions, is entitled to an exemption from tort liability for such loss under Chapter 31 of the Michigan Insurance Code, provided the Named Insured would be legally entitled to recover such loss but for such exemption. For the purpose of this insurance, determination as to whether the Named Insured is legally entitled to recover such loss and if so the amount thereof shall be made by agreement between the Named Insured and the Company. If the Named Insured and the Company do not agree, then, upon written demand of either, the matter or matters upon which they do not agree shall be settled by arbitration.

## DEFINITIONS

"insured motor vehicle", means:

1. a motor vehicle of which the Named Insured is the owner and with respect to which,

(a) the property damage liability insurance of the policy applies, and

(b) security is required to be maintained under Chapter 31 of the Michigan Insurance Code;

2. a motor vehicle designated in the Declarations or any schedule by the letters "LC"; and

3. any other vehicle designated as follows:

_____

_____

_____

_____

_____

## LIMIT OF LIABILITY

The limit of the Company's liability for loss shall not exceed the actual cash value of the insured motor vehicle, or if the loss is to be a part thereof the actual cash

value of such part, at the time of loss, or what .. ..ould then cost to repair or replace the insured motor vehicle or such part with other property of the kind and quality, or the applicable limit of liability stated in the policy.

The Company shall be liable only for the amount of each such loss in excess of the deductible amount, if any, stated in the declarations of the policy applicable thereto. The deductible amount shall apply to loss caused by contact with another motor vehicle insured by the Company.

## SECTION VI

### BROADENED COLLISION COVERAGE (E003, 10/1/73)

It is agreed that any motor vehicle, subject to the provisions of Chapter 31 of the Michigan Motor Insurance Code, insured for Collision Coverage as of October 1, 1973 is hereby provided Broadened Collision Coverage in lieu of Collision Coverage to the end of the annual policy period, or otherwise as designated on the declarations or any schedule by the letters "BC". The deductible amount under Collision Coverage is hereby applicable to Broadened Collision Coverage.

The deductible amount applicable under the Collision Coverage does not apply to loss to the insured motor vehicle, except while parked in such a way as not to cause unreasonable risk of the damage which occurred, caused by contact with a motor vehicle of which the owner, registrant or operator, or other person or organization legally responsible for his acts or omissions, is entitled to an exemption from tort liability for such loss under Chapter 31 of the Michigan Insurance Code provided the Named Insured would be legally entitled to recover such loss but for such exemption. For the purposes of this insurance, determination as to whether the Named Insured is legally entitled to recover such loss and if so the amount thereof, shall be made by agreement between the Named Insured and the Company. If the Named Insured and the Company do not agree, then, upon demand of either, the matter or matters upon which they do not agree shall be settled by arbitration.

As used in this section "insured motor vehicle" means:

1. a motor vehicle of which the Named Insured is the owner and with respect to which,

   (a) the Collision Coverage of the policy applies, and

   (b) security is required to be maintained under Chapter 31 of the Michigan Insurance Code;

2. a motor vehicle. desi,. .ed in the Declarations or any schedule by the letters "BC"; and

3. any other vehicle designated as follows:

_____

_____

_____

_____

_____

## SECTION VII

### RENTAL REIMBURSEMENT PROVISION (E005, 10/1/73)

It is agreed that any Rental Reimbursement insurance benefits afforded by this policy does not apply to the extent that similar benefits are payable under Property Protection Insurance as required by Chapter 31 of the Michigan Insurance Code.

## SECTION VIII

### PREMIUM RECOMPUTATION

The premium for the policy is based on rates which have been established in reliance upon the limitations on the right to recover for damages under the provisions of Chapter 31 of the Michigan Insurance Code. If a court of competent jurisdiction declares or enters a judgment from which there is no appeal the effect of which is to render the provisions of such Act invalid or unenforceable in whole or in part, the Company shall have the right to recompute the premium payable for the policy on the basis of revised rates which are subject to review by the Commissioner of Insurance. In the event the Named Insured elects to delete any coverage as a result of such declaration or judgment, any resulting refund of premium shall be computed on a pro-rata basis.

_____

Authorized Agent

**INA**

▶ Issued by .................................................................................................................................................
(Name of Insurance Company)

| This Endorsement, effective | Forms a part of Policy No. | Issued to: |
|---|---|---|
| ▶ 3-1-77 ✓ | ▶ GAL 33 14 83 ✓ | ▶ |

Insert the policy number. The remainder of the information is to be completed only
when this endorsement is issued subsequent to the preparation of the policy.

It is agreed that the following are added to this policy as Additional
Named Insureds but only as respects Automobile Liability: ✓

NAMES OF ADDITIONAL NAMED INSUREDS ✓

W.W.W. Retail Inc. ✓

Wolverine World Wide Employees ✓

Federal Credit Union ✓

Wolverine Service Club, Inc. ✓

Any Corporation or other Business Organization in which the Primary Insured
Acquires an Ownership Interest of at least 51%. ✓

Endorsement #14

_____
Authorized Agent

CC-2808                          AGENT'S COPY



## REPOSSESSED AUTOMOBILES



Named Insured _____

Effective _3-1-77_ _____ Policy No._ GAL 33 14 83

Issued by _____
(Name of Insurance Company)

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

### COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE
### AUTOMOBILE MEDICAL PAYMENTS INSURANCE

It is agreed that the insurance with respect to an owned automobile applies with respect to any automobile while being repossessed by the Named Insured, or while being maintained or used in connection with resale following such repossession, subject to the following additional provisions:

1. The insurance does not cover as an Insured any person or organization from whom the automobile has been repossessed.

2. The insurance does not apply to any automobile while being used for other business purposes or for personal, pleasure or family purposes.

### SCHEDULE

| The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. | | | | |
|---|---|---|---|---|
| | Rates | | Advance Premiums | |
| Estimated number of automobiles to be repossessed during policy period | Bodily Injury Liability | Property Damage Liability | Bodily Injury Liability | Property Damage Liability |
| If Any | Included in Composite Rate | | | |

| Minimum Premiums: | | | | |
|---|---|---|---|---|
| Bodily Injury Liability $ | | | | |
| Property Damage Liability $ | | Total Advance Premiums | $ | $ |

**Endorsement #15**

_____
Authorized Agent

D-1580 (A7500) 4-21-67 Printed in U.S.A.

**INA**

▶ Issued by ...................................................................................................................................
(Name of Insurance Company)

| This Endorsement, effective | Forms a part of Policy No. | Issued to: |
|---|---|---|
| ▶  3-1-77 | ▶  GAL 33 14 83 | ▶ |

Insert the policy number. The remainder of the information is to be completed only
when this endorsement is issued subsequent to the preparation of the policy.

It is agreed that the following Cancelation Clause is added to this policy
but only as respects Automobile Liability:

This endorsement modifies the cancelation condition and is applicable to
all insurance afforded by the policy.

CANCELATION BY THE COMPANY ENDORSEMENT

It is agreed the cancelation condition of the policy is amended to provide
that, with respect to cancelation by the company, except for cancelation
for nonpayment of premium, the effective date of cancelation shall be not
less than 60 days after the mailing of notice thereof.

Endorsement #16

_____
Authorized Agent

CC-2808                        AGENT'S COPY

**INA**

▶ Issued by ......................................................................................................................................................

*(Name of Insurance Company)*

| This Endorsement, effective | Forms a part of Policy No. | Issued to: |
|---|---|---|

▶   3-1-77                    ▶  **GAL 33 14 83**        ▶

Insert the policy number. The remainder of the information is to be completed only
when this endorsement is issued subsequent to the preparation of the policy.

It is agreed that Automobile Liability Coverage is hereby excluded on all
truck type tractor and trailer combinations used beyond a 200 mile radius
of principal garaging.

It is further agreed that Automobile Physical Damage Coverage is hereby
excluded on all truck-type tractors used beyond a 200 mile radius of
principal garaging.

This endorsement modifies such insurance as is afforded by the provisions
of the policy relating to the following:

    Automobile Physical Damage Insurance (Fleet Automatic)

It is agreed that such insurance as this policy affords under coverage P —
Collision and Coverage O — Comprehensive applies to trailers or semi-trailers
while under short-term lease to the Named Insured, subject to the following
provisions:

1. "Short-Term Lease" means the lease of a trailer or semi-trailer
   for a period of time not exceeding 30 days.

2. Loss hereunder shall be adjusted with the Named Insured and shall
   be payable to the Named Insured and the owner of the trailer or
   semi-trailer, as their interests may appear.

3. The insurance hereunder shall be excess insurance over any other
   valid and collectible insurance applicable to the automobile.

4. The deductible amount under coverage P — collision shall be $250.

5. The limit of the company's liability with respect to each
   trailer or semi-trailer shall be not more than $10,000.

**Endorsement #17**

_____
Authorized Agent

CC-2808                                    **AGENT'S COPY**

**INA**

## LOSS PAYABLE CLAUSE

Named Insured_____

Effective_____ **3-1-77** ✓                                    Policy No._____ **GAL 33 14 83** ✓

Issued by_____

(Name of Insurance Company)

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

Loss or damage, if any, under the policy shall be payable as interest may appear to _____ **See below** ✓ _____

and this insurance as to the interest of the Bailment Lessor, Conditional Vendor, Mortgagee or other secured party or Assignee of Bailment Lessor, Conditional Vendor, Mortgagee or other secured party (herein called the Lienholder) shall not be invalidated by any act or neglect of the Lessee, Mortgagor, Owner of the within described automobile or other Debtor nor by any change in the title or ownership of the property; provided, however, that the conversion, embezzlement or secretion by the Lessee, Mortgagor, Purchasor or other Debtor in possession of the property insured under a bailment lease, conditional sale, mortgage or other security agreement is not covered under such policy, unless specifically insured against and premium paid therefor; and provided, also, that in case the Lessee, Mortgagor, Owner or other Debtor shall neglect to pay any premium due under such policy the Lienholder shall, on demand, pay the same.

Provided also, that the Lienholder shall notify the Company of any change of ownership or increase of hazard which shall come to the knowledge of said Lienholder and, unless permitted by such policy, it shall be noted thereon and the Lienholder shall, on demand, pay the premium for such increase hazard for the term of the use thereof; otherwise such policy shall be null and void.

The Company reserves the right to cancel such policy at any time as provided by its terms, but in such case the Company shall notify the Lienholder when not less than ten days thereafter such cancelation shall be effective as to the interest of said Lienholder therein and the Company shall have the right, on like notice, to cancel this agreement.

If the Insured fails to render proof of loss within the time granted in the policy conditions, such Lienholder shall do so within sixty days thereafter, in form and manner as provided by the policy, and further, shall be subject to the provisions of the policy relating to appraisal and time of payment and of bringing suit.

Whenever the Company shall pay the Lienholder any sum for loss or damage under such policy and shall claim that, as to the Lessee, Mortgagor, Owner or other Debtor, no liability therefor existed, the Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the debt, or may at its option, pay to the Lienholder the whole principal due or to grow due on the mortgage or other security agreement with interest, and shall thereupon receive a full assignment and transfer of the mortgage or other security agreement and of all such other securities; but no subrogation shall impair the right of the Lienholder to recover the full amount of its claim.

Whenever a payment of any nature becomes due under the policy, separate payment may be made to each party at interest provided the Company protects the equity of all parties.

**\*Any loss under Coverages other than Towing is payable as interest may appear to the named insured and the Loss Payee named below:**
**United States Fleet Leasing Inc., Ford Motor Credit Co., General Motors Acceptance Corp., Bank of America, Chrysler Credit Corp.,**
**320 Hatch Drive, Foster City, CA 94404**
**applies to all automobiles leased from United States Fleet Leasing Inc., to Frolic Footwear Div. of Named Insured.** ✓
**1. Associates Discount of Delaware, 855 Central Ave., Albany, NY 12206** ✓
**(for 1973 Ford, C70EVR55678)** ✓
**2. Ford Motor Credit Co., 3250 28th St. S.E., Grand Rapids, MI. 49508** ✓
**(for 1975 Ford, 5G21H121820)** ✓

**Endorsement #18**

Authorized Agent

D-1280d (NAUA 616 10/72)   Ptd. in U.S.A.

**AGENT'S COPY**



## APPLICATION OF INSURANCE TO OWNER OF HIRED AUTOMOBILE

| Named Insured | |
|---|---|
| Effective  3-1-77 ✓ | Policy No.  GAL 33 14 83 ✓ |
| Issued by (Name of Insurance Company) | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

### COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE
### AUTOMOBILE MEDICAL PAYMENTS INSURANCE

With respect to the hired automobile described below or designated in the policy as subject to this endorsement, it is agreed that.

(1) The insurance applies as primary insurance.

(2) Subject otherwise to the Persons Insured provision, the insurance covers as an Insured the owner, any lessee (of whom the Named Insured is a sub-lessee) and any agent or employee of such owner or lessee, but only while such automobile is used in the business of the Named Insured as stated in the declarations, or by or on behalf of the Named Insured for personal or pleasure purposes, and subparagraph (ii) of the Persons Insured provision is amended accordingly.

Description of Automobile:

APPLIES TO ALL AUTOMOBILES LEASED FROM: ✓

1. G.A.T.X. Leasing Corp. ✓
2. Morrison Industrial Equipment Co. ✓
3. Seatrain Lines, Inc. ✓
4. Imperial Leasing Inc. ✓
5. Vandenberg Leasing, Inc., 1191 S. Washington Ave., Holland, MI. 49423 ✓
6. Mason Service Rentals ✓
7. Western Auto Leasing, Inc. ✓
8. Bildaco, Inc. ✓
9. United States Leasing Corp. ✓
10. Abernathy Motor Co., Inc., Jonesboro, AR 72401 ✓
11. Mulvihill Oldsmobile Co., 1100 S. Division, Grand Rapids, MI. ✓
12. Tony Betten Ford Inc., 3839 Plainfield, N.E., Grand Rapids, MI. ✓
13. Horizon Transportation, Division of Scope Industries ✓
14. Staal Leasing, Inc. 1010 28th St., S.E., Grand Rapids, MI. ✓
15. General Electric Credit Corp., P.O. Box 38, Southfield, MI. 48075 ✓
16. Puerto Rico Marine Mng. Inc. ✓
    1 Cross Roads of Commerce ✓
    Rolling Meadows, IL 60008 ✓

Any other leasing or rental company where the named insured is required to provide insurance for the owner of the automobile. ✓

Endorsement #19

Authorized Agent

D-1567



**LOSS PAYABLE CLAUSE**

Named Insured_____

Effective___**3-1-77**_____ Policy No.___**GAL 33 14 83**___

Issued by_____
(Name of Insurance Company)

*The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.*

Loss or damage, if any, under the policy shall be payable as interest may appear to ___**All entities listed on**___ **Endorsement #19, D1567** and this insurance as to the interest of the Bailment Lessor, Conditional Vendor, Mortgagee or other secured party or Assignee of Bailment Lessor, Conditional Vendor, Mortgagee or other secured party (herein called the Lienholder) shall not be invalidated by any act or neglect of the Lessee, Mortgagor, Owner of the within described automobile or other Debtor nor by any change in the title or ownership of the property; provided, however, that the conversion, embezzlement or secretion by the Lessee, Mortgagor, Purchasor or other Debtor in possession of the property insured under a bailment lease, conditional sale, mortgage or other security agreement is not covered under such policy, unless specifically insured against and premium paid therefor; and provided, also, that in case the Lessee, Mortgagor, Owner or other Debtor shall neglect to pay any premium due under such policy the Lienholder shall, on demand, pay the same.

Provided also, that the Lienholder shall notify the Company of any change of ownership or increase of hazard which shall come to the knowledge of said Lienholder and, unless permitted by such policy, it shall be noted thereon and the Lienholder shall, on demand, pay the premium for such increase hazard for the term of the use thereof; otherwise such policy shall be null and void.

The Company reserves the right to cancel such policy at any time as provided by its terms, but in such case the Company shall notify the Lienholder when not less than ten days thereafter such cancelation shall be effective as to the interest of said Lienholder therein and the Company shall have the right, on like notice, to cancel this agreement.

If the Insured fails to render proof of loss within the time granted in the policy conditions, such Lienholder shall do so within sixty days thereafter, in form and manner as provided by the policy, and further, shall be subject to the provisions of the policy relating to appraisal and time of payment and of bringing suit.

Whenever the Company shall pay the Lienholder any sum for loss or damage under such policy and shall claim that, as to the Lessee, Mortgagor, Owner or other Debtor, no liability therefor existed, the Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the debt, or may at its option, pay to the Lienholder the whole principal due or to grow due on the mortgage or other security agreement with interest, and shall thereupon receive a full assignment and transfer of the mortgage or other security agreement and of all such other securities; but no subrogation shall impair the right of the Lienholder to recover the full amount of its claim.

Whenever a payment of any nature becomes due under the policy, separate payment may be made to each party at interest provided the Company protects the equity of all parties.

**Endorsement #20**

_____
**Authorized Agent**

D-1280d (NAUA 516 10/72)　　Ptd. in U.S.A.

**AGENT'S COPY**

# INA

## CANCELLATION CONDITION—AMENDMENT OF FIRST PARAGRAPH
### (Michigan)

Named Insured_____

Policy No.___GAL 33 14 83_____Policy Period_____ Effective Date of Endorsement ____3-1-77____

Issued by_____
**(Name of Insurance Company)**
The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

---

> This endorsement applies to all General Liability policies and to all Automobile
> (including Automobile Physical Damage) policies issued or delivered in Michigan.

It is agreed that with respect to the "Cancellation" provisions of the policy:

1. The words "at the address shown in this policy," appearing in the first paragraph of the "Cancellation" Condition, are amended to read "at his address last known to the company or its authorized agent".

2. The provisions (if forming a part of the policy) of the endorsement entitled "Amendment of Termination Provisions (Michigan)" apply as stated therein.

3. The provisions, if any, forming a part of the policy which (by endorsement or otherwise) amend the "Cancellation" provisions of the policy other than as stated or designated in this endorsement are deleted.

Authorized Agent

LC-1032a (G503) Printed in U.S.A.



# AMENDMENT OF THE
## SOUND REPRODUCING OR RECORDING EQUIPMENT EXCLUSION

| Named Insured | |
|---|---|
| Effective    3-1-77 ✓ | Policy No.    GAL 33 14 83 ✓ |
| Issued by (Name of Insurance Company) | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

### AUTOMOBILE PHYSICAL DAMAGE INSURANCE
### (Fleet Automatic or Non-fleet)
### (Dealers)

It is agreed that:

Under Exclusion (e) of the Automobile Physical Damage Insurance (Fleet Automatic or Non-fleet) and under Exclusion (g) of the Automobile Physical Damage Insurance (Dealers), (i) and (ii) are replaced by the following:

(i) to any device or instrument designed for recording or reproduction of sound, unless such device or instrument is permanently installed in the automobile;

(ii) to more than one tape, or other medium, owned by the Named Insured for use with such permanently installed instrument; or

(iii) to any caddy, case, or container used for storing or carrying such tapes or mediums.

Authorized Agent

D-2256  1/1/73  Printed in U.S.A.



## AUTOMOBILE PHYSICAL DAMAGE INSURANCE
### (Fleet Automatic or Non-Fleet)

| COVERAGE PART | Policy No. ~~GAL 33 14 83~~ |
|---|---|

### I. COVERAGE AGREEMENTS

1. The Company will pay for loss to covered automobiles, under:

**COVERAGE O. COMPREHENSIVE** —from any cause except collision; but, for the purpose of this coverage, breakage of glass and loss caused by missiles, falling objects, fire, theft or larceny, windstorm, hail, earthquake, explosion, riot or civil commotion, malicious mischief or vandalism, water, flood, or colliding with a bird or animal, shall not be deemed loss caused by collision;

**COVERAGE P. COLLISION** —caused by collision;

**COVERAGE Q. FIRE, LIGHTNING OR TRANSPORTATION** —caused by

    (a) fire or lightning,

    (b) smoke or smudge due to a sudden, unusual and faulty operation of any fixed heating equipment serving the premises in which the covered automobile is located, or

    (c) the stranding, sinking, burning, collision or derailment of any conveyance in or upon which the covered automobile is being transported;

**COVERAGE R. THEFT** —caused by theft or larceny;

**COVERAGE S. WINDSTORM, HAIL, EARTHQUAKE OR EXPLOSION** —caused by windstorm, hail, earthquake or explosion;

**COVERAGE T. COMBINED ADDITIONAL** —caused by

    (a) windstorm, hail, earthquake or explosion,

    (b) riot or civil commotion,

    (c) the forced landing or falling of any aircraft or its parts or equipment,

    (d) malicious mischief or vandalism,

    (e) flood or rising waters, or

    (f) external discharge or leakage of water;

provided that, with respect to each covered automobile,

(i) under the Comprehensive Coverage (except as to loss from any of the causes described in the Fire, Lightning or Transportation Coverage) and under the Collision Coverage, such payment shall be only for the amount of each loss in excess of the deductible amount, if any, stated in the Declarations as applicable thereto;

(ii) under the Combined Additional Coverage, $25 shall be deducted from the amount of each loss caused by malicious mischief or vandalism.

2. The Company will pay, under:

**COVERAGE V. TOWING** —for towing and labor costs necessitated by the disablement of covered automobiles, provided the labor is performed at the place of disablement.

DA-908    (CP 00 30 Ed. 8-74)   Printed In U.S.A.
             (CP 00 35 Ed. 8-74)

## 3. SUPPLEMENTARY PAYMENTS

In addition to the applicable limits of liability, the Company will:

(a) with respect to such transportation insurance as is afforded herein, pay general average and salvage charges for which the Named Insured becomes legally liable;

(b) reimburse the Named Insured, in the event of a theft covered by this insurance of an entire covered automobile of the private passenger type (not used as a public or livery conveyance and not, at time of theft, being held for sale by an automobile dealer), for expense incurred for the rental of a substitute for such covered automobile during the period commencing 48 hours after such theft has been reported to the Company and the police and terminating, regardless of expiration of the policy period, when such covered automobile is returned to use or the Company pays for the loss; but, as to any one such theft, such reimbursement shall not exceed $10 for any one day nor $300 total.

**4.** Such insurance as is afforded under each coverage applies separately to each covered automobile, and a land motor vehicle and one or more trailers or semitrailers attached thereto shall be held to be separate covered automobiles as respects limits of liability and any deductible provisions applicable thereto.

### Exclusions

This insurance does not apply:

(a) to any covered automobile while used as a public or livery conveyance, unless such use is specifically declared and described in the Declarations;

(b) to damage which is due and confined to:

    (i) wear and tear, or

    (ii) freezing, or

    (iii) mechanical or electrical breakdown or failure,

    unless such damage is the result of other loss covered by this insurance;

(c) to tires, unless

    (i) loss be coincident with and from the same cause as other loss covered by this insurance; or

    (ii) damaged by fire, by malicious mischief or vandalism or stolen and, as to the covered automobile, loss caused by such damage or theft is covered by this insurance;

(d) to loss due to

    (i) war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

    (ii) radioactive contamination;

(e) to loss to

    (i) any device or instrument designed for the recording, reproduction, or recording and reproduction of sound, unless such device or instrument is permanently installed in the covered automobile;

    (ii) any tape, wire, record disc or other medium for use with any device or instrument designed for the recording, reproduction, or recording and reproduction of sound;

(f) to loss to a camper body designed for use with a covered automobile and not designated in the Declarations and for which no premium has been charged if such camper body was owned at the inception of the policy period or the inception of any renewal or extension period thereof;

(g) under the Comprehensive and Theft Coverages, to loss or damage due to conversion, embezzlement or secretion by any person in possession of a covered automobile under a bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance;

(h) under the Collision Coverage, to breakage of glass if insurance with respect to such breakage is otherwise afforded herein;

(i) under the Windstorm, Hail, Earthquake or Explosion and Combined Additional Coverages, to loss resulting from rain, snow or sleet, whether or not wind-driven.

## II. LIMIT OF LIABILITY

The limit of the Company's liability for loss to any one covered automobile shall not exceed the least of the following amounts:

(a) the actual cash value of such covered automobile, or if the loss is to a part thereof the actual cash value of such part, at time of loss; or

(b) what it would then cost to repair or replace such covered automobile or part thereof with other of like kind and quality, with deduction for depreciation; or

(c) the limit of liability stated in the Declarations as applicable to "each covered automobile" under the coverage afforded for the loss to such covered automobile, provided that if such limit of liability is expressed as a stated amount it shall, with respect to a covered automobile newly acquired during the policy period and not described in the Declarations, be deemed as having been replaced by "actual cash value".

## III. POLICY PERIOD; TERRITORY; PURPOSES OF USE

This insurance applies only to loss which occurs during the policy period, while the covered automobile is within the United States of America, its territories or possessions, or Canada, or is being transported between ports thereof and, if a covered automobile described in the Declarations, is maintained and used for the purposes stated therein as applicable thereto.

## IV. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"camper body" means a body designed to be mounted upon a covered automobile and equipped as sleeping or living quarters;

"collision" means (i) collision of a covered automobile with another object or with a vehicle to which it is attached, or (ii) upset of such covered automobile;

"covered automobile" means a land motor vehicle, trailer or semitrailer, including its equipment and other equipment permanently attached thereto (but not including robes, wearing apparel or personal effects), which is either

(a) designated in the Declarations, by description, as a covered automobile to which this insurance applies and is owned by the Named Insured; or

(b) if not so designated, such vehicle is newly acquired by the Named Insured during the policy period provided, however, that:

    (i) it replaces a described covered automobile, or as of the date of its delivery this insurance applies to all covered automobiles, and

    (ii) the Named Insured notifies the Company within 30 days following such delivery date;

but "covered automobile" does not include a vehicle owned by or registered in the name of any individual partner or executive officer of the Named Insured, unless specifically stated otherwise by endorsement forming a part of the policy;

"loss" means direct and accidental loss or damage;

"private passenger type" means a 4-wheel land motor vehicle of the private passenger or station wagon type;

as to "purposes of use":

"commercial" means use principally in the business occupation of the Named Insured as stated in the Declarations, including occasional use for personal, pleasure, family and other business purposes;

"pleasure and business" means personal, pleasure, family and business use.

## V. CONDITIONS

None of the Conditions of the policy shall apply to this insurance except "Premium", "Inspection and Audit", "Subrogation", "Changes", "Assignment", "Cancellation", and "Declarations". This insurance shall also be subject to the following additional Conditions:

### 1. Named Insured's Duties in Event of Loss

In the event of loss the Named Insured shall:

(a) protect the covered automobile, whether or not this insurance applies to the loss, and any further loss or damage due to the Named Insured's failure to protect shall not be recoverable under this insurance; reasonable expenses incurred in affording such protection shall be deemed incurred at the Company's request;

(b) give notice thereof as soon as practicable to the Company or any of its authorized agents and also, in the event of theft or larceny, to the police;

(c) file with the Company, within 91 days after loss, his sworn proof of loss in such form and including such information as the Company may reasonably require and, upon the Company's request, shall exhibit the damaged property and submit to examination under oath;

(d) cooperate with the Company and, upon the Company's request, shall assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Named Insured because of loss with respect to which this insurance applies; and shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses;

but the Named Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation, offer or pay any reward for recovery of stolen property or incur any expense other than as specifically provided in this insurance.

### 2. Payment for Loss

With respect to any loss covered by this insurance, the Company may pay for said loss in money, or may:

(a) repair or replace the damaged or stolen property, or

(b) return at its expense any stolen property to the Named Insured, with payment for any resultant damage thereto, at any time before the loss is so paid or the property is so replaced, or

(c) take all or any part of the damaged or stolen property at the agreed or appraised value,

but there shall be no abandonment to the Company.

### 3. Appraisal

If the Named Insured and the Company fail to agree as to the amount of loss, either may, within 60 days after proof of loss is filed, demand an appraisal of the loss. In such event the Named Insured and the Company shall each select a competent appraiser, and the appraisers shall select a competent and disinterested umpire. The appraisers shall state separately the actual cash value and the amount of loss and failing to agree shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. The Named Insured and the Company shall each pay its chosen appraiser and shall bear equally the other expenses of the appraisal and umpire.

The Company shall not be held to have waived any of its rights by any act relating to appraisal.

### 4. Action Against Company

No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this insurance nor until 30 days after proof of loss is filed and the amount of loss is determined as provided in this insurance.

### 5. Other Insurance

If the Named Insured has other insurance against a loss covered by this insurance, the Company shall not be liable under this insurance for a greater proportion of such loss than the applicable limit of liability stated in the Declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, with respect to any covered automobile newly acquired during the policy period and not described in the Declarations, this insurance shall not apply to any loss against which the Named Insured has other valid and collectible insurance.

### 6. No Benefit to Bailee

None of the provisions of this insurance shall inure directly or indirectly to the benefit of any carrier or other bailee for hire.

### 7. Terms of Insurance, Conformed to Statute

Terms of this insurance which are in conflict with the statutes of the state wherein this insurance is issued are hereby amended to conform to such statutes.

(See next page for FLEET AUTOMATIC provisions, if applicable)

## FLEET AUTOMATIC PROVISIONS

The following apply only when Item 4, Fleet Automatic Provisions, of the Automobile Physical Damage Insurance—Additional Declarations is checked:

**II. LIMIT OF LIABILITY** is amended to read as follows:

**II. LIMIT OF LIABILITY**

1. The limit of the Company's liability for loss to any one covered automobile shall not exceed the least of the following amounts:

   (a) the actual cash value of such covered automobile, or if the loss is to a part thereof the actual cash value of such part, at time of loss; or

   (b) what it would then cost to repair or replace such covered automobile or part thereof with other of like kind and quality, with deduction for depreciation; or

   (c) the limit of liability stated in the Declarations as applicable to "each covered automobile" under the coverage afforded for the loss to such covered automobile, provided that if such limit of liability is expressed as a stated amount it shall, with respect to a covered automobile newly acquired during the policy period and not described in the Declarations, be deemed as having been replaced by "actual cash value";

   and, subject to the above provisions, shall not in any event exceed the amount, if any, stated in the Declarations as the "maximum limit of liability" applicable to "any one covered automobile."

2. The total limit of the Company's liability for all loss directly attributable to a single happening out of which loss occurs shall not exceed:

   (a) as to all covered automobiles at any one location, the amount, if any, stated in the Declarations as the "maximum limit of liability" applicable thereto, subject to the above provisions respecting any one covered automobile;

   (b) as to all covered automobiles the amount, if any, stated in the Declarations as the "maximum limit of liability" applicable thereto, subject to the above provisions respecting (i) any one covered automobile and (ii) any one location.

## IV. ADDITIONAL DEFINITIONS

The following definition is added:

**"commercial type"** means

   (i) a land motor vehicle of the truck, pick-up, express, sedan or panel delivery type, including truck-type tractors, trailers and semitrailers, used for the transportation or delivery of goods or merchandise or for other business purposes, or

   (ii) an altered private passenger type vehicle used for retail or wholesale delivery;

The definition **"covered automobile"** is amended to read as follows:

**"covered automobile"** means a land motor vehicle, trailer or semitrailer, including its equipment and other equipment permanently attached thereto (but not including robes, wearing apparel or personal effects), which is either

   (a) designated in the Declarations, by description or otherwise, as a covered automobile to which this insurance applies and is:

   (i) owned by the Named Insured, or

   (ii) leased to the Named Insured for a term of not less than one year under an agreement expressly prohibiting any right of the lessor or owner to use such vehicle during the term of such lease except either as an operator employed by the Named Insured or for its repair or exchange; or

   (b) if not so designated, such vehicle is newly acquired by the Named Insured during the policy period provided, however, that:

   (i) it replaces a described covered automobile, or as of the date of its delivery this insurance applies to all covered automobiles, and

   (ii) the Named Insured notifies the Company within 30 days following such delivery date;

but "covered automobile" does not include a vehicle owned by or registered in the name of any individual partner or executive officer of the Named Insured, unless specifically stated otherwise by endorsement forming a part of the policy;

 **INA**

## SOUND RECEIVING AND TRANSMITTING EQUIPMENT EXCLUDED

| Named Insured | |
|---|---|
| Effective<br>3-1-77 | Policy No.<br>GAL 33 14 83 |
| Issued by (Name of Insurance Company) | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**AUTOMOBILE PHYSICAL DAMAGE INSURANCE (Fleet Automatic)**
**AUTOMOBILE PHYSICAL DAMAGE INSURANCE (Non-Fleet)**
**AUTOMOBILE PHYSICAL DAMAGE INSURANCE (Dealers)**

It is agreed that the following exclusion is added:

This insurance does not apply to loss to any sound receiving or sound receiving and transmitting equipment designed for use as a citizen's band radio, two-way mobile radio or telephone, or scanning monitor receiver, including any accessories or antennas. This exclusion does not apply to loss to any of this equipment if installed in a covered automobile which is:

1. owned by a police or fire department; or

2. equipped as an emergency vehicle and owned by a municipality, county, state or the federal government, or by any political subdivision or agency of any of these; or

3. equipped as an emergency vehicle and owned by a volunteer fire department, volunteer rescue squad or volunteer ambulance corps operation.

Authorized Agent

DA-8143 (CP 00 37 Ed. 4-76) Printed in U.S.A.



# UNINSURED MOTORISTS COVERAGE AMENDMENT
(Insolvent Insurer)
(Michigan)



Named Insured_____

Effective___3-1-77_____ Policy No.____GAL 33 14 83_____

Issued by_____
(Name of Insurance Company)
The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

---

This endorsement modifies such insurance as is afforded by the policy relating to the following:

**FAMILY PROTECTION AGAINST UNINSURED MOTORISTS**

**INSURANCE AGAINST UNINSURED MOTORISTS**

---

It is agreed that the term "uninsured automobile" is changed to "uninsured motor vehicle" to comply with Section 500.3010 of the Michigan Code.

It is agreed that the term "uninsured automobile" includes an automobile with respect to which the owner or operator is insured against liability for bodily injury, sickness or disease, including death, resulting therefrom, by an insolvent insurer.

Authorized Agent

D-1426b (IRB A916 9/1/69; A868 1/1/66) Printed in U.S.A.

 **INSURANCE COMPANY OF NORTH AMERICA,** PHILADELPHIA, PENNSYLVANIA



GENERAL—AUTOMOBILE
LIABILITY POLICY

—————
Standard Provisions

A Stock Insurance Company, herein called the Company

In consideration of the payment of the premium, in reliance upon the statements in the declarations made a part hereof and subject to all of the terms of this policy, agrees with the Named Insured as follows:

## COVERAGE

Coverage is afforded under this policy in accordance with the specific Coverage Parts identified in the Declarations as being a part of this policy.

## SUPPLEMENTARY PAYMENTS

The Company will pay, in addition to the applicable limit of liability:

) all expenses incurred by the Company, all costs taxed against the Insured in any suit defended by the Company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the Company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the Company's liability thereon;

(b) premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, and the cost of bail bonds required

of the Insured because of accident or traffic law violation arising out of the use of any vehicle to which this policy applies, not to exceed $250 per bail bond, but the Company shall have no obligation to apply for or furnish any such bonds;

(c) expenses incurred by the Insured for first aid to others at the time of an accident, for bodily injury to which this policy applies;

(d) reasonable expenses incurred by the Insured at the Company's request in assisting the Company in the investigation or defense of any claim or suit, including actual loss of earnings not to exceed $25 per day.

## DEFINITIONS

When used in this policy (including endorsements forming a part hereof):

"automobile" means a land motor vehicle, trailer or semitrailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include mobile equipment;

"bodily injury" means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;

"collapse hazard" includes "structural property damage" as defined herein and property damage to any other property at any time resulting therefrom. "Structural property damage" means the collapse of or structural injury to any building or structure due to (1) grading of land, excavating, borrowing, filling, back-filling, tunnelling, pile driving, cofferdam work or caisson work or (2) moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support thereof. The collapse hazard does not include property damage (1) arising out of operations performed for the Named Insured by independent contractors, or (2) included within the completed operations hazard or the underground property damage hazard, or (3) for which liability is assumed by the Insured under an incidental contract;

"completed operations hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after ʃch operations have been completed or abandoned and occurs away from premises ⸝wned by or rented to the Named Insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the Named Insured under the contract have been completed,

(2) when all operations to be performed by or on behalf of the Named Insured at the site of the operations have been completed, or

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

The completed operations hazard does not include bodily injury or property damage arising out of

(a) operations in connection with the transportation of property, unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,

(b) the existence of tools, uninstalled equipment or abandoned or unused materials, or

(c) operations for which the classification stated in the policy or in the Company's manual specifies "including completed operations";

"elevator" means any hoisting or lowering device to connect floors or landings, whether or not in service, and all appliances thereof including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery; but does not include an automobile servicing hoist, or a hoist without a platform outside a building if without mechanical power or if not attached to building walls, or a hod or material hoist used in alteration, construction or demolition operations, or an inclined conveyor used exclusively for carrying property or a dumbwaiter used exclusively for carrying property and have a compartment height not exceeding four feet;





DEFINITIONS CONTINUED

"explosion hazard" includes property damage arising out of blasting or explosion. The explosion hazard does not include property damage (1) arising out of the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment, or (2) arising out of operations performed for the Named Insured by independent contractors, or (3) included within the completed operations hazard or the underground property damage hazard, or (4) for which liability is assumed by the Insured under an incidental contract;

"incidental contract" means any written (1) lease of premises, (2) easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) sidetrack agreement, or (5) elevator maintenance agreement;

"Insured" means any person or organization qualifying as an Insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each Insured against whom claim is made or suit is brought, except with respect to the limits of the Company's liability;

"mobile equipment" means a land vehicle (including any machinery or apparatus attached thereto, whether or not self-propelled, (1) not subject to motor vehicle registration, or (2) maintained for use exclusively on premises owned by or rented to the Named Insured, including the ways immediately adjoining, or (3) designed for use principally off public roads, or (4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment;

"Named Insured" means the person or organization named in the declarations of this policy;

"Named Insured's products" means goods or products manufactured, sold, handled or distributed by the Named Insured or by others trading under his name, including any container thereof (other than a vehicle), but "Named Insured's products" shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold;

"occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured;

"policy territory" means:

(1) the United States of America, its territories or possessions, or Canada, or

(2) international waters or air space, provided the bodily injury or property damage does not occur in the course of travel or transportation to or from any other country, state or nation, or

(3) anywhere in the world with respect to damages because of bodily injury or property damage arising out of a product which was sold for use or consumption within the territory described in paragraph (1) above, provided the original suit for such damages is brought within such territory;

"products hazard" includes bodily injury and property damage arising out of the Named Insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the Named Insured and after physical possession of such products has been relinquished to others;

"property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period;

"underground property damage hazard" includes underground property damage as defined herein and property damage to any other property at any time resulting therefrom. "Underground property damage" means property damage to wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, borrowing, filling, back-filling or pile driving. The underground property damage hazard does not include property damage (1) arising out of operations performed for the Named Insured by independent contractors, or (2) included within the completed operations hazard, or (3) for which liability is assumed by the Insured under an incidental contract.

## NUCLEAR ENERGY LIABILITY EXCLUSION
### (BROAD FORM)

This exclusion modifies the provisions of this policy relating to ALL LIABILITY AND MEDICAL PAYMENTS INSURANCE OTHER THAN COMPREHENSIVE PERSONAL AND FARMER'S COMPREHENSIVE PERSONAL INSURANCE.

This policy does not apply:

a. Under any Liability Coverage, to bodily injury or property damage:

(1) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization;

b. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization;

c. Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if:

(1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an insured, or (b) has been discharged or dispersed therefrom;

(2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

(3) the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions, or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat;

d. As used in this Exclusion:

(1) "Hazardous properties" include radioactive, toxic, or explosive properties;

(2) "Nuclear material" means source material, special nuclear material or byproduct material;

(3) "Source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(4) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

(5) "Waste" means any waste material (a) containing byproduct material and (b) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (6), (a) or (b) thereof;

(6) "Nuclear facility" means: (a) any nuclear reactor; (b) any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing, or packaging waste; (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste; and (e) includes the site on which any of the foregoing is located, all operations conducted on such site, and all premises used for such operations;

(7) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(8) "Property damage" includes all forms of radioactive contamination of property.

## CONDITIONS

### 1. Premium

All premiums for this policy shall be computed in accordance with the Company's rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

Premium designated in this policy as "advance premium" is a deposit premium only which shall be credited to the amount of the earned premium due at the end of the policy period. At the close of each period (or part thereof terminating with the end of the policy period) designated in the declarations as the audit period the earned premium shall be computed for such period and, upon notice thereof to the Named Insured, shall become due and payable. If the total earned premium for the policy period is less than the premium previously paid, the Company shall return to the Named Insured the unearned portion paid by the Named Insured.

The Named Insured shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the Company at the end of the policy period and at such times during the policy period as the Company may direct.

### 2. Inspection and Audit

The Company shall be permitted but not obligated to inspect the Named Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

The Company may examine and audit the Named Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

### 3. Financial Responsibility Laws

When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy for bodily injury liability or for property damage liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law. The Insured agrees to reimburse the Company for any payment made by the Company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

### 4. Insured's Duties in the Event of Occurrence, Claim or Suit

(a) In the event of an occurrence, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to the Company or any of its authorized agents as soon as practicable.

(b) If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

(c) The Insured shall cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Insured because of injury or damage with respect to which insurance is afforded under this policy, and the Insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

## CONDITIONS CONTINUED

**5. Action Against Company**

No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Company as a party to any action against the Insured to determine the Insured's liability, nor shall the Company be impleaded by the Insured or his legal representative. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

**6. Other Insurance**

The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the Insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the Company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) **Contribution by Equal Shares.** If all of such other valid and collectible insurance provides for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) **Contribution by Limits.** If any of such other insurance does not provide for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

**7. Subrogation**

In the event of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers

and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

**8. Changes**

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the Company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

**9. Assignment**

Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; if, however, the Named Insured shall die, such insurance as is afforded by this policy shall apply (1) to the Named Insured's legal representative, as the Named Insured, but only while acting within the scope of his duties as such, and (2) with respect to the property of the Named Insured, to the person having proper temporary custody thereof, as Insured, but only until the appointment and qualification of the legal representative.

**10. Three Year Policy**

If this policy is issued for a period of three years any limit of the Company's liability stated in this policy as "aggregate" shall apply separately to each consecutive annual period thereof.

**11. Cancellation**

This policy may be cancelled by the Named Insured by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the Company by mailing to the Named Insured at the address shown in this policy, written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing.

If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**12. Declarations**

By acceptance of this policy, the Named Insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the Company or any of its agents relating to this insurance.

IN WITNESS WHEREOF, the INSURANCE COMPANY OF NORTH AMERICA has caused this policy to be signed by its President and a Secretary at Philadelphia, Pennsylvania, and countersigned on the Declarations page by a duly Authorized Agent of the Company.

BERTRAM C. DEDMAN, Secretary

JOHN G. PAINE, President



# INSURANCE COMPANY OF NORTH AMERICA, PHILADELPHIA, PENNSYLVANIA

| MULTIPLE LIABILITY POLICY | DECLARATIONS |
|---|---|

| | |
|---|---|
| Named Insured<br>Address | Wolverine World Wide, Inc., etal<br>9341 Courtland Drive<br>Rockford, MI 49351. | **GAL 37 68 XXX 03**<br><br>The Named Insured is:<br>☐ Individual ☐ Partnership ☒ Corporation<br>☐ Joint Venture ☐ (Other) |

Policy Period: From 3/1/78 to 3/1/79

12:01 A.M., standard time at the address of the Named Insured as stated herein.

Occupation:

Audit Period: Annual, unless otherwise stated _____ Subject to Audit

The insurance afforded is only with respect to such of the following Parts and Coverages therein as are indicated by ☒. The limit of the Company's liability against each such Coverage shall be as stated herein, subject to all of the terms of the policy having reference thereto.

| COVERAGE PARTS | LIMITS OF LIABILITY | | | |
|---|---|---|---|---|
| | Bodily Injury Liability | | Property Damage Liability | |
| | each occurrence | aggregate | each occurrence | aggregate |
| ☐ Owners', Landlords' and Tenants' Liability Insurance<br> ☐ Structural Alterations, New Construction, Demolition<br>☐ Manufacturers' and Contractors' Liability Insurance<br> ☐ Independent Contractors<br>☐ Completed Operations and Products Liability Insurance<br>☐ Contractual Liability Insurance<br>☒ Comprehensive General Liability Insurance | | | | |
| | | | | |
| | 500,000 | 500,000 | 100,000 | 100,000 |
| | each person | each occurrence | each occurrence | |
| ☐ Comprehensive Automobile Insurance<br>☐ | | | | |
| | Personal Liability | | Personal Medical Payments | |
| ☐ Comprehensive Personal Insurance<br>☐ Farmer's Comprehensive Personal Insurance | each occurrence<br>$ | each person<br>$ | each accident<br>$ | |
| | Physical Damage to Property<br>$ each occurrence | | Animal Collision—Farmer's Part Only<br>Market Value not exceeding $300 each animal | |
| | each person | | each accident | |
| ☐ Premises Medical Payments Insurance<br>☐ Automobile Medical Payments Insurance<br>☐ Insurance Against Uninsured Motorist | $<br>$<br>$ | | $<br>$ | |
| | each person aggregate | | general aggregate | |
| ☒ Personal Injury Liability Insurance | $ 500,000 | | $500,000 | |
| ☐ Automobile Physical Damage Insurance (Fleet Automatic or Non-Fleet)<br>☐ Automobile Physical Damage Insurance (Dealers)<br>☐ Garage Insurance | (See Additional Declarations attached for Coverages and Limits of Liability)<br>(See Additional Declarations attached for Coverages and Limits of Liability)<br>(See Additional Declarations attached for Coverages and Limits of Liability) | | | |

Endorsements attached to policy at inception: Endorsements 1-7, GL102, GL215, GL135, LC811, LC976, LC971, LC991, C1452, LC968, LC578

During the past three years no insurer has cancelled insurance, issued to the Named Insured, similar to that afforded hereunder, unless otherwise stated herein.

| TOTAL ADVANCE PREMIUM ► $ 133,038 | If the Policy Period is more than one year and the premium is to be paid in installments, premium is payable on: |
|---|---|
| Effective Date $ See Endt.<br>1st Anniversary $ LC578<br>2nd Anniversary $ | Countersigned By _W. Y. Johnson_<br>Authorized Agent |

This Declarations and Coverage Part(s), with Policy Standard Provisions and Endorsements, if any, issued to form a part thereof, completes the above numbered policy.

GL-178 Printed in U.S.A.

Insured · **Wolverine World Wide, Inc.**          March 1,          19 78

Item 4.    Schedule of Insurer(s) and Insurance ·

## INSURANCE COMPANY OF NORTH AMERICA, PHILADELPHIA, PENNSYLVANIA

Comprehensive General Lialility per expiring policy #GAL 331483

(Automobile coverage not provided)

IN WITNESS WHEREOF, the INSURANCE COMPANY OF NORTH AMERICA has caused this Cover Note to be signed by its President at Philadelphia, Pennsylvania, and countersigned on Page 1 by a duly Authorized Agent of the Insurer.

CC-1418 Ptd. in U.S.A.          Schedule Page —

*John R. Cox*

JOHN R COX President



Endt. # 1

| Named Insured | | | |
|---|---|---|---|
| Policy Symbol | Policy No. | Policy Period | Effective Date of Endorsement |
| GAL | 37 68 03 | | |
| Issued by (Name of Insurance Company) | | | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

It is agreed that the following are added to this policy as Additional Named Insureds, but only as respects General Liability:

NAMES OF ADDITIONAL NAMED INSUREDS

W.W.W. Retail, Inc.

United Parts Distributors of Michigan, Inc./All Parts, Inc.

Wolverine World Wide Employees Federal Credit Union

Wolverine Service Club, Inc.

Any Corporation or Other Business Organization in which the Primary Insured Acquires an Ownership Interest of at least 51 Per Cent.

LC-1296b  Ptd. in U.S.A.

**INA**

| Named Insured | | |
|---|---|---|
| Wolverine World Wide, Inc. | | Endt # 25 |

| Policy Symbol | Policy No. | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| GAL | 37 68 03 | 3-1-78/79 | 3-1-78 |

| Issued by (Name of Insurance Company) |
|---|
| Insurance Company of North America |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

In consideration of the premium charged, it is agreed that United Parts Distributors of Michigan, Inc./ All Parts, Inc. is deleted from the Names of Additional Insureds Endorsement # 1.

It is further agreed that the interest of the Primary Insured is 50.1% in lieu of 51%.

LC-1296b  Ptd. in U.S.A.



Endt # 26

| Named Insured | | | |
|---|---|---|---|
| Wolverine World Wide Inc. | | | |
| Policy Symbol Policy No.<br>GAL    37 68 03 | | Policy Period<br>3-1-78/79 | Effective Date of Endorsement<br>3-1-78 |
| Issued by (Name of Insurance Company)<br>Insurance Company of North America | | | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

In consideration of the premium charged, it is agreed
that Endorsement # 1 is amended to include the following
names insured:

      Wolverine Western Hemisphere Company

      Institutional Shoe Corporation

      Wolverine International, Inc.

      Aguadilla Shoe Corporation

      Seaboard Sales Corporation

      Verde, Inc.

3am
551
-21

LC-1296b  Ptd. in U.S.A.

 **INA** COMPREHENSIVE GENERAL LIABILITY INSURANCE

| ADDITIONAL DECLARATIONS | Policy No. GAL 37 68 03 |
|---|---|

**SCHEDULE**

Location of all premises owned by, rented to or controlled by
the Named Insured  **The United States of America, including Puerto Rico**

Interest of Named Insured in such premises  ☐ Owner  ☐ General Lessee  ☐ Tenant  **As applicable**

Part occupied by Named Insured  **As applicable**

The following discloses all hazards insured hereunder known to exist at the effective date of this policy, unless otherwise stated herein.

| Code No. | Description of Hazards | Premium Bases | Rates | | Advance Premiums | |
|---|---|---|---|---|---|---|
| | | | B.I. | P.D. | Bodily Injury | Property Damage |
| **Premises—Operations** | | | | | | |
| 1-48050 | All Operations | | Included in Composite rate | | | |
| | | (a) Area (Sq. Ft.) (b) Frontage (c) Admissions (d) Remuneration (e) Receipts (f) Units | (a) Per 100 Sq. Ft. of Area (b) Per Linear Foot (c) Per 100 Admissions (d) Per $100 of Remuneration (e) Per $100 of Receipts (f) Per Unit | | | |
| **Escalators (Number at Premises)** | | Number Insured | Per Landing | | | |
| 1-48050 | | | Included in Composite rate | | | |
| **Independent Contractors** | | Cost | Per $100 of Cost | | | |
| 1-48050 | | | Included in Composite rate | | | |
| **Completed Operations** | | (a) Receipts | (a) Per $1000 of Receipts | | | |
| 1-48050 | | | Included in Composite rate | | | |
| **Products** | | (b) Sales | (b) Per $1000 of Sales | | | |
| 1-48050 | | | Included in Composite rate | | | |
| Minimum Premium(s) | | | TOTALS | | $ Incl. | $ Incl. |
| | | | TOTAL ADVANCE PREMIUM ▶ | | $ Included | |

GL-102 (CGL) (Page 1 of 3) 3/73 PRINTED IN U.S.A.



# COMPREHENSIVE GENERAL LIABILITY INSURANCE

## COVERAGE PART

### I. COVERAGE A—BODILY INJURY LIABILITY
### COVERAGE B—PROPERTY DAMAGE LIABILITY

The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of

A. bodily injury or
B. property damage

to which this insurance applies, caused by an occurrence and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

### Exclusions

This insurance does not apply:

(a) to liability assumed by the Insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the Named Insured's products or a warranty that work performed by or on behalf of the Named Insured will be done in a workmanlike manner;

(b) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of

(1) any automobile or aircraft owned or operated by or rented or loaned to any Insured, or

(2) any other automobile or aircraft operated by any person in the course of his employment by any Insured;

but this exclusion does not apply to the parking of an automobile on premises owned by, rented to or controlled by the Named Insured or the ways immediately adjoining, if such automobile is not owned by or rented or loaned to any Insured;

(c) to bodily injury or property damage arising out of (1) the ownership, maintenance, operation, use, loading or unloading of any mobile equipment while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity or (2) the operation or use of any snowmobile or trailer designed for use therewith;

(d) to bodily injury or property damage arising out of and in the course of the transportation of mobile equipment by an automobile owned or operated by or rented or loaned to any Insured;

(e) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of

(1) any watercraft owned or operated by or rented or loaned to any Insured, or

(2) any other watercraft operated by any person in the course of his employment by any Insured;

but this exclusion does not apply to watercraft while ashore on premises owned by, rented to or controlled by the Named Insured;

(f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

(g) to bodily injury or property damage due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing, with respect to

(1) liability assumed by the Insured under an incidental contract, or

(2) expenses for first aid under the Supplementary Payments provision;

(h) to bodily injury or property damage for which the Insured or his indemnitee may be held liable

(1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

(2) if not so engaged, as an owner or lessor of premises used for such purposes,

if such liability is imposed

(i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverages, or

(ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;

but part (ii) of this exclusion does not apply with respect to liability of the Insured or his indemnitee as an owner or lessor described in (2) above;

(i) to any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(j) to bodily injury to any employee of the Insured arising out of and in the course of his employment by the Insured or to any obligation of the Insured to indemnify another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the Insured under an incidental contract;

(k) to property damage to

(1) property owned or occupied by or rented to the Insured,

(2) property used by the Insured, or

(3) property in the care, custody or control of the Insured or as to which the Insured is for any purpose exercising physical control;

but parts (2) and (3) of this exclusion do not apply with respect to liability under a written sidetrack agreement and part (3) of this exclusion does not apply with respect to property damage (other than to elevators) arising out of the use of an elevator at premises owned by, rented to or controlled by the Named Insured;

(l) to property damage to premises alienated by the Named Insured arising out of such premises or any part thereof;

(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from

(1) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement, or

(2) the failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance, quality, fitness or durability warranted or represented by the Named Insured;

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an Insured;

(n) to property damage to the Named Insured's products arising out of such products or any part of such products;

(o) to property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(p) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of the use of the Named Insured's products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(q) to property damage included within:

(1) the explosion hazard in connection with operations identified in this policy by a classification code number which includes the symbol "x",

(2) the collapse hazard in connection with operations identified in this policy by a classification code number which includes the symbol "c",

(3) the underground property damage hazard in connection with operations identified in this policy by a classification code number which includes the symbol "u".

## II. PERSONS INSURED

Each of the following is an Insured under this insurance to the extent set forth below:

(a) if the Named Insured is designated in the declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor, and the spouse of the Named Insured with respect to the conduct of such a business;

(b) if the Named Insured is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the Named Insured is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;

(d) any person (other than an employee of the Named Insured) or organization while acting as real estate manager for the Named Insured; and

(e) with respect to the operation, for the purpose of locomotion upon a public highway, of mobile equipment registered under any motor vehicle registration law,

(i) an employee of the Named Insured while operating any such equipment in the course of his employment, and

(ii) any other person while operating with the permission of the Named Insured any such equipment registered in the name of the Named Insured and any person or organization legally responsible for such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization;

provided that no person or organization shall be an Insured under this paragraph (e) with respect to:

(1) bodily injury to any fellow employee of such person injured in the course of his employment, or

(2) property damage to property owned by, rented to, in charge of or occupied by the Named Insured or the employer of any person described in subparagraph (ii).

This insurance does not apply to bodily injury or property damage arising out of the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not designated in this policy as a Named Insured.

## III. LIMITS OF LIABILITY

Regardless of the number of (1) Insureds under this policy, (2) persons or organizations who sustain bodily injury or property damage, or (3) claims made or suits brought on account of bodily injury or property damage, the Company's liability is limited as follows:

**Coverage A**—The total liability of the Company for all damages, including damages for care and loss of services, because of bodily injury sustained by one or more persons as the result of any one occurrence shall not exceed the limit of bodily injury liability stated in the declarations as applicable to "each occurrence."

Subject to the above provision respecting "each occurrence", the total liability of the Company for all damages because of (1) all bodily injury included within the completed operations hazard and (2) all bodily injury included within the products hazard shall not exceed the limit of bodily injury liability stated in the declarations as "aggregate".

**Coverage B**—The total liability of the Company for all damages because of all property damage sustained by one or more persons or organizations as the result of any one occurrence shall not exceed the limit of property damage liability stated in the declarations as applicable to "each occurrence".

Subject to the above provision respecting "each occurrence", the total liability of the Company for all damages because of all property damage to which this coverage applies and described in any of the numbered subparagraphs below shall not exceed the limit of property damage liability stated in the declarations as "aggregate":

(1) all property damage arising out of premises or operations rated on a remuneration basis or contractor's equipment rated on a receipts basis, including property damage for which liability is assumed under any incidental contract relating to such premises or operations, but excluding property damage included in subparagraph (2) below;

(2) all property damage arising out of and occurring in the course of operations performed for the Named Insured by independent contractors and general supervision thereof by the Named Insured, including any such property damage for which liability is assumed under any incidental contract relating to such operations, but this subparagraph (2) does not include property damage arising out of maintenance or repairs at premises owned by or rented to the Named Insured or structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

(3) all property damage included within the products hazard and all property damage included within the completed operations hazard.

Such aggregate limit shall apply separately to the property damage described in subparagraphs (1), (2) and (3) above, and under subparagraphs (1) and (2), separately with respect to each project away from premises owned by or rented to the Named Insured.

**Coverages A and B**—For the purpose of determining the limit of the Company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

## IV. POLICY TERRITORY

This insurance applies only to bodily injury or property damage which occurs within the policy territory.

---

When used as a premium basis:

(1) "admissions" means the total number of persons, other than employees of the Named Insured, admitted to the event insured or to events conducted on the premises whether on paid admission tickets, complimentary tickets or passes;

(2) "remuneration" means the entire remuneration earned during the policy period by proprietors and by all employees of the Named Insured other than chauffeurs (except operators of mobile equipment) and aircraft pilots and co-pilots, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the Company;

(3) "receipts" means the gross amount of money charged by the Named Insured for such operations by the Named Insured or by others during the policy period as are rated on a receipts basis other than receipts from telecasting, broadcasting or motion pictures, and includes taxes, other than taxes which the Named Insured collects as a separate item and remits directly to a governmental division;

(4) "cost" means the total cost to the Named Insured with respect to operations performed for the Named Insured during the policy period by independent contractors of all work let or sub-let in connection with each specific project, including the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or sub-contractor, including all fees, allowances, bonuses or commissions made, paid or due;

(5) "sales" means the gross amount of money charged by the Named Insured or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the Named Insured and such others collect as a separate item and remit directly to a governmental division.

 

## CONTRACTUAL LIABILITY INSURANCE COVERAGE PART
### (Blanket Coverage)

| ADDITIONAL DECLARATIONS | Policy No. GAL 37 68 03 |
|---|---|

### SCHEDULE

It is agreed that the Limits of Liability set forth in the Policy Declarations for the Contractual Liability Coverage Part shall apply as respects any coverage afforded hereunder unless other specific limits are set forth below.

| Coverage | Limits of Liability (this Coverage Part only) | |
|---|---|---|
| Contractual Bodily Injury Liability | $ 500,000 | each occurrence |
| Contractual Property Damage Liability | $ 100,000 | each occurrence |
| | $ 100,000 | aggregate |

| Code No. | Designation of Contracts on file or known to the Company | Premium Bases | Rates B.I. | Rates P.D. | Advance Premiums Bodily Injury | Advance Premiums Property Damage |
|---|---|---|---|---|---|---|
| | | (a) Sales (b) Cost | (a) Per $1,000 of Sales (b) Per $100 of Cost | | | |
| 3-17985 Blanket Contractual Liability | | Included in Composite rate | | | | |
| Minimum Premium(s) | | | TOTALS | $ Incl | $ Incl | |
| | | | TOTAL ADVANCE PREMIUM ► $ | Incl. | | |

The following exclusions do not apply with respect to any "construction agreements":

When used as a premium basis:

1. the word "cost" means the total cost of all work in connection with all contracts of the type designated in the schedule for this insurance with respect to which "cost" is the basis of premium, regardless of whether any liability is assumed under such contracts by the Insured. It includes the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the Insured, or others including all fees, allowances, bonuses or commissions made, paid or due. It shall not include the cost of any operations to which exclusions (o) or (p) apply, unless such exclusions are voided in the schedule.

2. the word "sales" means the gross amount of money charged by the Named Insured or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the Named Insured and such others collect as a separate item and remit directly to a governmental division.

GL-215   (KB)   Printed in U.S.A.

## I. COVERAGES—CONTRACTUAL BODILY INJURY LIABILITY
### CONTRACTUAL PROPERTY DAMAGE LIABILITY

The Company will pay on behalf of the Insured all sums which the Insured, by reason of contractual liability assumed by him under any written contract of the type designated in the schedule for this insurance, shall become legally obligated to pay as damages because of

bodily injury or
property damage

to which this insurance applies, caused by an occurrence, except the liability of the indemnitee resulting from his sole negligence and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend (1) any arbitration proceeding wherein the Company is not entitled to exercise the Insured's rights in the choice of arbitrators and in the conduct of such proceedings, or (2) any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

**Exclusions**

This insurance does not apply:

(a) to liability assumed by the Insured under any incidental contract;

(b) (1) if the Insured is an architect, engineer or surveyor, to bodily injury or property damage arising out of professional services performed by such Insured, including (i) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, and (ii) supervisory, inspection or engineering services; (2) if the indemnitee of the Insured is an architect, engineer or surveyor, to the liability of the indemnitee, his agents or employees, arising out of (i) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, or (ii) the giving of or failure to give directions or instructions by the indemnitee, his agents or employees, provided such giving or failure to give is the primary cause of the bodily injury or property damage;

(c) to bodily injury or property damage due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing;

(d) to bodily injury or property damage for which the indemnitee may be held liable

(1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

(2) if not so engaged, as an owner or lessor of premises used for such purposes,

if such liability is imposed

(i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or

(ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;

but part (ii) of this exclusion does not apply with respect to liability of the indemnitee as an owner or lessor described in (2) above;

(e) to any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(f) to any obligation for which the Insured may be held liable in an action on a contract by a third party beneficiary for bodily injury or property damage arising out of a project for a public authority; but this exclusion does not apply to an action by the public authority or any other person or organization engaged in the project;

(g) to property damage to (1) property owned or occupied by or rented to the Insured, (2) property used by the Insured, or (3) property in the care, custody or control of the Insured or as to which the Insured is for any purpose exercising physical control;

(h) to property damage to premises alienated by the Named Insured arising out of such premises or any part thereof;

(i) to loss of use of tangible property which has not been physically injured or destroyed resulting from

(1) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement, or

(2) the failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance, quality, fitness or durability warranted or represented by the Named Insured;

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an Insured;

(j) to property damage to the Named Insured's products arising out of such products or any part of such products;

(k) to property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(l) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the Named Insured's products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(m) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of any mobile equipment while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity;

(n) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

Unless stated in the schedule as not applicable, the following exclusions also apply to contractual liability assumed by the Insured under any agreement relating to construction operations.

This insurance does not apply:

(o) to bodily injury or property damage arising out of construction, maintenance or repair of watercraft or loading or unloading thereof;

(p) to bodily injury or property damage arising out of operations, within fifty feet of any railroad property, affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing;

(q) to bodily injury or property damage included within the completed operations hazard or the products hazard;

(r) to property damage included within (1) the explosion hazard, (2) the collapse hazard, or (3) the underground property damage hazard.

## II. PERSONS INSURED

Each of the following is an Insured under this insurance to the extent set forth below:

(a) if the Named Insured is designated in the declarations as an individual, the person so designated and his spouse;

(b) if the Named Insured is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the Named Insured is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such.

This insurance does not apply to bodily injury or property damage arising out of the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not designated in this policy as a Named Insured.

## III. LIMITS OF LIABILITY

Regardless of the number of (1) Insureds under this policy, (2) persons or organizations who sustain bodily injury or property damage, or (3) claims made or suits brought on account of bodily injury or property damage, the Company's liability is limited as follows:

**Contractual Bodily Injury Liability**—The total liability of the Company for all damages, including damages for care and loss of services, because of bodily injury sustained by one or more persons as a result of any one occurrence shall not exceed the limit of bodily injury liability stated in the schedule or the declarations as applicable to "each occurrence".

**Contractual Property Damage Liability**—The total liability of the Company for all damages because of all property damage sustained by one or more persons or organizations as the result of any one occurrence shall not exceed the limit of property damage liability stated in the schedule or the declarations as applicable to "each occurrence".

Subject to the above provision respecting "each occurrence", the total liability of the Company for all damages because of all property damage to which this coverage applies shall not exceed the limit of property damage liability stated in the schedule or the declarations as "aggregate". Such aggregate limit of liability applies separately with respect to each project away from premises owned by or rented to the Named Insured.

**Contractual Bodily Injury and Property Damage Liability**

For the purpose of determining the limit of the Company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

## IV. POLICY TERRITORY

This insurance applies only to bodily injury or property damage which occurs within the policy territory.

## V. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"contractual liability" means liability expressly assumed under a written contract or agreement; provided, however, that contractual liability shall not be construed as including liability under a warranty of the fitness or quality of the Named Insured's products or a warranty that work performed by or on behalf of the Named Insured will be done in a workmanlike manner;

"suit" includes an arbitration proceeding to which the Insured is required to submit or to which the Insured has submitted with the Company's consent.

## VI. ADDITIONAL CONDITION

**Arbitration**

The Company shall be entitled to exercise all of the Insured's rights in the choice of arbitrators and in the conduct of any arbitration proceeding.

**Premium**

The advance premium stated in the schedule is the estimated premium on account of such written contracts as are on file with or known to the Company. The Named Insured shall notify the Company of all other written contracts entered into during the policy period to which this insurance applies.



# CONTRACTUAL LIABILITY INSURANCE COVERAGE PART
### (Blanket Coverage)

| ADDITIONAL DECLARATIONS | Policy No. GAL 37 68 12 |
|---|---|

## SCHEDULE

It is agreed that the Limits of Liability set forth in the Policy Declarations for the Contractual Liability Coverage Part shall apply as respects any coverage afforded hereunder unless other specific limits are set forth below.

| Coverage | Limits of Liability (this Coverage Part only) | |
|---|---|---|
| Contractual Bodily Injury Liability | $ 500,000 | each occurrence |
| Contractual Property Damage Liability | $ 100,000 | each occurrence |
| | $ 100,000 | aggregate |

| Code No. | Designation of Contracts on file or known to the Company | Premium Bases | Rates B.I. | Rates P.D. | Advance Premiums Bodily Injury | Advance Premiums Property Damage |
|---|---|---|---|---|---|---|
| | | (a) Sales (b) Cost | (a) Per $1,000 of Sales (b) Per $100 of Cost | | | |
| 3-17985 Blanket Contractual Liability | | | Included in Composite rate | | | |

| Minimum Premium(s) | | | TOTALS | $ Incl. | $ Incl. |
|---|---|---|---|---|---|
| | | | TOTAL ADVANCE PREMIUM ► | $ Incl. | |

The following exclusions do not apply with respect to any "construction agreements":

When used as a premium basis:

1. the word "cost" means the total cost of all work in connection with all contracts of the type designated in the schedule for this insurance with respect to which "cost" is the basis of premium, regardless of whether any liability is assumed under such contracts by the Insured. It includes the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the Insured, or others including all fees, allowances, bonuses or commissions made, paid or due. It shall not include the cost of any operations to which exclusions (o) or (p) apply, unless such exclusions are voided in the schedule.

2. the word "sales" means the gross amount of money charged by the Named Insured or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the Named Insured and such others collect as a separate item and remit directly to a governmental division.

GL-215 (KB) Printed in U.S.A.



## PERSONAL INJURY LIABILITY INSURANCE
## COVERAGE PART

| ADDITIONAL DECLARATIONS | Policy No. GAL 37 68 03 |
|---|---|

**9-99980**

### SCHEDULE

The insurance afforded is only with respect to personal injury arising out of an offense included within such of the following groups of offenses as are indicated by specific premium charge or charges.

| GROUPS OF OFFENSES | | ADVANCE PREMIUM |
|---|---|---|
| A. False Arrest, Detention or Imprisonment, or Malicious Prosecution | — | $ __Incl.__ |
| B. Libel, Slander, Defamation or Violation of Right of Privacy | — | $ __Incl.__ |
| C. Wrongful Entry or Eviction or Other Invasion of Right of Private Occupancy | — | $ __Incl.__ |
| | | __Incl.__ |

Insured's Participation __0__ % Minimum Premium $ __N/A__ TOTAL ADVANCE PREMIUM ▶ $ __Incl.__

**Included in Composite rate ( See Endorsement # 2 )**

### I. COVERAGE P—PERSONAL INJURY LIABILITY

The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury (herein called "personal injury") sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the Named Insured's business:

Group A—false arrest, detention or imprisonment, or malicious prosecution;

Group B—the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the Named Insured;

Group C—wrongful entry or eviction, or other invasion of the right of private occupancy;

if such offense is committed during the policy period within the United States of America, its territories or possessions, or Canada, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such personal injury even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

#### Exclusions

This insurance does not apply:

(a) to liability assumed by the Insured under any contract or agreement,

(b) to personal injury arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of any Insured;

(c) to personal injury sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the Named Insured;

(d) to personal injury arising out of any publication or utterance described in Group B, if the first injurious publication or utterance of the same or similar material by or on behalf of the Named Insured was made prior to the effective date of this insurance;

(e) to personal injury arising out of a publication or utterance described in Group B, concerning any organization or business enterprise, or its products or services, made by or at the direction of any Insured with knowledge of the falsity thereof.

### II. PERSONS INSURED

Each of the following is an Insured under this insurance to the extent set forth below:

(a) if the Named Insured is designated in the declarations as an individual, the person so designated and his spouse;

(b) if the Named Insured is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the Named Insured is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such.

This insurance does not apply to personal injury arising out of the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not designated in this policy as a Named Insured.

### III. LIMITS OF LIABILITY; INSURED'S PARTICIPATION

Regardless of the number of (1) Insureds under this policy, (2) persons or organizations who sustain personal injury, or (3) claims made or suits brought on account of personal injury, the total liability of the Company's liability under this coverage for all damages shall not exceed the limit of personal injury liability stated in the declarations as "aggregate".

If a participation percentage is stated in the schedule for the Insured, the Company shall not be liable for a greater proportion of any loss than the difference between such percentage and one hundred percent and the balance of the loss shall be borne by the Insured; provided, the Company may pay the Insured's portion of a loss to effect settlement of the loss, and, upon notification of the action taken, the Named Insured shall promptly reimburse the Company therefor.

### IV. ADDITIONAL DEFINITION

When used in reference to this insurance:

"damages" means only those damages which are payable because of personal injury arising out of an offense to which this insurance applies.

**NR**

Endorsement # 2

| Named Insured | | | |
|---|---|---|---|
| Policy Symbol | Policy No. | Policy Period | Effective Date of Endorsement |
| GAL | 37  68  03 | | |
| Issued by (Name of Insurance Company) | | | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

In consideration of the premium charged, it is agreed that exclusion 'C' of the Personal Injury Liability Insurance Coverage Part (GL 135) is deleted.

:nd
351-21

LC-1296b  Ptd. in U.S.A.

**INA**

Endorsement # 3

| Named Insured | | | |
|---|---|---|---|
| Policy Symbol **GAL** | Policy No. **37 68 03** | Policy Period | Effective Date of Endorsement |
| Issued by (Name of Insurance Company) | | | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## ADDITIONAL INSUREDS ENDORSEMENT
### (Limited)

It is agreed that the "Persons Insured" provision is amended to include as an insured the person or organization designated below as an additional insured, subject to the following provisions:

1) The insurance applies only with respect to liability of the additional insureds arising out of THE OWNERSHIP MAINTENANCE OR USE OF EQUIPMENT WHILE LEASED TO THE NAMED INSURED.

2) The named insured is authorized to act for such additional insureds in all matters pertaining to this insurance, including receipt of notice of cancellation; and

3) Return premium, if any, and such dividends as may be declared by the company shall be paid to the named insured.

4) Nothing contained herein shall affect any right of recovery as a claimant which the additional insured would have if not designated as such.

### Names of Additional Insureds

UNITED STATES LEASING CORPORATION

SND
551-21

LC-1296b  Ptd. in U.S.A.



**EMPLOYEE BENEFITS LIABILITY**

| Named Insured | | |
|---|---|---|
| Policy No.  GAL 37 68 03 | Policy Period | Effective Date of Endorsement |
| Issued by (Name of Insurance Company) | | |

*The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.*

In consideration of the premium and in reliance upon the Statements in the Application and subject to the terms of this endorsement and of the Policy to which this endorsement is attached, the Company agrees with the Insured named in the Declarations of the Policy:

## INSURING AGREEMENTS

I.   **COVERAGE.** To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages on account of any claim made against the Insured by any Employee, Former Employee or the beneficiaries or legal representatives thereof and caused by any negligent act, error or omission of the Insured, or any other person for whose acts the Insured is legally liable, in the administration of the Insured's Employee Benefit Programs as defined herein.

II.  It is agreed that $1,000.00 shall be deducted from the total amount paid by the Company as the result of each occurrence covered by this policy and the Company shall be liable for loss only in excess of such amount. All loss arising out of continuous or repeated exposure to the same general conditions shall be considered as arising out of one occurrence. It is further understood and agreed that in event of any claim, irrespective of the amount, notice thereof shall be given to the Company, or any of its authorized agents, by or on behalf of the Insured, in accordance with the terms of the Policy and the Company may at its option, investigate such claim or negotiate or settle any claim, and the Insured agrees, if the Company undertakes to negotiate or settle any such claim, to join the Company in such negotiation or settlement to the extent of the amount to be deducted herein provided, or to reimburse the Company for such deductible amount, if and when such claim is paid by the Company.

III. The DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS provisions of the policy shall apply as respects the insurance hereby afforded, except that the Company shall not make settlement or compromise any claim or suit without the written consent of the Insured.

IV.  **POLICY PERIOD & TERRITORY.** As respects the insurance hereby afforded this endorsement applies only to claims under the legal jurisdiction of a court of law or a court of equity within the United States of America, its territories or possessions or Canada, resulting from negligent acts, errors or omissions of the Insured, or any person acting on behalf of the Insured in the administration of Employee Benefit Programs provided such claim is brought against the Named Insured during the policy period and the Named Insured at the effective date of this policy, had no knowledge of or could not have reasonably foreseen any circumstances which might result in a claim or suit.

## DEFINITIONS

1.  **INSURED.** The unqualified word "Insured" wherever used in relation to the insurance afforded hereby, includes not only the Named Insured, but also any partner, executive officer, director, stockholder or employee, provided such employee is authorized to act in the administration of the Insured's Employee Benefit Programs.

2.  **EMPLOYEE BENEFITS.** The term "Employee Benefits" shall mean group life insurance, group health insurance, profit sharing plans, pensions plans, employee stock subscription plans, employee travel, vacation or savings plans, workmen's compensation, unemployment insurance, social security and disability benefits insurance.

3.  **ADMINISTRATION.** As respects the insurance afforded hereby, the unqualified word "Administration", wherever used shall mean:

    (a) Giving counsel to employees with respect to the Employee Benefit Programs;
    (b) Interpreting the Employee Benefit Programs;

    (c) Handling of records in connection with the Employee Benefit Programs;
    (d) Effecting enrollment, termination or cancellation of employees under the Employee Benefit Programs;
    provided all such acts are authorized by the Named Insured.

## EXCLUSIONS

The insurance afforded by this endorsement does not apply:

(a) To any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination, or humiliation;
(b) To bodily injury to, or sickness, disease, or death, of any person, or to injury to or destruction of any tangible property, including the loss of use thereof;
(c) To any claim for failure of performance of contract by any Insurer;
(d) To any claim based upon the Insured's failure to comply with any law concerning Workmen's Compensation, Unemployment Insurance, Social Security or Disability Benefits;
(e) To any claim based upon failure of stock to perform as represented by an Insured;
(f) To any claim based upon advice given by an Insured to an employee of the Named Insured to participate or not to participate in stock subscription plans.
(g) To any claim based upon any actual or alleged error or omission or breach of duty, committed or alleged to have been committed by a trustee, in the discharge of fiduciary duties, obligations or responsibilities imposed by the Federal Employee Retirement Income Security Act of 1974."

## CONDITIONS

The conditions of the policy entitled "Insured's Duties in the Event of Occurrence, Claim or Suit", "Action Against Company", "Other Insurance", "Subrogation", "Changes", "Assignment", and "Cancellation" apply to the insurance afforded hereby and the following Conditions apply:

A.  **LIMITS OF LIABILITY.** The Limit of Liability stated in the Declarations as applicable to "each claim" is the limit of the Company's liability for all damages incurred on account of any claim covered hereunder; the limit of liability stated in the Declarations as "aggregate" is, subject to the above provision respecting each claim, the total limit of the Company's liability for all claims covered hereunder and occurring during each policy year. The inclusion herein of more than one Insured shall not operate to increase the limits of the Company's liability.

B.  **PREMIUM.** The premium stated in the Declarations is an estimated premium only. Upon termination of each annual period of this Policy the Insured, on request will furnish the Company a statement of the total number of employees at the end of the period and the earned premium shall be computed on the average number of employees at the beginning and the end of such period in accordance with the rates set forth in the Declarations. If the earned premium thus computed exceeds the estimated advance premium paid, the Insured shall pay the excess to the Company; if less, the Company shall return to the Insured the unearned portion paid by such Insured subject to the Minimum Premium for this insurance stated in the Declarations.

C.  **TERMS OF ENDORSEMENT CONFORMED TO STATUTE.** Terms of this endorsement which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

Included in Composite rate *V. J. Johnson*
Authorized Agent

LC-811d Ptd. in U.S.A.



## ADDITIONAL INSURED
(Vendors—Limited Form)

| Named Insured | |
| --- | --- |
| Effective | Policy No.    GAL 37 68 03 |
| Issued by (Name of Insurance Company) | |

*The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.*

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

### COMPREHENSIVE GENERAL LIABILITY INSURANCE
### COMPLETED OPERATIONS AND PRODUCTS LIABILITY INSURANCE

It is agreed that the "Persons Insured" provision is amended to include any person or organization designated below (herein referred to as "vendor"), as an Insured, but only with respect to the distribution or sale in the regular course of the vendor's business of the Named Insured's products designated below subject to the following additional provisions:

1. The insurance with respect to the vendor does not apply to:

   (a) any express warranty, or any distribution or sale for a purpose, unauthorized by the Named Insured;

   (b) bodily injury or property damage arising out of

      (i) any act of the vendor which changes the condition of the products,

      (ii) any failure to maintain the product in merchantable condition,

      (iii) any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products, or

      (iv) products which after distribution or sale by the Named Insured have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor;

   (c) bodily injury or property damage occurring within the vendor's premises.

2. The insurance does not apply to any person or organization, as Insured, from whom the Named Insured has acquired such products or any ingredient, part or container, entering into, accompanying or containing such products.

---

### SCHEDULE

| VENDOR(S) | PRODUCTS |
| --- | --- |

Name of Person or Organization:  Any person or organization purchasing goods or products from the named insured for the purpose of resale.

Named Insured's Products:  All products of the Named Insured.

INCLUDED IN COMPOSITE RATE

N. Y. Johnson
Authorized Agent

LC-976 (0114)  7-20-66  Printed in U.S.A.



**ADDITIONAL INSURED**
(Premises Leased to the Named Insured)

| Named Insured | | |
|---|---|---|
| Policy No. GAL 37 68 03 | Policy Period | Effective Date of Endorsement |
| Issued by (Name of Insurance Company) | | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

**COMPREHENSIVE GENERAL LIABILITY INSURANCE**

**MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE**

**OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE**

**STOREKEEPER'S INSURANCE**

It is agreed that the "Persons Insured" provision is amended to include as an Insured the person or organization designated below, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises designated below leased to the Named Insured, and subject to the following additional exclusions:

The insurance does not apply:

1. to any occurrence which takes place after the Named Insured ceases to be a tenant in said premises;

2. to structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated below.

SCHEDULE

| Designation of Premises (Part Leased to Named Insured) | Name of Person or Organization (Additional Insured) | Premiums | |
|---|---|---|---|
| | | Bodily Injury Liability | Property Damage Liability |
| 1. Land leased to Wolverine Service Club Inc. for Camping Site<br><br>2. All premises leased to named insured and insureds named in endorsement #1 | Consumers Power Company<br><br>Lessors where lease agreement requires lessee to name lessor as additional insured on lessee's policy. | INCLUDED IN COMPOSITE RATE | |

V. F. Johnson
Authorized Agent

LC-971 (G109)   7-20-66   Printed in U.S.A.



## ADDITIONAL INSURED
(Employees)
## AND EXECUTIVE OFFICERS

| Named Insured | | |
|---|---|---|
| Policy No.<br>GAL 37 68 03 | Policy Period | Effective Date of Endorsement |
| Issued by (Name of Insurance Company) | | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following

**COMPREHENSIVE GENERAL LIABILITY INSURANCE**

**MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE**

**OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE**

**STOREKEEPER'S INSURANCE**

It is agreed that the "Persons Insured" provision is amended to include any employee of the Named Insured while acting within the scope of his duties as such, but the insurance afforded to such employee does not apply:

1. to bodily injury to (a) another employee of the Named Insured arising out of or in the course of his employment or (b) the Named Insured or, if the Named Insured is a partnership or joint venture, any partner or member thereof;

2. to property damage to property owned, occupied or used by, rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by (a) another employee of the Named Insured or (b) the Named Insured, or, if the Named Insured is a partnership or joint venture, any partner or member thereof.

3. To personal injury or property damage arising out of the rendering of, or failure to render, any professional service.

Subdivision (c) is replaced by the following:

(c) if the named insured is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and

  (i) any director or stockholder thereof while acting within the scope of his duties as such; and

  (ii) any executive officer of the named insured while acting within the scope of his employment for the named insured.

    The term "executive officer" means any person holding any of the officer positions created by the charter or bylaws of the named insured.

*N. J. Johnson*
Authorized Agent

LC-068 (0106) 7-20-66 Printed in U.S.A.



## WORLDWIDE COVERAGE ENDORSEMENT



Named Insured_____

Effective_____ Policy No_____ GAL 37 68 03

Issued by_____

(Name of Insurance Company)

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

In consideration of the premium charged, the policy is amended as follows:

**I TERRITORY**

The Policy Definitions referring to "Policy Territory" is amended to read:

"This policy applies only to occurrences during the policy period worldwide outside the ~~UNITED STATES OF AMERICA~~ ~~ITS TERRITORIES AND POSSESSIONS~~, Albania, Bulgaria, ~~CANADA~~ Cuba, Czechoslovakia, Hungary, North Korea, North Viet-Nam, Outer Mongolia, Poland, Romania, The German Democratic Republic (excluding West Berlin), The Peoples Republic of China, The Union of Soviet Socialist Republics (including Armenia, Estonia, Latvia, Lithuania and the Ukraine), Tibet and Yugoslavia."

**II INDEMNIFICATION**

It is agreed that where it is prevented by law or otherwise from making payments on behalf of the insured, the Company will indemnify the insured for loss sustained to the extent that such loss is covered by the policy.

**III DEFENSE**

It is further agreed that if the Company is not legally permitted to, or cannot for any other reason, defend any suit against the insured the Company will reimburse the insured for the expense of such defense incurred with its consent.

**IV OTHER INSURANCE**

Notwithstanding the provisions in the policy referring to "Other Insurance" the insurance provided by this policy shall be excess over any other valid and collectible insurance.

_N. Y. Johnson_
Authorized Agent

C-1-152c Printed in U.S.A.



**VESSELS**



Named Insured _____

Effective _____ Policy No. _____  GAL 37 68 03

Issued by _____

(Name of Insurance Company)

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

---

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

### COMPREHENSIVE GENERAL LIABILITY INSURANCE
### MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE

---

It is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage and by the Property Damage Liability Coverage applies, subject to the following provisions:

1. The exclusion relating to watercraft does not apply with respect to any watercraft owned or used by the Named Insured if included within the scope of any classification stated below or designated in the policy as subject to this endorsement.

2. The Insurance with respect to such watercraft does not apply to:

   (a) bodily injury to any passenger being carried for a consideration while in or upon, entering or alighting from any such watercraft;

   (b) the ownership, maintenance, operation, use, loading or unloading of any barge or lighter rented by the Named Insured to others with respect to which the Named Insured does not furnish employees to operate and does not have any operating control.

**Classification of Watercraft:**

~~Non-Applicable~~

See Endorsement No. 4, item 3.

smd
551-21

W. F. Johnson
Authorized Agent

Case 1:19-cv-00010-JTN-ESC ECF No. 1-1 filed 01/07/19 PageID.220 Page 210 of 222



Endorsement # 4
Page 1

| Named Insured | | | |
|---|---|---|---|
| Policy Symbol | Policy No. | Policy Period | Effective Date of Endorsement |
| GAL | 37 68 03 | | |
| Issued by (Name of Insurance Company) | | | |

*The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.*

It is agreed that the following provisions are hereby made a part of this policy:

1) As respects World-Wide Products Liability:

The Bodily Injury and Property Damage Liability Coverages also apply to bodily injury or property damage which occurs, during the policy period, outside the policy territory provided:

(A) such injury or damage is included in the products hazard, and

(B) the original suit for such injury or damage is brought within the policy territory.

2) As respects Host Liquor Law Liability:

The Bodily Injury and Property Damage Liability Coverages apply to bodily injury or property damage arising out of the serving or giving of alcoholic beverages, by or on behalf of the Named Insured, provided the Named Insured

(A) is not a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

(B) is not an owner or lessor of premises used for such purposes if liability is imposed by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage.

Damages includes damages for loss of support resulting from bodily injury.

3) As respects Watercraft Non-Ownership:

It is agreed that the policy exclusion relating to the ownership, maintenance, operation, use, loading or unloading of watercraft shall not apply to any watercraft under 50 feet in length provided such watercraft is not owned by the Named Insured and is not being used to carry persons for a charge.

LC-1296b  Ptd. in U.S.A.



Endorsement #4

Page 2

| Named Insured | | | |
|---|---|---|---|
| Policy Symbol | Policy No. | Policy Period | Effective Date of Endorsement |
| GAL | 37 68 03 | | |
| Issued by (Name of Insurance Company) | | | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

4) As respects Incidental Malpractice Liability:

The Bodily Injury and Property Damage Liability Coverages apply to bodily injury or property damage occurring during the policy period and arising out of malpractice, error or mistake committed at or in connection with the premises or operations.

(A) in the rendering of or failure to render medical, surgical, dental, x-ray or nursing service or treatment, or the furnishing of food or beverages in connection therewith, or

(B) the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances

subject to the following provisions:

(1) The following additional exclusion applies:

The insurance does not apply to bodily injury to any person to or for whom benefits or damages on account thereof are payable under any valid and collectible voluntary compensation or employer's liability available to the Insured.

(2) The Supplementary Payments provision of the policy shall not apply to this insurance in so far as it provides for the payment of expenses incurred by the Insured for first aid at the time of accident.

(3) Exclusion (j) does not apply to injury to the emotions or reputation of a person arising out of the rendering of such services.

LC-1296b Ptd. in U.S.A.



Endorsement # 5

| Named Insured | | | |
|---|---|---|---|
| Policy Symbol | Policy No. | Policy Period | Effective Date of Endorsement |
| GAL | 37 68 03 | | |
| Issued by (Name of Insurance Company) | | | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to <u>Employee Benefits Liability</u> Insurance.

It is agreed that the Employee Benefits Liability Insurance endorsement is amended as follows:

1)   The term "Employee or Former Employee is changed to read:

Employee or former employee  or Director or former director wherever it appears in the endorsement.

2)   The definition of "Administration" is amended by changing the word "employees" in paragraphs (a) and (d) of the definition to read:

"Employees and Directors"

LC-1296b Ptd. in U.S.A.



Endorsement # 6

| Named Insured | | | |
|---|---|---|---|
| Policy Symbol Policy No.<br>GAL   37   68   03 | | Policy Period | Effective Date of Endorsement |
| Issued by (Name of Insurance Company) | | | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

It is agreed that the following cancellation clause is added to this policy but only as respects General Liability:

This endorsement modifies the cancellation condition and is applicable to all insurance afforded by the policy.

### Cancellation By the Company Endorsement

It is agreed the cancellation condition of the policy is amended to provide that with respect to cancellation by the Company except for cancellation for nonpayment premium, the effective date of cancellation shall be not less than sixty (60) days after the mailing of notice thereof.

3nd
551-21

LC-1296b  Ptd. in U.S.A.



Composite Rate Endorsement

Endorsement # 7

| Named Insured | | | |
|---|---|---|---|
| Policy Symbol | Policy No. | Policy Period | Effective Date of Endorsement |
| GAL | 37  68  03 | | |
| Issued by (Name of Insurance Company) | | | |

*The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.*

The premium for this policy is based upon sales as herein defined, and shall be computed by applying to each $1,000. of such sales a rate of .88692 (BI..88692, PD. Incl.).  The Named Insured shall upon termination of the policy render to the company statement of the sales as herein defined during the policy period and the earned premium shall be computed thereon.  If the earned premium thus computed exceeds the advance premium paid, the named insured shall pay the excess to the company; if less, the company shall return to the named insured the unearned portion paid by the named insured.

| Estimated Annual Sales. | Rates BI.   PD. | Total Estimated Annual Premium BI.      PD. |
|---|---|---|
| $150,000,000 | .88692.  Incl. | $133,038.  Incl. |

### Sales Defined

The word "sales" means the gross amount of money charged by the named insured or by concessionaires of the named insured or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the named insured, concessionaires of the named insured and others trading under his name collect as a separate item and remit directly to a governmental division.

LC-1296b  Ptd. in U.S.A.



## INTERIM PREMIUM PAYMENT ENDORSEMENT

| Named Insured | | |
|---|---|---|
| Effective | Policy No. | GAL 37 68 03 |
| Issued by (Name of Insurance Company) | | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

It is hereby agreed that the estimated annual premium for the policy is payable as follows:

| | | | | |
|---|---|---|---|---|
| Deposit Premium | $ | 66,520. | | 3/1/78 |
| Interim Premiums | $ | 33,259. | Date Payable | 6/1/78 |
| | | 33,259. | | 9/1/78 |

Total Estimated Premium ο $  133,038.

It is further agreed that the deposit premium shall be paid upon delivery of the policy and the interim premiums on the indicated dates. Upon expiration of the policy the earned premium shall be computed in accordance with the basis of premium as specified in the policy and the deposit premium and interim premiums shall be credited thereto. If the earned premium exceeds the deposit premium plus the interim premiums, the insured shall immediately pay to the company the additional earned premium; if it be less, the company shall return the difference to the insured but shall, in any event, retain the minimum premium stated in the declarations.

N. F. Johnson
Authorized Agent



| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Wolverine World Wide, Inc. etal | | | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| GAL | 37 68 03 | 3-1-78/79 | 3/1/78 |
| Issued By (Name of Insurance Company) | | | |
| Insurance Company of North America | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

In consideration of the premium charged, it is hereby agreed that the Additional Insured (Vendors – Broad Form) Endorsement LC-975 is added to the policy in lieu of the Additional Insured (Vendors–Limited Form Endorsement LC-976. as per the attached.

snd
551-21

V. Y. Johnson
Authorized Agent

CC-1E15 Ptd. In U.S.A.



**Marsh & McLennan**

Marsh & McLennan
One Woodward Avenue
Detroit, Michigan 48226
Telephone 313 962-0034

CERTIFICATION OF NO FAULT INSURANCE
TO
MICHIGAN SECRETARY STATE OF FLEET COVERAGE

This is to certify that _____ HOME INSURANCE COMPANY _____

located at _____ TROY, MICHIGAN _____

has issued a policy no. __GA 9705987__ covering all vehicles owned by

__WOLVERINE WORLD WIDE, INC., ETAL_____
9341 COURTLAND DRIVE
ROCKFORD, MICHIGAN 49351_____

and said policy complies with the requirements of Act 294 of the Public

Acts of 1972, as amended. The said policy expires on 1ST   day of

__MARCH_____, 1980. The carrier will notify immediately the

Secretary of State of non-renewal or cancellation.

Marsh & McLennan

One Woodward Avenue

Detroit, Michigan  48226

By: _V. F. Johnson_____



# INSURANCE COMPANY OF NORTH AMERICA, PHILADELPHIA, PENNSYLVANIA



### GENERAL—AUTOMOBILE LIABILITY POLICY

Standard Provisions

A Stock Insurance Company, herein called the Company

In consideration of the payment of the premium, in reliance upon the statements in the declarations made a part hereof and subject to all of the terms of this policy, agrees with the Named Insured as follows:

## COVERAGE

Coverage is afforded under this policy in accordance with the specific Coverage Parts identified in the Declarations as being a part of this policy.

## SUPPLEMENTARY PAYMENTS

The Company will pay, in addition to the applicable limit of liability:

(a) all expenses incurred by the Company, all costs taxed against the Insured in any suit defended by the Company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the Company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the Company's liability thereon;

(b) premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, and the cost of bail bonds required

of the Insured because of accident or traffic law violation arising out of the use of any vehicle to which this policy applies, not to exceed $250 per bail bond, but the Company shall have no obligation to apply for or furnish any such bonds;

(c) expenses incurred by the Insured for first aid to others at the time of an accident, for bodily injury to which this policy applies;

(d) reasonable expenses incurred by the Insured at the Company's request in assisting the Company in the investigation or defense of any claim or suit, including actual loss of earnings not to exceed $25 per day.

## DEFINITIONS

When used in this policy (including endorsements forming a part hereof):

"automobile" means a land motor vehicle, trailer or semitrailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include mobile equipment;

"bodily injury" means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;

"collapse hazard" includes "structural property damage" as defined herein and property damage to any other property at any time resulting therefrom. "Structural property damage" means the collapse of or structural injury to any building or structure due to (1) grading of land, excavating, borrowing, filling, back-filling, tunnelling, pile driving, cofferdam work or caisson work or (2) moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support thereof. The collapse hazard does not include property damage (1) arising out of operations performed for the Named Insured by independent contractors, or (2) included within the completed operations hazard or the underground property damage hazard, or (3) for which liability is assumed by the Insured under an incidental contract;

"completed operations hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the Named Insured under the contract have been completed,

(2) when all operations to be performed by or on behalf of the Named Insured at the site of the operations have been completed, or

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

The completed operations hazard does not include bodily injury or property damage arising out of

(a) operations in connection with the transportation of property, unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,

(b) the existence of tools, uninstalled equipment or abandoned or unused materials, or

(c) operations for which the classification stated in the policy or in the Company's manual specifies "including completed operations";

"elevator" means any hoisting or lowering device to connect floors or landings, whether or not in service, and all appliances thereof including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery; but does not include an automobile servicing hoist, or a hoist without a platform outside a building if without mechanical power or if not attached to building walls, or a hod or material hoist used in alteration, construction or demolition operations, or an inclined conveyor used exclusively for carrying property or a dumbwaiter used exclusively for carrying property and have a compartment height not exceeding four feet;

0 (GA) 150M



## DEFINITIONS CONTINUED

"explosion hazard" includes property damage arising out of blasting or explosion. The explosion hazard does not include property damage (1) arising out of the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment, or (2) arising out of operations performed for the Named Insured by independent contractors, or (3) included within the completed operations hazard or the underground property damage hazard, or (4) for which liability is assumed by the Insured under an incidental contract;

"incidental contract" means any written (1) lease of premises, (2) easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) sidetrack agreement, or (5) elevator maintenance agreement;

"Insured" means any person or organization qualifying as an Insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each Insured against whom claim is made or suit is brought, except with respect to the limits of the Company's liability;

"mobile equipment" means a land vehicle (including any machinery or apparatus attached thereto, whether or not self-propelled, (1) not subject to motor vehicle registration, or (2) maintained for use exclusively on premises owned by or rented to the Named Insured, including the ways immediately adjoining, or (3) designed for use principally off public roads, or (4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment;

"Named Insured" means the person or organization named in the declarations of this policy;

"Named Insured's products" means goods or products manufactured, sold, handled or distributed by the Named Insured or by others trading under his name, including any container thereof (other than a vehicle), but "Named Insured's products" shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold;

"occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured;

"policy territory" means:

(1) the United States of America, its territories or possessions, or Canada, or

(2) international waters or air space, provided the bodily injury or property damage does not occur in the course of travel or transportation to or from any other country, state or nation, or

(3) anywhere in the world with respect to damages because of bodily injury or property damage arising out of a product which was sold for use or consumption within the territory described in paragraph (1) above, provided the original suit for such damages is brought within such territory;

"products hazard" includes bodily injury and property damage arising out of the Named Insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the Named Insured and after physical possession of such products has been relinquished to others;

"property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period;

"underground property damage hazard" includes underground property damage as defined herein and property damage to any other property at any time resulting therefrom. "Underground property damage" means property damage to wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, borrowing, filling, back-filling or pile driving. The underground property damage hazard does not include property damage (1) arising out of operations performed for the Named Insured by independent contractors, or (2) included within the completed operations hazard, or (3) for which liability is assumed by the Insured under an incidental contract.

## NUCLEAR ENERGY LIABILITY EXCLUSION
### (BROAD FORM)

This exclusion modifies the provisions of this policy relating to ALL LIABILITY AND MEDICAL PAYMENTS INSURANCE OTHER THAN COMPREHENSIVE PERSONAL AND FARMER'S COMPREHENSIVE PERSONAL INSURANCE.

This policy does not apply:

a. Under any Liability Coverage, to bodily injury or property damage:

(1) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization;

b. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization;

c. Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if:

(1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an insured, or (b) has been discharged or dispersed therefrom;

(2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

(3) the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions, or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat;

d. As used in this Exclusion:

(1) "Hazardous properties" include radioactive, toxic, or explosive properties;

(2) "Nuclear material" means source material, special nuclear material or byproduct material;

(3) "Source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(4) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

(5) "Waste" means any waste material (a) containing byproduct material and (b) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (6), (a) or (b) thereof;

(6) "Nuclear facility" means: (a) any nuclear reactor; (b) any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing, or packaging waste; (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste; and (e) includes the site on which any of the foregoing is located, all operations conducted on such site, and all premises used for such operations;

(7) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(8) "Property damage" includes all forms of radioactive contamination of property.

## CONDITIONS

### 1. Premium

All premiums for this policy shall be computed in accordance with the Company's rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

Premium designated in this policy as "advance premium" is a deposit premium only which shall be credited to the amount of the earned premium due at the end of the policy period. At the close of each period for part thereof terminating with the end of the policy period) designated in the declarations as the audit period the earned premium shall be computed for such period and, upon notice thereof to the Named Insured, shall become due and payable. If the total earned premium for the policy period is less than the premium previously paid, the Company shall return to the Named Insured the unearned portion paid by the Named Insured.

The Named Insured shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the Company at the end of the policy period and at such times during the policy period as the Company may direct.

### 2. Inspection and Audit

The Company shall be permitted but not obligated to inspect the Named Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

The Company may examine and audit the Named Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

### 3. Financial Responsibility Laws

When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy for bodily injury liability or for property damage liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law. The Insured agrees to reimburse the Company for any payment made by the Company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

### 4. Insured's Duties in the Event of Occurrence, Claim or Suit

(a) In the event of an occurrence, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to the Company or any of its authorized agents as soon as practicable.

(b) If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

(c) The Insured shall cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Insured because of injury or damage with respect to which insurance is afforded under this policy; and the Insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

## CONDITIONS CONTINUED

**5. Action Against Company**

No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Company as a party to any action against the Insured to determine the Insured's liability, nor shall the Company be impleaded by the Insured or his legal representative. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

**6. Other Insurance**

The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the Insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the Company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) **Contribution by Equal Shares.** If all of such other valid and collectible insurance provides for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) **Contribution by Limits.** If any of such other insurance does not provide for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

**7. Subrogation**

In the event of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

**8. Changes**

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the Company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

**9. Assignment**

Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; if, however, the Named Insured shall die, such insurance as is afforded by this policy shall apply (1) to the Named Insured's legal representative, as the Named Insured, but only while acting within the scope of his duties as such, and with respect to the property of the Named Insured, to the person having proper temporary custody thereof, as Insured, but only until the appointment and qualification of the legal representative.

**10. Three Year Policy**

If this policy is issued for a period of three years any limit of the Company's liability stated in this policy as "aggregate" shall apply separately to each consecutive annual period thereof.

**11. Cancellation**

This policy may be cancelled by the Named Insured by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the Company by mailing to the Named Insured at the address shown in this policy, written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing.

If the Named Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**12. Declarations**

By acceptance of this policy, the Named Insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the Company or any of its agents relating to this insurance.

IN WITNESS WHEREOF, the INSURANCE COMPANY OF NORTH AMERICA has caused this policy to be signed by its President and a Secretary at Philadelphia, Pennsylvania, and countersigned on the Declarations page by a duly Authorized Agent of the Company.

BERTRAM C. DEDMAN, Secretary

JOHN G. PAINE, President

GAL 37 68 03 2

| Service Office Number | Agency Number | Old Policy No. | Prev. Carrier No. |
|---|---|---|---|
| 554   L-DJ | 121-03 | GAL 37 68 03 | |

Marsh & Mc Lennan, Inc.
One Woodward Avenue
Detroit, MI 48226

☐ New; ☒ Renewal; ☐ Rewrite of:

Comm. 7.5%

C-50-03

## INSURANCE COMPANY OF NORTH AMERICA   MULTIPLE LIABILITY POLICY

*Comm. fully earned*

Named Insured: Wolverine World Wide, Inc. etal
Address: 9341 Courtland Drive
Rockford, MI 49351

*No Audit per Kubala 6-17-80*

The Named Insured is:
☐ Individual  ☐ Partnership ☒ Corporation
☐ Joint Venture ☐ (Other)

Policy Period: From **3/1/79**   to   **3/1/80**

12:01 A.M., standard time at the address of the Named Insured as stated herein.

Occupation:

Audit Period: Annual, unless otherwise stated **Subject to Audit**

The insurance afforded is only with respect to such of the following Parts and Coverages therein as are indicated by ☒. The limit of the Company's liability against each such Coverage shall be as stated herein, subject to all of the terms of the policy having reference thereto.

### LIMITS OF LIABILITY

| COVERAGE PARTS | Bodily Injury Liability | | Property Damage Liability | |
|---|---|---|---|---|
| | each occurrence | aggregate | each occurrence | aggregate |
| ☐ Owners', Landlords' and Tenants' Liability Insurance | | | | |
| ☐ Structural Alterations, New Construction, Demolition | | | | |
| ☐ Manufacturers' and Contractors' Liability Insurance | | | | |
| ☐ Independent Contractors | | | | |
| ☐ Completed Operations and Products Liability Insurance | | | | |
| ☒ Contractual Liability Insurance | | | | |
| ☒ Comprehensive General Liability Insurance | 500,000 | 500,000 | 100,000 | 100,000 |
| ☐ | | | | |
| | each person | each occurrence | each occurrence | |
| ☐ Comprehensive Automobile Insurance | | | | |
| ☐ | | | | |

| | Personal Liability | | Personal Medical Payments | | |
|---|---|---|---|---|---|
| | each occurrence | | each person | | each accident |
| ☐ Comprehensive Personal Insurance | $ | | $ | | $ |
| ☐ Farmer's Comprehensive Personal Insurance | | | | | |
| | Physical Damage to Property | | Animal Collision—Farmer's Part Only | | |
| | $ | each occurrence | Market Value not exceeding $300 each animal | | |
| | each person | | each accident | | |
| ☐ Premises Medical Payments Insurance | $ | | $ | | |
| ☐ Automobile Medical Payments Insurance | $ | | ///////////// | | |
| ☐ Insurance Against Uninsured Motorist | $ | | $ | | |
| | each person aggregate | | general aggregate | | |
| ☒ Personal Injury Liability Insurance | $ 500,000 | | $ 500,000 | | |

| | (Fleet Automatic or Non-Fleet) | |
|---|---|---|
| ☐ Automobile Physical Damage Insurance | (See Additional Declarations attached for Coverages and Limits of Liability) | |
| ☐ Automobile Physical Damage Insurance (Dealers) | (See Additional Declarations attached for Coverages and Limits of Liability) | |
| ☐ Garage Insurance | (See Additional Declarations attached for Coverages and Limits of Liability) | |

Endorsements attached to policy at inception:
**As Per Schedule of Form Numbers**

During the past three years no insurer has cancelled insurance, issued to the Named Insured, similar to that afforded hereunder, unless otherwise stated herein:

| TOTAL ADVANCE PREMIUM ► $ 155,654 | If the Policy Period is more than one year and the premium is to be paid in installments, premium is payable on: |
|---|---|
| Effective Date | $ **See Endt.** |
| 1st Anniversary | $ **LC 578** |
| 2nd Anniversary | $ |

Countersigned By

Authorized Agent

This Declarations and Coverage Part(s), with Policy Standard Provisions and Endorsements, if any, issued to form a part thereof, completes the above numbered

GAL 37 68 03 17

88 55 -2