**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| WOLVERINE WORLD WIDE, INC., a Delaware corporation f/k/a Wolverine Shoe & Tanning Corporation, <br><br>      Plaintiff, <br><br>   v. <br><br> THE AMERICAN INSURANCE COMPANY, an Ohio corporation; INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania corporation; FIRST STATE INSURANCE COMPANY, a Connecticut corporation; AMERICAN EMPLOYERS' INSURANCE COMPANY, n/k/a SPARTA Insurance Company, a Connecticut corporation; LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation; THE TRAVELERS INDEMNITY COMPANY, a Connecticut corporation; EMPLOYERS INSURANCE COMPANY OF WAUSAU, a Wisconsin corporation; NORTH RIVER INSURANCE COMPANY, a New Jersey corporation; PACIFIC EMPLOYERS INSURANCE COMPANY, a Pennsylvania corporation; FEDERAL INSURANCE COMPANY, an Indiana corporation; and DOE INSURANCE COMPANIES 1-10; <br><br>      Defendants. | Case No.  1:19-cv-00010 <br> Honorable Janet T. Neff <br> Magistrate Ellen S. Carmody |

**THE AMERICAN INSURANCE COMPANY'S ANSWER TO CROSS-CLAIM PLAINTIFF
FIRST STATE INSURANCE COMPANY'S CROSS-CLAIM
<u>FOR DECLARATORY JUDGMENT AND DEFENSES</u>**

Defendant/Cross-Claim Defendant The American Insurance Company (hereinafter

"AIC"), by counsel, for its Answer to Defendant/Cross-Claim Plaintiff First State Insurance

Company's Cross-Claim for Declaratory Judgment states as follows:

## ALLEGED NATURE OF ACTION

1.        Crossclaim Plaintiff, First State, seeks a declaration regarding the extent to which, if at all, it has any obligation under umbrella and excess umbrella general liability policies allegedly issued to Wolverine to defend and/or indemnify Wolverine for any alleged claim for damages arising out of or relating to claims and/or lawsuits allegedly made and/or filed against Wolverine by agencies, entities, and/or persons alleging that Wolverine caused damage to the soil, surface waters, and/or groundwater at or near certain sites, and/or caused injury and/or damage to entities and/or persons ("Underlying Actions" as alleged in Wolverine's complaint and attachments to Wolverine's complaint, currently on file with the clerk of this court).

**ANSWER:  The allegations in Paragraph 1 fail to allege matters requiring a response by AIC. To the extent an answer is required, AIC upon information and belief states that Cross-Claim Plaintiff First State's ("First State") Cross-Claim Complaint ("Cross-Claim") speaks for itself, and otherwise neither admits nor denies the allegations therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth and leaves First State to its proofs thereof.**

2.        In the alternative, in the event that the court determines that First State owes any defense or indemnity obligation, First State also seeks a declaratory judgment as to First State's rights and obligations regarding the allocation of liability, defense, and indemnity costs between First State and the Crossclaim Defendant Insurers in connection with the Underlying Actions, and regarding contribution for any amounts paid by First State in excess of its proper equitable share.

**ANSWER:  The allegations in Paragraph 2 fail to allege matters requiring a response by AIC. To the extent an answer is required, AIC states upon information and belief that First State's Cross-Claim speaks for itself, and otherwise denies the underlying allegations and relief sought therein as they relate to AIC as AIC is not liable to Plaintiff, First State, or any other party for any defense, indemnity, or contribution costs in connection with the claims at issue in this action, and neither admits nor denies the allegations as they relate to other Defendants for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof.**

**PARTIES**

3.      Crossclaim Plaintiff, First State, is a Connecticut corporation whose principal place of business is in the state of Connecticut.

**ANSWER:  The allegations in Paragraph 3 are not directed to AIC, and AIC neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof.**

4.      On information and belief, Crossclaim Defendant AIC is an Ohio corporation whose principal place of business is in Illinois.

**ANSWER:  AIC admits the allegations contained in Paragraph 4.**

5.      On information and belief, Crossclaim Defendant Century is a Pennsylvania corporation whose principal place of business is in Pennsylvania, Century is the successor to CCI Insurance Company, which is the successor to Insurance Company of North America

which is the insurance company that issued certain of the liability insurance policies alleged herein to or for the benefit of Wolverine.

**ANSWER:  The allegations in Paragraph 5 are not directed to AIC, and AIC neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof.**

6.     On information and belief, Crossclaim Defendant Wausau is a Wisconsin corporation whose principal place of business is in Massachusetts.

**ANSWER:  The allegations in Paragraph 6 are not directed to AIC, and AIC neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof.**

7.     On information and belief, Crossclaim Defendant Federal is an Indiana corporation whose principal place of business is in New Jersey.

**ANSWER:  The allegations in Paragraph 7 are not directed to AIC, and AIC neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof.**

8.     On information and belief, Crossclaim Defendant Liberty is a Massachusetts corporation whose principal place of business is in Massachusetts.

**ANSWER:  The allegations in Paragraph 8 are not directed to AIC, and AIC neither admits nor denies the allegations contained therein for the reason that it lacks**

sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof.

9.      On information and belief, Crossclaim Defendant North River is a New Jersey corporation whose principal place of business is in New Jersey.

**ANSWER:  The allegations in Paragraph 9 are not directed to AIC, and AIC neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof.**

10.      On information and belief, Crossclaim Defendant Pacific is a Pennsylvania corporation whose principal place of business is in Pennsylvania.

**ANSWER:  The allegations in Paragraph 10 are not directed to AIC, and AIC neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof.**

11.      On information and belief, Crossclaim Defendant Sparta is a Connecticut corporation whose principal place of business is in Connecticut, Sparta was f/k/a American Employers' Insurance Company which is the name of the insurance company that issued certain of the liability insurance policies alleged herein to or for the benefit of Wolverine.

**ANSWER:  The allegations in Paragraph 11 are not directed to AIC, and AIC neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof.**

12.     On information and belief, Crossclaim Defendant Travelers is a Connecticut corporation whose principal place of business is in Connecticut.

**ANSWER:  The allegations in Paragraph 12 are not directed to AIC, and AIC neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof.**

13.     Doe Insurance Companies 1 through 10 are insurance companies that issued liability insurance policies responsive to the Underlying Actions alleged herein. First State currently is unaware of the identities of these Doe Insurance Companies but when their true identities become known to First State, this Crossclaim will be amended to further identify these Doe Insurance Companies.

**ANSWER:  The allegations in Paragraph 13 are not directed to AIC, and AIC neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof.**

**JURISDICTION & VENUE**

14.     This court has subject matter jurisdiction over this Crossclaim pursuant to 28 U.S.C. Section 1367(a), which states in relevant part: "... the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

6

**ANSWER:  AIC neither admits nor denies the allegations contained in Paragraph 14 for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof.**

15.     This court has personal jurisdiction over Crossclaim Defendant Insurers under MCL section 600.715(1) and (4), based on their transaction of any business within the state of Michigan and their contracting to insure any person, property, or risk located within the state of Michigan at the time of contracting. This court has personal jurisdiction over Wolverine under MCL section 600.711(3) and under MCL section 600.715(1) based on Wolverine's carrying on of a continuous and systematic part of its general business within the state of Michigan and its transaction of any business within the state of Michigan.

**ANSWER:  AIC neither admits nor denies the allegations contained in Paragraph 15 for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof.**

16.     Venue is proper in this district pursuant to 28 U.S.C. Sec. 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred, and because a substantial part of property that is the subject of the action is situated in, this district, and pursuant to 28 U.S.C. Sec. 1391(b)(3), because a Crossclaim Defendant is subject to the court's personal jurisdiction in this district.

**ANSWER:  AIC neither admits nor denies the allegations contained in Paragraph 16 for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof.**

## ALLEGED FACTUAL BACKGROUND

17.     The Underlying Actions are claims and/or lawsuits allegedly made and/or filed against Wolverine by agencies, entities, and/or persons alleging that Wolverine caused damage to the soil, surface waters, and/or groundwater at or near certain sites, and/or caused injury and/or damage to entities and/or persons, and are further described in Wolverine's complaint and attachments to Wolverine's complaint, currently on file with the clerk of this court.

**ANSWER: The allegations in Paragraph 17 fail to allege matters requiring a response by AIC. To the extent an answer is required, AIC states upon information and belief that the underlying actions or claims reference therein speaks for themselves, and otherwise denies the underlying allegations and relief sought therein as they relate to AIC, and neither admits nor denies the allegations as they relate to other Defendants for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof.**

18.     First State issued or is alleged to have issued certain liability insurance policies to Wolverine, as set forth below:

| Policy No. | Effective Dates | |
|---|---|---|
| 945753 | 1/1/1980 | - 1/1/1981 |
| 947882 | 1/1/1981 | - 1/1/1982 |
| 951220 | 1/1/1982 | - 1/1/1983 |
| 933764 | 1/1/1982 | - 1/1/1983 |
| 953392 | 1/1/1983 | - 1/1/1984 |
| 936054 | 1/1/1983 | - 1/1/1984 |
| 955050 | 1/1/1984 | - 1/1/1985 |
| EU001432 | 1/1/1984 | – 1/1/1985 |

Collectively the above-alleged insurance policies are referred to hereinafter as the "First State Policies."

8

**ANSWER:  The allegations in Paragraph 18 are not directed to AIC, and AIC neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof. Further answering said Paragraph, AIC states that any policies referenced therein speak for themselves.**

19.     Coverage under the First State Policies is subject to their respective terms, conditions, limitations, and/or exclusions.

**ANSWER:  The allegations in Paragraph 19 are not directed to AIC, and AIC neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof. Further answering said Paragraph, AIC states that any policies referenced therein speak for themselves.**

20.     By notice provided to First State on various dates in the past, Wolverine has sought coverage from First State under the First State Policies for each of the Underlying Actions.

**ANSWER:  The allegations in Paragraph 20 are not directed to AIC, and AIC neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof. Further answering said Paragraph, AIC states that any documents referenced therein speak for themselves.**

21.     Disputes have arisen between First State and Wolverine over whether there is any coverage under the First State Policies for the Underlying Actions.

**ANSWER:  The allegations in Paragraph 21 are not directed to AIC, and AIC neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof.**

### COUNT 1 ALLEGED DECLARATORY JUDGMENT AGAINST WOLVERINE

22.     First State incorporates pars. 1 through 21 of this Crossclaim inclusive as the allegations of pars. 1 through 21 of Count 1 of this Crossclaim, as though fully set forth here.

**ANSWER:  AIC incorporates by reference its objections and answers to Paragraphs 1-21 of First State's Cross-Claim as though fully set forth herein.**

23.     Wolverine is not entitled to coverage under the First State Policies for the Underlying Actions for one or more of the following reasons:

a.      coverage is barred, in whole or in part, to the extent that recovery is sought for liabilities that are not within the coverage provided under the First State Policies for "ultimate net loss;"

b.      coverage is barred, in whole or in part, to the extent that recovery is sought for liabilities that are not in excess of the greater of the insured's "underlying limit" or "retained limit" as set forth in the First State Policies;

c.      coverage is barred, in whole or in part, to the extent that recovery is sought for liabilities that underlying insurers and/or underlying umbrella insurers and/or the insured have not paid or have not been held liable to pay the full amount of their liability and/or ultimate net loss liability;

d.      coverage is barred, in whole or in part, to the extent that recovery is sought for liabilities arising out of the acts or omissions of any individual or organization for which coverage, if any, under the First State Policies has been excluded;

e.      coverage is barred to the extent that any of the Underlying Actions come within the provisions of the First State Policies precluding coverage for joint ventures and partnerships that are not designated as named insureds;

f.      there is no coverage for any person or entity whose interest in the First State Policies was secured without the written consent of First State, and/or to the extent that First State's consent was not obtained for any assignment of interest under the First State Policies, and/or to the extent there was an invalid assignment of interest under the First State Policies;

g.      there is no coverage to the extent the events giving rise to the Underlying Actions for which insurance coverage is sought do not constitute an "accident" and/or an "occurrence" under the First State Policies, and/or to the extent that Wolverine expected or intended any of the "property damage," "bodily injury," or "personal injury" at issue;

h.      there is no coverage under the First State Policies to the extent the Underlying Actions do not involve claims for "property damage," "bodily injury," or "personal injury" as defined in the First State Policies;

i.      there is no coverage under the First State Policies for any damage and/or injury that took place prior to or after the applicable policy periods of the First State Policies;

j.      there is no coverage under the First State Policies for "property damage," "bodily injury," or "personal injury" caused intentionally by or at the direction of an insured thereunder;

k.      there is no coverage under the First State Policies for claims arising from conditions that were known or manifest, or damages that were expected, in whole or in part, by an insured thereunder prior to the inception of the First State Policies, to the extent Wolverine knew, or had reason to know, or it was reasonably foreseeable at the time it purchased the First State Policies that loss or liability would or might ensue due to the contamination for which Wolverine is seeking coverage, coverage is barred;

l.      coverage is barred or limited in whole or in part to the extent that any "property damage," "bodily injury," and/or "personal injury" is excluded by the pollution exclusions in the First State Policies;

m.      coverage is barred in whole or in part to the extent the Underlying Actions arise out of property damage to property owned, occupied by, or rented to an insured;

n.      to the extent that coverage is sought for "property damage," "bodily injury," or "personal injury" which arose out of continuous or repeated exposure to substantially the same general conditions, all such exposure shall be deemed one "occurrence" under the First State Policies;

o.      coverage is barred to the extent that Wolverine fails to prove the existence, terms, conditions, and limits of any alleged or incomplete First State Policies;

12

p.      coverage is barred to the extent Wolverine under the First State Policies did not provide timely and sufficient notice to First State of the Underlying Actions for which insurance coverage is sought;

q.      coverage is barred to the extent Wolverine failed to mitigate, minimize, or avoid the damages for which coverage is sought, and any recovery under the First State Policies must be reduced by that amount;

r.      First State's coverage obligations, if any, are governed by the limits stated in the First State Policies, including the "other insurance" provisions, and the applicable per occurrence and aggregate limits, and any such coverage obligations cease upon the exhaustion of the applicable limits of coverage;

s.      to the extent an insured under the First State Policies, or someone acting on its behalf, concealed, misrepresented, or failed to disclose material facts for the purpose of inducing First State to issue or renew a policy, coverage is barred;

t.      coverage is barred, in whole or in part, to the extent that the Underlying Actions arise from liability assumed by the insured under, or arising from, any contract or agreement other than one permitted under the terms of the First State Policies;

u.      there is no coverage under the First State Policies to the extent the insured failed to cooperate in and/or properly conduct the investigation, settlement, and defense of the Underlying Actions and/or breached any other condition in the First State Policies.

v.      applicable statutes of limitation may bar coverage for the Underlying Actions at issue in whole or in part;

13

w.     coverage is barred to the extent that the Underlying Actions arise out of obligations voluntarily assumed or payments voluntarily made by Wolverine;

x.     there is no coverage under the First State Policies for fines, penalties, and/or punitive or exemplary damages;

y.     First State's coverage obligations, if any, to Wolverine must be allocated in accordance with applicable law;

z.     Wolverine must bear all defense and/or indemnity costs incurred that are appropriately allocated to periods during which they were self-insured, and to the extent other valid and collectible insurance with another insurer is available to cover a loss covered by the First State Policies, then First State's obligations, if any, shall be modified accordingly;

aa.     First State reserves the right to assert all additional defenses that may be pertinent once the precise nature of Wolverine' claims for coverage for the Underlying Actions is ascertained through discovery and investigation.

**ANSWER:  The allegations in Paragraph 23 are not directed to AIC, and AIC neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof. Further answering said Paragraph, AIC states that any policies referenced therein speak for themselves.**

24.     By reason of the foregoing there is an actual controversy under Count 1 between First State and Wolverine, and this court is empowered under 28 U.S.C. Section 2201, Fed. R. Civ. P. 57, and/or Michigan Court Rule 2.605, to determine the parties' rights and obligations under the First State Policies in connection with the Underlying Actions, to

enter a declaratory judgment regarding those rights and obligations, and to award such other and further relief as may be warranted under the circumstances.

**ANSWER:  The allegations in Paragraph 24 are not directed to AIC, and AIC neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof. Further answering said Paragraph, AIC states that any documents referenced therein speak for themselves.**

COUNT 2 ALLEGED DECLARATORY JUDGMENT AGAINST
CROSS-CLAIM DEFENDANT INSURERS AND WOLVERINE

25.    First State incorporates pars. 1 through 21 of this complaint, inclusive as the allegations of pars. 1 through 21 of Count 2 of this complaint, as though fully set forth here.

**ANSWER:  AIC incorporates by reference its objections and answers to Paragraphs 1-21 of Plaintiff's Complaint as though fully set forth herein.**

26.    On information and belief, AIC issued or is alleged to have issued certain primary liability insurance policy(ies) to Wolverine, as set forth below:

| Policy No. | Effective Dates |
|------------|-----------------|
| K2342252   | 4/06/1966          - |

**ANSWER:  AIC objects as the allegations in Paragraph 26 are vague, ambiguous, speculative, and otherwise call for one or more legal conclusions to which no response is required. Answering said Paragraph subject to objections and to the extent a response is required, AIC denies the allegations therein and leaves First State to its proofs thereof. Further answering said Paragraph subject to objections, First State has not attached copies of the alleged excess policy referenced therein, and has the burden of proving the existence, issuance, insured, period, limits, terms,**

15

**exclusions, conditions, and other contents of any alleged policy issued by AIC, as well as coverage for each of the underlying actions and claims thereunder, should it seek to allocate to or recover any defense, indemnity, or contribution costs associated with same thereunder.**

27.     On information and belief, AIC issued or is alleged to have issued certain excess liability insurance policy(ies) to Wolverine, as set forth below:

| Policy No. | Effective Dates |
|---|---|
| XLX 1362260 | 1/01/1980     - 1/01/1981 |
| XLX 1363840 | 1/01/1981     - 1/01/1982 |
| XLX 1440544 | 1/01/1982     - 1/01/1983 |
| XLX 1532184 | 1/01/1983     - 1/01/1984 |
| XLX 1484189 | 1/01/1984     - 1/01/1985 |
| XLX 1621365 | 1/01/1985     - 1/01/1986 |

Collectively the above-alleged AIC primary and excess insurance policies are referred to hereinafter as the "AIC Policies."

**ANSWER:  AIC objects as the allegations in Paragraph 27 are vague, ambiguous, speculative, and otherwise call for one or more legal conclusions to which no response is required. Answering said Paragraph subject to objections and to the extent a response is required, AIC admits only that it issued one or more excess liability policies to Wolverine World Wide, Inc., et al., during the referenced time period, the issuance, scope, contents and precise terms of which have not been confirmed or verified, and denies any remaining allegations therein in the manner and form alleged or as untrue. Further answering said Paragraph subject to objections, First State has not attached copies of the alleged excess policies referenced therein, and has the burden of proving the existence, issuance, insured, period, limits, terms, exclusions, conditions, and other contents of any alleged policy**

**issued by AIC, as well as coverage for each of the underlying actions and claims thereunder, should it seek to allocate to or recover any defense, indemnity, or contribution costs associated with same thereunder. Further answering said Paragraph, AIC otherwise objects to referring to alleged and unproven policies that may have been issued by AIC as "the AIC Policies."**

28.     On information and belief, Century, by and through its alleged predecessor INA issued or is alleged to have issued certain primary liability insurance policy(ies) to Wolverine, as set forth below:

| Policy No. | Effective Dates |
|---|---|
| GAL 331483 | 3/01/1977     - 3/01/1978 |
| GAL 376803 | 3/01/1978     - 3/01/1979 |
| GAL 376812 | 3/01/1979     - 3/01/1980 |

**ANSWER:  The allegations in Paragraph 28 are not directed to AIC, and AIC neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof. Further answering said Paragraph, AIC states that any policies referenced therein speak for themselves.**

29.     On information and belief, Century, by and through its alleged predecessor INA issued or is alleged to have issued certain excess liability insurance policy(ies) to Wolverine, as set forth below:

| Policy No. | Effective Dates |
|---|---|
| XBC155081 | 1/91/1985-1/01/1986 |

Collectively the above-alleged Century primary and excess insurance policies are referred to hereinafter as the "Century Policies."

**ANSWER:  The allegations in Paragraph 29 are not directed to AIC, and AIC neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof. Further answering said Paragraph, AIC states that any policies referenced therein speak for themselves.**

30.     On information and belief, Federal issued or is alleged to have issued certain excess liability insurance policy(ies) to Wolverine, as set forth below:

| Policy No. | Effective Dates |
|---|---|
| 7929-05-17 | 1/01/1985-1/01/1986 |

Collectively the above-alleged insurance policies are referred to hereinafter as the "Federal Policies."

**ANSWER:  The allegations in Paragraph 30 are not directed to AIC, and AIC neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof. Further answering said Paragraph, AIC states that any policies referenced therein speak for themselves.**

31.     On information and belief, Liberty, issued or is alleged to have issued certain primary liability insurance policy(ies) to Wolverine, as set forth below:

| Policy No. | Effective Dates |
|---|---|
| LPI-141-050531-028 | 4/06/19575 - 4/06/1958 |
| LPI-141-050531-029 | 4/06/1958  - 4/06/1959 |
| LPI-141-050531-020 | 4/06/1959  - 4/06/1960 |
| LPI-141-050531-021 | 4/06/1960  - 4/06/1961 |
| LPI-141-050531-022 | 4/06/1961  - 4/06/1962 |
| LPI-141-050531-023 | 4/06/1962    - 4/06/1963 |
| LPI-141-050531-024 | 4/06/1963    - 4/06/1964 |
| LPI-141-050531-025 | 4/06/1964    - 4/06/1965 |
| LPI-141-050531-026 | 4/06/1966   - 4/06/1966 |

18

| LPI-141-050531-087 | 4/06/1967 | - 4/06/1968 |
| LPI-141-050531-088 | 4/06/1968 | - 4/06/1969 |
| LPI-141-050531-089 | 4/06/1969 | - 4/06/1970 |
| LPI-141-050531-080 | 4/06/1970 | - 4/06/1971 |
| LPI-141-050531-081 | 4/06/1971 | - 4/06/1972 |
| LPI-141-050531-082 | 1/01/1972 | - 2/28/1973 |

Collectively the above-alleged insurance policies are referred to hereinafter as the "Liberty Policies."

**ANSWER:**  **The allegations in Paragraph 31 are not directed to AIC, and AIC neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof. Further answering said Paragraph, AIC states that any policies referenced therein speak for themselves.**

32.     On information and belief, North River, issued or is alleged to have issued certain umbrella liability insurance policy(ies) to Wolverine, as set forth below:

| Policy No. | Effective Dates | |
|---|---|---|
| JU 0286 | 2/01/1977 | - 2/01/1978 |
| JU 0286 | 2/01/1978 | - 2/01/1979 |
| JU 0286 | 2/01/1979 | - 2/01/1980 |

Collectively the above-alleged insurance policies are referred to hereinafter as the "North River Policies."

**ANSWER:**   **The allegations in Paragraph 32 are not directed to AIC, and AIC neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof. Further answering said Paragraph, AIC states that any policies referenced therein speak for themselves.**

19

33.     On information and belief, Pacific, issued or is alleged to have issued certain excess liability insurance policy(ies) to Wolverine, as set forth below:

| Policy No. | Effective Dates |
|---|---|
| XCC 003306 | 1/22/1980     - 1/01/1981 |
| XCC 011177 | 1/01/1981     - 1/01/1982 |
| XCC 011293 | 1/01/1982     - 1/01/1983 |
| XCC 012870 | 1/01/1983     - 1/01/1984 |
| XCC 013002 | 1/01/1984     - 1/01/1985 |

Collectively the above-alleged insurance policies are referred to hereinafter as the "Pacific Policies."

**ANSWER:    The allegations in Paragraph 33 are not directed to AIC, and AIC neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof. Further answering said Paragraph, AIC states that any policies referenced therein speak for themselves.**

34.     On information and belief, Sparta, by and through its alleged predecessor AEIC issued or is alleged to have issued certain umbrella liability insurance policy(ies) to Wolverine, as set forth below:

| Policy No. | Effective Dates |
|---|---|
| A22-8477-001 | 4/06/1966     - 4/06/1967 |
| A22-8477-001 | 4/06/1967     - 4/06/1968 |
| A22-8477-001 | 4/06/1968     - 4/06/1969 |
| A22-8500-288 | 4/06/1969     - 4/06/1970 |
| A22-8500-288 | 4/06/1970     - 4/06/1971 |
| A22-8500-288 | 4/06/1971     - 4/06/1972 |

Collectively the above-alleged insurance policies are referred to hereinafter as the "Sparta Policies."

**ANSWER:  The allegations in Paragraph 34 are not directed to AIC, and AIC neither admits nor denies the allegations contained therein for the reason that it lacks**

**sufficient information or knowledge to form a belief as to their truth, and leaves First**

**State to its proofs thereof. Further answering said Paragraph, AIC states that any**

**policies referenced therein speak for themselves.**

35.    On information and belief, Travelers issued or is alleged to have issued

certain primary liability insurance policy(ies) to Wolverine, as set forth below:

| Policy No. | Effective Dates |
|---|---|
| TR-SLG-168T045-4-80 | 1/01/1980   - 1/01/1981 |
| TR-SLG-168T045-4-81 | 1/01/1981   - 1/01/1982 |
| TR-SLG-168T045-4-82 | 1/01/1982   - 1/01/1983 |
| TR-SLG-168T045-4-83 | 1/01/1983   - 1/01/1984 |
| TR-SLG-168T045-4-84 | 1/01/1984   - 1/01/1985 |
| TR-SLG-168T045-4-85 | 1/01/1985   - 1/01/1986 |

Collectively the above-alleged insurance policies are referred to hereinafter as the

"Travelers Policies."

**ANSWER:  The allegations in Paragraph 35 are not directed to AIC, and AIC neither**

**admits nor denies the allegations contained therein for the reason that it lacks**

**sufficient information or knowledge to form a belief as to their truth, and leaves First**

**State to its proofs thereof. Further answering said Paragraph, AIC states that any**

**policies referenced therein speak for themselves.**

36.    On information and belief, Wausau issued or is alleged to have issued certain

primary liability insurance policy(ies) to Wolverine, as set forth below:

| Policy No. | Effective Dates |
|---|---|
| 1724   00 045849 | 2/28/1973  - 1/01/1974 |
| 1725   00 045849 | 1/01/1974  - 1/01/1975 |
| 1726   00 045849 | 1/01/1975  - 1/01/1976 |
| 1727   00 045849 | 1/01/1976  - 1/01/1977 |

Collectively the above-alleged insurance policies are referred to hereinafter as the "Wausau

Policies."

**ANSWER: The allegations in Paragraph 36 are not directed to AIC, and AIC neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof. Further answering said Paragraph, AIC states that any policies referenced therein speak for themselves.**

37.     On information and belief, Wolverine alleges that the AIC, Century, Liberty, Travelers, and Wausau Policies alleged herein and the policy(ies) issued by the Doe Insurance Companies provide primary coverage to Wolverine.

**ANSWER: The allegations in Paragraph 37 are not directed to AIC, and AIC neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof. Further answering said Paragraph, AIC states that any policies referenced therein speak for themselves.**

38.     On information and belief, Wolverine alleges that the AIC, Century, Federal North River, Pacific, and Sparta Policies alleged herein and the policy(ies) issued by the Doe Insurance Companies provide excess coverage to Wolverine.

**ANSWER: The allegations in Paragraph 38 are not directed to AIC, and AIC neither admits nor denies the allegations contained therein for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof. Further answering said Paragraph, AIC states that any policies referenced therein speak for themselves.**

39.     To the extent that Wolverine's allegations to the effect that First State owes Wolverine an obligation under the First State Policies to respond to the Underlying Actions

on an "all sums" basis ahead or in advance of the Crossclaim Defendant Insurers' Policies as alleged in pars. 37 and 38 herein are sustained, First State is entitled to a declaratory judgment under Count 2 as to its rights to subrogation and/or contribution from the Crossclaim Defendant Insurers, under the doctrines of subrogation, conventional subrogation, equitable subrogation, contribution, equitable contribution, and equitable allocation, and against Wolverine for any uninsured period(s), for any defense and indemnity payments made by First State in excess of its proper equitable share.

**ANSWER:  AIC objects as the allegations in Paragraph 39 are vague, ambiguous, unlimited as to time, unspecified as to policy, claim, or suit, and otherwise call for one or more legal conclusions to which no response is required. Answering said Paragraph subject to objections and to the extent a response is required, AIC denies the allegations therein as they relate to AIC, and neither admits nor denies the allegations contained therein as they relate to other defendants and Plaintiff for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof.**

40.     To the extent that Wolverine's allegations to the effect that First State owes Wolverine an obligation under the First State Policies to respond to the Underlying Actions on an "all sums" basis ahead or in advance of the Crossclaim Defendant Insurers' Policies as alleged in pars. 37 and 38 herein are sustained, a judicial determination under Count 2 is necessary and appropriate to allocate liability, defense, and indemnity costs between First State and the Crossclaim Defendant Insurers and Wolverine.

**ANSWER:  AIC objects as the allegations in Paragraph 40 are vague, ambiguous, unlimited as to time, unspecified as to policy, claim, or suit, and otherwise call for**

**one or more legal conclusions to which no response is required. Answering said Paragraph subject to objections and to the extent a response is required, AIC denies the allegations therein as they relate to AIC, and neither admits nor denies the allegations contained therein as they relate to other defendants and Plaintiff for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof.**

41.     By reason of the foregoing, there is an actual controversy under Count 2 between First State and the Crossclaim Defendant Insurers and Wolverine in connection with the Underlying Actions under the liability insurance policies alleged herein, and this court is empowered under 28 U.S.C. Section 2201, Fed. R. Civ. P. 57, and/or Michigan Court Rule 2.605, to determine and declare the parties' rights and obligations regarding subrogation, contribution, and the allocation of liability, defense, and indemnity costs between First State and Crossclaim Defendant Insurers and Wolverine in connection with the Underlying Actions, and to award such other and further relief as may be warranted under the circumstances.

**ANSWER:  AIC objects as the allegations in Paragraph 41 are vague, ambiguous, unlimited as to time, unspecified as to policy, claim, or suit, and otherwise call for one or more legal conclusions to which no response is required. Answering said Paragraph subject to objections and to the extent a response is required, AIC denies the allegations therein as they relate to AIC, and neither admits nor denies the allegations contained therein as they relate to other defendants and Plaintiff for the reason that it lacks sufficient information or knowledge to form a belief as to their truth, and leaves First State to its proofs thereof.**

## DEFENSES

Defendant The American Insurance Company ("AIC") has undertaken in good faith to list all of the Defenses that it may have with respect to First State's claims as described in its Cross-Claim complaint. However, AIC reserves the right to reevaluate, restate and/or delete defenses and/or to assert additional defenses as further information and documentation is obtained. Further, by characterizing the following as defenses AIC does not admit that it bears the burden of proof on any of the issues raised by such defenses. Additionally, AIC does not waive any of its rights under the actual or alleged AIC policies at issue in this action ("alleged AIC Policies") or at law with respect to defense and indemnity for the claims and sites at issue herein. Subject to and without waiving the foregoing limitations and reservations, AIC identifies the following Defenses upon which it may rely in this action:

1.     First-State's Cross-Claim fails to state one or more proper causes of action upon which relief can be granted as to AIC.

2.     No coverage exists for the underlying actions, claims, and sites at issue in this action as described in First-State's Cross-Claim under any alleged AIC Policies issued to Plaintiff.

3.     First-State's claims are barred as it cannot sustain its burden to prove the existence, issuance, insured, terms, conditions, limits, and other necessary portions of each of the AIC Policies alleged at issue in this action.

4.     Michigan law applies to this dispute and governs the coverage issues at issue in this action, including any alleged allocation or apportionment among triggered policies.

5.      Any defense or indemnity that ultimately may be owed by AIC under any alleged policy issued to Plaintiff is limited by a pro rata, time-on-the-risk allocation among all insured and uninsured periods.

6.      First-State's claims may be barred or limited, in whole or in part, by applicable statutes of limitations and/or statutes of repose.

7.      First-State may have failed to mitigate their damages as it relates to their claims and allegations.

8.      First State's claims may be barred or limited, in whole or in part, by the doctrine of laches in that some evidence may no longer be available or may be in an altered state, prejudicing and/or preventing AIC from being able to properly or fully prepare its defense of this action as it relates to First State's claims and allegations.

9.      AIC may be entitled to judgment in its favor as a matter of law as to some or all of First-State's claims pursuant to Fed.R.Civ.P. 12(b)(6) and/or Fed.R.Civ.P. 56.

10.     There exists no genuine issue of material fact on some or all of First State's claims, and AIC is entitled to judgment in its favor as a matter of law on such claims.

11.     In the event an agreement to arbitrate, release, satisfaction, or discharge is found to exist in this matter, First-State's claims are subject to dismissal.

12.     First-State may be estopped from asserting some or all of their alleged claims.

13.     First-State's claims may be barred or limited, in whole or in part, based upon prior settlements, releases, discharges, waivers, relinquishments and covenants not to sue.

14.     First State's claims may be barred or limited, in whole or in part, as there is no coverage for claims for pollution-related injuries or damage from or arising out of any of

the sites at issue or Plaintiff's operations under the alleged AIC Policies pursuant to applicable pollution exclusions contained in or incorporated by the alleged AIC Policies.

15.     First State's claims may be barred or limited, in whole or in part, as there is no insurance coverage under the alleged AIC Policies to the extent that the Underlying Claims do not constitute claims for "damages" because of "property damage," as those terms are defined by the AIC Policies, which may bar or limit First State's claims in whole or in part.

16.     First State's claims may be barred or limited, in whole or in part, as there is no insurance coverage under the alleged AIC Policies to the extent that any damages being sought from First-State were not the result of an "occurrence" as that term is defined by the AIC Policies.

17.     First State's claims may be barred or limited, in whole or in part, as there is no insurance coverage under the AIC Policies to the extent that the underlying claims against Plaintiff do not seek sums that Plaintiff is legally obligated to pay as damages.

18.     First State's claims may be barred or limited, in whole or in part, as there is no insurance coverage under the alleged AIC Policies to the extent that Plaintiff has not been declared liable by adjudication or compromise with the written consent of AIC.

19.     First State's claims may be barred or limited, in whole or in part, as there is no insurance coverage under the alleged AIC Policies to the extent that the underlying claims against Plaintiff do not constitute "ultimate net loss" as that term is defined by the alleged AIC Policies.

20.     First State's claims may be barred or limited, in whole or in part, as there is no insurance coverage under the AIC Policies to the extent that the underlying claims

against Plaintiff involve "property damage" that did not occur during the effective dates of the alleged AIC Policies.

21.    First State's claims may be barred or limited, in whole or in part, as there is no insurance coverage under the alleged AIC Policies to the extent that any "property damage" allegedly caused by Plaintiff was either expected or intended from the standpoint of Plaintiff or any other insured.

22.    First State's claims may be barred or limited, in whole or in part, as there is no insurance coverage for the claims or sites at issue under the alleged AIC Policies for property damage to property owned or occupied by or rented to Plaintiff, property used by the Plaintiff, or property in the care, custody or control of the Plaintiff, or as to which Plaintiff is or was for any purpose exercising physical control.

23.    First State's claims may be barred or limited, in whole or in part, as there is no insurance coverage under the alleged AIC Policies to the extent that the claims and sites at issue involve a known loss or a loss-in-progress, non-fortuitous events or uninsurable risks of which Plaintiff knew or should have known before the alleged AIC Policies were issued or while they were in effect.

24.    First State's claims may be barred or limited, in whole or in part, as there is no insurance coverage under the alleged AIC Policies to the extent that Plaintiff has violated any of the conditions precedent to coverage in the AIC Policies.

25.    First State's claims may be barred or limited, in whole or in part, as there is no insurance coverage under the alleged AIC Policies to the extent that Plaintiff has failed to provide timely written notice to AIC of a claim, accident, occurrence, suit or event as required by the alleged AIC Policies.

26.     First State's claims may be barred or limited, in whole or in part, as there is no insurance coverage under the alleged AIC Policies to the extent that Plaintiff has failed to timely forward to AIC every demand, notice, summons or other process received by Plaintiff and/or its representatives, as required by the alleged AIC Policies.

27.     First State's claims may be barred or limited, in whole or in part, as there is no insurance coverage under the alleged AIC Policies to the extent that Plaintiff has failed to assist and/or cooperate with AIC or to otherwise comply with the assistance or cooperation clauses contained in or incorporated by the alleged AIC Policies.

28.     First State's claims may be barred or limited, in whole or in part, as there is no insurance coverage under the alleged AIC Policies to the extent that Plaintiff voluntarily made and/or undertook any obligation(s) with respect to any claim asserted against it without notice to, or the consent of, AIC.

29.     First State's claims may be barred or limited, in whole or in part, as there is no insurance coverage under the alleged AIC Policies to the extent that any defense or indemnity costs were incurred or obligations undertaken prior to the tender of those costs to AIC for payment.

30.     First State's claims may be barred or limited, in whole or in part, as there is no insurance coverage under the alleged AIC Policies to the extent that Plaintiff has harmed, reduced, prejudiced and/or impaired, in whole or in part, the subrogation rights of AIC with respect to the claims and sites at issue.

31.     First State's claims may be barred or limited, in whole or in part, as there is no insurance coverage under the alleged AIC Policies to the extent that Plaintiff failed to take all reasonable steps to prevent any alleged property damage.

29

32.     First State's claims may be barred or limited, in whole or in part, as there is no insurance coverage under the alleged AIC Policies to the extent that the claims and sites at issue seeks declaratory, injunctive, restitutionary or other equitable relief.

33.     First State's claims may be barred or limited, in whole or in part, as there is no insurance coverage under the alleged AIC Policies to the extent that any damages or activities for which coverage is sought from AIC constitute operational expenses or costs of doing business.

34.     First State's claims may be barred or limited, in whole or in part, as there is no insurance coverage under the alleged AIC Policies for any punitive or exemplary damages, fines, penalties, or interest awarded against Plaintiff.

35.     First State's claims may be barred or limited, in whole or in part, as there is no defense obligation under the alleged AIC Policies to the extent that there is no "suit" seeking damages from Plaintiff for the underlying claims and sites at issue.

36.     First State's claims may be barred or limited, in whole or in part, as there is no insurance coverage under the alleged AIC Policies to the extent that the claims and sites at issue arise out of or are alleged to have arisen out of the criminal or illegal acts of any insured and/or Plaintiff or Plaintiff's violation of federal, state and/or local laws.

37.     First State's claims may be barred or limited, in whole or in part, as there is no insurance coverage under the alleged AIC Policies to the extent that the claims and sites at issue arise out of or are alleged to have arisen out of acts or omissions of Plaintiff that were informed, willful, wanton and/or against public policy.

38.     First State's claims may be barred or limited, in whole or in part, as the relevant underlying limits of liability have not been properly and fully exhausted to

implicate coverage under the AIC Policies at issue, including any alleged or actual excess policies, and accordingly no insurance coverage (defense or indemnity) is owed under those policies.

39.   First State's claims may be barred or limited, in whole or in part, as there is no insurance coverage under the alleged AIC Policies for the claims and sites at issue to the extent that the applicable limits of liability of any alleged AIC Policy have been impaired or exhausted, in whole or in part, by the payment of claims.

40.   First State's claims may be barred or limited, in whole or in part, as there is no insurance coverage under the alleged AIC Policies to the extent that the applicable limits of liability underlying any alleged AIC Policy, including but not limited to any applicable deductible or self-insured retention, have not been properly exhausted by payment.

41.   First State's claims may be barred or limited, in whole or in part, as there is no insurance coverage under the alleged AIC Policies to the extent that the limits of liability in any alleged AIC Policy, including but not limited to any per occurrence and aggregate limits of liability, have been exhausted.

42.   First State's claims may be barred or limited, in whole or in part, to the extent that the amount of coverage available is reduced or eliminated by application of the "other insurance" and non-cumulation provisions contained in or incorporated by the alleged AIC Policies.

43.   To the extent that it is determined that insurance coverage exists under any alleged AIC Policy for the underlying claims and sites at issue, such finding is subject to proper allocation of any covered damages across all time periods during which property damage occurred, including allocation as to Plaintiff for uninsured periods.

44.     First State's claims may be barred or limited, in whole or in part, under other policy terms, definitions, exclusions, conditions and endorsements in the alleged AIC Policies as well as any underlying policies to which AIC follows form, not specifically identified herein as applied to the claims and sites at issue.

45.     First State's claims may be barred or limited, in whole or in part, under and/or based on other applicable statutes, common law, or equity.

46.     AIC reserves it rights to adopt or rely upon any other defenses asserted by any other insurer in this action to the extent applicable to AIC in connection with First State's Cross-Claim and consistent with the defenses asserted herein.

47.     First-State's Cross-Claim does not describe the claims made against AIC or the claims and sites at issue at issue with sufficient particularity to enable AIC to determine what additional defenses it may have in response to the Complaint or otherwise to coverage.  AIC therefore reserves its right to assert any additional defenses which may be applicable once the precise nature of the underlying matters is pleaded or otherwise ascertained through discovery, investigation, or otherwise.

WHEREFORE**,** as to First-State's Cross-Claim, Defendant AIC respectfully requests that this Court:

a.     Dismiss First-State's Cross-Claim against AIC in its entirety with prejudice;

b.     Award AIC its costs, interest, and attorneys' fees and expenses incurred in defending this action;

c.     Deny and all relief and remedies sought by First State's in its Prayer for Relief; and

d.     Award all other relief that this Court may deem just and proper.

Respectfully submitted,

DATED:  February 7, 2019

BY: */s/ Bradford S. Moyer*
Bradford S. Moyer (P51481)
PLUNKETT COONEY, P.C.
950 Trade Centre Way, Suite 310
Kalamazoo, MI 49002
(269) 382-5935
bmoyer@plunkettcooney.com

Sara Corbello (P73736)
PLUNKETT COONEY, P.C.
38505 Woodward Ave., Suite 100
Bloomfield Hills, MI 48304
(248) 901-4000
scorbello@plunkettcooney.com

*Attorneys    for    Defendant/Cross-Claim
Defendant    The    American    Insurance
Company*

Open.26453.90148.21552451-1

33