**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

WOLVERINE WORLD WIDE, INC.,

      Plaintiff,

v.                          Case No. 1:19-cv-00010-JTN-ESC

THE AMERICAN INSURANCE COMPANY, et. al,    Honorable Janet T. Neff
                                  Mag. Judge Ellen S. Carmody
      Defendants.

*[And related Cross-Claim]*

_____

**FIRST AMENDED ANSWER AND AFFIRMATIVE AND OTHER DEFENSES OF**
**DEFENDANT LIBERTY MUTUAL INSURANCE COMPANY**
_____

NOW COMES Defendant, Liberty Mutual Insurance Company ("Liberty Mutual"), by its attorneys, and for its First Amended Answer and Affirmative and Other Defenses to the Complaint of Wolverine World Wide, Inc. ("Wolverine"), states as follows:

**NATURE OF THE ACTION**

1.      Plaintiff Wolverine brings this action for declaratory judgment and for breach of contract under comprehensive general, umbrella, and excess liability insurance policies issued by Defendants and enclosed in **Exhibits A-1 through A-11** attached hereto (the "Policies").

**Response**:    In answer to Paragraph 1 of the Complaint, Liberty Mutual states that the allegations contained therein are characterizations of the relief sought in the Complaint for which no responsive pleading is required.  To the extent a responsive pleading is deemed required, Liberty Mutual admits that the Complaint purports to assert claims for declaratory judgment and breach of contract against Defendants under liability policies that Wolverine contends were issued to Wolverine, which, to the extent they exist, speak for themselves and

denies any allegations in Paragraph 1 contrary thereto.  Liberty Mutual denies that all of the policies issued or alleged to have been issued by Liberty Mutual to Wolverine are attached to the Complaint and lacks knowledge or information sufficient to form a belief as to the truth of the allegations relating to policies issued or allegedly issued by other defendants to Wolverine.

2.      As of the filing of this Complaint, Wolverine has been named as a defendant in three class actions and approximately 220 individual tort actions brought by current and/or former Michigan residents who have allegedly suffered bodily injury, property damage, personal injury, or some combination thereof, which they attribute to exposure to certain chemicals and waste byproducts allegedly caused by Wolverine's historic operations at or around a former leather tannery Wolverine operated near its principal place of business in Rockford, Michigan (the "Rockford Site"), and/or its property located at 1855 House Street N.E., in Belmont, Michigan (the "Belmont Site") (collectively, the "Tort Actions"). Specifically, the plaintiffs in the Tort Actions allege that Wolverine's use of Scotchgard™, a chemical that contains certain per- and polyfluoroalkyl substances ("PFAS"), in its leather treatment process led to the increased presence of certain PFAS compounds in the soil and/or groundwater and allegedly caused plaintiffs' alleged injuries and/or damages.

**Response**:      In answer to Paragraph 2 of the Complaint, Liberty Mutual generally admits that Wolverine has been named as a defendant in three (3) class actions and numerous individual lawsuits arising out of Wolverine's historic operations and/or waste disposal practices at or from one or more of its business properties located in Michigan. Liberty Mutual affirmatively states that the allegations made in each of the actions speak for themselves and denies any allegations contrary thereto.

3.      Wolverine has also been named as a defendant in two government actions related to its alleged disposal of certain PFAS compounds. On January 10, 2018, the Michigan Department of Environmental Quality ("MDEQ") filed a complaint against Wolverine in federal court seeking declaratory and injunctive relief under various environmental statutes based on increased presence of certain PFAS compounds on and around the Rockford and Belmont Sites allegedly due to Wolverine's historic operations. Also on January 10, 2019, the U.S. Environmental Protection Agency ("EPA") served on Wolverine a Unilateral Administrative Order, ordering Wolverine to comply with its work plan to investigate and remediate certain PFAS compounds allegedly located at the Rockford and Belmont Sites (together with the MEDQ action, the "Government Actions").

**Response**:     In answer to Paragraph 3 of the Complaint, Liberty Mutual admits that

Wolverine has been named in two government actions: (1) a "Complaint for Declaratory and

Injunctive Relief" filed by the Michigan Department of Environmental Quality ("MDEQ"); and

(2) a "Unilateral Administrative Order" filed by the U.S. Environmental Protection Agency

("EPA"), the allegations of which speak for themselves and Liberty Mutual denies any

allegations in Paragraph 3 contrary thereto.  As to the allegations in the third sentence

regarding service of the Unilateral Administrative Order on Wolverine, Liberty lacks

knowledge or information sufficient to form a belief as to the truth of the allegations and

therefore denies the same.

4.     In addition, Wolverine is named as a defendant in an action brought by
Boulder Creek Development Co., LLC ("Boulder Creek"), the owner of a nearby gravel pit and
licensed landfill where Wolverine allegedly disposed of waste byproducts several decades
ago. The plaintiff in that suit seeks damages related to the clean-up and investigation of its
property based on causes of action sounding in environmental statute, negligence, fraud, and
nuisance. (This action collectively with the Government Actions and the Tort Actions are
referred to herein as the "Underlying Actions").

**Response**:     In answer to Paragraph 4 of the Complaint, Liberty Mutual admits that

Wolverine was named as a defendant in an action brought by Boulder Creek Development

Co., LLC, a copy of said action was attached to the Complaint and speaks for itself and Liberty

Mutual denies any allegations in Paragraph 4 contrary thereto.  Liberty Mutual also uses the

term "Underlying Actions" to collectively refer to all underlying claims and lawsuits at issue

in this Complaint.

5.     The Defendants' Policies described herein and enclosed in **Exhibits A-1
through A-11** consist of primary, umbrella, and excess comprehensive general liability
insurance policies for policy periods spanning from 1957 through 1986 requiring the
Defendant-Insurers to defend and indemnify Wolverine, in full, from suits alleging property
damage, bodily injury, and/or personal injury (the "Policies"). Certain of the Policies,
including all of the primary policies and certain of the excess and umbrella policies, contain
a duty to defend, which requires each of the applicable insurers to provide a full defense to
Wolverine in connection with each of the Underlying Actions. As discussed herein, each of

the primary insurer Defendants whose Policies contain such a duty to defend and those excess and umbrella insurer Defendants whose Policies require that they defend Wolverine where, for example, the underlying insurer has failed or refused to honor their respective duty to defend, have each failed or refused to provide Wolverine with a full defense in breach of each of their obligations under the Policies and applicable law.

**Response**:    In answer to the first sentence in Paragraph 5 of the Complaint, Liberty Mutual generally admits that attached to the Complaint as Exhibits A-1 through A-11 appear to be copies of various policies issued to Wolverine for various policy periods, the terms, provisions, conditions, exclusions, and limitations of which speak for themselves and Liberty Mutual denies any allegations contrary thereto.  Liberty Mutual denies that all of the policies issued or alleged to have been issued by Liberty Mutual to Wolverine are attached to the Complaint.  The allegations in the second and third sentences of Paragraph 5 state various legal conclusions to which Liberty Mutual is not obligated to respond.   To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations. To the extent the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 5.

6.     The Policies also provide insurance coverage to Wolverine requiring each of the insurers to pay all costs and expenses incurred by Wolverine in connection with any indemnity incurred by Wolverine in connection with the Underlying Actions, including any settlements or judgments. As discussed more fully herein, all of the Defendants have failed to acknowledge or agree to honor their indemnity obligations under the Policies to pay or reimburse Wolverine for any indemnity costs, which Wolverine may be legally obligated to pay in connection with any settlements or judgments for covered damages alleged in the Underlying                                                                                        Actions.

**Response**:    The allegations in Paragraph 6 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent the

allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 6.

7.       Each of the Underlying Actions alleges a covered, or potentially covered, Occurrence and seeks damages from Property Damage, Bodily Injury and/or Personal Injury, as those terms are defined in the Policies, during the period of each of the Policies. Accordingly, each of the primary insurer Defendants, and certain of the excess and umbrella insurer Defendants, has a duty to defend Wolverine in full and to provide a complete indemnity to Wolverine on a joint and several, "all sums" basis, in connection with each of the Underlying Actions under each of the primary Policies. Each of the umbrella and excess insurer Defendants have an obligation to acknowledge coverage and agree to indemnify Wolverine in the Underlying Actions upon exhaustion of the applicable underlying coverage or – where required by the Policies – immediately provide Wolverine with a full defense where, for example, the applicable underlying primary insurer Defendant has failed or refused to defend Wolverine in full for the Underlying Actions.

**Response**:     The allegations in Paragraph 7 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 7 as it relates to its alleged duties and obligations under policies issued or allegedly issued by Liberty Mutual.

8.       To date, each of the Defendants has failed and/or refused to provide Wolverine with a full defense in connection with each of the Underlying Actions under each of the Policies, and each of the Defendants also has failed and/or refused to agree to provide Wolverine with a complete indemnity on a joint and several, "all sums" basis, in connection with any settlements and/or judgments in the Underlying Actions.

**Response**:     The allegations in Paragraph 8 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by

Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 8 as it relates to its alleged duties and obligations under policies issued or allegedly issued by Liberty Mutual.

9.      Wolverine brings this action for declaratory judgment pursuant to MCR 2.605, seeking a declaration that each of the primary insurer Defendants is obligated to (1) provide Wolverine with a full defense in connection with the Underlying Actions; and/or (2) pay in full the costs and expenses of the investigation and defense of the Underlying Action; and (3) pay in full for any of Wolverine's legal liabilities incurred, to be incurred, or paid in connection with the Underlying Actions, including any settlements and/or judgments. Wolverine further seeks a declaration that each of the umbrella and excess insurer Defendants with a duty to defend or obligation to pay defense costs must: (1) provide Wolverine with a full defense in connection with the Underlying Actions; and/or (2) pay in full the costs and expenses of the investigation and defense of the Underlying Actions. Wolverine further seeks a declaration that all of the umbrella and excess insurer Defendants must pay in full any of Wolverine's legal liabilities incurred, to be incurred, or paid in connection with the Underlying Actions, including any settlements and/or judgments. Wolverine also seeks other declarations as to its rights under the Policies, all in accordance with the contractual provisions of these Policies, insuring obligations imposed or implied by law, and the reasonable expectations of Wolverine as an insured.

**Response**:   The allegations in Paragraph 9 of the Complaint are Wolverine's characterizations of the declaratory relief that it seeks in this action to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies that Wolverine is entitled to any relief from Liberty Mutual and denies each and every remaining allegation contained in Paragraph 9.

10.     Wolverine further seeks damages for breach of contract. The primary insurer Defendants each have breached their Policies by failing or refusing to undertake or honor their contractual obligations fully to provide a complete defense to Wolverine and/or to pay in full Wolverine's costs and expenses of investigation and defense. Each of the excess and umbrella insurer defendants with a duty to defend also have breached their Policies by failing or refusing to undertake or honor their contractual obligations fully to provide a complete defense to Wolverine and/or to pay in full Wolverine's costs and expenses of investigation and defense. Additionally, each of the Defendants has breached its respective

duties of good faith and fair dealing owed to Wolverine in connection with their handling of Wolverine's claims.

**Response**:   The allegations in the first sentence of Paragraph 10 of the Complaint are Wolverine's characterizations of damages that Wolverine seeks in this action to which Liberty Mutual is not obligated to respond.  The second and third sentences of Paragraph 10 are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 10.

11.    Wolverine has performed all acts and preconditions necessary and/or required under the Policies, specifically including, but not limited to, payment of premiums and providing timely and proper notice of all claims and/or suits, which have been satisfied by, among other things, the filing of this Complaint. All conditions precedent to Defendants' performance of their obligations under the Policies have been satisfied or performed by Wolverine, or their performance is or has been waived or excused by the conduct of these Defendants or by operation of law.

**Response**:   The allegations in Paragraph 11 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 11.

## PARTIES

12.    Plaintiff Wolverine, whose principal place of business is located in Rockford, Michigan, is incorporated under the laws of the State of Delaware and is engaged in the business of designing, manufacturing, and marketing a broad line of quality footwear.

**Response**:    Upon information and belief, Liberty Mutual admits the allegations in Paragraph 12 of the Complaint.

13.    Defendant The American Insurance Company ("AIC") is an insurance company organized under the laws of the State of Ohio, with its principal place of business in Chicago, Illinois.

**Response**:    Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 and therefore denies the same.

14.    Defendant Insurance Company of North America ("INA") is an insurance company organized under the laws of the State of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania.

**Response**:    Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 and therefore denies the same.

15.    Defendant First State Insurance Company ("First State") is an insurance company organized under the laws of the State of Connecticut, with its principal place of business in Boston, Massachusetts.

**Response**:    Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 and therefore denies the same.

16.    Defendant American Employers' Insurance Company ("AEIC"), n/k/a SPARTA Insurance Company, is an insurance company organized under the laws of the State of Connecticut, with its principal place of business in Farmington, Connecticut.

**Response**:    Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 and therefore denies the same.

17.    Defendant Liberty Mutual Insurance Company ("Liberty") is an insurance company organized under the laws of the State of Massachusetts, with its principal place of business in Boston, Massachusetts.

**Response**:    Liberty Mutual admits the allegations in Paragraph 17 of the Complaint.

18.    Defendant The Travelers Indemnity Company ("Travelers") is an insurance company organized under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut.

**Response**:    Liberty Mutual lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in Paragraph 18 and therefore denies the same.

19.    Defendant Employers Insurance Company of Wausau ("Wausau") is an insurance company organized under the laws of the State of Wisconsin, with its principal place of business in Boston, Massachusetts.

**Response**:    Liberty Mutual lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in Paragraph 19 and therefore denies the same.

20.    Defendant North River Insurance Company ("North River") is an insurance company organized under the laws of the State of New Jersey, with its principal place of business in Morristown, New Jersey.

**Response**:    Liberty Mutual lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in Paragraph 20 and therefore denies the same.

21.    Defendant Pacific Employers Insurance Company ("Pacific") is an insurance company organized under the laws of the State of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania.

**Response**:    Liberty Mutual lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in Paragraph 21 and therefore denies the same.

22.    Defendant Federal Insurance Company ("Federal") is an insurance company organized under the laws of the State of Indiana, with its principal place of business in Whitehouse Station, NJ.

**Response**:    Liberty Mutual lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in Paragraph 22 and therefore denies the same.

23.    At all times pertinent, AIC, INA, First State, AEIC, Liberty, Travelers, Wausau, North River, Pacific, and Federal (collectively "Defendants") were, and are, licensed to do business, and were and are doing and transacting business, in the State of Michigan. Defendants each issued Policies to Wolverine under which relief is being sought herein.

**Response**:    To the extent the allegations in the first sentence of Paragraph 23 are

directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or

information sufficient to form a belief as to the truth of those allegations.  To the extent the

allegations in the first sentence of Paragraph 23 are directed at Liberty Mutual and/or

policies issued or allegedly issued by Liberty Mutual, Liberty Mutual admits the allegations.

Liberty Mutual admits that Wolverine seeks relief as alleged in the second sentence of

Paragraph 23, but Liberty Mutual denies that Wolverine is entitled to any relief from Liberty

Mutual and every remaining allegation contained therein.

24.     Doe Insurance Companies 1 through 10 are insurance companies whose
identities are currently unknown to Plaintiff that issued general liability insurance policies
(including primary, umbrella, and excess insurance policies) responsive to the Underlying
Actions for which relief is being sought herein. When the true identities of such insurance
companies become known to Plaintiff, this Complaint will be amended to identify such
Defendant insurance companies.

**Response**:    Liberty Mutual lacks knowledge or information sufficient to form a

belief as to the truth of the allegations in Paragraph 24 and therefore denies the same.

### JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction over this civil action, with the
amount in controversy in excess of $25,000, pursuant to MCL § 600.605, which confers this
Court with general jurisdiction over all matters not expressly assigned to other courts.
Pursuant to MCR 2.112(O), Plaintiff verifies that this case involves a business dispute as
defined by MCL 600.8031.

**Response**:    Allegations regarding jurisdiction and venue are legal conclusions to

which Liberty Mutual is not obligated to respond.  To the extent a response is required,

Liberty Mutual states that jurisdiction is appropriate in this Court and the references to the

Michigan statutes regarding jurisdiction are not relevant to this action.

26.     Venue for this action is proper in this Court pursuant to MCL § 600.1621
because Defendants conduct business in this County, and because Wolverine resides,
maintains a place of business, and maintains a registered office in this County.

**Response**:    Allegations regarding jurisdiction and venue are legal conclusions to

which Liberty Mutual is not obligated to respond.  To the extent a response is required,

Liberty Mutual states that venue is appropriate in this Court and the reference to the Michigan statutes regarding venue is not relevant to this action.

## **BACKGROUND**

27. Wolverine is engaged in the business of designing, manufacturing, and marketing a broad line of quality footwear.

**Response**:  Upon information and belief, Liberty Mutual admits the allegations in Paragraph 27 of the Complaint.

28. As alleged in the Underlying Actions, Wolverine has operated a leather tannery at the Rockford Site, and has utilized or maintained property in furtherance of this business at the Belmont Site.

**Response**:  In answer to Paragraph 28 of Complaint, the allegations set forth in each of the Underlying Actions speak for themselves and Liberty Mutual denies any allegations contrary thereto.  As to any remaining allegations, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 and therefore denies the same.

29. As alleged in the Underlying Actions, in approximately 1958 Wolverine began incorporating Scotchgard™, a chemical that contains certain PFAS compounds, into or part of its tannery process. Wolverine disposed of tanning by-products at or around the Belmont Site after it began incorporating Scotchgard™ into its tannery process and did so until around 1970, when it began disposing at landfills.

**Response**:  In answer to Paragraph 29 of Complaint, the allegations set forth in each of the Underlying Actions speak for themselves and Liberty Mutual denies any allegations contrary thereto.   Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in Paragraph 29 and therefore denies the same.

30. Wolverine properly and timely provided notice to all the Defendants of the Underlying Actions, including but not limited to in correspondence dated November 2, 2017, January 8, 2018, February 13, 2018, March 6, 2018, April 10, 2018, June 20, 2018, October

12, 2018, December 6, 2018, and December 7, 2018. Wolverine also promptly and timely provided all Defendants with all complaints and any amendments thereto from the Underlying Actions received by Wolverine to date and Wolverine has and continues to cooperate with the Defendants with respect to its claim(s).

**Response**:     In answer to Paragraph 30 of the Complaint, the allegations regarding

proper and timely notice and cooperation are legal conclusions to which Liberty Mutual is

not obligated to respond.  To the extent a response is required and are directed at defendants

other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form

a belief as to the truth of those allegations.  To the extent the allegations are directed at

Liberty Mutual, Liberty Mutual admits that it received letters typically entitled "Notice of

Claim" from Wolverine's counsel, Warner Norcross & Judd, dated November 2, 2017, January

8, 2018, February 13, 2018, March 6, 2018, April 10, 2018, June 20, 2018, October 12, 2018

and December 7, 2018, which correspondence and attachments speak for themselves and

denies any allegations contrary thereto.   Liberty Mutual denies that it received a letter from

Wolverine dated December 6, 2018.   Except as so admitted, Liberty Mutual lacks knowledge

or information sufficient to form a belief as to the truth of the remaining allegations in

Paragraph 30 and therefore denies the same.

31.     All of the Underlying Actions constitute claims and/or demands and/or suits alleging that the acts and/or omissions of Wolverine, a named insured under the Policies, constitute an occurrence, occurrences, or series of continuous occurrences, all of which occurred within the policy periods of the Policies. Those occurrence(s) are alleged to have caused bodily injury, property damage, personal injury, and/or some combination thereof. As such, all of the Underlying Actions, and potentially forthcoming actions not yet filed, trigger each of the primary insurer Defendants', and certain of the excess and umbrella insurer Defendants', obligations to fully defend and all of the insurer Defendants' obligations to fully indemnify Wolverine for any settlements or judgments in the Underlying Actions on a joint and several, "all sums" basis, under each of the Policies.

**Response**:     The allegations in Paragraph 31 of the Complaint are legal conclusions

to which Liberty Mutual is not obligated to respond.  To the extent a response is required,

and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or

information sufficient to form a belief as to the truth of those allegations.  To the extent the

allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by

Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as

to the truth of those allegations relating to "potentially forthcoming actions" and denies the

remaining allegations in Paragraph 31.

### **THE MDEQ ACTION**

32.    The MDEQ informed Wolverine that it had allegedly detected certain PFAS compounds in or around Wolverine's property through its investigation into the presence of certain PFAS compounds in groundwater near the Belmont Site. The Kent County Health Department initiated a similar investigation.

**Response**:    In answer to Paragraph 32 of the Complaint, Liberty Mutual lacks

knowledge or information sufficient to form a belief as to the truth of the allegations in

Paragraph 32 and therefore denies the same.

33.    On January 10, 2018, the MDEQ filed a complaint against Wolverine in federal court seeking declaratory and injunctive relief under various environmental statutes, *Michigan Department of Environmental Quality v. Wolverine World Wide, Inc.*, Case No. 1:18-cv-00030 (WD Mich). The complaint in the MDEQ action is attached hereto as **Exhibit B-1**.

**Response**:    In answer to Paragraph 33 of the Complaint, Liberty Mutual admits that

MDEQ filed a complaint ("MDEQ Complaint") against Wolverine on or about January 10,

2018, a copy of which was attached to the Complaint and speaks for itself, and Liberty Mutual

denies any allegations contrary thereto.

34.    The MDEQ asks the court to impose various obligations for the investigation, remediation, clean-up, and mitigation of those areas, homes, and residents allegedly impacted by the disposal of certain PFAS compounds, including by asking the court to require Wolverine to provide short-term and long-term drinking water supplies to impacted wells.

**Response**:     In answer to Paragraph 34 of the Complaint, Liberty Mutual states that

the relief sought in the MDEQ Complaint speaks for itself and denies any allegations contrary

thereto.

35.     The gravamen of the MDEQ complaint is that "Wolverine has contributed and continues to contribute to the past and present handling, storage, treatment, transportation, and/or disposal of solid waste at properties owned by Wolverine, and also at properties owned by others, in such a manner that resulted in releases of [certain PFAS compounds] at levels that resulted in detections that exceed applicable Michigan cleanup criteria . . . and which may present an imminent and substantial endangerment to human health and the environment." Ex. B-1, ¶4.

**Response**:     In answer to Paragraph 35 of the Complaint, Liberty Mutual states that

the nature of the allegations set forth in the MDEQ Complaint speaks for itself and denies any

allegations contrary thereto.

36.     The MDEQ seeks declaratory and injunctive relief, and other damages to be determined by the court, and requests the court to compel Wolverine to:

    a.  Investigate and assess the location and extent of releases or threatened releases of certain PFAS compounds into the environment;

    b.  Develop and implement plans for the continued sampling and analysis of impacts to drinking water wells from certain PFAS compounds released or disposed of by Wolverine;

    c.  Provide alternate drinking water supplies to users of drinking water wells impacted by certain PFAS compounds for which Wolverine is responsible;

    d.  Provide long-term, reliable drinking water supplies to users of drinking water wells, including by connecting residents to municipal drinking water supplies, to address unacceptable risks posed by a release or threat of release of certain PFAS compounds allegedly attributable to Wolverine;

    e.  Perform response activities required under the Michigan Natural Resources and Environmental Protection Act to abate any endangerment to human health and the environment from exposure to certain PFAS compounds at locations where they have come to be located; and

    f.  Payment of the State's past and future response activity costs of surveillance and enforcement.

Ex. B-1, ¶¶ 5-6, and at 20.

**Response**:     In answer to Paragraph 36 of the Complaint (including all subparts),

Liberty Mutual states that the relief sought in the MDEQ Complaint speaks for itself and

denies any allegations contrary thereto.

37. The MDEQ action alleges a covered occurrence, occurrences, or series of occurrences under the Policies and seeks damages from property damage, bodily injury, and/or personal injury during the policy periods of the Policies. The allegations in the MDEQ action triggered the primary insurer Defendants', and certain of the excess and umbrella insurer Defendants', respective duties to fully defend Wolverine and/or to pay in full Wolverine's defense and investigation costs in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein. The allegations in the MDEQ action also require each of the insurer Defendants to agree to fully indemnify Wolverine on a joint and several, "all sums" basis, for any settlements or judgments in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein.

**Response**: The allegations in Paragraph 37 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond. To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations. To the extent the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 37.

## THE EPA ACTION

38. Also on January 10, 2018, the EPA served on Wolverine a Unilateral Administrative Order ("UAO"), In the Matter of Wolverine Worldwide Tannery and House Street Disposal Site, CERCLA Docket No. V-W-18-C-004 (US EPA), ordering Wolverine to comply with its work plan to investigate and remediate contamination at the Rockford and Belmont Sites. The UAO in the EPA action is attached hereto as **Exhibit B-2**.

**Response**: In answer to Paragraph 38 of the Complaint, Liberty Mutual admits that the EPA dated the Unilateral Administrative Order (the "EPA UAO") on or about January 10, 2018, a copy of which was attached to the Complaint and speaks for itself, and Liberty Mutual denies any allegations contrary or inconsistent thereto. As to the allegations regarding service of the EPA UAO on Wolverine, Liberty lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies the same.

39. The UAO provided that the EPA had evaluated the data from the MDEQ's investigation, and Wolverine's own investigation, compared the results to the list of CERCLA hazardous substances (as provided in 40 C.F.R. Part 302), and found that "[l]isted hazardous

substances were detected at levels above typical background concentrations and at levels that exceeded applicable State action levels in all soil, groundwater and surface water sediment samples." Ex. B-2, ¶ 7(k). The EPA ordered Wolverine to implement and complete a work plan to remediate the Rockford and Belmont Sites.

**Response**:     In answer to Paragraph 39 of the Complaint, Liberty Mutual states that

the EPA UAO speaks for itself and denies any allegations contrary thereto.

40.     The EPA action alleges a covered occurrence, occurrences, or series of occurrences under the Policies and seeks damages from property damage, bodily injury, and/or personal injury during the policy periods of the Policies. The allegations in the EPA action triggered the primary insurer Defendants', and certain of the excess and umbrella insurer Defendants', respective duties to fully defend Wolverine and/or to pay in full Wolverine's defense and investigation costs in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein. The allegations in the EPA action also require each of the insurer Defendants to agree to fully indemnify Wolverine on a joint and several, "all sums" basis, for any settlements or judgments in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein.

**Response**:     The allegations in Paragraph 40 of the Complaint are legal conclusions

to which Liberty Mutual is not obligated to respond.  To the extent a response is required,

and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or

information sufficient to form a belief as to the truth of those allegations.  To the extent the

allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by

Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 40.

41.     The EPA action alleges a covered occurrence or series of occurrences under the Policies and seeks damages from property damage, bodily injury, and/or personal injury during the policy periods of the Policies, which has triggered the primary insurer Defendants' respective duties to defend and indemnify Wolverine, triggered the obligation of each applicable umbrella insurer to defend and indemnify Wolverine in the event of denial of coverage by the relevant primary insurer, and obligated each applicable umbrella and excess insurer to assume the primary insurer's obligations upon exhaustion of the relevant underlying policy.

**Response**:     The allegations in Paragraph 41 of the Complaint are legal conclusions

to which Liberty Mutual is not obligated to respond.  To the extent a response is required,

and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or

information sufficient to form a belief as to the truth of those allegations.  To the extent the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 41.

### THE BOULDER CREEK ACTION

42.     On November 14, 2018, Wolverine was named as a defendant in an action brought by Boulder Creek, the owner of a sanitary landfill and gravel mining operation located at 4300 Cannonsburg Rd. NE, Belmont, MI 49306 (the "NE Gravel Site"), where Wolverine allegedly disposed of waste byproducts several decades ago, *Boulder Creek Development Co., LLC v. Wolverine World Wide, Inc.*, Case No. 18-10212-CE (Kent Cty. Mi. Cir. Ct.) (the "Boulder Creek Action"). The complaint in the Boulder Creek Action is attached hereto as **Exhibit B-3**.

**Response**:     In answer to Paragraph 42 of the Complaint, Liberty Mutual admits that

Wolverine was a named defendant in an action filed by Boulder Creek Development Co., LLC

(the "Boulder Creek Action"), a copy of which was attached to the Complaint and speaks for

itself and Liberty Mutual denies any allegations contrary thereto.   Liberty Mutual

affirmatively states that it first received notice of the Boulder Creek Complaint through

service of the Complaint in the present action.

43.     The Boulder Creek Action alleges that in or around 1958, Wolverine "began incorporating PFAS compounds . . . in its own manufacturing operations by treating leather and finished shoes with Scotchgard™ in order to weatherproof its products" and that "[i]n order to effect disposal of its waste [related to the tanning process], Wolverine utilized several dumpsites and dumping methods in Kent County, including, but certainly not limited to, the use of the now-infamous House Street dump, spreading the waste on farmland, and the NE Gravel site." Ex. B-3, ¶¶ 26, 29.

**Response**:     In answer to Paragraph 43 of the Complaint, Liberty Mutual states that

the allegations in the Boulder Creek Action speak for themselves and denies any allegations

contrary thereto.

44.     The Boulder Creek Action alleges that the presence of PFAS and other chemical compounds at the NE Gravel Site from approximately the 1950s to present has caused property damage and personal injury. The plaintiff in the Boulder Creek Action seeks

damages related to the clean-up and investigation of its property based on causes of action sounding in environmental statute, negligence, fraud, and nuisance.

**Response**:    In answer to Paragraph 44 of the Complaint, Liberty Mutual states that the allegations of the Boulder Creek Action speak for themselves and denies any allegations contrary thereto.

45.    The Boulder Creek Action alleges a covered occurrence, occurrences, or series of occurrences under the Policies and seeks damages from property damage, bodily injury, and/or personal injury during the policy periods of the Policies. The allegations in the Boulder Creek Action triggered the primary insurer Defendants', and certain of the excess and umbrella insurer Defendants', respective duties to fully defend Wolverine and/or to pay in full Wolverine's defense and investigation costs in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein. The allegations in the Boulder Creek Action also require each of the insurer Defendants to agree to fully indemnify Wolverine on a joint and several, "all sums" basis, for any settlements or judgments in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein.

**Response**:    The allegations in Paragraph 45 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 45.

### THE CLASS ACTIONS

46.    Wolverine has been named as a defendant in three class actions brought by current and/or former Michigan residents who have allegedly suffered bodily injury, property damage, personal injury, or some combination thereof, which they attribute to exposure to soil and/or groundwater containing certain PFAS compounds allegedly originating from Wolverine's historic operations at or around the Rockford and Belmont Sites. Those plaintiffs allege that the presence of certain PFAS compounds in the soil and/or groundwater caused their alleged injuries and/or damages.

**Response**:    In answer to Paragraph 46 of the Complaint, Liberty Mutual admits that Wolverine has been named as a defendant in three (3) class actions arising out of Wolverine's

18

historic operations and/or waste disposal practices at or from one or more of its business properties located in Michigan.  Liberty Mutual affirmatively states that the allegations of each of the actions speaks for themselves and denies any allegations contrary thereto.

47.    On December 1, 2017, Wolverine was named as a defendant in Beverly Zimmerman, et al. v. The 3M Company, et al., Case No. 1:17-cv-01062 (WD Mich.) (the "Zimmerman Class Action"). The complaint in the Zimmerman Class Action is attached hereto as **Exhibit B-4**.

**Response**:    In answer to Paragraph 47 of the Complaint, Liberty Mutual admits that Wolverine was a named defendant in a class action filed by Beverly Zimmerman, and other named plaintiffs (the "Zimmerman Class Action"), a copy of which was attached to the Complaint, and the allegations of which speak for themselves and Liberty Mutual denies any allegations contrary thereto.

48.    The Zimmerman Class Action alleges that Wolverine began using Scotchgard™ in 1958, that thereafter, "Wolverine engaged in a number of grossly negligent practices including the disposal and maintenance of toxic waste and sludge, that led to the contamination of the surrounding environment and drinking water with PFAS and other hazardous chemicals," and that "[t]he ongoing presence of PFAS contamination has impacted Plaintiffs and the Class members' properties, is a blight on the affected communities and deprives Plaintiffs and Class members of their free use and enjoyment of their property." Ex. B-4, ¶¶ 59, 128.

**Response**:    In answer to Paragraph 48 of the Complaint, Liberty Mutual states that the allegations of the Zimmerman Class Action speak for themselves and denies any allegations contrary thereto.

49.    The Zimmerman Class Action alleges that the presence of certain PFAS and other chemical compounds at and around the properties, and in the water supply, of the plaintiffs and class members from approximately the 1950s to present has caused property damage, bodily injury, and/or personal injury. The plaintiffs in the Zimmerman Class Action seek damages based on causes of action sounding in trespass, negligence, nuisance, products liability, fraud, and emotional distress, among others.

**Response**:      In answer to Paragraph 49 of the Complaint, Liberty Mutual states that the allegations of the Zimmerman Class Action speak for themselves and denies any allegations contrary thereto.

50.     The Zimmerman Class Action alleges a covered occurrence, occurrences, or series of occurrences under the Policies and seeks damages from property damage, bodily injury, and/or personal injury during the policy periods of the Policies. The allegations in the Zimmerman class Action triggered the primary insurer Defendants', and certain of the excess and umbrella insurer Defendants', respective duties to fully defend Wolverine and/or to pay in full Wolverine's defense and investigation costs in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein. The allegations in the Zimmerman Class Action also require each of the insurer Defendants to agree to fully indemnify Wolverine on a joint and several, "all sums" basis, for any settlements or judgments in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein.

**Response**:      The allegations in Paragraph 50 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 50.

51.     On March 5, 2018, Wolverine was named as a defendant in Megan Johns, et al. v. Wolverine World wide, Inc., Case NO. 18-02078-CE (Kent Cty. Mi. Cir. Ct.) (the "Johns Class Action"). The complaint in the Johns Class Action is attached hereto as **Exhibit B-5**.

**Response**:      In answer to Paragraph 51 of the Complaint, Liberty Mutual admits that Wolverine was a named defendant in a class action filed by Megan and Michael Johns, and other named plaintiffs (the "Johns Class Action"), a copy of which was attached to the Complaint and the allegations of which speak for themselves and Liberty Mutual denies any allegations contrary thereto.

52.     The Johns Class Action, which was recently removed to federal court (see Megan Johns, et al. v. Wolverine World Wide, Inc., Case No. 1:18-cv-01302 (WD Mich.))

20

alleges that Wolverine began using Scotchgard™ in 1958, that thereafter, "Wolverine engaged in grossly negligent practices including the dumping and disposal of its tannery and manufacturing waste [containing certain PFAS compounds] into the environment throughout Kent County, Michigan," and that "Plaintiffs' [sic] and the Class have, and continue, to experience harms resulting from Wolverine's negligent use, handling, disposal and dumping of PFAS into the environment, including interference with their property rights." Ex. B-5, ¶¶ 14, 35.

**Response**:    In answer to Paragraph 52 of the Complaint, Liberty Mutual states that

the allegations of the Johns Class Action speak for themselves and denies any allegations

contrary thereto.  As to allegations that the Johns Class Action was removed to federal court,

Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of

those allegations.

53.    The Johns Class Action further alleges that the presence of certain PFAS and other chemical compounds at and around the properties, and in the water supply, of the plaintiffs and class members from approximately the 1950s to present has caused property damage, bodily injury, and/or personal injury. The plaintiffs in the Johns Class Action seek damages based on causes of action sounding in negligence, nuisance, fraud, and emotional distress, among others.

**Response**:    In answer to Paragraph 53 of the Complaint, Liberty Mutual states that

the allegations of the Johns Class Action speak for themselves and denies any allegations

contrary thereto.

54.    The Johns Class Action alleges a covered occurrence, occurrences, or series of occurrences under the Policies and seeks damages from property damage, bodily injury, and/or personal injury during the policy periods of the Policies. The allegations in the Johns Class Action triggered the primary insurer Defendants', and certain of the excess and umbrella insurer Defendants', respective duties to fully defend Wolverine and/or to pay in full Wolverine's defense and investigation costs in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein. The allegations in the Johns Class Action also require each of the insurer Defendants to agree to fully indemnify Wolverine on a joint and several, "all sums" basis, for any settlements or judgments in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein.

**Response**:    The allegations in Paragraph 54 of the Complaint are legal conclusions

to which Liberty Mutual is not obligated to respond.  To the extent a response is required,

and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 54.

55.     On December 4, 2018, Wolverine was named as a defendant in *Susan Henry v. Wolverine World Wide, Inc., et al.*, Case No. 1:18-cv-07924-UNA (D Del.) (the "Henry Class Action"). The complaint in the Henry Class Action is attached hereto as **Exhibit B-6**.

**Response**:     In answer to Paragraph 55 of the Complaint, Liberty Mutual admits that Wolverine was a named defendant in a class action filed by Susan Henry (the "Henry Class Action"), a copy of which was attached to the Complaint and the allegations of which speak for themselves, and Liberty Mutual denies any allegations contrary thereto.

56.     The Henry Class Action alleges that Wolverine used Scotchgard™ "[f]rom the late 1950's until about 2002," that during this time, Wolverine "unreasonably dispos[ed] of materials containing toxic chemicals, including [certain PFAS compounds], in a manner that guaranteed they would enter the environment, including ground and water," and that "Plaintiff and Putative Classes have suffered exposure, personal injury, bioaccumulation of PFCs in their blood which causes known cancers and diseases, property damage, and the diminution of property value as a result of the [certain PFAs compounds] contamination caused by Defendants, including of drinking water supplies." Ex. B-6, ¶¶ 46, 154, 285.

**Response**:     In answer to Paragraph 56 of the Complaint, Liberty Mutual states that the allegations of the Henry Class Action speak for themselves and denies any allegations contrary thereto.

57.     The Henry Class Action alleges that the presence of certain PFAS and other chemical compounds at and around the properties, and in the water supply, of the plaintiffs and class members from approximately the 1950s to present has caused property damage, bodily injury, and/or personal injury. The plaintiffs in the Henry Class Action seek damages on causes of action sounding in negligence, medical monitoring, products liability, nuisance, and emotional distress, among others.

**Response**:     In answer to Paragraph 57 of the Complaint, Liberty Mutual states that the allegations of the Henry Class Action speak for themselves and denies any allegations contrary thereto.

58.     The Henry Class Action alleges a covered occurrence, occurrences, or series of occurrences under the Policies and seeks damages from property damage, bodily injury, and/or personal injury during the policy periods of the Policies. The allegations in the Henry Class Action triggered the primary insurer Defendants', and certain of the excess and umbrella insurer Defendants' respective duties to fully defend Wolverine and/or to pay in full Wolverine's defense and investigation costs in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein. The allegations in the Henry Class Action also require each of the insurer Defendants to agree to fully indemnify Wolverine on a joint and several, "all sums" basis, for any settlements or judgments in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein.

**Response**:     The allegations in Paragraph 58 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 58.

## THE INDIVIDUAL ACTIONS

59.     Wolverine has been named as a defendant in over 220 individual actions[] brought by current and/or former Michigan residents who have allegedly suffered bodily injury, property damage, personal injury, or some combination thereof, which they attribute to exposure to soil and/or groundwater containing certain PFAS compounds allegedly originating from Wolverine's historic operations at or around the Rockford and Belmont Sites. Those plaintiffs allege that the presence of certain PFAS compounds in the soil and/or groundwater caused their alleged injuries and/or damages.

**Response**:     In answer to Paragraph 59 of the Complaint, Liberty Mutual admits that Wolverine has been named as a defendant in numerous individual lawsuits arising out of Wolverine's historic operations and/or waste disposal practices at or from one or more of

its business properties located in Michigan (the "Individual Actions"), and admits that a list

of these Individual Actions is attached to the Complaint.  Liberty Mutual affirmatively states

that the allegations of each of the Individual Actions speak for themselves and denies any

allegations contrary thereto.

60.     The vast majority of the individual actions were brought by the same law firm and, as such, the allegations across individual actions are substantially similar.[] In many instances, the key allegations that trigger coverage under the Policies are identical across individual actions. Accordingly, Wolverine discusses herein an exemplar individual action as representative of the entire universe of individual actions.

**Response**:     In answer to the first sentence of Paragraph 60 of the Complaint,

Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of

those allegations and therefore denies that the allegations across the Individual Actions "are

substantially similar."  The second and third sentences of Paragraph 60 that "key allegations

trigger coverage under the Policies" and "an exemplar individual action as representative of

the entire universe of individual actions" calls for legal conclusions to which Liberty Mutual

is not obligated to respond.   To the extent a response is required, and directed at defendants

other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form

a belief as to the truth of those allegations.   To the extent the allegations are directed at

Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual

denies an "exemplar individual action" is "representative of the entire universe of individual

actions" for purposes of coverage and denies any remaining allegations in Paragraph 60.

61.     In *John D. Stewart, et al. v. Wolverine World Wide, Inc., et al.*, Case No. 18-09087-CS (Kent Cty. Mi. Cir. Ct.) (the "Stewart Exemplar Action"),[] the plaintiffs allege that from 1939 to 1970, "Wolverine dumped sludge, liquid and barrels containing hazardous tannery waste into unlined seepage pits and trenches, which Wolverine understood would leach into groundwater," and that "[t]he aquifer from which Plaintiffs' [] obtain drinking water is contaminated with tannery waste containing toxic chemicals called [certain PFAS compounds] [because] Wolverine used and then dumped [certain PFAS compounds] into the bare ground." Ex. B-7, ¶¶ 1-2.

24

**<u>Response</u>**:    In answer to Paragraph 61 of the Complaint, Liberty Mutual states that

attached to the Complaint is a copy of the action filed by John D. Stewart (the "Stewart

Action"), the allegations of which speak for themselves and denies any allegations contrary

thereto.  Liberty Mutual denies the Stewart Action is an appropriate "exemplar" action for

purposes of coverage and further denies any remaining allegations in Paragraph 61.  Liberty

Mutual affirmatively states that it first received notice of the Stewart Action through service

of the Complaint in the present action.

62.    With respect to the geographic area of concern, the Stewart Exemplar Action
alleges disposal at areas north of the House Street property "in an unlicensed dump area off
of Jewell Avenue NE" and "in the area to the west of Wolven Avenue NE, in an old gravel pit
and onto farmland," both in Algoma Township, Michigan. Ex. B-7 at ¶¶ 125, 126 (Kent Cty.
Mi. Cir. Ct.).

**<u>Response</u>**:    In answer to Paragraph 62 of the Complaint, Liberty Mutual states that

the allegations of the Stewart Action speak for themselves and denies any allegations

contrary thereto.  Liberty Mutual denies the Stewart Action is an appropriate "exemplar"

action for purposes of coverage and further denies any remaining allegations in Paragraph

62.

63.    The Stewart Exemplar Action further alleges that "due to contaminated
drinking water, the residents' use, enjoyment, and value of their properties has been
substantially impaired, and the residents and their children face an increased risk to a host
of deadly and severe health problems, some of which have already materialized. Wolverine's
contamination has caused severe diminution in property value, extreme anxiety, adverse
health effects, and an increased risk to future injuries." Ex. B-7, ¶7.

**<u>Response</u>**:    In answer to Paragraph 63 of the Complaint, Liberty Mutual states that

the allegations of the Stewart Action speak for themselves and denies any allegations

contrary thereto.  Liberty Mutual denies the Stewart Action is an appropriate "exemplar"

action for purposes of coverage and further denies any remaining allegations in Paragraph 63.

64.     The Stewart Exemplar Action, like all of the individual actions, alleges that the presence of certain PFAS compounds and other chemical compounds at and around the properties, and in the water supply, of the plaintiffs has caused property damage, bodily injury, and/or personal injury. The plaintiffs in the Stewart Exemplar Action seek damages based on causes of action sounding in nuisance, negligence, ultrahazardous activity, products liability, and environmental statute, among others.

**Response**:     In answer to Paragraph 64 of the Complaint, Liberty Mutual states that the allegations of the Stewart Action speak for themselves and denies any allegations contrary thereto.  Liberty Mutual denies the Stewart Action is an appropriate "exemplar" action for purposes of coverage and further denies any remaining allegations in Paragraph 64.

65.     The Stewart Exemplar Action and each of the individual actions allege a covered occurrence, occurrences, or series of occurrences under the Policies and seek damages from property damage, bodily injury, and/or personal injury during the policy periods of the Policies. The allegations in the Steward Exemplar Action and each of the individual actions triggered the primary insurer Defendants', and certain of the excess and umbrella insurer Defendants', respective duties to fully defend Wolverine and/or to pay in full Wolverine's defense and investigation costs in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein. The allegations in the Stewart Exemplar Action and each of the individual actions also require each of the insurer Defendants to agree to fully indemnify Wolverine on a joint and several, "all sums" basis, for any settlements or judgments in the Underlying Actions in accordance with the terms of their respective Policies as discussed in full herein.

**Response**:     The allegations in Paragraph 65 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 65.

## **THE POLICIES**

66.     Defendants AIC, INA, Liberty, Travelers, and Wausau ("Primary Insurers") issued primary insurance policies to Wolverine during the relevant policy periods, each of which, upon information and belief, contains a duty to defend Wolverine in connection with each of the Underlying Actions immediately upon receiving notice of a suit alleging a potentially covered occurrence, occurrences, or series of occurrences. To date, AIC, INA, Liberty, Travelers, and Wausau have failed and/or refused, in breach of their Policies, to honor in full their duty to defend Wolverine in each of the Underlying Actions under each of their Policies.

**Response**:     The allegations in Paragraph 66 of the Complaint are legal conclusions

to which Liberty Mutual is not obligated to respond.  To the extent a response is required,

and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or

information sufficient to form a belief as to the truth of those allegations.  To the extent the

allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by

Liberty Mutual, Liberty Mutual generally admits that it issued or is alleged to have issued

certain general liability policies to Wolverine under which Wolverine has tendered many of

the Underlying Actions to Liberty Mutual.  Liberty Mutual affirmatively states it issued or is

in the process of issuing coverage position letters regarding any tendered claim and

specifically references its letters to Wolverine dated November 20, 2017, February 19, 2018,

February 23, 2018, March 2, 2018, April 13, 2018, April 13, 2018, April 25, 2018, May 4,

2018, May 4, 2018, May 8, 2018, August 6, 2018, October 22, 2018, November 1, 2018,

November 2, 2018, November 12, 2018, November 13, 2018, December 17, 2018, March 1,

2019, March 22, 2019, April 18, 2019, April 24, 2019, June 7, 2019, June 28, 2019, July 11,

2019, September 24, 2019, October 1, 2019, December 10, 2019, January 27, 2020, and

March 12, 2020, which speak for themselves and denies any allegations contrary or

inconsistent thereto.  Except as generally admitted and affirmatively alleged, Liberty Mutual

denies all remaining allegations in Paragraph 66.

67.     To the extent the primary policies issued by Defendants AIC, INA, Liberty, Travelers, and/or Wausau contain self-insured retentions, on information and belief, such self-insured retentions have been or will be satisfied and Defendants are obligated to honor in full their duty to defend and to provide Wolverine with a full defense in connection with each of the Underlying Actions.

**Response**:     The allegations in Paragraph 67 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 67.

68.     Defendant Liberty issued the following primary insurance policies to Wolverine ("Liberty Policies") that, on information and belief, each contain a duty to defend Wolverine for all of the Underlying Actions and an obligation to fully indemnify Wolverine for all settlements and/or judgements on a joint and several, "all sums" basis arising from the Underlying Actions:

| Policy Periods | Policy Number |
| --- | --- |
| 4/6/1957-4/6/1958 | LP1-141-050531-028 |
| 4/6/1958-4/6/1959 | LP1-141-050531-029 |
| 4/6/1959-4/6/1960 | LP1-141-050531-020 |
| 4/6/1960-4/6/1961 | LP1-141-050531-021 |
| 4/6/1961-4/6/1962 | LP1-141-050531-022 |
| 4/6/1962-4/6/1963 | LP1-141-050531-023 |
| 4/6/1963-4/6/1964 | LP1-141-050531-024 |
| 4/6/1964-4/6/1965 | LP1-141-050531-025 |
| 1/1/1966-4/6/1966 | LP1-141-050531-026 |
| 4/6/1967-4/6/1968 | LG1-141-050531-087 |
| 4/6/1968-1/1/1969 | LG1-141-050531-088 |
| 1/1/1969-1/1/1970 | LG1-141-050531-089 |
| 1/1/1970-1/1/1971 | LG1-141-050531-080 |
| 1/1/1971-1/1/1972 | LG1-141-050531-081 |
| 1/1/1972-2/28/1973 | LG1-141-050531-082 |

**Response**:     In answer to Paragraph 68 of the Complaint, Liberty Mutual admits that it issued certain general liability policies to Wolverine as a named insured, but affirmatively

states that Wolverine has neither provided Liberty Mutual with complete copies of all of these policies nor demonstrated the essential terms and conditions of coverage under them. The policy numbers and stated policy periods of the alleged policies are set out in the table below (the "Liberty Mutual Policies"). Liberty Mutual further responds that the terms, provisions, conditions, exclusions, and limitations of the Liberty Mutual Policies speak for themselves and denies any allegations contrary thereto.

| Policy Numbers | Policy Periods |
|---|---|
| LP-141-050531-026 | 1/1/66-4/6/66 |
| LG1-141-050531-087 | 4/6/67-4/6/68 |
| LG1-141-050531-088 | 4/6/68-1/1/69 |
| LG1-141-050531-089 | 1/1/69-1/1/70 |
| LG1-141-050531-080 | 1/1/70-1/1/71 |
| LG1-141-050531-081 | 1/1/71-1/1/72 |
| LG1-141-050531-082 | 1/1/72-2/28/73 |

Liberty Mutual affirmatively states that by letter dated December 7, 2018, Wolverine, for the first time, asserted that Liberty Mutual had issued certain other general liability policies to Wolverine with the following policy numbers and policy periods:

| Policy Numbers | Policy Periods |
|---|---|
| LP1-141-050531-028 | 4/6/57-4/6/58 |
| LP1-141-050531-029 | 4/6/58-4/6/59 |
| LP1-141-050531-020 | 4/6/59-4/6/60 |
| LP1-141-050531-021 | 4/6/60-4/6/61 |
| LP1-141-050531-022 | 4/6/61-4/6/62 |
| LP1-141-050531-023 | 4/6/62-4/6/63 |
| LP1-141-050531-024 | 4/6/63-4/6/64 |
| LP1-141-050531-025 | 4/6/64-4/6/65 |

(the "Newly-Alleged Liberty Mutual Policies"). Liberty Mutual conducted a search for the Newly-Alleged Liberty Mutual Policies (as well as for any of the Liberty Mutual Policies) and

on March 12, 2020 acknowledged the existence of the following Newly-Alleged Liberty Mutual Policies:

| Policy Numbers | Actual Policy Periods |
|---|---|
| LP1-141-050531-023 | 1/1/63-1/1/64 |
| LP1-141-050531-024 | 1/1/64-1/1/65 |
| LP1-141-050531-025 | 1/1/65-1/1/66 |

For the purposes of this First Amended Answer, the above Newly-Alleged Liberty Mutual Policies ending in 023, 024, and 025 will be henceforth included in the definition of "Liberty Mutual Policies" and will be specifically referred to as the "1963-1966 Newly-Alleged Liberty Mutual Policies." However, Liberty Mutual denies the policy periods for the 1963-1966 Newly-Alleged Liberty Mutual Policies as set forth in Paragraph 68 of the Complaint, and affirmatively alleges the correct policy periods for the 1963-1966 Newly-Alleged Liberty Mutual Policies are as set forth in the "Actual Policy Periods" above. Liberty Mutual also affirmatively states that despite diligent searches, it has never located, nor has Wolverine ever produced or provided, the 1963-1966 Newly-Alleged Liberty Mutual Policies or any portion thereof. Liberty Mutual affirmatively states that Wolverine has not provided Liberty Mutual with: (1) any evidence that the Newly-Alleged Liberty Mutual Policies were ever issued to Wolverine (other than the mere reference to the above-mentioned numbers and policy periods); (2) any copies, complete or otherwise, for any of these policies; or (3) demonstrated the essential terms and conditions of coverage under them. Except as generally admitted and affirmatively alleged, Liberty Mutual denies all remaining allegations in Paragraph 68.

69.     Attached as **Exhibit A-1** are true and correct copies of those Liberty Policies and/or certain evidence thereof currently in Wolverine's possession.

**Response**:      In answer to Paragraph 69 of the Complaint, Liberty Mutual admits that Exhibit A-1 appears to be a copy, or a portion of Liberty Mutual Policy No. LG1-141-050531-082, the terms, provisions, conditions, exclusions, and limitations of which speak for themselves and denies any allegations contrary thereto.  Liberty Mutual denies that Exhibit A-1 is "true and correct copies of those Liberty Policies" to the extent Paragraph 69 suggests that all copies of the Liberty Mutual Policies or Newly-Alleged Liberty Mutual Policies were attached and complete.  Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies the same.

70.     The Liberty Policies contained in Exhibit A-1 each provide insurance coverage on an occurrence basis for all suits alleging property damage, bodily injury, and/or personal injury during the policy periods and they each contain a duty to defend Wolverine and an obligation to indemnify Wolverine on an "all sums" basis for any settlements and/or judgments. Upon information and belief, the remaining Liberty Policies contain substantially identical terms, conditions and obligations including a duty to defend and indemnify Wolverine on an "all sums" basis from any suits alleging property damage, bodily injury, and/or personal injury during the policy periods.

**Response**:      The allegations in Paragraph 70 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, Liberty Mutual affirmatively states that Exhibit A-1 appears to be a copy, or a portion of Liberty Mutual Policy No. LG1-141-050531-082, the terms, provisions, conditions, exclusions, and limitations of which speak for themselves and denies any allegations contrary thereto.  Liberty Mutual denies that all Liberty Mutual Policies and/or, to the extent any of them exists, the Newly-Alleged Liberty Mutual Policies were attached to the Complaint or would have had substantially identical terms, conditions and obligations.  Liberty Mutual denies all remaining allegations in Paragraph 70.

71.     Each of the Underlying Actions alleges a covered, or potentially covered, occurrence, occurrences, or series of occurrences under the Liberty Policies contained in

Exhibit A-1 and allege property damage, bodily injury, and/or personal injury during the policy periods of the Liberty Policies. As such, the allegations in the Underlying Actions require Liberty to provide Wolverine with a full defense and to indemnify Wolverine on an "all sums" basis. Each of the Underlying Actions also allege a covered, or potentially covered, occurrence, occurrences, or series of occurrences under the remaining Liberty Policies based on alleged property damage, bodily injury, and/or personal injury during the policy periods of the Liberty Policies. As such, the allegations in the Underlying Actions require Liberty to provide Wolverine with a full defense and to indemnify Wolverine on an "all sums" basis under the remaining Liberty Policies.

> **Response**:    The allegations in Paragraph 71 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.   To the extent a response is required, Liberty Mutual denies the allegations.

72.    The Liberty Policies contained in Exhibit A-1 include coverage terms that are identical, or substantially similar, to the following exemplary coverage terms:

> The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as **damages** because **of...bodily injury** or ... **property damage** to which this insurance applies, caused by an **occurrence,** and the company shall have the right and duty to defend any suit against the **insured** seeking **damages** on account of such **bodily injury** or **property damage,** even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient....

(Ex. A-1, Policy LG1-141-050531-082, Pt. I.) These Liberty Policies define bodily injury as "bodily injury, sickness or disease sustained by any person" and property damage as "injury to or
destruction of tangible property." *(Id.,* Definitions.)

> **Response**:    The allegations in Paragraph 72 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, Liberty Mutual affirmatively states that Exhibit A-1 appears to be a copy, or a portion of Liberty Mutual Policy No. LG1-141-050531-082, the terms, provisions, conditions, exclusions, and limitations of which speak for themselves and denies any allegations contrary thereto.  Liberty Mutual denies that all of the Liberty Mutual Policies and, to the

extent any of them exists, any Newly-Alleged Liberty Mutual Policies were attached to the

Complaint or would have had substantially identical terms, conditions and obligations.

Liberty Mutual denies all remaining allegations in Paragraph 72.

73.    The Liberty Policies contained in Exhibit A-1 define occurrence as "an accident, including injurious exposure to conditions, which results, during the policy period, in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **insured**." (Id.)

**Response**:    The allegations in Paragraph 73 of the Complaint are legal conclusions

to which Liberty Mutual is not obligated to respond.  To the extent a response is required,

Liberty Mutual affirmatively states that Exhibit A-1 appears to be a copy, or a portion of

Liberty Mutual Policy No. LG1-141-050531-082, the terms, provisions, conditions,

exclusions, and limitations of which speak for themselves and denies any allegations

contrary thereto.  Liberty Mutual denies that all of the Liberty Mutual Policies and, to the

extent any of them exists, any Newly-Alleged Liberty Mutual Policies were attached to the

Complaint or would have had substantially identical terms, conditions and obligations.

Liberty Mutual denies all remaining allegations in Paragraph 73.

74.    In addition to bodily injury and property damage coverage, the Liberty Policies contained in Exhibit A-1 provide coverage for personal injury liability:

> The Company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as **damages** because of **personal injury,** and the company shall have the right and duty to defend any suit against the **insured** seeking **damages** on account of such **personal injury,** even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient....

*(Id.,* Personal Injury Liability Insurance Endorsement, Pt. I.) These Liberty Policies define personal injury as including "(1) any injury to the feelings or reputation of a natural person, including mental anguish, and (2) any injury to intangible property sustained by an organization

as the result of false eviction, malicious prosecution, libel, slander or defamation; but the term

'**personal injury**' shall not include injury included within the definitions of '**bodily injury**' and

'**property damage**'" *(Id.,* Personal Injury Liability Insurance Endorsement, Pt. IV.)

> **Response**:     The allegations in Paragraph 74 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, Liberty Mutual affirmatively states that Exhibit A-1 appears to be a copy, or a portion of Liberty Mutual Policy No. LG1-141-050531-082, the terms, provisions, conditions, exclusions, and limitations of which speak for themselves and denies any allegations contrary thereto.  Liberty Mutual denies that all of the Liberty Mutual Policies and, to the extent any of them exists, any Newly-Alleged Liberty Mutual Policies were attached to the Complaint or would have had substantially identical terms, conditions and obligations. Liberty Mutual denies all remaining allegations in Paragraph 74.

75.     The Liberty Policies not contained in Exhibit A-1, upon information and belief, contain substantially identical terms, conditions and obligations as those alleged in the preceding paragraphs.

> **Response**:     The allegations in Paragraph 75 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, Liberty Mutual denies the allegations.

76.     To date, Liberty has failed and/or refused to honor in full its duty to defend or to pay for a full and complete defense of Wolverine under the Liberty Policies with respect to each of the Underlying Actions.

> **Response**:     The allegations in Paragraph 76 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, Liberty Mutual denies the allegations.

77.     Wolverine, upon information and belief, has performed all of its obligations and satisfied all the conditions of the foregoing Liberty Policies, or such performance or

satisfaction has been waived and/or excused by the conduct of Liberty or by operation of law.

**Response**:    The allegations in Paragraph 77 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, Liberty Mutual denies the allegations.

78.    Wolverine has conducted a diligent and thorough search for the insurance policies issued by Liberty in its care, custody, and control. Wolverine also requested that Defendant Liberty conduct a diligent search for any insurance policies in its possession that were issued to Wolverine at any time and provide coverage for comprehensive (or commercial) general liability. Despite Wolverine's reasonable request, Defendant Liberty has failed and/or refused to conduct a diligent and thorough search for insurance policies in its possession, care, custody and control issued by Liberty to Wolverine.

**Response**:    The allegations in Paragraph 78 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 78 and therefore denies the same.  Liberty Mutual denies the allegations in the second and third sentences of Paragraph 78, and affirmatively states that it has and continues to conduct a search for any of the Newly-Alleged Liberty Mutual Policies (and, again, for any of the Liberty Mutual Policies).

79. – 116.    **Response**: The allegations in Paragraphs 79 through 116 of the Complaint contain legal conclusions and/or allegations not directed at Liberty Mutual or any policies issued or allegedly issued by Liberty Mutual and, therefore, no response is required by Liberty Mutual.  To the extent a response is deemed required, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 79 through 116 and therefore denies the same.

117.    To date, AIC, INA, Liberty, Travelers, and Wausau have failed and/or refused to acknowledge coverage and agree to defend and/or indemnify Wolverine in the Underlying Actions upon exhaustion of the applicable underlying coverage or – where required by the

Policies – immediately provide Wolverine with a full defense where the applicable underlying primary insurer Defendant has failed or refused to defend Wolverine in full for the Underlying Actions. Those umbrella insurer Defendants who issued Policies requiring them to defend Wolverine in the Underlying Actions where the underlying primary insurer has denied coverage have breached their contractual obligations by refusing and/or failing to do so.

**Response**:     The allegations in Paragraph 117 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual affirmatively states that it has advised Wolverine of its coverage positions on the various Underlying Actions tendered to Liberty Mutual and specifically references its letters to Wolverine, dated November 20, 2017, February 19, 2018, February 23, 2018, March 2, 2018, April 13, 2018, April 13, 2018, April 25, 2018, May 4, 2018, May 4, 2018, May 8, 2018, August 6, 2018, October 22, 2018, November 1, 2018, November 2, 2018, November 12, 2018, November 13, 2018, December 17, 2018, March 1, 2019, March 22, 2019, April 18, 2019, April 24, 2019, June 7, 2019, June 28, 2019, July 11, 2019, September 24, 2019, October 1, 2019, December 10, 2019, January 27, 2020, and March 12, 2020, which speak for themselves and denies any allegations contrary or inconsistent thereto.  Except as generally admitted and affirmatively alleged, Liberty Mutual denies all remaining allegations in Paragraph 117.

118. – 170.   **Response**: The allegations in Paragraphs 118 through 170 of the Complaint contain legal conclusions and/or allegations not directed at Liberty Mutual or any policies issued or allegedly issued by Liberty Mutual and, therefore, no response is required by Liberty Mutual.  To the extent a response is deemed required, Liberty Mutual lacks

knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 118 through 170 and therefore denies the same.

171.    The Liberty Policy provide insurance coverage on an occurrence basis for "Loss" that is "in excess of any UNDERLYING INSURANCE" that "result[ed] from any occurrence insured by the terms and provisions of" the underlying insurance. (Ex. A-11, Policy 7929-05-17, Insuring Agreement.)

**Response**:    Upon information and belief, Paragraph 171 of the Complaint mistakenly refers to a "Liberty Policy" instead of the "Federal Policy."  On this basis, the allegations in Paragraph 171 of the Complaint contain legal conclusions and/or allegations not directed at Liberty Mutual or any policies issued or allegedly issued by Liberty Mutual and, therefore, no response is required by Liberty Mutual.  To the extent a response is deemed required, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 171 and therefore denies the same.

172.    Each of the Underlying Actions alleges a covered occurrence, occurrences, or series of occurrences under the Liberty Policy and all policies underlying the Liberty Policy and seeks damages for property damage, bodily injury, and/or personal injury during the policy periods of the Liberty Policy, which trigger Liberty's duty pay for "Loss" in the Underlying Actions upon exhaustion of the applicable underlying policies.

**Response**:    Upon information and belief, Paragraph 172 of the Complaint mistakenly refers to a "Liberty Policy" instead of the "Federal Policy."  On this basis, the allegations in Paragraph 171 of the Complaint contain legal conclusions and/or allegations not directed at Liberty Mutual or any policies issued or allegedly issued by Liberty Mutual and, therefore, no response is required by Liberty Mutual.  To the extent a response is deemed required, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 172 and therefore denies the same.

173.    Liberty has an obligation to investigate Wolverine's claims in connection with the Underlying Actions and to acknowledge coverage and agree to pay for Wolverine's

defense and/or indemnify Wolverine in the Underlying Actions upon exhaustion of the applicable underlying coverage.

**Response**:   Upon information and belief, Paragraph 173 of the Complaint mistakenly refers to a "Liberty Policy" instead of the "Federal Policy."  On this basis, the allegations in Paragraph 173 of the Complaint contain legal conclusions and/or allegations not directed at Liberty Mutual or any policies issued or allegedly issued by Liberty Mutual and, therefore, no response is required by Liberty Mutual.  To the extent a response is deemed required, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 173 and therefore denies the same.

174.    Doe Insurance Companies 1 through 10 are insurance companies whose identities are currently unknown to Plaintiff that issued general liability insurance policies (including primary, umbrella, and excess insurance policies) providing insurance coverage with a duty to defend and/or indemnify Wolverine in connection with the Underlying Actions for which relief has been sought herein.  When the true identities of such insurance companies become known to Plaintiff, this complaint will be amended to identify such defendant insurance companies.

**Response**: The allegations in Paragraph 174 of the Complaint contain legal conclusions and/or allegations not directed at Liberty Mutual or any policies issued or allegedly issued by Liberty Mutual and, therefore, no response is required by Liberty Mutual. To the extent a response is deemed required, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 174 and therefore denies the same.

175.    Wolverine is an insured under each of the Policies.

**Response**:   The allegations in Paragraph 175 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent the

allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, upon information and belief, Liberty Mutual admits Wolverine is an insured under the Liberty Mutual Policies.  At this time, Liberty Mutual denies the allegations as to the Newly-Alleged Liberty Mutual Policies on the basis that Wolverine has not provided Liberty Mutual with: (1) any evidence that the Newly-Alleged Liberty Mutual Policies exist or were ever issued to Wolverine; (2) any copies, complete or otherwise, for any of these policies; or (3) demonstrated the essential terms and conditions of coverage under them.

176.    The Primary Insurers currently have an obligation, and/or on information and belief currently have an obligation, by contract and by law to: (1) immediately investigate and provide a full and complete defense to Wolverine in connection with each of the Underlying Actions; and/or (2) pay in full the costs and expenses of the investigation and defense of the Underlying Actions; and (3) pay in full for any of Wolverine's legal liabilities incurred, to be incurred, or paid in connection with the Underlying Actions, including any settlements and/or judgments.

**Response**:    The allegations in Paragraph 176 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 176.

177.    The Primary Insures currently have an obligation, and/or on information and belief currently have an obligation, contractually and by law to assume their respective duties to defend a suit in its entirety even where that suit alleges a mere potential for coverage and even if some of the other claims in that suit do not trigger coverage in and of themselves.

**Response**:    The allegations in Paragraph 177 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or

information sufficient to form a belief as to the truth of those allegations. To the extent the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 177.

178. – 179.   **Response**: The allegations in Paragraphs 178 through 179 of the Complaint contain legal conclusions and/or allegations not directed at Liberty Mutual or any policies issued or allegedly issued by Liberty Mutual and, therefore, no response is required by Liberty Mutual. To the extent a response is deemed required, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 178 through 179 and therefore denies the same.

180.   In connection with the Court's analysis of the Defendants' aforementioned duties, any ambiguities in and of the Policies must be construed against each insurer Defendant and resolved in favor of coverage. Further, any exclusionary language or provisions, including, but not limited to, so-called "pollution exclusions," cannot defeat an insurers duty to defend and should be applied in a manner that best affords coverage rather than limit or preclude it.

**Response**:   The allegations in Paragraph 180 of the Complaint are legal conclusions and proposed principles of law to which Liberty Mutual is not obligated to respond. To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations. To the extent the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 180.

181.   Any and all purported "pollution exclusions" that appear in the Policies do not apply to preclude or limit coverage for the Underlying Actions. To the extent that the Court must determine the applicability and scope of such exclusions, the Primary Insurers and – in the alternative – First State, AEIC, and North River, first must provide a full and complete defense to Wolverine and are not entitled to recoup any defense costs at a later date.

**Response**:     The allegations in Paragraph 181 of the Complaint are legal conclusions and proposed principles of law to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 181.

182.    All of the Underlying Actions allege an occurrence, occurrences, or series of occurrences that fall within the policy periods of all of the Policies discussed herein and listed in Exhibit A.

**Response**:     The allegations in Paragraph 182 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 182.

183.    In consideration of premiums paid by Wolverine with respect to each of the Policies, Defendants issued the Policies to Wolverine with the expectation that Wolverine would receive full and complete defense and complete indemnification on a joint and several, "all sums" basis, with respect to all suits, such as the Underlying Actions, alleging property damage, bodily injury, and/or personal injury arising from an occurrence, occurrences, or series of occurrences under the Policies.

**Response**:     The allegations in Paragraph 183 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent the

allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 183.

184.    On information and belief, under each of the Policies issued by the Primary Insurers, Wolverine is entitled to a full defense for each of the Underlying Actions and is entitled to complete indemnity for all sums, including all settlements and/or judgments, arising out of the Underlying Actions. On information and belief, where – as here – the Primary Insurers have failed and refused to provide Wolverine with a full defense, First State, AEIC, and North River must, under their respective Policies, provide Wolverine with a full defense in connection with the Underlying Actions.

**Response**:    The allegations in Paragraph 184 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 184.

185.    On information and belief, under each of the Policies issued by Federal and Pacific and certain of the Policies issued by INA and AIC, Wolverine is entitled to a decision from each Defendant acknowledging coverage and agreeing to pay in full any of Wolverine's legal liabilities incurred, to be incurred, or paid in connection with the Underlying Actions, including any settlements and/or judgments upon exhaustion of the applicable underlying coverage.

**Response**:    The allegations in Paragraph 185 of the Complaint contain legal conclusions and/or allegations not directed at Liberty Mutual or any policies issued or allegedly issued by Liberty Mutual and, therefore, no response is required by Liberty Mutual. To the extent a response is deemed required, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 185 and therefore denies the same.

186.    To date, each applicable Defendant has failed and/or refused to honor their obligations in connection with each of the Underlying Actions.

**<u>Response</u>**:      The allegations in Paragraph 186 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 186.

<u>**COUNT I – AGAINST ALL DEFENDANTS**</u>
**(BREACH OF CONTRACT – DUTY TO DEFEND)**

187.    Wolverine repeats and realleges the allegations in the foregoing paragraphs, as if fully set forth herein.

**<u>Response</u>**:    Liberty Mutual incorporates by reference all of its answers in Paragraphs 1 to 186 above as if fully set forth in this paragraph.

188.    All of the Underlying Actions constitute claims and/or demands and/or suits alleging that the acts and/or omissions of Wolverine, a named insured under the Policies, constitute an occurrence, occurrences, or a series of occurrences, all of which occurred within the policy periods of the Policies. The Underlying Actions further allege that Wolverine has caused bodily injury, property damage, personal injury, and/or some combination thereof as a result of an occurrence, occurrences, or a series of occurrences. As such, all of the Underlying Actions, and potentially forthcoming actions not yet filed, trigger each of the Primary Insurers' duty to defend Wolverine in full under each of the Primary Insurers' Policies.

**<u>Response</u>**: The allegations in Paragraph 188 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.   To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 188.

189.    Each of the Primary Insurers, under each of their specified Policies, are required to provide a complete defense and/or to pay in full for all of Wolverine's costs and

expenses incurred in connection with the investigation and defense of each of the Underlying Actions, inclusive of on-going remediation, clean-up, and/or mitigation costs incurred with the intent to reduce and/or eliminate Wolverine's liability and/or damages in the Underlying Actions.

**Response**:      The allegations in Paragraph 189 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 189.

190.      Each of the Primary Insurers has failed and/or refused under each of their respective Policies to acknowledge, accept, or undertake a complete defense of Wolverine in connection with each of the Underlying Actions and/or to pay in full all of the costs, fees and expenses incurred by Wolverine to investigate and defend each of the Underlying Actions. Each of the Primary Insurers' failures and/or refusals to honor in full their duty to defend constitute independent breaches of the Policies, which are continuing, up through and including the date of this Complaint.

**Response**:      The allegations in Paragraph 190 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual affirmatively states that it has advised Wolverine of its coverage positions on the various Underlying Actions tendered to Liberty Mutual and specifically references its letters to Wolverine dated November 20, 2017, February 19, 2018, February 23, 2018, March 2, 2018, April 13, 2018, April 13, 2018, April 25, 2018, May 4, 2018, May 4, 2018, May 8, 2018, August 6, 2018, October 22, 2018, November 1, 2018, November 2, 2018, November 12, 2018, November 13, 2018, December 17, 2018, March 1,

2019, March 22, 2019, April 18, 2019, April 24, 2019, June 7, 2019, June 28, 2019, July 11,

2019, September 24, 2019, October 1, 2019, December 10, 2019, January 27, 2020, and

March 12, 2020, which speak for themselves and denies any allegations contrary or

inconsistent thereto.  Except as generally admitted and affirmatively alleged, Liberty Mutual

denies all remaining allegations in Paragraph 190.

191.    Each of the Primary Insurers have repudiated their contractual obligations set
forth in each of the Policies in their entirety by stating and/or declaring that they will not
and/or do not intend to honor in full and without reservation all of their contractual
obligations to Wolverine. Each of the Primary Insurers have stated that they will not and/or
do not intend (i) to provide a complete defense and/or to pay for all defense and
investigation costs paid or incurred by Wolverine, including, without limitation, mitigation,
remediation, and clean-up costs and (ii) to otherwise acknowledge, accept, and undertake
fully, without reservation, all of their obligations under each of the Policies with respect to
Wolverine's defense of the Underlying Actions. Each of the Primary Insurers' failures and/or
refusal to honor in full their duties and obligations constitute independent breaches of the
Policies, which are continuing, up through and including the date of this Complaint.

**Response**:    The allegations in Paragraph 191 of the Complaint are legal conclusions

to which Liberty Mutual is not obligated to respond.  To the extent a response is required,

and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or

information sufficient to form a belief as to the truth of those allegations.  To the extent the

allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by

Liberty Mutual, Liberty Mutual affirmatively states that it has advised Wolverine of its

coverage positions on the various Underlying Actions tendered to Liberty Mutual and

specifically references its letters to Wolverine dated November 20, 2017, February 19, 2018,

February 23, 2018, March 2, 2018, April 13, 2018, April 13, 2018, April 25, 2018, May 4,

2018, May 4, 2018, May 8, 2018, August 6, 2018, October 22, 2018, November 1, 2018,

November 2, 2018, November 12, 2018, November 13, 2018, December 17, 2018, March 1,

2019, March 22, 2019, April 18, 2019, April 24, 2019, June 7, 2019, June 28, 2019, July 11,

2019, September 24, 2019, October 1, 2019, December 10, 2019, January 27, 2020, and March 12, 2020, which speak for themselves and denies any allegations contrary or inconsistent thereto.  Except as generally admitted and affirmatively alleged, Liberty Mutual denies all remaining allegations in Paragraph 191.

192.    First State, AEIC, and North River, under each of their specified Policies, are obligated and required to pay in full all of the costs, fees, and expenses incurred by Wolverine in investigating and defending the Underlying Actions, inclusive of remediation, clean-up, and/or mitigation costs incurred with the intent to reduce and/or eliminate Wolverine's liability and/or damages in the Underlying Actions where, as here, the applicable underlying primary insurer Defendant[s] have failed and/or refused to defend Wolverine in full for the Underlying Actions.

**Response**:    The allegations in Paragraph 192 of the Complaint contain legal conclusions and/or allegations not directed at Liberty Mutual or any policies issued or allegedly issued by Liberty Mutual and, therefore, no response is required by Liberty Mutual. To the extent a response is deemed required, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 192, but Liberty Mutual specifically denies the allegations that any such obligation of an excess insurer was caused by anything that Liberty Mutual "failed and refused" to do.

193.    First State, AEIC, and North River each have failed and/or refused under each of the Policies to acknowledge, accept, undertake and/or pay in full for a complete defense of Wolverine in connection with each of the Underlying Actions despite the failure and refusal by each of the underlying Primary Insurers to defend Wolverine in full for the Underlying Actions. failures [sic] are continuing, up through and including the date of this Complaint. Each of First State's, AEIC's, and North River's failures and/or refusals to honor their obligations to provide and/or pay in full for all of the costs, fees and expenses incurred by Wolverine to investigate and defend the Underlying Actions constitutes independent breaches of the Policies, which are continuing, up through and including the date of this Complaint.

**Response**:    The allegations in Paragraph 193 of the Complaint contain legal conclusions and/or allegations not directed at Liberty Mutual or any policies issued or allegedly issued by Liberty Mutual and, therefore, no response is required by Liberty Mutual.

46

To the extent a response is deemed required, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 193, but Liberty Mutual specifically denies the allegations that any such obligation of an excess insurer was caused by any "failure or refusal" on the part of Liberty Mutual.

194.    The foregoing conduct by Primary Insurers, First State, AEIC, and North River have effectively rendered Wolverine without insurance coverage for its defense in the Underlying Actions, including its investigating costs and remediation, clean-up, and/or mitigation cost incurred with the intent to reduce and/or eliminate Wolverine's liability and/or damages in the Underlying Actions.

**Response**:    The allegations in Paragraph 194 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent a response is required, and the allegations are directed at Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 194.

195.    Wolverine has performed all of its duties and obligations under the previously specified Policies and complied with and fully satisfied all applicable terms and conditions under the Policies, including the payment of premiums. In the alternative, Wolverine's performance of or compliance with such duties, terms, and/or conditions has been waived or otherwise excused by the conduct of the aforementioned Defendants or by operation of law. Thus, Wolverine is entitled to the full benefits and protections of each of the specified Policies with respect to the Underlying Actions.

**Response**:    The allegations in Paragraph 195 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent a response is required, and the allegations are directed at Liberty Mutual, Liberty Mutual denies the allegations.

196.    Inherent in each and every contract is a duty of good faith and fair dealing among the parties to that contract. Each of the Defendants is bound by a duty of good faith and fair dealing with Wolverine by virtue of each of the Policies.

**Response**:    The allegations in Paragraph 196 of the Complaint are legal conclusions and proposed principles of law to which Liberty Mutual is not obligated to respond.   To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.   To the extent a response is required, and the allegations are directed at Liberty Mutual, Liberty Mutual generally admits the allegations, but expressly denies that it has acted contrary to any duty of good faith and fair dealing.

197.    Each of the Defendants has arbitrarily, recklessly, and unreasonably withheld from Wolverine the full benefits of the insurance coverage under the Policies, and has breached the Policies by, among other things: (1) failing and/or refusing to honor their duty to defend with respect to each of the Underlying Actions; (2) failing and/or refusing to pay Wolverine's defense and investigation costs in full for each of the Underlying Actions; (3) unreasonably and improperly misinterpreting and misapplying the terms, provisions, conditions of and insurance coverage provided by the Policies; (4) arbitrarily, recklessly, and unilaterally denying and/or limiting their duties and obligations under the Policies; (5) arbitrarily, recklessly, and indifferently failing and/or refusing to provide or agree to provide Wolverine with the full benefits of the promised indemnity under each of the Policies with respect to "all sums" incurred by Wolverine in the Underlying Actions including any settlements or judgments; (6) arbitrarily, recklessly and indifferently insisting that any payments made by the Defendants for Wolverine's defense and investigation costs are subject to recoupment at a later date; (7) arbitrarily, recklessly, and indifferently failing and/or refusing to conduct a complete and thorough search for any insurance policies, or evidence thereof, in their possession, custody and control that were issued to Wolverine; and/or (8) refusing and/or failing to acknowledge the existence of Policies which provide coverage for this claim despite having previously acknowledged and agreed to the existence of coverage under those Policies in connection with prior claims by Wolverine.

**Response**:    The allegations in Paragraph 197 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.   To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.   To the extent a

response is required, and the allegations are directed at Liberty Mutual, Liberty Mutual denies the allegations.

198.    The foregoing conduct by each of the Defendants constitutes independent breaches of each of the Policies and amounts to arbitrary, reckless, indifferent, and/or intentional disregard of the interests of Wolverine.

**<u>Response</u>**:    The allegations in Paragraph 198 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent a response is required, and the allegations are directed at Liberty Mutual, Liberty Mutual denies the allegations.

199.    The foregoing conduct by each of the Defendants constitutes a breach of each insurer Defendants' duty of good faith and fair dealing.

**<u>Response</u>**:    The allegations in Paragraph 199 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent a response is required, and the allegations are directed at Liberty Mutual, Liberty Mutual denies the allegations.

200.    As a direct and proximate result of the Defendants individual and collective breaches of their duty of good faith and fair dealing, Wolverine has sustained damages, damages which are continuing, and damages which Wolverine is entitled to recovery from Defendants under the Policies, at law, and in equity. Wolverine also is entitled to all other direct, indirect, consequential, special, and compensatory damages as are appropriate as a result of Defendants' breaches of contract and breaches of their duty of good faith and fair dealing.

**<u>Response</u>**:    The allegations in Paragraph 200 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required,

and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent a response is required, and the allegations are directed at Liberty Mutual, Liberty Mutual denies the allegations including any of the relief, damages or other recovery it seeks against Liberty Mutual.

## COUNT II – ALL DEFENDANTS
### (DECLARATORY JUDGMENT PURSUANT TO MCR 2.605)

201.   Wolverine repeats and realleges each of the allegations in the foregoing paragraphs, as if fully set forth herein.

**Response**:   Liberty Mutual incorporates by reference all of its answers in Paragraphs 1 to 200 above as if fully set forth in this paragraph.

202.   Each of the Underlying Actions alleges a covered, or at least potentially covered occurrence, occurrences, or series of occurrences under each of the Policies issued by each of the Defendants.

**Response**:   The allegations in Paragraph 202 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent a response is required, and the allegations are directed at Liberty Mutual, Liberty Mutual denies the allegations.

203.   Each of the Primary Insurers has an immediate duty to defend and/or an obligation to fully pay Wolverine's costs, fees, and expenses as incurred in connect [sic] with the investigation and defense of the Underlying Actions under each of their Policies. Each of the Primary Insurers has failed and/or refused to honor their duty to defend Wolverine in each of the Underlying Actions under each of the Policies.

**Response**:   The allegations in Paragraph 203 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required,

and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or

information sufficient to form a belief as to the truth of those allegations.  To the extent the

allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by

Liberty Mutual, Liberty Mutual affirmatively states that it has advised Wolverine of its

coverage positions on the various Underlying Actions tendered to Liberty Mutual and

specifically references its letters to Wolverine dated November 20, 2017, February 19, 2018,

February 23, 2018, March 2, 2018, April 13, 2018, April 13, 2018, April 25, 2018, May 4,

2018, May 4, 2018, May 8, 2018, August 6, 2018, October 22, 2018, November 1, 2018,

November 2, 2018, November 12, 2018, November 13, 2018, December 17, 2018, March 1,

2019, March 22, 2019, April 18, 2019, April 24, 2019, June 7, 2019, June 28, 2019, July 11,

2019, September 24, 2019, October 1, 2019, December 10, 2019, January 27, 2020, and

March 12, 2020, which speak for themselves and denies any allegations contrary or

inconsistent thereto.  Except as generally admitted and affirmatively alleged, Liberty Mutual

denies all remaining allegations in Paragraph 203.

204.    First State, AEIC, and North River agreed in each of their attached Policies to
provide a complete defense to Wolverine and/or to fully pay Wolverine's costs of
investigating and defending any suits alleging or potentially alleging any occurrence arising
from property damage, bodily injury, and/or personal injury under each of the Policies
where the underlying insurance, as is the case here, has not or will not respond, has been
reduced, or has been exhausted. Because each of the Primary Insurers underlying the
Policies issued by First State, AEIC, and North River have failed and/or refused to honor their
duty to defend Wolverine in each of the Underlying Actions, First State, AEIC, and North River
must honor their duty to defend Wolverine and/or are obligated to provide a complete
defense to Wolverine and/or to fully pay Wolverine's costs of investigating and defending
each of the Underlying Actions.

**Response**:    The allegations in Paragraph 204 of the Complaint contain legal

conclusions and/or allegations not directed at Liberty Mutual or any policies issued or

allegedly issued by Liberty Mutual and, therefore, no response is required by Liberty Mutual.

To the extent a response is deemed required, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 204, but Liberty Mutual specifically denies the allegations that any such obligation of an excess insurer was caused by anything that Liberty Mutual "failed and refused" to do.

205.    The Primary Insurers, First State, AEIC, and North River have individually and collectively failed and/or refused to honor their duty to defend and/or to provide a complete defense to Wolverine and/or to pay fully all costs incurred by Wolverine in defending and investigating the Underlying Actions.

**Response**:    The allegations in Paragraph 205 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent a response is required and the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 205.

206.    Each of the Defendants agreed in each of their Policies, and has a present obligation, to fully and completely indemnify Wolverine on a joint and several, "all sums" basis, for any and all liabilities incurred, to be incurred, or paid by Wolverine in the Underlying Actions, including any settlements and/or judgments, under each of the Policies.

**Response**:    The allegations in Paragraph 206 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent a response is required, and the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 206.

207.    Each of the Defendants has refused and/or failed to honor their obligations to provide, under each of their Policies, a complete indemnification to Wolverine and/or has failed and/or refused to acknowledge or agree to accept its obligations to pay in full on a joint and several, "all sums" basis, for any liabilities incurred or to be incurred by Wolverine with respect to the Underlying Actions, including, but not limited to, any settlements and/or judgments.

**Response**:    The allegations in Paragraph 207 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent a response is required, and the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 207.

208.    An actual and justiciable controversy presently exists between Wolverine and each of the Defendants concerning Defendants' respective duties and obligations under each of the Policies with respect to the Underlying Actions.

**Response**: The allegations in Paragraph 208 of the Complaint are legal conclusions to which Liberty Mutual is not obligated to respond.  To the extent a response is required, and directed at defendants other than Liberty Mutual, Liberty Mutual lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  To the extent a response is required, and the allegations are directed at Liberty Mutual and/or policies issued or allegedly issued by Liberty Mutual, Liberty Mutual denies the allegations in Paragraph 208.

## **PRAYER FOR RELIEF**

Liberty Mutual states that the "WHEREFORE" Clause within Wolverine's Prayer for Relief sets forth a demand for relief and does not require a response.  If a response is deemed

required, Liberty Mutual respectfully states that Wolverine is not entitled to the declaration and/or relief sought against Liberty Mutual.

## **JURY DEMAND**

Liberty Mutual hereby demands a trial by jury of all issues so triable.

## **AFFIRMATIVE AND OTHER DEFENSES**

Defendant Liberty Mutual Insurance Company ("Liberty Mutual") hereby asserts the following affirmative and other defenses to the Complaint:

### **First Defense**
### **(Failure to State a Claim)**

Wolverine's Complaint fails to state a cause of action upon which relief can be granted.

### **Second Defense**
### **(Necessary or Indispensable Parties)**

Wolverine may have failed to join all necessary and/or indispensable parties in this action.

### **Third Defense**
### **(Unripe/Nonjusticiable)**

Some or all of Wolverine's claims against Liberty Mutual may be unripe or nonjusticiable.

### **Fourth Defense**
### **(Collateral Estoppel/Issue Preclusion/Claim Preclusion)**

Wolverine's claims for coverage against Liberty Mutual are barred in whole or in part to the extent that Wolverine is precluded by collateral estoppel or issue preclusion or claim preclusion from litigating issues which have been decided in prior proceedings,

including but not limited to *Wolverine World Wide, Inc. v. Liberty Mutual Ins. Co., et al*,
Docket No. 2603302007 filed in the Kent County Circuit Court, Michigan.

### Fifth Defense
### (Res judicata/Waiver/Estoppel)

Wolverine's claims for coverage against Liberty Mutual are barred in whole or in
part by the doctrines of res judicata, waiver, estoppel, and any other applicable doctrine or
rule at equity or law precluding Wolverine's claims described in its Complaint for which it
seeks insurance coverage from Liberty Mutual (collectively, the "Underlying Actions").

### Sixth Defense
### (Other Equitable Defenses)

Wolverine's claims for coverage against Liberty Mutual are barred in whole or in
part by the doctrines of waiver, set-off, ratification, unclean hands and/or laches, as well as
other equitable doctrines, statute of limitations and/or statutory or contractual limitations
periods.

### Seventh Defense
### (Exhaustion of Property Damage Limits)

There is no coverage under the Liberty Mutual Policies for "property damage" alleged
in the Underlying Actions to the extent that the property damage limits have been exhausted
pursuant to the terms of the Confidential Settlement Agreement and Release entered into
between Wolverine and Liberty Mutual on or about October 3, 2002.

### Eighth Defense
### (Release Under Confidential Settlement Agreement Between Parties)

The Underlying Actions are not covered under the Liberty Mutual Policies to the
extent they constitute "Environmental Property Damage Claims", or otherwise released by

the terms of the Confidential Settlement Agreement and Release entered into between Wolverine and Liberty Mutual on or about October 3, 2002.

### Ninth Defense
### (Missing or Incomplete Policies)

The Underlying Actions are not covered under the Newly-Alleged Liberty Mutual Policies to the extent that Wolverine is unable to meet its burden of proving the existence of and/or the materials terms and essential terms and conditions of the policies.

### Tenth Defense
### (Incomplete Policies)

The Underlying Actions are not covered under the Liberty Mutual Policies to the extent that Wolverine is unable to meet its burden of proving the material terms and essential terms and conditions of the policies.

### Eleventh Defense
### (No "Accident" or "Occurrence")

The Underlying Actions are not covered under the Liberty Mutual Policies and, to the extent they are proven to exist, the Newly-Alleged Liberty Mutual Policies, to the extent that such claims did not arise out of an "accident" or "occurrence."

### Twelfth Defense
### (Costs in the Ordinary Course of Business)

The Underlying Actions are not covered under the Liberty Mutual Policies and, to the extent they are proven to exist, the Newly-Alleged Liberty Mutual Policies, to the extent that such claims arose out of normal and regular practices conducted in the ordinary course of the insured's business and do not arise from an "accident" or "occurrence."

### Thirteenth Defense
### (No injury Caused by an Occurrence)

The Underlying Actions are not covered under the Liberty Mutual Policies and, to the extent they are proven to exist, the Newly-Alleged Liberty Mutual Policies, to the extent that such claims alleged bodily injury, personal injury and/or property damage that was not caused by an occurrence or accident as those terms are defined in the policies.

### Fourteenth Defense
### (No Occurrence During the Policy Period)

The Underlying Actions are not covered under the Liberty Mutual Policies and, to the extent they are proven to exist, the Newly-Alleged Liberty Mutual Policies, to the extent that any such accident, occurrence or series of occurrences did not take place during the policy periods during which said policies were in effect.

### Fifteenth Defense
### (No Injury During the Policy Period)

The Underlying Actions are not covered under the Liberty Mutual Policies and, to the extent they are proven to exist, the Newly-Alleged Liberty Mutual Policies, to the extent that the alleged property damage, personal injury and/or bodily injury did not occur during the policy period of the policies.

### Sixteenth Defense
### (Conditions Precedent)

There is no coverage under the Liberty Mutual Policies and, to the extent they are proven to exist, the Newly-Alleged Liberty Mutual Policies, to the extent that the insured failed to satisfy conditions precedent, including without limitation, the failure to furnish Liberty Mutual with prompt written notice of any alleged occurrence, loss, claim, proceeding and/or suit, and the failure to cooperate.

### Seventeenth Defense
### (No Damages)

The Underlying Actions are not covered under the Liberty Mutual Policies and, to the extent they are proven to exist, the Newly-Alleged Liberty Mutual Policies, to the extent such claims do not seek or constitute "damages" within the meaning of said policies.

### Eighteenth Defense
### (No Property Damage/Bodily Injury/ Personal Injury)

There is no coverage under the Liberty Mutual Policies and, to the extent they are proven to exist, the Newly-Alleged Liberty Mutual Policies, to the extent the Underlying Actions do not seek recovery for property damage, bodily injury or personal injury within the meaning of said policies.

### Nineteenth Defense
### (Pollution Exclusion)

There is no coverage under the Liberty Mutual Policies and, to the extent they are proven to exist, the Newly-Alleged Liberty Mutual Policies, to the extent that the pollution exclusion applies.

### Twentieth Defense
### (No Consent)

There is no coverage under the Liberty Mutual Policies and, to the extent they are proven to exist, the Newly-Alleged Liberty Mutual Policies, to the extent that Wolverine failed to consult with and obtain prior consent from Liberty Mutual before entering into any agreements or assuming any obligations with respect to any claims for which it seeks reimbursement or indemnity.

### Twenty-First Defense
### (Unreasonable or Unnecessary Expenses//Voluntary Payments)

There is no coverage under the Liberty Mutual Policies and, to the extent they are proven to exist, the Newly-Alleged Liberty Mutual Policies, for the Underlying Actions to the extent that the costs and/or expenditures for which Wolverine seeks reimbursement or indemnification are unreasonable, unnecessary or include, but are not limited to, voluntary payments or promises to pay any sums in settlement of any claims against Wolverine.

### Twenty-Second Defense
### (Pre-Tender Costs)

There is no coverage under the Liberty Mutual Policies and, to the extent they are proven to exist, the Newly-Alleged Liberty Mutual Policies, for the Underlying Actions to the extent any purported costs or expenses of defending any such Underlying Action incurred prior to the proper tender of any such Underlying Action to Liberty Mutual are not recoverable under the policies.

### Twenty-Third Defense
### (Impairment of Rights)

Liberty Mutual may have no obligation under the Liberty Mutual Policies and, to the extent they are proven to exist, the Newly-Alleged Liberty Mutual Policies, to the extent that Wolverine has impaired Liberty Mutual's rights of subrogation, indemnity or contribution.

### Twenty-Fourth Defense
### (Fines/Penalties/Punitive)

The Liberty Mutual Policies and, to the extent they are proven to exist, the Newly-Alleged Liberty Mutual Policies do not provide coverage for fines, penalties, punitive and/or exemplary and/or treble damages for the actions and conduct of the insured.  There

also is no coverage under said policies for the insured's acts and conduct in violation of state and/or federal laws and/or public policy.

### Twenty-Fifth Defense
### (Costs of Business Operations)

There is no coverage under the Liberty Mutual Policies and, to the extent they are proven to exist, the Newly-Alleged Liberty Mutual Policies, to the extent that the Underlying Actions for costs incurred solely to comply with statutes and regulations governing the insured's business operations.

### Twenty-Sixth Defense
### (Failure to Mitigate)

Wolverine's claims are barred or otherwise limited to the extent that Wolverine failed to mitigate its alleged damages.

### Twenty-Seventh Defense
### (Injunctive or Equitable Relief)

There is no coverage under the Liberty Mutual Policies and, to the extent they are proven to exist, the Newly-Alleged Liberty Mutual Policies, to the extent that the Underlying Actions seek injunctive or equitable relief (including the costs of complying with equitable relief or government regulations or directives) or for settlements or judgments with respect thereto.

### Twenty-Eighth Defense
### (Other Insurance)

The Underlying Actions at issue herein may be subject to the other insurance clauses in the Liberty Mutual Policies and, to the extent they are proven to exist, the Newly-Alleged Liberty Mutual Policies.

**Twenty-Ninth Defense**
**(Owned Property)**

The Underlying Actions are not covered under the Liberty Mutual Policies and, to the extent they are proven to exist, the Newly-Alleged Liberty Mutual Policies, to the extent that such claims seek coverage for damage to the insured's own property or to property rented to, occupied or used by or in the care, custody, or control of the insured, or as to which the insured is for any purpose exercising physical control.

**Thirtieth Defense**
**(Alienated Premises)**

There is no coverage under the Liberty Mutual Policies and, to the extent they are proven to exist, the Newly-Alleged Liberty Mutual Policies, for the Underlying Actions to the extent they arise from premises alienated by the insured.

**Thirty-First Defense**
**(Acts at Direction of Insured)**

There is no coverage under the Liberty Mutual Policies and, to the extent they are proven to exist, the Newly-Alleged Liberty Mutual Policies, for the Underlying Actions to the extent any alleged personal injury arises out of acts committed by or at the direction of Wolverine for the purpose of causing injury as those terms are defined in the policies.

**Thirty-Second Defense**
**(Known Loss)**

The Liberty Mutual Policies and, to the extent they are proven to exist, the Newly-Alleged Liberty Mutual Policies, do not and cannot provide coverage for a known loss, loss in progress or for damage to property that the insured already knew was damaged at the inception of the policies.

### Thirty-Third Defense
### (Expected or Intended)

There is no coverage under the Liberty Mutual Policies and, to the extent they are proven to exist, the Newly-Alleged Liberty Mutual Policies, where the actions or conduct of the insured giving rise to the Underlying Actions was either expected or intended from the standpoint of the insured.

### Thirty-Fourth Defense
### (Non-Fortuitous Losses)

There is no coverage under the Liberty Mutual Policies and, to the extent they are proven to exist, the Newly-Alleged Liberty Mutual Policies, for the Underlying Actions to the extent that any such losses were not fortuitous.

### Thirty-Fifth Defense
### (Willful/Intentional/Reckless Acts)

There is no coverage under the Liberty Mutual Policies and, to the extent they are proven to exist, the Newly-Alleged Liberty Mutual Policies, for the Underlying Actions to the extent the claims asserted therein arise from the willful, intentional or reckless acts of Wolverine.

### Thirty-Sixth Defense
### (Misrepresentations)

There is no coverage under the Liberty Mutual Policies and, to the extent they are proven to exist, the Newly-Alleged Liberty Mutual Policies, to the extent that any material misrepresentation or omission was made by the insured in obtaining such policy.

### Thirty-Seventh Defense
### (Allocation)

Wolverine's claims against Liberty Mutual are or may be barred in whole or in part to the extent that there is no factual or legal basis for Wolverine's right of selection of "all

sums", or election among multiple years of insurance coverage   Furthermore, in the event

that Liberty Mutual is adjudicated liable to any extent in connection with the Underlying

Actions, such determination shall be made by *pro rata* allocation as adopted and applied by

Michigan courts, including but not limited to in *Wolverine World Wide, Inc. v. Liberty Mutual*

*Ins. Co., et al*, Docket No. 2603302007 WL 705981 (Mich. Ct. App. March 8, 2007).

### Thirty-Eighth Defense
### (Proportionate Share)

There is no coverage under the Liberty Mutual Policies and, to the extent they are

proven to exist, the Newly-Alleged Liberty Mutual Policies, for the Underlying Actions to

the extent that Liberty Mutual is solely liable for its proportionate or designated share of

any loss, in the event that Liberty Mutual is held liable for more than its proportionate,

designated or fair share.

### Thirty-Ninth Defense
### (Limits of Liability)

If any coverage exists under the Liberty Mutual Policies and, to the extent they are

proven to exist, the Newly-Alleged Liberty Mutual Policies, for the Underlying Actions, any

coverage provided is limited by various provisions in some or all of the policies, including,

without limitation, the following: (i) limits of liability; (ii) per person; (iii) each occurrence;

(iv) aggregate limits; and  (v) other valid and collectible insurance.

### Fortieth Defense
### (Terms and Conditions)

There is no coverage under the Liberty Mutual Policies and, to the extent they are

proven to exist, the Newly-Alleged Liberty Mutual Policies, for the Underlying Actions to

the extent they are not covered under the insuring agreements of the policies and/or are

excluded by the terms, conditions, exclusions and limitations in said policies.

**Forty-First Defense**
**(Insufficient Pleadings)**

Liberty Mutual reserves the right to raise additional affirmative defenses and to supplement those asserted herein upon discovery of further information regarding Plaintiff's claims and upon further investigation as to the provisions, terms and conditions of the Liberty Mutual Policies and, to the extent they are proven to exist, the Newly-Alleged Liberty Mutual Policies. These additional defenses cannot specifically be articulated at this time due to Plaintiff's failure to particularize its claims.

WHEREFORE, Liberty Mutual respectfully requests that this Court enter judgment in its favor as follows:

A.       Dismiss Plaintiff's Complaint against Liberty Mutual with prejudice;

B.       Enter judgment in favor of Liberty Mutual on its affirmative and other defenses;

C.       Declare that Liberty Mutual is not obligated to defend or indemnify Wolverine with respect to the Underlying Actions; and

D.       Grant such other and further relief as may be just and proper.

Dated: April 20, 2020

_s/ Michael J. Cohen_
Michael J. Cohen
Pamela J. Tillman
MEISSNER TIERNEY FISHER & NICHOLS S.C.
111 E. Kilbourn Ave., Ste. 1900
Milwaukee, WI 53202
(414) 273-1300
mjc@mtfn.com
pjt@mtfn.com

Daniel Johnson James
Gary A. Maximiuk
WHEELER UPHAM PC
Calder Plaza Bldg.
250 Monroe Ave., NW, Ste. 100
Grand Rapids, MI 49503
(616) 459-7100
james@wuattorneys.com
maximiuk@wuattorneys.com

***Attorneys for Defendant Liberty Mutual
Insurance Company***