UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WOLVERINE WORLD WIDE, INC.,

    Plaintiff,

v.

THE AMERICAN INSURANCE COMPANY,
et al.,

    Defendants.
_____/

Case No. 1:19-cv-10

HON. JANET T. NEFF

## MEMORANDUM OPINION AND ORDER ADOPTING THE SPECIAL MASTER'S REPORT AND RECOMMENDATION (ECF NO. 1050)

On April 8, 2021, Special Master Paula Manderfield issued an "Opinion and Order on Defendants' Cross-Motion for Partial Summary Judgment Regarding Pre-Tender[1] Defense Costs" (ECF No. 1050). The Court treats the Special Master's decision as a Report and Recommendation. *See* W.D. Mich. LCivR 72.3(c); FED. R. CIV. P. 53(f).

The Special Master recommended two conclusions in the Report and Recommendation: (1) "that the Varnum Notice of Intent to File Citizen Suit under RCRA [the Resource Conservation

---

[1] In their original motion, Defendants Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("Century"); Liberty Mutual Insurance Company ("Liberty Mutual"); and The Travelers Indemnity ("Travelers") argued that Wolverine first provided notice of certain of the Underlying Environmental Actions on January 8, 2018 (ECF No. 627 at PageID.47607). Separately, Defendant Employers Insurance Company of Wausau ("Wausau") argued that it was first provided notice of certain of the Underlying Environmental Actions on June 7, 2018 (*id.* at PageID.47608). As discussed below, the Special Master determined the accrual date of defense costs or date of notice for all these insurers as January 8, 2018.

and Recovery Act] does not invoke defense obligations under the insurance policies in this case;" and (2) "that January 8, 2018 was the date that Defendants Century, Travelers, and Wausau received notice of a suit under the terms of their policies and consistent with Michigan law" (ECF No. 1050 at PageID.114331).

Plaintiff filed an objection to the Special Master's first recommended conclusion on April 15, 2021 (ECF No. 1057); Certain Defendants[2] responded in opposition (ECF No. 1076); Plaintiff then filed a motion for leave to file a reply (ECF No. 1065); and Insurers responded in opposition (ECF No. 1076).

Employers Insurance Company of Wausau filed objections on April 15, 2021 to the Special Master's second recommended conclusion as to the triggering date (January 8, 2018) for its defense obligations (ECF No. 1056). Plaintiff responded in opposition (ECF No. 1061).

For the reasons that follow, the Court adopts the Special Master's Report and Recommendation (ECF No. 1050) and overrules the objections (ECF Nos. 1056 & 1057).

## I. STANDARD OF REVIEW

The Court reviews *de novo* the factual findings and legal conclusions of the Special Master on which the parties have raised specific objection. *See* 28 US.C. § 636(b)(1)(B); FED. R. CIV. P. 53(f); *Hochstein v. Microsoft Corp.*, 730 F. Supp. 2d 714, 717 (E.D. Mich. 2010). The Court "may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." FED. R. CIV. P. 53(f)(1).

---

[2] "Certain Defendants" or "Insurers": Employers Insurance Company of Wausau, Century Indemnity Company, as successor to CCI Insurance Company, as successor or Insurance Company of America, and the Travelers Indemnity Company (ECF No. 1076 at PageID.114597).

## II. ANALYSIS

In addressing "Certain Defendants' Cross-Motion for Partial Summary Judgment Regarding Pre-Tender Defense Costs" (ECF No. 627), the Special Master decided "two distinct but related issues": "First, whether a pre-filing Notice of Intent to File Citizen Suit under RCRA [on November 2, 2017] invokes defense obligations under an insurance policy, or if the filing of an actual lawsuit is required. Second, a determination must be made as to what date Defendants were provided notice under their respective policies, which will dictate what date post-tender defense costs began to accrue" (ECF No. 1050 at PageID.114327).

Broadly, the Special Master made a finding on the triggering date of Defendants-Insurers' duty to defend—the date Defendants-Insurers were provided notice—invoking Plaintiff's rights under the insurance policies. The Special Master then concluded that January 8, 2018 was the date that defense costs began to accrue (*id.* at PageID.114331).

Plaintiff Wolverine objects to the Special Master's conclusion that it did not invoke defense obligations under the insurance policies when it furnished the Insurers with the Notice of Intent to File Citizen Suit under RCRA from the Varnum law firm (ECF No. 1057; Ex. C-1, ECF No. 557-1 at PageID.44708, 44710, 44713-44725).

Separately, insurer Wausau objects that it did not receive effective notice of its defense obligations on January 8, 2018 when notice was provided to its parent company Liberty Mutual (ECF No. 1056 at PageID.114360). It also objects to the Special Master's conclusion as to the notice date because "it lacks clarity" with respect to whether "it obligates the Insurers to pay pre-tender defense costs in connection with the underlying suits that had not yet been filed at the time notice of the first suits against Wolverine was provided to the Insurers" (*id.* at PageID.114361). The Court addresses each of these objections in turn.

**A. Plaintiff Wolverine's Objection to the Special Master's Conclusion that its Correspondence to Insurers Regarding the Notice Letter of an Intent to File Suit Did Not Trigger Insurers' Duty to Defend**

Plaintiff objects to the Special Master's conclusion because according to Plaintiff it was unnecessarily formalistic: "the formal filing of a lawsuit is not necessary to trigger an insurer's 'duty to defend any suit against the insured" (ECF No. 1057 at PageID.114370). Plaintiff states that the "functional equivalent of a traditional court action" is sufficient to trigger an insurer's duty to defend (*id.* at PageID.114370-114371, citing *Michigan Millers Mut. Ins. Co. v. Bronson Plating Co.*, 519 N.W.2d 864, 866 (Mich. 1994)). The Varnum Notice it provided "was akin to a formal complaint," and the duty to defend is triggered where legal action is "probable and imminent" (*id.* at PageID.114371-114372, citing *Ryan v. Royal Ins. Co.*, 916 F.2d 731, 735, 738 (1st Cir. 1990)).

The Insurers respond that the Special Master properly ruled that the November 2, 2017 letter did not trigger any defense obligation because the letter "was merely notice of a potential future private suit" (ECF No. 1063 at PageID.114396-114397). According to Insurers, the notice of intent to file a suit cannot trigger defense obligations because any potential future litigation may never materialize, as with the RCRA suit here, where plaintiffs "subsequently filed lawsuits based on Michigan law and never sought to hold Wolverine liable under [the] RCRA" (*id.* at PageID.114399-114400).

The Court agrees with the Special Master's assessment that the insured's November 2, 2017 letter did not trigger defense obligations. Under Michigan law, the duty to defend arises "when a claim is brought against the insured with allegations that 'even arguably come within the policy coverage.'" *Aetna Cas. & Sur. Co. v. Dow Chem. Co.*, 44 F. Supp. 2d 847, 852 (E.D. Mich. 1997) (quoting *American Bumper and Mfg. Co. v. Hartford Fire Ins. Co.,* 550 N.W.2d 475, 481, 484 (Mich. 1996) (change from original) ("the duty to defend is triggered when a claim is made

4

against the insured that even arguably comes within the policy's period and scope of coverage"); *Century Indem. Co. v. Aero-Motive Co.*, 318 F. Supp. 2d 530, 544 (W.D. Mich. 2003) ("the duty to defend arises when the underlying suit is initiated against the insured").

The complaint[3] trigger is essential because the "duty to defend depends on the allegations made in the complaint by a third party against the insured," and the duty to defend is determined by examining the allegations of the underlying complaint against the provisions of the insurance policy. *Alticor, Inc. v. Nat'l Union Fire Ins. Co. of Pennsylvania*, 916 F. Supp. 2d 813, 825–26 (W.D. Mich. 2013); *see Aetna Cas. & Sur. Co.*, 44 F. Supp. 2d at 852.

Plaintiff urges the Court to apply a functional equivalent test to find that its November 2, 2017 letter, apprising the Insurers of the Varnum letter and Notice of Intent, was the functional equivalent of a complaint and contained information on an occurrence, claim, or potential claim related to Perfluoroalkyl groundwater contamination (ECF No. 1050 at PageID.114320; ECF No. 1057 at PageID.114370-114371).

The functional equivalent test is reserved, however, for government enforcement actions where a government agency initiated an action and triggered coverage by "advising the insureds of potential liability for costs and future civil enforcement actions." *Dupuis v. Utica Mut. Ins. Co.*, No. 250766, 2006 WL 1084336, at *6 (Mich. Ct. App. Apr. 25, 2006); *see Tenneco Inc. v. Amerisure Mut. Ins. Co.*, 761 N.W.2d 846, 860 (Mich. Ct. App. 2008) ("governmental agency

---

[3] The duty to defend commences at the earliest at the filing of a complaint in a traditional court action. *See AMI Ent. Network, Inc. v. Zurich Am. Ins. Co.*, No. 12-CV-12972, 2012 WL 5199668, at *4 (E.D. Mich. Oct. 22, 2012). The Court agrees with the Special Master that the duty to defend began in this case upon notice to the Insurers from the insured of the lawsuits filed against insured (Notice of Claim Letter, ECF No. 557-2 at PageID.44727). *See id.*

5

demands for environmental remedial action are 'suits' within the meaning of this standard liability insurance policy condition").[4]

As Defendants-Insurers point out, the underlying action was only initiated with the filing of a complaint, and the complaint may take a different form from what was stated in a notice letter. *See Upjohn Co. v. Aetna Cas. & Sur. Co.*, 768 F. Supp. 1186, 1196, 1198–99 (W.D. Mich. 1990) (interpreting the term "suit" in the civil litigation context according to its ordinary, plain language meaning, the "term is generally used to refer to [the initiation of] formal legal proceedings"). This point is crucial from the standpoint of analyzing the duty to defend because the law has demarcated the complaint, the formal initiation of legal proceedings as the starting point for analyzing the duty to defend. *See Century Indem. Co. v. Aero-Motive Co.*, 336 F. Supp. 2d 739, 746 (W.D. Mich. 2004) (citing *GAF Sales & Serv., Inc. v. Hastings Mut. Ins. Co.,* 568 N.W.2d 165, 167 (1997); *Kangas v. Aetna Cas. & Sur. Co.*, 235 N.W.2d 42, 44 (Mich. Ct. App. 1975) (internal quotations and citations omitted) ("it is a general rule that the duty of the insurer to defend an action against an insured is to be determined from the allegations of the complaint").

The complaint is crucial because it is the allegations in the formal proceedings of a lawsuit that ultimately determine whether the duty to defend is triggered, whether the allegations arguably fall within the policy coverage, not the allegations in a demand letter or notice of intent to file suit. *See Sarkis v. Cincinnati Ins. Co.,* No. 280860, 2008 WL 4891487, at *2 (Mich. Ct. App. Nov. 13, 2008) (duty to defend may arise during discovery); *Protective Nat. Ins. Co. of Omaha v. City of*

---

[4] To further underline the point: there are situations where an action is initiated in a form other than the filing of a complaint, which Special Master Manderfield effectively summarized as "coercive agency action," and the initiation of these actions can serve as the functional equivalent of the initiation of a traditional court action, (ECF No. 1050 at PageID.114330). *See Michigan Millers Mut. Ins. Co.*, 519 N.W.2d at 866; *Aetna Cas.*, 44 F. Supp. 2d at 862 (Texas Department of Water Resources' notice of violation letters "not the functional equivalent of 'suits' and thus did not give rise to a duty to defend).

*Woodhaven*, 476 N.W.2d 374, 375–76 (1991).  Thus, the Special Master did not err in concluding that Plaintiff's November 2, 2017 notice letter did not trigger the Insurers' defense obligations.

**B. Wausau's Objection to the Special Master's Conclusion that it Received Notice of Claim on January 8, 2018**

Wausau objects to the Special Master's conclusion that it received notice on January 8, 2018 because no reasonable insurer would have interpreted the January letter "as having tendered suits to it under the Wausau Policies or have concluded that the letter required a response in connection with the 'Employers' policies" (ECF No. 1056 at PageID.114362).

Plaintiff responds that Wausau received proper notice along with the other Defendants-Insurers on January 8, 2018 because it sent the notice letter to Liberty and Wausau at the correct address for Liberty (Wausau's parent company); the letter provided Liberty and Wausau with notice of suits filed against Wolverine for which Wolverine was seeking a defense and indemnity; the notice letter listed the applicable policies under which Wolverine was giving notice; the Wausau Policies were included in the list, identified by accurate policy numbers, accurate policy periods, and the first word of Wausau's corporate name; and the policies did not require more of Plaintiff (ECF No. 1061 at PageID.114387-114388).

The Court also agrees with the Special Master's assessment on Wausau's notice date.  The Court does not find that a separate, formal tender of defense is required under the law or the policy (Wausau Policy, ECF No. 504-3 at PageID.11964-11965), in addition to the notice Plaintiff, the insured, provided to Wausau, through its parent company Liberty Mutual.  *See Aetna Cas. & Sur. Co.*, 44 F. Supp. 2d 847 (in the absence of policy language supporting a rule that formal tender to the insurer gives rise to the insurer's duty to defend the court will not apply such rule); *Stryker Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 1:05-CV-051, 2009 WL 56671, at *3 (W.D. Mich. Jan. 8, 2009).  The Court finds that the Special Master did not err in concluding that

Wausau was supplied notice through its parent company Liberty Mutual with policy numbers and periods correctly identified and that the notice was sufficient to trigger the duty to defend under the policy.

**C. Wausau's Objection to the Special Master's Conclusion that the January Notice Letter Did Not Provide Notice for all the Underlying Environmental Actions, Even Ones Not Yet Filed, and Wausau Should Not Be Required to Pay for Defense Costs Incurred Prior to Actual Tender of Any Specific Underlying Suit**

Wausau objects that the January notice letter only provided notice of a small subset of the Underlying Environmental Actions, and it should not be required to pay for defense costs incurred prior to the actual tender of any specific underlying suit (ECF No. 1056 at PageID.114365-114366). According to Wausau, the Insurers' policies and Michigan law dictate that "defense obligations are triggered by the tender of each individual underlying suit" (*id.* at PageID.114366). Wausau quotes the following language from the Wausau policies in Paragraph 4 of the Conditions section of the policies, under "Insured's Duties in the Event of Occurrences, Claim, or Suit" in support:

> (b) If a claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

(ECF No. 1056 at PageID.114366; ECF No. 504-3 at PageID.11965).

Plaintiff responds that under Michigan law "when an insured, like Wolverine, faces a series of related lawsuits that arise from the same common set of circumstances as is the case here, an insurer's refusal and/or failure to defend its insured in the first of these common suits constitutes a waiver of any need for the insured to continue to notify its insurer of subsequent suits because such further notice would be futile, and the insurer is estopped from later raising defenses based on late notice or pre-tender" (ECF No. 1061 at PageID.114389, citing *Hamilton Specialty Ins. Co. v. Transition Inv., LLC*, 818 F. App'x 429 436 (6th Cir. 2020); *Fireman's Fund Ins. Cos. v. Ex-*

8

*Cell-O Corp.*, 790 F. Supp. 1318, 1330 (E.D. Mich. 1992)). Plaintiff also argues that because of the common core set of facts and allegations in each of the Underlying Actions and Wolverine's unified defense it would be procedurally and practically impossible to separate pre-tender defense costs on a case-by-case basis (*id.* at PageID.114389-114390, citing *Bd. of Trustees of Mich. State Univ. v. Cont'l Cas. Co.*, 730 F. Supp. 1408, 1412 (W.D. Mich. 1990)).

The Court agrees that the Special Master effectively determined notice of the Underlying Actions (ECF No. 1050 at PageID.114318). "The purpose of notice provisions is to allow the insurer to make a timely investigation of the accident in order to evaluate claims and to defend against fraudulent or excessive claims." *See Upjohn*, 768 F. Supp. at 1202 (internal quotation marks and citation omitted). Here, Plaintiff asserts that Defendants-Insurers did not provide Plaintiff with a defense in any of the Underlying Actions even after Plaintiff put the Insurers on notice of the raft of actions against it related to a common set of facts—thus, notice of each individual action would have been futile (ECF No. 1061 at PageID.114388).[5]

---

[5] Even assuming that notice was required for each subsequent individual action, "an insured's breach of a notice provision will not be deemed material and will not excuse the insurer's performance under the contract unless the insurer can prove it was prejudiced by the untimely notice." *Aetna Cas. & Sur. Co.*, 44 F. Supp. 2d 847, 857 (E.D. Mich. 1997). "[A]n insurer who seeks to cut off responsibility on the ground that its insured did not comply with a contract provision requiring notice immediately or within a reasonable time must establish actual prejudice to its position" and "an insurer who knows of legal proceedings against its insured, but nevertheless chooses to rest on its claim of noncoverage, faces a heavy burden in demonstrating prejudice from its insured's failure to comply with a notice provision." *See Koski v. Allstate Ins. Co.*, 572 N.W.2d 636, 639-40 n.7 (Mich. 1998). Prejudice cannot be shown where the insurer receives notice of a suit or adequate and timely information of the institution of an action from any source. *See Cherry v. Am. Country Ins. Co.*, 449 F. Supp. 3d 701, 712 (E.D. Mich. 2020) (citing and quoting *Auto Club Ins. Ass'n v. Hall*, 2005 WL 1813225 (Mich. Ct. App. Aug. 2, 2005) ("notice of suit from *any source* triggers an insurer's duty to defend"; *Weller v. Cummins*, 47 N.W.2d 612, 615 (Mich. 1951)). Prejudice is also undermined based on inaction after notice. *Aetna Cas. & Sur. Co.*, 10 F. Supp. 2d at 822 ("insured's late notice of claims by Environmental Protection Agency (EPA) and Massachusetts did not prejudice comprehensive general liability CGL) insurer, where it became aware in 1985 of EPA suit against insured and did not seek to participate in those actions or conduct any independent investigation").

The Court agrees that notice of the first filed actions triggered the duty to defend for the parallel and follow-on lawsuits. Wausau knew of the actions against Plaintiff and "elected not to participate, apparently hoping to succeed on a technicality if the plaintiff ever sought to collect." *Cherry*, 449 F. Supp. 3d at 712; *Upjohn*, 768 F. Supp. at 1196 (internal quotation marks and citations omitted) ("the duty to defend is triggered for an entire action if only some of the allegations fall within coverage provisions even if others do not"). "[W]here an insurer expressly refuses to defend an insured in a first action and thereafter a second action is commenced involving substantially the same issues, that a tender of defense in the second action is unnecessary." *Fireman's Fund*, 790 F. Supp. at 1329–30. The Court, therefore, finds that the Special Master correctly determined when notice of all the Underlying Environmental Actions was effectively tendered.

### III. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the Court ADOPTS the Special Master's Report and Recommendation as the Opinion of the Court (ECF No. 1050).

**IT IS FURTHER ORDERED** that "Plaintiff's Objection to the Special Master's April 8, 2021 Order" (ECF No. 1057) is DENIED.

**IT IS FURTHER ORDERED** that "Plaintiff's Motion for Leave to File Reply in Support of Its Objection to the Special Master's Order on Pre-Tender Defense Costs" (ECF No. 1065) is DENIED.

**IT IS FURTHER ORDERED** that "Employers Insurance Company of Wausau's Objections to Special Master Manderfield's Opinion and Order on Defendants' Cross-Motion for Partial Summary Judgment Regarding Pre-Tender Defense Costs" (ECF No. 1056) is DENIED.

Dated: July 26, 2021              /s/ Janet T. Neff
                                  JANET T. NEFF
                                  United States District Judge