**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

WOLVERINE WORLD WIDE, INC.,

      Plaintiff,

v.                                    Case No. 1:19-cv-00010-JTN-ESC

THE AMERICAN INSURANCE COMPANY,     Honorable Janet T. Neff
et al.,                                 Mag. Judge Sally J. Berens
                                          Special Master Paula Manderfield

        Defendants.

---

**CHUBB INSURERS[1] RESPONSE TO PLAINTIFF'S AMENDED MOTION TO
COMPEL DISCOVERY RESPONSES AND PRODUCTION OF DOCUMENTS FROM
DEFENDANT CHUBB INSURERS**

## I.    INTRODUCTION

    Wolverine World Wide Inc's ("Wolverine") Amended Motion to Compel Discovery Responses and Production of Documents from Defendant Chubb Insurers ("Wolverine's Motion" or the "April Motion") (ECF No. 1466) is a procedurally improper "do over" requesting relief the Court refused to grant only weeks ago.  Wolverine filed the Motion, which addresses issues Wolverine previously raised, the Court previously resolved, and the Chubb Insurers previously complied with, without the slightest effort to meet and confer with the Chubb Insurers.  Most importantly, the April Motion is totally divorced from the facts and rests on misstatements of the record that are careless at best, if not mendacious.  Wolverine's Motion should be denied.

---

[1] "Chubb Insurers" as used herein means Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("Century"); Pacific Employers Insurance Company ("PEIC"); and Federal Insurance Company ("Federal").

## II.     FACTUAL BACKGROUND

As the Court knows too well, Wolverine has an unfortunate habit of seeking to relitigate issues that already have been resolved.[2]  Wolverine's Motion takes this foible to a new level by asking the Court to revisit issues it resolved only weeks ago – without acknowledging that the ***same parties*** were the subject of the just-issued decision.   In support of its repeat requests, Wolverine also makes untrue statements and omits its total failure to meet and confer with the Chubb Insurers regarding any alleged discovery deficiencies raised in the Motion.  The relevant facts are undisputed:

- On <u>December 12, 2021</u>, Wolverine filed a discovery motion against ***all three*** of the Chubb Insurers: Century, Federal and Pacific Employers (the "December Motion").  ECF No. 1283 (the motion was mistakenly captioned as directed against Wausau).

    - o   Wolverine's December Motion was directed at all three of the Chubb Insurers:

        > Plaintiff Wolverine World Wide, Inc. ("Wolverine") hereby moves … that this Court compel Defendants ***Century Indemnity Company***, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("Century"), ***Pacific Employers Insurance Company*** ("PEIC") and ***Federal Insurance Company*** ("Federal") (collectively, the Chubb Insurers) ("Chubb") ….

    ECF No.  1283, PageID.122022 (emphasis added).

---

[2]  For example, after the Special Master and the District Court both concluded defense costs must be allocated *pro rata*, Wolverine repeatedly sought to relitigate the allocation issue. *See, e.g.,* ECF No. 1287 (motion for reconsideration or interlocutory appeal of allocation ruling); ECF No. 1399, PageID.123915 (objection to Report & Recommendation on consequential damages urges District Court to "reject[] adoption or application of pro rata to the duty to defend…").  Wolverine's "never say die" litigation strategy has not met with success, and it should not succeed here.

- o   The December Motion concerned "two separate sets of discovery requests for production and interrogatories related to Phase II topics."  ECF No. 1282, PageID.122023.

- o   The December Motion indicated the parties had corresponded and met and conferred about the issues on September 23, 2021; October 8, 2021 and October 18, 2021.  ECF No. 1282, PageID.122023.

- On <u>February 10, 2022</u> and <u>March 4, 2022</u>, the Special Master resolved Wolverine's December Motion.  ECF Nos. 1357 and 1391 (the "SM's Discovery Orders").  The SM's Discovery Orders addressed Wolverine's requests for discovery from all three of the Chubb Insurers: Century, Federal and Pacific Employers.  ECF No. 1357, n. 1; ECF No. 1391 at PageID.123840 (defining "Chubb" to include all three Chubb Insurers).

- On <u>March 16, 2022</u>, the Chubb Insurers supplemented their prior document productions, and on <u>March 25, 2022</u>, the Chubb Insurers provided supplemental discovery responses and further documents in compliance with the SM's Discovery Orders.

- On <u>April 6, 2022</u>, Wolverine filed the April Motion against the Chubb Insurers.

- o   The April Motion is directed at ***the same*** parties that were the subject of the December Motion:

> Plaintiff Wolverine World Wide, Inc. ("Wolverine") hereby moves to compel Defendants ***Century Indemnity Company***, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("INA"), ***Federal Insurance Company*** ("Federal"), ***Pacific Employers Insurance Company*** ("PEIC") and (collectively, the "Chubb Insurers" or "Chubb") … .

ECF No. 1466, PageID.126323 (emphasis added).

o The April Motion concerns *the same* "two sets of Document Production Requests and Interrogatories" that were the subject of Wolverine's December Motion.  ECF No. 1466, PageID.126324.

o The April Motion referenced *the same* efforts to meet and confer on September 23, 2021; October 8, 2021 and October 18, 2021 that were at issue in the December Motion.  ECF No. 1466, PageID.126325.

o The April Motion *does not acknowledge* that the Chubb Insurers supplemented their prior productions and discovery responses after the SM's Discovery Orders.

In sum, Wolverine's April Motion seeks to relitigate *the very same discovery dispute* the Special Master already resolved, without acknowledging the Chubb Insurers *already have complied* with the SM's Discovery Orders.[3]  Instead, Wolverine boldly states that "the Chubb Insurers has [*sic*] *not produced any documents* on behalf of INA, Federal or Pacific, in response to Wolverine's Phase II Discovery Requests" and that "each of the Chubb umbrella and excess Insurers has made *no effort to supplement their responses* or produce documents related to Wolverine's Phase II Discovery Requests" – claims that, as discussed below, are demonstrably untrue.  ECF No. 1466, PageID.126324-325 (emphasis added).

---

[3]  Notwithstanding Wolverine's failure to meet and confer with the Chubb Insurers before filing the Motion, the Chubb Insurers contacted Wolverine and requested that Wolverine withdraw the Motion because it already had been resolved as between Wolverine and the Chubb Insurers. Wolverine responded with the preposterous claim that the SM's Discovery Orders were "directed at the ___*primary*___ insurers" – ignoring (indeed, misrepresenting) the text of the Orders.  Coffey, Decl., Ex. 1 (emphasis in original).

4

III.    ARGUMENT

A.    **Wolverine's Motion Is Procedurally Improper.**

If, as it states, the April Motion is directed at the discovery disputes on which the parties

met and conferred in September and October 2021, the April Motion is procedurally improper

because it seeks to relitigate issues that have already been resolved.  Rather than file a new motion

addressing these previously-resolved issues, Wolverine's appropriate recourse was to file an

objection with the District Court.[4]  Thus, as to the Chubb Insurers, the April Motion is an untimely

motion for reconsideration.

On the other hand, if the April Motion is directed at alleged deficiencies in the Chubb

Insurers' March 25, 2022, supplemental discovery responses – which Wolverine neither mentioned

in, nor attached to, the April Motion – it is procedurally improper due to Wolverine's failure to

meet and confer.  The Motion reflects on its face that Wolverine never met and conferred with the

Chubb Insurers regarding any alleged deficiencies in the Chubb Insurers' supplemental discovery

responses, as required by Local Civil Rule 7.1(d).  ECF No. 1466 (referencing only efforts to meet

and confer in September and October 2021).

There is no question the April Motion is procedurally improper and must be denied on this

basis alone.

---

[4]  Wolverine is plainly aware of its right to object to the SM's Discovery Orders, as Wolverine
filed such an objection.  ECF No. 1374.  Wolverine nevertheless filed the April Motion raising the
same issues and seeking the same relief addressed by the Special Master, even as Wolverine's
objection remains pending before the District Court.

**B.**     **The Special Master Already Resolved the Issues Raised In Wolverine's Motion and the Chubb Insurers Already Complied With Such Orders.**

Wolverine's Motion is riddled with demonstrably false statements and omissions that ignore the Court's prior rulings and the Chubb Insurers' initial and supplemental discovery responses.  While false statements and omissions are bad enough, here the result of Wolverine's failure to acknowledge and address the *current* state of the Chubb Insurers' discovery responses, including supplemental written responses and production of documents after the Court's recent rulings, is a Motion devoid of any *current* dispute to be resolved by the Court or at least any dispute based on the *current* record.  As such, Wolverine's Motion is a waste of this Court's time and resources.

**1.**     **Claims Files.**

Wolverine's Motion complains that "[a]lthough the Chubb Insurers produced some copies of correspondence between themselves and counsel for Wolverine, and a few internal emails dividing responsibility for the handling of these policies, ***Chubb has not produced any copies of any claims files*** – let alone the full-unredacted claims files for each INA, Federal or Pacific."  ECF No. 1460, PageID.126005 (emphasis added).  This statement – which Wolverine "supports" by reference to the Chubb Insurers' September 14, 2020 discovery responses, while ignoring the Chubb Insurers' March 16, 2022 supplemental document production and March 25, 2022 supplemental discovery responses – is simply untrue.  The Chubb Insurers have produced over 1,650 pages of materials from their claims files, while redacting and withholding those materials (including post-litigation materials) that are protected from disclosure by the attorney-client communication privilege, the attorney work product doctrine or other applicable privileges or protections against disclosure.  Coffey Decl., ¶3, and Ex. 2.  The Chubb Insurers also have

acknowledged, and are meeting, their continuing duty to supplement discovery responses in the event additional responsive materials are located.  *Id*.

Because the Chubb Insurers have undeniably produced their claims file, it appears that Wolverine's actual complaints are: (1) the three Chubb Insurers maintain a single claims file for this matter; and (2) the single claims file contains fewer documents than Wolverine hoped.  These gripes are entirely illegitimate.

<u>First</u>, there is nothing objectionable about the fact that the claims professionals handling Wolverine's claims do not maintain separate files for Century, Federal and Pacific Employers. The claims Wolverine submitted to the three Chubb Insurers are being handled by one claims professional at the Brandywine Group ("Brandywine"), an unincorporated division of Chubb with responsibility for handling claims presented to various different Chubb underwriting companies. Jarosz Decl., ¶1.[5]   As such, it is appropriate and unsurprising that the Brandywine claims professional handling Wolverine's claims for the three Chubb Insurers would maintain a single claims file.  Indeed, as the claims file reflects, the unified file format is consistent with the fact that Wolverine itself presented claims to the Chubb Insurers by way of *one* letter sent to a ***single*** Brandywine claims professional addresing all of the Century, Federal and PEIC policies at issue in this litigation.  Jarosz Decl., Ex.1.  Wolverine saw no reason to send three separate letters to the Chubb Insurers (each addressed to the same Brandywine claims professional), and the claims handler likewise had no reason to place copies of Wolverine's letters into three separate files. Wolverine's complaints about the lack of multiple discrete claims files are silly and hypocritical.

---

[5]  The Brandywine claims professional handling Wolverine's claims changed over time.  Jarosz Decl., ¶2.

Second, Wolverine's suggestion that the Chubb Insurers' claims file is somehow incomplete ignores ***Wolverine's culpability*** for any alleged lack of information in the file.  As the claims file reflects, the insurance coverage claims at issue here arise from allegations that Wolverine mishandled its wastes for decades, creating environmental pollution throughout northern Kent County.  Jarosz Decl., Ex. 2 (correspondence alleging Wolverine "would mix various chemicals with waste from the tannery to create a sludge" that Wolverine disposed of in unlined "trenches in the ground at the House Street Dump").  Unsurprisingly the Chubb Insurers looked to Wolverine – the party with the most knowledge about its own historic operating and waste disposal practices – for information necessary to their investigation and assessment of Wolverine's insurance claims.  This is one reason the Chubb Insurers requested information from Wolverine (through its attorneys) and then met with Wolverine (and its attorneys) on July 26, 2018: the Chubb Insurers were investigating the "History of Wolverine's use and disposal of Scotchgard containing PFAS," and looking to Wolverine for that information and information about the underlying claims.  Jarosz Decl., Exs. 3-4.  This is also why the Chubb Insurers asked for "access to underlying documents" during their July 2018 meeting with Wolverine.  Coffey Decl., Ex. 3.  Where Wolverine shared information with the Chubb Insurers, the information is in the claims file.  Jarosz Decl., Ex. 5 (Brandywine claims professional notes of July 26, 2018 meeting). Yet rather than provide all of the information and "underlying documents" the Chubb Insurers requested while investigating the claims, Wolverine broke off discussions, filed this lawsuit, and withheld relevant materials and information until discovery in this litigation.  The claims file reflects the Chubb Insurers' robust efforts to gather information and handle Wolverine's claims, despite Wolverine's lack of cooperation and failure to provide requested information and

documents.  To the extent Wolverine now complains the file is somehow wanting, Wolverine can only blame itself.

Finally, Wolverine's argument regarding the applicable privileges and protection from disclosure is baseless.  Wolverine argues that "an insurer's claims file is 'generally not protected from disclosure by the work product doctrine, because investigation of a claim is generally done in the normal course of business and not in anticipation of litigation.' *US Fire Ins. Co. v. City of Warren*, No. 2:10-CV-13128, 2012 WL 145008, at \*5 (ED Mich., April 26, 2012)."  ECF No. 1460, PageID.126006.  Wolverine's reliance on *City of Warren* is misplaced because that case actually rejected Wolverine's arguments.  While Wolverine cites to a single sentence introducing the discovery issue, it ignores the entirety of the Court's recitation of the law actually applicable to the facts and issue raised in the April Motion.  The relevant language in *City of Warren* is not the sentence Wolverine quoted (highlighted in gray), but the immediately-following language, which Wolverine left out of its quotation (highlighted in yellow):

> As the City correctly notes, a claims file is generally not protected from disclosure by the work product doctrine, because investigation of a claim is generally done in the normal course of business, and not in anticipation of litigation. . . . Notwithstanding this general rule, documents created in anticipation or for the purpose of litigation with the insured remain subject to the work product privilege. . . . Thus, internal documents remain subject to the work product privilege where the "primary motivating purpose behind the creation of a document or investigative report [is] to aid in possible litigation." . . . Similarly, although there is not Michigan law directly on point, the courts uniformly hold that communications between an insurance company and outside counsel retained to provide legal advice regarding coverage, rather than to perform routine claims adjustment, remain protected by the attorney-client privilege.

*City of Warren, supra*, at \*5 (citations omitted).  Here, the Chubb Insurers produced their pre-suit claims file while withholding, and logging, materials involving communications with coverage counsel and documents reflecting communications with counsel or otherwise prepared in

anticipation of litigation.[6]  The Chubb Insurers also withheld post-suit materials, which were not only prepared in anticipation of litigation, ***but in the context of actual litigation***.  These materials are protected from disclosure, and just as in *City of Warren*, the Chubb Insurers appropriately asserted privileges.  *Id*.

## 2.    Claims Handling Manuals.

Wolverine's Motion complains that Chubb objected to Wolverine's request for claims handling manuals, even though such materials "already have been compelled in this action."  ECF No. 1460, PageID.126007.  Wolverine supports this argument by reference to the Chubb Insurers' September 14, 2020 Responses to Plaintiff Wolverine Worldwide, Inc.'s First Set of Interrogatories and Requests for Production of Documents.  *Id., citing* ECF1461-1 (Exhibit A. to the Declaration of Kathryn Wilhoit ("Wilhoit Declaration")).  But Wolverine fails to advise the Court that the Chubb Insurers ***supplemented their discovery responses*** and ***already produced*** responsive documents two weeks ***before*** Wolverine filed the April Motion.

On March 25, 2022, the Chubb Insurers supplemented the discovery response Wolverine relies on.  The supplemental response to Production Request No. 13 – ignored by Wolverine – states:

> Answering further – as directed in the Court's March 4, 2022 Order (ECF No. 1391) and without waiver of any objections, including as set forth in ECF No. 1365 – the Chubb Insurers state:
>
> 1) After searching their records, the Chubb Insurers have not located any "claims handling materials, manuals, guidelines and policy and procedure manuals issued and effective between 1976-1981."
>
> 2) After searching their records, the Chubb Insurers have located the December 27, 2017 "Brandywine Direct Claims Best

---

[6] While Wolverine makes conclusory statements about the Chubb Insurers privilege log, it does not identify or challenge a single entry as deficient.

> Practices Guidelines," which is being produced at the Bates
> range CHUBB1649-CHUBB1659.

Coffey Decl., Ex.4, p. 19.

Wolverine's citation to a September 14, 2020, discovery response – and failure to tell the Court the Chubb Insurers supplemented their discovery responses and produced responsive claims handling guidelines weeks before the April Motion was filed – is utterly inexplicable. ***How could a party do that?*** Regardless, the Chubb Insurers already have complied with their discovery obligations, as required by the SM's Discovery Orders. As such, Wolverine's Motion must be denied.[7]

### 3.   Underwriting Materials

Wolverine complains that the Chubb Insurers have not produced their underwriting files:

> Pursuant to Request No. 2, Wolverine properly requested "Underwriting Files related to the Policies, including any Documents and Communications related thereto." Wilhoit Decl., Ex. A. The Chubb Insurers object to this request as overly broad and claimed they had produced "relevant, responsive, non-privileged materials" bates stamped CHUBB000510 – CHUBB000573; CHUBB000852 – CHUBB000863; CHUBB000864 – CHUBB0001094. *Id.* However, Wolverine has reviewed these documents and no underwriting materials have been produced for the Pacific or INA policies, and the Federal "underwriting" documents contain only policy excerpts and not complete underwriting files.

ECF No. 1460,PageID.126010.

The documents the Chubb Insurers cited are, in fact, the existing underwriting files for the policies at issue in this litigation. Jarosz Decl., Ex. 6 ("Underwriting Documentation" for the Federal policy) and Ex. 7 ("UND" materials for Century's 1977-1978 primary policy). Wolverine may wish the Chubb Insurers had more documents concerning underwriting of the 45-year-old

---

[7] Wolverine continues to refer to this case as "bad faith" litigation (Brief at 7), while ignoring that, as the Special Master recognized, Wolverine has not asserted a bad faith claim. *See* Opinion and Order, ECF No. 1357 at PageID.123202 ("There is no blatant assertion of a claim of bad faith in the complaint or in this motion, thus this Special Master does not consider this exception").

insurance policies at issue here.  But Wolverine's wishes cannot change the fact that the Chubb Insurers produced their extant underwriting files years ago.  *Id*. and Coffey Decl., ¶3. There is nothing more to produce.  Moreover, Wolverine's statement that the "Federal 'underwriting' documents contain *only policy excerpts* and not complete underwriting files" is simply untrue. *Again, how can Wolverine say this?*  It is inexplicable that Wolverine would make this claim when the underwriting materials contain annotated policy information (*i.e*., policies hand-annotated to reflect changes from one year to the next), internal transmittal memos, broker correspondence and materials related to insurance policies issued by other insurers at lower layers (including other insurers' policies).  Jarosz Decl., Ex. 6.  This is exactly what one would expect to find in the underwriting file for a policy that applies in excess of $20 million in underlying coverage.  Wolverine's arguments are baseless, and its lack of candor to the Court is somewhat breathtaking.

The Chubb Insurers produced their underwriting records, to the extent those records exist and have been located.  As such, Wolverine's Motion must be denied.

### 4.     Reinsurance and Reserve Information.

Wolverine's December Motion sought production of reinsurance policies and related materials, along with reserve information.  The Special Master ordered the Chubb Insurers to produce actual reinsurance policies but rejected Wolverine's requests for other reinsurance information (*e.g.,* communications) or reserve information.  ECF No. 1357, PageID.123212.  As required under the SM's Discovery Orders, the Chubb Insurers provided Wolverine with a copy

of the one reinsurance policy the Chubb Insurers have located that relates to the policies at issue in this case.[8]

Despite the prior ruling regarding reinsurance communications, Wolverine's April Motion reargues Wolverine's prior request for "communications with reinsurers regarding the investigation and handling of Wolverine's claims."  ECF No. 1460, PageID.126011.  *See also* ECF No. 1460, PageID.126007, n. 2 (claiming it was "improper" to assert that reserve and reinsurance information is not discoverable).  Again, Wolverine's arguments have ***already been rejected.***  <u>First</u>, the Special Master ordered production of reinsurance policies (which the Chubb Insurers have done) but found "all other documents relating to reinsurance are ***irrelevant and not discoverable***."  ECF No. 1391, PageID.123837 (emphasis added).  <u>Second</u>, the Special Master held that "[r]eserves are not relevant to resolving any issue in this case and are unlikely to lead to the discovery of admissible evidence; therefore, ***they are not discoverable***. … Further, Defendants are not required to provide a privilege or redaction log as there is no need to establish an additional ground for protecting against disclosure of this information."  ECF No. 1391, PageID123838 (emphasis added).  Wolverine's request for reserve and reinsurance information already has been resolved.  Wolverine cannot simply file a new motion in the hope of a different outcome.

Wolverine's latest request for reserve and reinsurance information must be denied.

---

[8] The Chubb Insurers' March 25, 2022, Supplemental Objections and Responses to Plaintiff Wolverine World Wide, Inc.'s First Set of Interrogatories and Requests for Production of Documents stated that the Chubb Insurers had not located any policies of reinsurance applicable to the insurance policies at issue in this litigation. Coffey Decl., Ex. 4 at p. 15.  The Chubb Insurers subsequently located one treaty reinsurance policy applicable to Century Excess Policy No. XBC155081, and provided this reinsurance policy to Wolverine on April 25, 2022.  Coffey Decl., Ex. 5 at p. 15.

        5.      **Responses to Interrogatory No. 4.**

Wolverine's Motion complains that the Chubb Insurers' responses to Interrogatory No. 4 of Wolverine's Second Set of Phase II Interrogatories and Requests for Production of Documents are "deficient because they have failed to distinguish between the separate defenses of [Century], Federal and Pacific, as well as failed to identify any and all of their separate affirmative defenses and the alleged support for each of these defenses."  ECF No. 1460, PageID.126013.  Once again, Wolverine's statement – which Wolverine "supports" by reference to the Chubb Insurers' June 22, 2021 discovery responses, while ignoring the Chubb Insurers' March 25, 2022 supplemental discovery responses – is simply untrue.

The Chubb Insurers' Supplemental Objections and Responses to Plaintiff Wolverine World Wide, Inc's Second Set of Phase II Interrogatories and Requests for Production of Documents ("Supplemental Responses") – served weeks before Wolverine filed its April Motion, but not attached to or addressed in Wolverine's Motion – includes a 14-page response to Interrogatory No. 4.  Coffey Decl., Ex. 6 at pp. 12-26.  Moreover, the Chubb Insurers' 14-page response individually addresses the Chubb Insurers' affirmative and other defenses, identifies supporting facts, documents and deposition testimony, ***and distinguishes among the three Chubb Insurers where appropriate***.  *See, e.g., Id*. at pages 18-20 (discussing the Twelfth Defense, and quoting separately the Century primary policies, the Century excess policy, the Federal policy and the Pacific Employers policies); and page 26 (discussing Federal's Twenty-Ninth Defense, and quoting policy language (unique to the Federal policy) that excludes coverage for pollution "as respects" Wolverine's tannery).

How Wolverine can possibly cite discovery responses from June 2021 to tell the Court that the Chubb Insurers "failed to distinguish between [their] separate defenses," without

acknowledging the Chubb Insurers supplemented their discovery responses – and expressly distinguished among the three insurers, where appropriate – in March 2022 is once again inexplicable.  Moreover, Wolverine's lack of candor regarding the Chubb Insurers' supplemental discovery responses served after the Court's recent discovery rulings requires that its Motion be denied. Wolverine's failure to acknowledge and address the supplemental discovery responses results in a failure to present the Court with an actual dispute on the topic remaining between the parties.

### 6.    Document Production Requests

Wolverine's Motion states that the Chubb Insurers are "clearly withholding responsive non-privileged documents related to each of the [Century], Federal and Pacific policies."  ECF No. 1460, PageID.126014.  Wolverine supports this claim solely by reference to discovery responses from June of 2021, without acknowledging the Chubb Insurers' subsequent document productions. *Id., citing* Wilhoit Declaration, Ex. E.  Once again, Wolverine is simply wrong.  The two document requests referenced in Wolverine's Motion generally seek documents the Chubb Insurers have or will rely on "to the extent not already produced in this Action":

1. To the extent not already produced in this Action, all Documents and Communications reviewed, referenced, mentioned, or relied upon in Your responses to Wolverine's Second Set of Phase II Interrogatories, *supra*.

2. To the extent not already produced in this Action, all Documents and Communications that You have referenced or relied upon, or intend to reference or rely upon, to support Your claim(s) or contention(s) that the Sudden and Accidental Pollution Exclusion and/or the Expected and Intended Pollution Exclusion applies to limit or preclude coverage for Wolverine under any of Your Policies with respect to one or more of the Underlying Actions.

Coffey Decl., Ex. 6.  Despite Wolverine's unsupported claim to the contrary, the Chubb Insurers are not "clearly withholding" documents they have "referenced or relied upon, or intend to reference or rely upon, to support" their argument that the pollution exclusions in their policies bar

15

coverage for Wolverine's claims.  This assertion is nonsensical.  Why would the Chubb Insurers withhold documents they intend to rely on in support of their coverage defenses?  The documents Wolverine requested – *i.e.*, documents the Chubb Insurers relied upon to prepare its discovery responses, and will rely upon to support its pollution exclusion defense – have been produced in this action.  These include nearly 1,700 pages of documents from the Chubb Insurers, and hundreds of thousands of other pages produced "in this action" by other parties and non-party witnesses.  To the extent the Chubb Insurers identify additional relevant, responsive, non-privileged documents upon which the Chubb Insurers will rely to support their pollution exclusion defense, any such documents will be produced.  Meanwhile, Wolverine's Motion must be denied.

## III.    CONCLUSION

For all of the foregoing reasons, the Chubb Insurers respectfully request that Wolverine's April Motion be denied.

Respectfully submitted,


 s/Carole D. Bos__
Carole D. Bos
Bradley K. Glazier
BOS & GLAZIER PLC
990 Monroe Ave., NW
Grand Rapids, MI 49503
(616) 458-6814
bglazier@bosglazier.com

Brian C. Coffey
COHN BAUGHMAN & SERLIN
333 W Wacker Dr., Ste. 900
Chicago, IL 60606
(312) 775-3900
brian.coffey@mclolaw.com

Daniel F. Gourash (Ohio Bar No. 0032413)
Robert D. Anderle (Ohio Bar No. 0064582)
Seeley, Savidge, Ebert & Gourash, Co., LPA
26600 Detroit Road, Third Floor
Cleveland, Ohio 44145
(216) 566-8200; (216) 566-0213 (fax)
dfgourash@sseg-law.com
rdanderle@sseg-law.com

*Attorneys for Defendants Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America, Pacific Employers Insurance Company, and Federal Insurance Company*

## CERTIFICATE OF SERVICE

I do hereby certify that on the 27th day of April 2022, I served the foregoing document and this Certificate of Service to all Counsel of Record with the Clerk of the Court using the electronic court filing system, which will send notification of such filing to all Counsel of Record.

_s/ Carole D. Bos_

Carole D. Bos

BOS & GLAZIER PLC
