### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| WOLVERINE WORLD WIDE, INC., ) | |
| ) | Case No. 1:19-cv-00010-JTN-ESC |
| *Plaintiff*, ) | |
| ) | Honorable Janet T. Neff |
| v. ) | |
| ) | Mag. Judge Ellen S. Carmody |
| THE AMERICAN INSURANCE COMPANY, ) | Special Master Paula Manderfield |
| et al., ) | |
| ) | |
| *Defendants*. ) | |

### CERTAIN DEFENDANTS' MOTION TO COMPEL ADDITIONAL DEPOSITION TESTIMONY OF WOLVERINE'S RULE 30(B)(6) WITNESS BRADLEY LORDEN, LIMITED RE-DEPOSITIONS OF CERTAIN FORMER WOLVERINE EMPLOYEES AND FOR ALTERNATIVE SERVICE ON CHERYL OLIVER

Certain Defendants[1], by their respective attorneys, move: (1) to compel additional deposition testimony of Wolverine's Rule 30(b)(6) witness Bradley Lorden; (2) to compel the limited depositions of seven former Wolverine employees, Bob DeBusschere, Guy Hayden, Frank Metsaars, David Huey, Greg Mills, John O'Brien, and Bob Winegar; (3) to allow alternative service of a deposition subpoena on non-party witness Cheryl Oliver ("Ms. Oliver") and (4) to extend the fact discovery closure date to effectuate the relief requested herein. In support thereof, Certain Defendants state as follows:

### INTRODUCTION

On August 16, 2023, Defendants conducted the deposition of Wolverine's Rule 30(b)(6) designated witness, Bradley Lorden ("Lorden"). Lorden was designated by Wolverine to testify on multiple topics. After seven hours of testimony, Wolverine terminated Lorden's deposition over the objections of counsel for North River and First State. At the time the deposition was

---

[1] Certain Defendants that are Movants herein are First State Insurance Company ("First State") and North River Insurance Company ("North River").

terminated, North River's counsel had not completed his questioning and First State's counsel had *no opportunity whatsoever* to question the witness. In order to fairly examine the deponent as required under Rule 30, Certain Defendants need additional time to question the witness. Wolverine has taken the untenable position that Lorden's deposition by default was limited to seven hours irrespective of the complexity of the matter, the multiple parties and the extensive topics for testimony it agreed upon for its two 30(b)(6) witnesses. There is good cause for the court to allow additional time for Certain Defendants to complete the deposition of Lorden.

Second, on January 27, 2023, *after* Wolverine employees Bob DeBusschere, Guy Hayden, Frank Metsaars, David Huey, Greg Mills, John O'Brien, and Bob Winegar (collectively "Certain Witnesses") were deposed, Wolverine served its Responses to Certain Defendants' Third Set of Phase II Interrogatories. (Ex. 1, Interrogatory No. 2, pp. 12-35.) In those responses, Wolverine for the first time identified a number of discrete "events" it now contends gave rise to PFAS and other environmental contamination, and for the first time identified Certain Witnesses as having knowledge of these specific, previously undisclosed events. Certain Defendants did not know of Wolverine's reliance on Certain Witnesses' "Sudden and Accidental" testimony at the time these witnesses were deposed in this action and had no reason to know of those events because Wolverine had not yet identified them despite the extensive efforts of the insurers over a period of years to obtain this information. The prejudice that would ensue if Certain Defendants are not allowed these seven depositions is undeniable.

Third, First State has been unable to personally serve a subpoena compelling the appearance for deposition of Cheryl Oliver, another former employee of Wolverine identified in its Rule 26 disclosures as having knowledge of Wolverine's historic environmental health and safety processes. Ms. Oliver's deposition was first noticed on July 21, 2021. Initially, Wolverine's

counsel communicated that they anticipated representing Ms. Oliver at her deposition, but later changed course due to Wolverine's inability to make any further contact with her despite numerous attempts. On August 24, 2022, Wolverine's counsel advised the Defendants that if they want to conduct Ms. Oliver's deposition, they should issue a subpoena.

That is precisely what First State did, and it has made diligent efforts to personally serve Ms. Oliver at her residence in Fruitport, Michigan. Ms. Oliver has willfully evaded service and most recently outright refused to accept personal service, demanding that the process server leave her property, making it futile to continue attempts at personal service. Ms. Oliver's conduct has impeded discovery and necessitates alternative service reasonably calculated to reach her. The depositions and other relief requested herein necessitate an extension of the fact discovery closure date to effectuate the court's ruling.

## ARGUMENT

I. **The Court Should Compel the Resumption of the Rule 30(b)(6) Deposition of Wolverine's Bradley Lorden to Allow Certain Defendants an Additional Day of Testimony Consistent with Rule 30(d)(1)**

Although Rule 30 generally provides the length of a deposition is limited to one day of seven hours, it expressly provides that "[t]he court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." Fed R Civ P 30(d)(1). The Advisory Notes on 2000 Amendments provide, in pertinent part, that "[i]f the examination will cover events occurring over a long period of time, that may justify allowing additional time" and that "[i]n multi-party cases, the need for each party to examine the witness may warrant additional time, although duplicative questioning should be avoided and parties with similar interests should strive to designate one lawyer to question about areas of common interest." Fed R Civ P 30

3

(2000 Amendments Advisory Notes); see also *Brown v. Scaglione*, No. 20-10192, 2020 U.S. Dist. LEXIS 269906, at *5 (E.D. Mich. Nov. 13, 2020) (discussing relevant factors).

Michigan authorities overwhelmingly support Certain Defendants' request to compel Lorden's deposition to resume for an additional day. This relief is warranted by, among other things, the complexity of this matter, the number and scope of topics for which Lorden was designated,[2] the decades-long factual history, the voluminous documents produced by the parties, the enormous amount in controversy, and the multiple defendants involved. In *Sabol-Krutz v. Quad Electronics, Inc.*, No. 2:15-cv-13328, 2016 U.S. Dist. LEXIS 148820 (E.D. Mich. Oct. 27, 2016), the plaintiff was deposed for over five hours and the parties agreed that the deposition should be resumed, but disagreed about the length of additional testimony. Defendant requested an extra five and a half hours to address various counts in the amended complaint and to query about the seventy-five names on Plaintiff's witness list. The *Sabol-Krutz* court concluded that good cause existed to extend Plaintiff's deposition beyond the typical seven hours for several reasons, including the complexity of the amended pleading, the complexity of issues, the seven figure damages sought, the exchange of thousands of pages of discovery and plaintiff's lengthy list of witnesses. Thus, the court allowed an additional five hours of deposition time.

In *Brown v. Scaglione*, No. 20-10192, 2020 U.S. Dist. LEXIS 269906 (E.D. Mich. Nov. 13, 2020), the defendant similarly moved to compel the continued deposition of plaintiff beyond the usual limit of seven hours, arguing the complex nature of the claims and evidence, the number of defendants, and disparate claims warranted more time. Relying in part on *Sabol-Krutz*, the *Brown* court ordered plaintiff to appear for additional questioning. The *Brown* court reasoned that:

---

[2] Lorden was designated by Wolverine to testify on eighteen separate topics spanning a wide range of issues. (Ex. 3.)

4

> If the examination will cover events occurring over a long period of time, that may justify allowing additional time. . . . In multi-party cases, the need for each party to examine the witness may warrant additional time, although duplicative questioning should be avoided and parties with similar interests should strive to designate one lawyer to question about areas of common interest.

*Brown* at *5 (internal citations omitted).

In *MRP Properties, LLC v. United States*, No. 17-11174, 2020 U.S. Dist. LEXIS 57815 (E.D. Mich. Apr. 2, 2020), a CERCLA case involving twelve current or former petroleum refineries, the defendant sought seven hours of additional time to depose each of two designated expert witnesses. The court granted additional time (ten hours each over two days), reasoning that it had an obligation to permit additional time where circumstances require that a fair examination of the deponents take longer. *MRP* at *6 (citing *Dow Chemical Co. v. Reinhard*, No. 07-12012-BC, 2008 U.S. Dist. LEXIS 30044, at *14 (E.D. Mich. Apr. 14, 2008) (allowing deposition to continue for an additional single day of seven hours); *accord Mike Vaughn Custom Sports, Inc. v. Piku*, Civil Action No. 12-CV-13083, 2013 U.S. Dist. LEXIS 154583, at *18 (E.D. Mich. Oct. 29, 2013) (finding other defendants entitled to four hours' additional time to complete deposition).

Here, Lorden was designated on numerous topics concerning a broad range of issues, and the complexity of this case is undeniable. The insurers made every effort to avoid duplicative testimony by designating counsel for Travelers to question Lorden about areas of common interest. However, given the nature of Wolverine's claims in this action, particularly Wolverine's necessarily individualized allegations of bad faith against each insurer, the need for each party to separately question Lorden is obvious. Therefore, good cause exists for the continuation of Lorden's deposition, and the Court should reject Wolverine's attempts to avoid providing this crucial corporate designee testimony.

**II.     The Court Should Compel the Limited Deposition Testimony of Certain Witnesses Whose Scope of Testimony Was Not Disclosed by Wolverine Until After Their Depositions Were Conducted**

As this Court well knows, for years Wolverine made every conceivable effort to resist the insurers' discovery asking Wolverine to identify the discrete "sudden and accidental" events giving rise to the pollution liabilities for which Wolverine seeks coverage in this case, despite rulings from this Court compelling Wolverine to do so.  While the insurers pursued the Court's intervention, they continued to move forward with the depositions of Wolverine's former employees in compliance with the scheduling orders then in place.  These depositions included former Wolverine employees Bob DeBusschere, Guy Hayden, David Huey, Frank Metsaars, George Mills, John O'Brien and Robert Winegar, all of whom were deposed by the insurers between March and August 2022.

On January 27, 2023, long after the depositions of these individuals were completed, Wolverine served its Responses to Certain Defendants' Third Set of Phase II Interrogatories, for the first time identifying a number of discrete "events" it contends may have given rise to the environmental contamination at issue in the Underlying Actions.  (Ex 1, pp.12-35.)  Wolverine's responses also identified persons with knowledge of those discrete events, including Certain Witnesses whose depositions the insurers had already completed.  Based on these new and belated disclosures, the insurers noticed Certain Witnesses for depositions specifically limited in scope.  (Group Ex. 4.)  As set forth in these notices, each of the depositions will be limited to each witness's knowledge of the events identified in Wolverine's response to Certain Defendants' Third Set of Phase II Interrogatories and Wolverine's April 26, 2023 Supplemental Phase II Initial Disclosure Statement.  The parties met and conferred after these notices were served, and Wolverine has refused to produce Certain Witnesses for their supplemental depositions.  (Ex. 5.)

This is not the first time Wolverine's refusal to identify "sudden and accidental" events has impacted discovery and required this Court's intervention. As set forth in former Defendant Century Indemnity Company's Brief in Support of Motion to Compel Interrogatory Responses (ECF No. 1700 [SEALED]), the insurers first sought this information in November 2019, through interrogatories served on Wolverine by Century. ECF No. 1700 at 1. In response to those interrogatories, Wolverine stated that it "will not be providing information" regarding the alleged "sudden and accidental" events it contends caused the contamination at issue in the Underlying Actions. *Id.* at 2. Rather, Wolverine sought to impose limits on discovery on this issue, which the Special Master rejected both on the record at a December 2019 status conference and in an order denying Wolverine's request for a protective order. *Id.* at 2-3.

In June 2022, the Special Master issued a Report & Recommendation outlining what Wolverine must prove to potentially trigger the "sudden and accidental" exception to the pollution exclusion, stating that "Wolverine must identify evidence of discrete isolated polluting events that are allegedly sudden and accidental … and distinguish them from the allegations of overall leaking and discharge of PFAS into the environment outlined in the Underlying Actions…." *Id.* at 3 (citing ECF No. 1517, Page ID.126972-73). Four days later, Century served a new set of interrogatories asking Wolverine to identify any such "discrete isolated polluting events" that it is aware of, consistent with the Special Master's R&R. *Id.* at 3-4. In response to those interrogatories, Wolverine continued to stonewall, referring the insurers to documents rather than providing narrative descriptions. As a result, Century was forced to file a motion to compel, which the Special Master granted on November 3, 2022. (Ex. 6--ECF No. 1808.) In her Opinion and Order granting the motion, the Special Master found Wolverine's interrogatory responses to be "inadequate and not in satisfaction of its obligation under Rule 33 to provide 'true, explicit,

7

responsive, complete and candid answers.'" *Id.* at PageID.134887-88.  The Special Master ordered Wolverine "to provide substantive responses" to the interrogatories "and identify any discrete, isolated 'sudden' polluting events about which Wolverine has information and on which Wolverine will rely to try to establish that the limited exception to the pollution exclusion applies." *Id.* at PageID.134888.  The Special Master further ordered that "Wolverine has the burden of proof on this issue, and it is incumbent on Wolverine to cull through the deposition testimony and other documents referenced in its response and provide narrative responses" within thirty days.  *Id.*

Before Wolverine's thirty-day deadline for providing narrative interrogatory responses had run, Wolverine announced it had settled with Century.  Certain Defendants requested that Wolverine acknowledge that Century's interrogatories were equally applicable to Certain Defendants and provide its responses as required under the Special Master's Opinion and Order.  (Ex. 7.)  Instead, Wolverine opted to take advantage of Certain Defendants' reasonable efforts to not issue duplicative discovery and further delay their identification of discrete events by forcing Certain Defendants to issue a brand new, duplicative set of interrogatories.  *Id.*  Furthermore, Wolverine requested an additional two-week extension of time to respond to Certain Defendants' identical interrogatories, despite the fact that, as demonstrated above, the insurers had been seeking this information from Wolverine, and Wolverine no doubt had this information in its possession, for years.  (Ex. 8.)

Wolverine did not finally serve its responses to Certain Defendants' interrogatories until January 27, 2023.  The responses identify a number of purported "sudden and accidental releases" that Wolverine contends caused the contamination at issue in the Underlying Actions, including events that happened decades ago that Wolverine clearly must have known about for years, such as a tornado in 1965 and a train crash at the tannery in 1966.  The responses also identify numerous

8

individuals who are purportedly knowledgeable about these previously undisclosed historical events, including Certain Witnesses. Although the insurers previously took the depositions of Certain Witnesses in this action, the insurers had no opportunity to question them about their knowledge of these events *because Wolverine deliberately hid them from the insurers for years and allowed their depositions to proceed without providing this critical information to the insurers.*

Indeed, this is not a situation in which the insurers failed to ask questions of Certain Witnesses designed to obtain information concerning purported "sudden and accidental events" of which they have knowledge. For example, when asked by the insurers about incidents that may have caused spills at the tannery, Mr. Hayden testified, "Too long ago to remember all that." Hayden Transcript, p. 51. Mr. DeBusschere likewise was asked about any spills at the tannery and responded, "Nothing I can remember." DeBusschere Transcript, p. 71. Mr. Metsaars was also asked if he observed any spills or overflows at the tannery and responded, "Not that I'm aware of." Metsaars Transcript, p. 18. Nevertheless, it wasn't until long after Wolverine allowed these depositions to go forward that it finally identified them as individuals with knowledge of the discrete events identified in its January 27, 2023, interrogatory responses. (Ex. 1, pp. 35-53.) The fact is Wolverine had knowledge of these events for years, intentionally withheld and delayed discovery concerning those events despite two orders from the Court requiring disclosure, and allowed the depositions of Certain Witnesses to go forward knowing they would eventually be disclosed with respect to these discrete events. This Court should not countenance Wolverine's attempt to now profit from its intentional obstruction of the discovery process in hiding critical evidence and then refusing to produce the individuals it now belatedly states have relevant knowledge.

9

As a result of the new information that Wolverine provided *after* the depositions of these seven witnesses, the defendants issued notices of deposition that were specifically limited in scope. (Group Ex. 4.) As set forth in these notices, each of the depositions will be limited to each witness's knowledge of the events identified in Wolverine's response to Interrogatory No. 2 of Defendants' Third Set of Phase II Interrogatories and Wolverine's April 26, 2023 Supplemental Phase II Initial Disclosure Statement. Defendants are entitled to depose these witnesses with respect to the new information that Wolverine did not provide during discovery until after these witnesses were deposed. If Wolverine will not permit Certain Witnesses to be deposed, then Wolverine must be precluded from offering any testimony from these witnesses relating to the information disclosed in Wolverine's Responses to the Third Set of Phase II Interrogatories and Wolverine's Supplemental Initial Disclosures. Given the present discovery closure date and this motion practice, Certain Defendants will need to take the depositions of these witnesses after the current discovery deadline.

Michigan law supports this Court granting leave to further depose Certain Witnesses for good cause shown pursuant to Federal Rule of Civil Procedure 30(a)(2)(A)(ii). For example, in *Slaven v. Spirit Airlines*, no. 08-cv-10705, 2009 U.S. Dist. LEXIS 151478, *13-14 (E.D. Mich. Jul. 7, 2009), defendants Grimaldi and Olechowski provided testimony at their first depositions in which they referred to manuals that had not yet been produced. *Id.* at *4-5. The court found that Plaintiff should be able to take second depositions of Defendants Grimaldi and Olechowski if the Defendants were to subsequently produce the manuals. *Id.* at *13-14. The court reasoned that "Plaintiff has shown a need to re-depose these Defendants once Plaintiff has access to the documents on which they based their prior deposition testimony and on which they rely for a defense." *Id.* at *13-14.

To similar effect is *Mahavisno v. Compendia Bioscience, Inc.*, 2015 WL 5698532, 2015 U.S. Dist. LEXIS 131148 (E.D. Mich. Sept. 29, 2015). There, the court granted Plaintiff's motion to compel the deposition of Rhodes in his capacity as a non-retained expert after he was previously deposed, first in his capacity as a fact witness and secondly as a Rule 30(b)(6) corporate representative. The court found that an expert deposition of Rhodes would not be cumulative or duplicative and could not be obtained from another source. *Id.* at *6-7. The court reasoned that Plaintiff did not have any meaningful prior opportunity to obtain Rhodes' testimony in his role as an expert. *Id.* at *8. Rhodes had not been disclosed as an expert at the time of his fact witness deposition and, while he was disclosed as an expert shortly before his corporate representative deposition, that deposition was limited to obtaining facts known to the corporation and was taken very shortly before Rhodes was identified as an expert. *Id.* The court therefore found good cause to allow a further deposition of Rhodes. *Id.* at *10.

In *Eaton Corp. v. Weeks*, no. 13-12392, 2014 U.S. Dist. LEXIS 22530 (E.D. Mich. Feb. 24, 2014), the district court granted Defendant's motion for leave to take a second deposition of two fact witnesses. In ruling on the motion, the court noted that relevant factors under Rule 26(b)(2) include "whether the second deposition would be unnecessarily cumulative, whether the party requesting the deposition has had other opportunities to obtain the same information, and whether the burden of a second deposition outweighs its potential benefit." *Id.* at *9-10. The court held that the second depositions of the two witnesses were warranted because the Plaintiff had produced additional documents after one of these witnesses was deposed and the day before the deposition of the other witness's deposition. *Id.* at *6, 11-12. The court noted that, although the deposing party knew that an additional production was forthcoming, opposing counsel did not suggest postponement of the depositions until after such production. *Id.* at *11-12. Thus, the court allowed

11

a second deposition of two fact witnesses, with a time limit and questions limited to the set of newly produced documents. *Id.* at *13, 21.  See also *Saleh v. Am. S.S. Co.*, 2011 WL 2214134, 2011 U.S. Dist. LEXIS 62633 (E.D. Mich. Jun. 7, 2011) (granting defendant's motion to compel second deposition of the Plaintiff limited to events post-dating the first deposition, with time limit); see also *Geer v. Amex Assur. Co.*, 2009 WL 4646021, 2009 U.S. Dist. LEXIS 112881 at *8-9 (E.D. Mich. Dec. 4, 2009) (allowing second depositions on issues limited to those raised in new counts of amended pleading).

Finally, in *Encana Oil & Cas United States v. Zaremba Family Farms, Inc.*, no. 1:12-cv-369, 2014 U.S. Dist. LEXIS 193515 (W.D. Mich. Mar. 6, 2014), the court overruled the Defendants' objections and affirmed a magistrate judge's order allowing the Plaintiff leave to take an additional Rule 30(b)(6) deposition of a witness previously deposed on other Rule 30(b)(6) topics.  The court held that a second deposition of the witness would be allowed given the "complexity and magnitude" of the case, particularly since the first deposition was intended to be limited in scope.  *Id.* at *3-5.

Based on the considerable Michigan authority discussed above, Defendants should be allowed to re-depose Bob DeBusschere, Guy Hayden, David Huey, Frank Metsaars, George Mills, John O'Brien and Robert Winegar, subject to the limitations set forth in the deposition notices served for each witness.

### III. The Court Should Allow Alternate Means of Service of Certain Defendants' Deposition Subpoena on Cheryl Oliver

Ms. Oliver is a former employee of Wolverine who was identified in its Rule 26 disclosures as having knowledge of Wolverine's historic environmental health and safety processes, and also identified as a person with knowledge of certain of the discrete events first disclosed by Wolverine in its responses to Certain Defendants' Third Set of Phase II Interrogatories.  (Ex. 2, p. 8; Ex. 1,

12

pp. 41-44.) Wolverine's counsel was unable to make contact with Ms. Oliver and requested that Defendants issue a subpoena requiring her testimony. Certain Defendants have made diligent efforts to personally serve Ms. Oliver (nineteen in total) at her residence in Fruitport, Michigan, but she has willfully evaded service and most recently outright refused to accept personal service and demanded that the process server leave her property. (Ex. 10.) It would be futile to continue such attempts.

The supporting affidavits of the two professional process servers retained by First State, Kim O'Brien and Jason Van Andel, detail their total of nineteen attempts to serve five successive subpoenas on Ms. Oliver at her residence. The supporting affidavits of O'Brien and Van Andel are attached as Exhibits 9 and 10, respectively.

Michigan courts have interpreted Rule 45 (which ordinarily requires personal service) to permit service of a subpoena by alternate means where (1) the party is unable to effectuate personal service after a diligent effort, and (2) the alternate means are reasonably calculated to achieve actual delivery. *Sharpe v. City of Southfield*, 2023 WL 1453129, 2023 U.S. Dist. LEXIS 16904, *6 (E.D. Mich. Feb. 1, 2023); *State Farm Mut. Auto. Ins. Co. v. Precious Physical Therapy, Inc.*, 2020 WL 7249484, 2020 U.S. Dist. LEXIS 230767, *5 (E.D. Mich. Dec. 9, 2020).

Certain Defendants should be permitted to serve Ms. Oliver by: (1) Federal Express delivery to her residence without signature required and (2) posting the subpoena on the door of Ms. Oliver's residence. See *Sharpe v. City of Southfield*, 2023 WL 1453129, 2023 U.S. Dist. LEXIS 16904, *6 (E.D. Mich. Feb. 1, 2023) (allowing service through alternative means after four attempts when persons inside the residence refused to answer the door for the process server); *Stallworth v. City of Pleasant Ridge*, No. 16-cv-10696, 2017 U.S. Dist. LEXIS 39986, *5

13

(E.D. Mich. Mar. 21, 2017) (allowing service of a subpoena through first class mail and posting at the witness's residence).

Alternative service in this manner is reasonably calculated to achieve actual delivery. *Sharpe*, 2023 U.S. Dist. LEXIS 16904, *8 (sending the subpoena by first-class mail to the witness's known address is usually sufficient, particularly when the subpoena is also posted on the door); *Stallworth v. City of Pleasant Ridge*, no. 16-cv-10696, 2017 U.S. Dist. LEXIS 39986, *5 (E.D. Mich. Mar. 21, 2017) (allowing service of a subpoena through first class mail and posting at the witness's residence); *Halawani v. Wolfenbarger*, 2008 U.S. Dist. LEXIS 100482 (E.D. Mich. Dec. 10, 2008), *10 (allowing service via certified mail); *Nithyananda Dhanapeetam of Columbus v. Rao*, no. 14-cv-51228, 2016 U.S. Dist. LEXIS 55227, *7-9 (E.D. Mich. Apr. 26, 2016) (allowing service via certified mail).

## **CONCLUSION**

For these reasons, Certain Defendants respectfully request that the Court enter an Order: (1) compelling Wolverine to produce Bradley Lorden in response to Defendants' 30(b)(6) notice for an additional day of deposition testimony; (2) compelling the depositions of former Wolverine employees Bob DeBusschere, Guy Hayden, Frank Metsaars, David Huey, Greg Mills, John O'Brien and Bob Winegar, with the limitations set forth in Certain Defendants' deposition notices; (3) granting leave to serve a subpoena on Cheryl Oliver by alternate means; (4) extending the fact discovery closure date to allow sufficient time to conduct the discovery requested herein; and (5) awarding any other appropriate relief.

Dated: September 1, 2023

Respectfully submitted,

/s/ Wayne S. Karbal
Wayne S. Karbal
Howard J. Fishman
KARBAL, COHEN, ECONOMOU, SILK
& DUNNE, LLC
200 S. Wacker Drive, Suite 2550
Chicago, IL 60606
Tel:  (312) 431-3700
Fax:  (312) 431-3670
wkarbal@karballaw.com
hfishman@karballaw.com

Thomas G. Cardelli (P31728)
Anthony F. Caffrey III (P60531)
CARDELLI LANFEAR, P.C.
322 W. Lincoln Avenue
Royal Oak, MI 48067
Tel:  (248) 544-1100
Fax:  (248) 544-1191
tcardelli@cardellilaw.com
acaffrey@cardellilaw.com

***Attorneys for Defendant,
First State Insurance Company***

Respectfully submitted,

/s/ Seth M. Jaffee
Seth M. Jaffe
CLYDE & CO. US LLP
55 West Monroe Street
Suite 3000
Chicago, IL 60603
Tel: (312) 635-6948
Fax: (312) 635-6950
seth.jaffe@clydeco.us

***Attorneys for Defendants, North River
Insurance Company***

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

WOLVERINE WORLD WIDE, INC.,

      Plaintiff,

v.

THE AMERICAN INSURANCE COMPANY,
et. al,

      Defendants.

Case No. 1:19-cv-00010-JTN-SJB

Honorable Janet T. Neff
Mag. Judge Sally J. Berens
Special Master Paula Manderfield

---

### **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3(b)(i)**

Under LR 7.3(b)(i), the foregoing CERTAIN DEFENDANTS' MOTION TO COMPEL ADDITIONAL DEPOSITION TESTIMONY OF WOLVERINE'S RULE 30(B)(6) WITNESS BRADLEY LORDEN, LIMITED RE-DEPOSITIONS OF CERTAIN FORMER WOLVERINE EMPLOYEES AND FOR ALTERNATIVE SERVICE ON CHERYL OLIVER contains 4180 words, including headings, footnotes, citations and quotations, and not including the case caption, cover sheets, table of contents, table of authorities, the signature block, attachments, exhibits, and affidavits, as counted by Microsoft Word for Microsoft Office 365 for business, version 2005.

                                            */s/Howard J. Fishman*
                                            Howard J. Fishman

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| WOLVERINE WORLD WIDE, INC., | ) |
| | ) Case No. 1:19-cv-00010-JTN-ESC |
| *Plaintiff*, | ) |
| | ) Honorable Janet T. Neff |
| v. | ) |
| | ) Mag. Judge Ellen S. Carmody |
| THE AMERICAN INSURANCE COMPANY, | ) Special Master Paula Manderfield |
| et al., | ) |
| | ) |
| *Defendants*. | ) |

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 1, 2023, I electronically filed CERTAIN DEFENDANTS' MOTION TO COMPEL ADDITIONAL DEPOSITION TESTIMONY OF WOLVERINE'S RULE 30(B)(6) WITNESS BRADLEY LORDEN, LIMITED RE-DEPOSITIONS OF CERTAIN FORMER WOLVERINE EMPLOYEES AND FOR ALTERNATIVE SERVICE ON CHERYL OLIVER and this Certificate of Service with the Clerk of Court using the Court's electronic filing system, which will provide notice to all Counsel of Record.

                                                        /s/ *Howard J. Fishman*
                                                        Howard J. Fishman
                                                        Karbal, Cohen, Economou, Silk & Dunne, LLC