# **EXHIBIT 2**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

WOLVERINE WORLD WIDE, INC.,

     Plaintiff,

v.                                     Case No. 1:19-cv-00010-JTN-ESC

THE AMERICAN INSURANCE COMPANY, et al.,    Honorable Janet T. Neff
                                              Mag. Judge Ellen S. Carmody
     Defendants.                     Special Master Paula Manderfield

---

**PLAINTIFF WOLVERINE WORLD WIDE, INC.'S
SUPPLEMENTAL PHASE II INITIAL DISCLOSURE STATEMENT**

Plaintiff Wolverine World Wide, Inc. ("Plaintiff" or "Wolverine"), by and through its attorneys and pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, hereby provides Defendants American Insurance Company ("AIC"), First State Insurance Company ("First State"), North River Insurance Company ("North River"), Sparta Insurance Company ("SPARTA"), and Travelers Indemnity Company ("Travelers") (Collectively, the "Defendants") with the following Supplemental Phase II Initial Disclosures based on and subject solely to the scope of the issues currently under consideration by the Court (the duty to indemnify, waiver, breach of the duty of good faith and fair dealing, Defendants' defenses, and remaining issues outside the scope of Phase I) as identified in the Case Management Order (Docket No. 99) and later supplemented by an August 8, 2019 email from Special Master Manderfield to counsel of record.

Wolverine provides these Supplemental Phase II Initial Disclosures based upon information currently available and solely with respect to the Phase II issues identified above, in accordance with the Case Management Order. Discovery is ongoing in this case, and additional facts, information, and analysis may warrant changes, modifications, or additions to these initial disclosures. As such, Wolverine reserves its rights to modify, amend, or otherwise supplement

1

these initial disclosures as additional information becomes available during the course of this action (the "Coverage Action") and the underlying actions, including, but not limited to, the more than 280 state individual tort actions, consolidated class actions, the action by the Michigan Department of Environment, Great Lakes, and Energy ("MDEQ"), the action by the Environmental Protection Agency ("EPA"), the action related to the Boulder Creek property, and claims related to Wolverine's former Sole Plant in Rockford, Michigan (the "Underlying Actions"), including through disclosures by or discovery from Defendants and/or other parties, and Wolverine reserves its rights to rely on such additional information in this action.  Wolverine further reserves all discovery and/or evidentiary objections that may be applicable to the information disclosed herein or in any future amendment.

Wolverine hereby reserves its right to object to and challenge the use of the documents and information referenced herein, or otherwise obtained through discovery in of this matter, on the grounds that such documents and information are currently the subject of disputed litigation in the Underlying Action.  Disclosure of such documents and information would prejudice Wolverine and interfere with Wolverine's defense by forcing Wolverine to litigate against its own interests in the Coverage Action while defending itself from liability in the currently pending and any future Underlying Actions.  This is improper and in contravention of controlling Michigan law.  *See Upjohn Co. v. Aetna Cas. & Sur. Co.*, 768 F. Supp. 1186, 1201 (W.D. Mich. 1990).

I.  **THE NAME AND, IF KNOWN, THE ADDRESS AND TELEPHONE NUMBER OF EACH INDIVIDUAL LIKELY TO HAVE DISCOVERABLE INFORMATION— ALONG WITH THE SUBJECTS OF THAT INFORMATION—THAT THE DISCLOSING PARTY MAY USE TO SUPPORT ITS CLAIMS OR DEFENSES, <u>UNLESS THE USE WOULD BE SOLELY FOR IMPEACHMENT</u>**

Wolverine hereby incorporates by reference any and all individuals disclosed through Wolverine's objections and responses to written discovery in Phase I of this matter, including but not necessarily limited to Wolverine's Supplemental Responses and Objections to Interrogatories Nos. 7, 8, and 9 of Defendants' First Joint Set of Interrogatories and Accompanying Requests for Production.  In addition, based on currently available information, the following individuals are likely to have discoverable information that Wolverine may use to support its claims and/or challenge any defenses asserted by the Defendants:

- <u>Wolverine Former/Current Employees</u>:  The following are current and/or former employees who may have knowledge relevant to Phase II discovery, as explained in greater detail below.

  - <u>Joe Azzarello</u>:  Mr. Azzarello is Wolverine's former Engineering Director.  Upon information and belief, Mr. Azzarello may have knowledge of Wolverine's historic operations and its use of Scotchgard, Wolverine's state and local regulatory compliance, and Wolverine's relationship with the Michigan Department of Environmental Quality ("MDEQ").  Mr. Azzarello was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.  Mr. Azzarello is currently noticed for a deposition in this Coverage Action and may be contacted through counsel.

  - <u>Harold Bailey</u>:  Mr. Bailey is Wolverine's former Supervisor for the Waste Water Treatment Plant.  Upon information and belief, Mr. Bailey may have knowledge of Wolverine's historic operations and its use and disposal of tannery waste, including Wolverine's historic use of Scotchgard.  Upon information and belief, Mr. Bailey may also have knowledge regarding Wolverine's general tannery operations and Wolverine's use of the House Street site.  Mr. Bailey was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.  Mr. Bailey is currently noticed for a deposition in this Coverage Action and may be contacted through counsel.

- <u>Janice Barnes</u>:    Ms. Barnes is Wolverine's former Tannery Lab Manager and Consultant.  Upon information and belief, Ms. Barnes may have knowledge of Wolverine's historic operations and may have knowledge regarding Wolverine's historic use of Scotchgard.   Ms. Barnes was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.   Ms. Barnes is currently noticed for a deposition in this Coverage Action and may be contacted through counsel.

- <u>Richard Barnum</u>:  Mr. Barnum is a former Wolverine employee in the Waste Water Treatment Plant.  Upon information and belief, Mr. Barnum may have knowledge of Wolverine's historic operations and its use and disposal of tannery waste.  Mr. Barnum is currently noticed for a deposition in this Coverage Action and may be contacted through counsel.

- <u>Madeleine Barrette</u>:    Ms. Barrette is Wolverine's former Tannery Environmental Chemist.  Upon information and belief, Ms. Barrette may have knowledge of Wolverine's historic operations and may have knowledge regarding Wolverine's historic use of Scotchgard.  Ms. Barrette was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.   Ms. Barrette is currently noticed for a deposition in this Coverage Action and may be contacted through counsel.

- <u>Michael Beck</u>:   Mr. Beck is Wolverine's Former Director of Corporate Engineering.   Upon information and belief, Mr. Beck may have knowledge of Wolverine's historic operations and its use and disposal of tannery waste.  Mr. Beck was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.  Mr. Beck may be contacted through counsel.

- <u>Cheryl Black</u>:    Ms. Black is Wolverine's former Global Safety and Health Director and a former Industrial Visiting Nurse.   Upon information and belief, Ms. Black may have knowledge regarding the procurement and handling of insurance coverage and historic operations.   Ms. Black was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.  Ms. Black is currently noticed for a deposition in this Coverage Action and may be contacted through counsel.

- <u>Michael Blough</u>:   Mr. Blough is Wolverine's Former Plant Operator. Upon information and belief, Mr. Blough may have knowledge of

Wolverine's historic operations and its use and disposal of tannery waste.  Mr. Blough may be contacted through counsel.

- Susan "Sue" Bonter:    Ms. Bonter is a former Chemical Buyer, Lab Technician, and tannery employee.  Upon information and belief, Ms. Bonter may have knowledge regarding Wolverine's procurement of chemicals (including Scotchgard) and historic operations.  Ms. Bonter was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.  Ms. Bonter may be contacted through counsel.

- Kerry Brozyna:    Ms. Brozyna is the current Vice President and General Manager of Leathers at Wolverine.  Upon information and belief, Ms. Brozyna may have knowledge of Wolverine's historic operations.  Ms. Brozyna was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.   Ms. Brozyna may be contacted through counsel.

- Sylvain Bussiere:    Ms. Bussiere is a former employee of Wolverine.  Upon information and belief, Ms. Sylvain may have knowledge regarding Wolverine's historic operations and may have knowledge regarding Wolverine's historic use of Scotchgard.  Ms. Bussiere was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.  Ms. Bussiere may be contacted through counsel.

- Almond ("Al") Clark:    Mr. Clark is a former Wolverine Colorist, Tannery Lab Assistant, and Consultant.  Upon information and belief, Mr. Clark may have knowledge of Wolverine's historic operations and may have knowledge regarding Wolverine's historic use of Scotchgard.  Mr. Clark was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.  Mr. Clark has also already been deposed in this Coverage Action and all transcripts and exhibits associated with that deposition are available to Defendants.  Mr. Clark may be contacted through counsel.

- Rick DeBlasio:    Mr. DeBlasio is Wolverine's former Executive Vice-President of Global Operations.  Upon information and belief, Mr. DeBlasio may have knowledge regarding Wolverine's historic use of Scotchgard and Wolverine's historic operations.  Mr. DeBlasio was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.  Mr. DeBlasio may be contacted through counsel.

- <u>Bob Debusschere</u>:   Mr. Debusschere is Wolverine's former Tannery Supervisor.  Upon information and belief, Mr. Debusschere may have knowledge regarding Wolverine's historic use of Scotchgard and historic operations.  Mr. Debusschere has already been deposed in this Coverage Action and all transcripts and exhibits associated with that deposition are available to Defendants.  Mr. Debusschere may be contacted through counsel.

- <u>Fred Finch</u>:    Mr. Finch is Wolverine's former Tannery Production Manager and former Union Steward.  Upon information and belief, Mr. Finch may have knowledge regarding Wolverine's historic use of Scotchgard and historic operations.  Mr. Finch was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.  Mr. Finch may be contacted through counsel.

- <u>Guy Hayden</u>:    Mr. Hayden is Wolverine's former Maintenance Manager.  Upon information and belief, Mr. Hayden may have knowledge regarding Wolverine's historic use of Scotchgard and historic operations.  Mr. Hayden was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.  Mr. Hayden has also already been deposed in this Coverage Action and all transcripts and exhibits associated with that deposition are available to Defendants.  Mr. Hayden may be contacted through counsel.

- <u>Jerome ("Jerry") Hofman</u>:   Mr. Hofman is Wolverine's former Risk Manager.  Upon information and belief, Mr. Hofman may have knowledge regarding Wolverine's historic procurement of insurance. Mr. Hofman is currently noticed for a deposition in this Coverage Action and may be contacted through counsel.

- <u>David Huey</u>:     Mr. Huey is Wolverine's former Engineering Maintenance Manager.  Upon information and belief, Mr. Huey may have knowledge regarding Wolverine's historic use of Scotchgard and historic operations.   Mr. Huey was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.  Mr. Huey has also already been deposed in this Coverage Action and all transcripts and exhibits associated with that deposition are available to Defendants.  Mr. Huey may be contacted through counsel.

- <u>Suzanne Johnson</u>:  Ms. Johnson is the current Vice President of Global Sales and marketing at Wolverine and a former Tannery employee. Upon information and belief, Ms. Johnson may have knowledge regarding Wolverine's historic use of Scotchgard and historic operations.  Ms. Johnson was previously deposed in the Underlying

Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.  Ms. Johnson is currently noticed for a deposition in this Coverage Action and may be contacted through counsel.

- ▪ **Marty Lihan**:   Mr. Lihan is Wolverine's former Risk Manager at Wolverine.  Upon information and belief, Mr. Lihan may have knowledge regarding Wolverine's historic procurement of insurance.  Mr. Lihan was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.  Mr. Lihan is currently noticed for a deposition in this Coverage Action.

- ▪ **Steve Lyons**:   Mr. Lyons is Wolverine's former Director of Operations and Procurement.  Upon information and belief, Mr. Lyons may have knowledge regarding Wolverine's use of Scotchgard, and historic operations.  Mr. Lyons was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.  Mr. Lyons is currently noticed for a deposition in this Coverage Action.

- ▪ **Deborah McKinney**:   Ms. McKinney is Wolverine's former Manager of Loss Prevention.  Upon information and belief, Ms. McKinney may have knowledge regarding Wolverine's historic operations.  Ms. Ms. McKinney has already been deposed in this Coverage Action and all transcripts and exhibits associated with that deposition are available to Defendants.  McKinney may be contacted through counsel.

- ▪ **Frank Metsaars**:   Mr. Metsaars is Wolverine's former Technical Manager of the Leathers Division.  Upon information and belief, Mr. Metsaars may have knowledge regarding Wolverine's historic use of Scotchgard and historic operations.  Mr. Metsaars was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.  Mr. Metsaars may be contacted through counsel.  Mr. Metsaars has also already been deposed in this Coverage Action and all transcripts and exhibits associated with that deposition are available to Defendants.

- ▪ **Greg Mills**:   Mr. Mills is Wolverine's former Tannery Worker and former Union President.  Upon information and belief, Mr. Mills may have knowledge regarding Wolverine's historic use of Scotchgard and historic operations.  Mr. Mills has already been deposed in this Coverage Action and all transcripts and exhibits associated with that deposition are available to Defendants.  Mr. Mills may be contacted through counsel.

- ▪ <u>John O'Brien</u>:   Mr. O'Brien is Wolverine's former Senior Director of Facilities.   Upon information and belief, Mr. O'Brien may have knowledge regarding Wolverine's historic use of Scotchgard and historic operations.   Mr. O'Brien was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.  Mr. O'Brien has also already been deposed in this Coverage Action and all transcripts and exhibits associated with that deposition are available to Defendants.  Mr. O'Brien may be contacted through counsel.

- ▪ <u>Cheryl Oliver</u>:   Ms. Oliver is a former employee of Wolverine.  Upon information and belief, Ms. Oliver may have knowledge of Wolverine's historic operations and Wolverine's historic environmental health and safety processes.  Ms. Oliver was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.  Ms. Oliver is currently noticed for a deposition in this Coverage Action.

- ▪ <u>Ishmael Rodriguez</u>:       Mr. Rodriguez is Wolverine's former Environmental, Health and Safety Supervisor.  Upon information and belief, Mr. Rodriguez may have knowledge of Wolverine's historic operations and Wolverine's historic environmental health and safety processes.  Mr. Rodriguez has already been deposed in this Coverage Action and all transcripts and exhibits associated with that deposition are available to Defendants.  Mr. Rodriguez may be contacted through counsel.

- ▪ <u>Bob Winegar</u>:   Mr. Winegar if the former Corporate Plant Engineer for Wolverine.   Upon information and belief, Mr. Winegar may have knowledge regarding Wolverine's historic use of Scotchgard and historic operations.   Mr. Winegar was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.  Mr. Winegar has also already been deposed in this Coverage Action and all transcripts and exhibits associated with that deposition are available to Defendants.  Mr. Winegar may be contacted through counsel.

- • <u>Wolverine Contractors and/or Vendors</u>:   The following are current and/or former employees of contractors, vendors, or consultants who may have knowledge relevant to Phase II discovery, as explained in greater detail below.

  - ▪ <u>Dr. Steven Ottenweller</u>:   Dr. Ottenweller was a contracted physician who provided care to Wolverine's Tannery workers.  Upon information and belief, Dr. Ottenweller may have knowledge regarding Wolverine's employees and historic operations.  Dr. Ottenweller may be contacted through counsel.

- **Bryan Rose**:   Mr. Rose is a partner at Rose & Westra: A Division of GZA.  As a former and current consultant of Wolverine, Mr. Rose may have knowledge of Wolverine's historic operations, use of Scotchgard, the Underlying Actions, and Wolverine's environmental investigation and remediation.  Mr. Rose was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.  Mr. Rose may be contacted through counsel.

- **Mark Westra**:   Mr. Westra is a partner at Rose & Westra: A Division of GZA.  As a former and current consultant of Wolverine, Mr. Westra may have knowledge of Wolverine's historic operations, use of Scotchgard, the Underlying Actions, and Wolverine's environmental investigation and remediation.  Mr. Westra was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.  Mr. Westra is currently noticed for a deposition in this Coverage Action and may be contacted through counsel.

- **Employees of Alpha Analytical, Inc.**:   Alpha Analytical is an environmental laboratory retained to assist with Wolverine's investigation and defense in the Underlying Actions.  Upon information and belief, its employees may have information relevant to Wolverine's environmental investigation and defense concerning per-and polyfluoroalkyl substances ("PFAS") in the Underlying Actions.

- **Employees of Eurofins Lancaster Laboratories**:   Eurofins Lancaster Laboratories is an environmental laboratory retained to assist with Wolverine's investigation and defense in the Underlying Actions.  Upon information and belief, its employees may have information relevant to Wolverine's environmental investigation and defense concerning PFAS in the Underlying Actions.

- **Employees of KAR Laboratories, Inc.**:   KAR Laboratories, Inc. is an environmental and bioanalytical testing laboratory retained to assist with Wolverine's investigation and defense in the Underlying Actions.  Upon information and belief, its employees may have information relevant to Wolverine's environmental investigation and defense concerning PFAS in the Underlying Actions.

- **Employees of the North Kent Landfill and the North Kent Department of Public Works**:  Upon information and belief, employees of the North Kent Landfill and employees of the North Kent Department of Public Works may have information relevant to Wolverine's historic waste transportation and disposal practices.

- 9 -

- ▪ <u>Employees of Shealy Environmental Services, Inc.</u>:   Shealy Environmental Services, Inc. is an environmental laboratory retained to assist with Wolverine's investigation and defense in the Underlying Actions.   Upon information and belief, its employees may have information relevant to Wolverine's environmental investigation and defense concerning PFAS in the Underlying Actions.

- ▪ <u>Employees of Stearns Drilling Company</u>:   Stearns Drilling Company has been retained by Wolverine to assist with environmental management efforts related to the Underlying Actions.   Upon information and belief, its employees may have information relevant to Wolverine's environmental investigation and defense concerning PFAS in the Underlying Actions.

- ▪ <u>Employees of Strength Environmental</u>:   Strength Environmental is a waste disposal service retained by Wolverine to assist with environmental management efforts related to the Underlying Actions. Upon information and belief, its employees may have information relevant to Wolverine's environmental investigation and defense concerning PFAS in the Underlying Actions.

- ▪ <u>Employees of Young's Environmental Cleanup Inc.</u>:   Young's Environmental Cleanup is a waste disposal service retained by Wolverine to assist with environmental management efforts related to the Underlying Actions.   Upon information and belief, its employees may have information relevant to Wolverine's environmental investigation and defense concerning PFAS in the Underlying Actions.

- ▪ <u>Wolverine Contractors that Transported Waste</u>:   Wolverine historically contracted with the following persons and/or companies to transport waste: Valley City Environmental, Waste Management, Bell Pick-Up Service (Earl Tefft), DeWitt Barrel, and Pierson Landfill.

- • <u>State and Local Government Representatives</u>:   The following individuals may have knowledge regarding the investigation of allegations concerning the Underlying Actions, Wolverine's environmental investigation, remediation, defense, and the involvement of federal, state and local government representatives regarding the Underlying Actions:

  - ▪ <u>Robert Aman</u>:   Mr. Aman is the Chief Sanitarian for the Kent County Health Department.  Upon information and belief, Mr. Aman may have information relevant to Wolverine's environmental investigation and defense concerning PFAS in the Underlying Actions.  Mr. Aman was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.

- 10 -

- Brendan Earl:   Mr. Earl is the Supervising Sanitarian for the Kent County Health Department.  Upon information and belief, Mr. Earl may have information relevant to Wolverine's environmental investigation and defense concerning PFAS in the Underlying Actions. Mr. Earl was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.

- Abigail Hendershott:  Ms. Hendershott is the District Supervisor for the Grand Rapids District Remediation and Redevelopment Division of the Michigan Department of Environment, Great Lakes, and Energy ("MDEGLE").  Ms. Hendershott is also the Executive Director of the Michigan PFAS Action Response Team ("MPART").   Upon information and belief, Ms. Hendershott may have information relevant to Wolverine's environmental investigation and defense concerning PFAS in the Underlying Actions. Ms. Hendershott was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.  Ms. Hendershott has also already been deposed in this Coverage Action and all transcripts and exhibits associated with that deposition are available to Defendants.

- David O'Donnell:   Mr. O'Donnell is the Selection Manager for the Grand Rapids District, Remediation and Redevelopment Division of MDEGLE.  Upon information and belief, Mr. O'Donnell may have information relevant to Wolverine's environmental investigation and defense concerning PFAS in the Underlying Actions. Mr. O'Donnell was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.  Mr. O'Donnell has also already been deposed in this Coverage Action and all transcripts and exhibits associated with that deposition are available to Defendants.

- Sara Simmonds:   Ms. Simmonds is the Director of the Kent County Health Department.  Upon information and belief, Ms. Simmonds may have information relevant to Wolverine's environmental investigation and defense concerning PFAS in the Underlying Actions. Ms. Simmonds was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.

- Karen Vorce:  Ms. Vorce is the MDEGLE District Supervisor.  Upon information and belief, Ms. Vorce may have information relevant to Wolverine's environmental investigation and defense concerning PFAS in the Underlying Actions. Ms. Vorce was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.  Ms. Vorce has also

already been deposed in this Coverage Action and all transcripts and exhibits associated with that deposition are available to Defendants.

- ▪ <u>Cameron Wyngaarden</u>:  Mr. Wyngaarden is the Plainfield Township Supervisor.  Upon information and belief, Mr. Wyngaarden may have information relevant to Wolverine's environmental investigation and defense concerning PFAS in the Underlying Actions.

- ▪ <u>Mark Worrell</u>: Mr. Worrall is an MDEQ geologist.  Upon information and belief, Mr. Worrall may have information relevant to Wolverine's environmental investigation and defense concerning PFAS in the Underlying Actions. Mr. Worrell was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.  Mr. Worrell has also already been deposed in this Coverage Action and all transcripts and exhibits associated with that deposition are available to Defendants.

- • <u>Other Relevant Third Parties</u>:  The following are other relevant third parties— including government representatives and their employees—who may have knowledge relevant to Phase II discovery, as explained in greater detail below.

  - ▪ <u>Tom Lenderlink</u>:  Upon information and belief, Mr. Lenderlink is the President of Lenderlink Technologies, Inc. and resides at 1267 House St., NE Belmont, Michigan 49306.  Upon information and belief, Mr. Lenderlink may have knowledge regarding the House Street site.  Mr. Lenderlink was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.

- • <u>Wolverine's Investigation In Relation to and Defense of the Underlying Actions Continues</u>:  Certain of Wolverine's current and former employees and representatives, including but not limited to in-house and outside counsel, also may have discoverable information that Wolverine may use to support its claims in Phase II of this litigation.  However, because certain of the Underlying Actions are ongoing, disclosure and/or involvement of certain of those individuals at this time could prejudice Wolverine and interfere with Wolverine's defense of the pending Underlying Actions.  As such, and because Wolverine's investigation continues, Wolverine will supplement these disclosures as necessary, appropriate and as required upon completion of its investigation and resolution of the Underlying Actions.

- • <u>Insurers' Employees, Representatives, Agents, Inside Counsel, and Outside Counsel</u>:  Upon information and belief, the below are individuals that are working and/or have worked on behalf of the Defendants.  Each of the below may have knowledge regarding Wolverine's insurance claims, the Policies at issue, the Underlying Actions, and/or the Defendants' investigation and

handling of Wolverine's requests for defense and indemnity under the Policies at issue for the Underlying Actions and communications relating thereto.

## A.  SPARTA

- <u>Madeleine B. Bass</u>:  Upon information and belief, Ms. Bass is a former Account Manager at Armour Risk Management, Inc., working on behalf of the American Employers Insurance Company ("AEIC") with respect to the claims and Policies at issue in this Coverage Action.

- <u>Beth A. Stroup</u>:   Upon information and belief, Ms. Bass is a Senior Claims Adjuster at Armour Risk Management, Inc., working on behalf of AEIC with respect to the claims and Policies at issue in this Coverage Action.

- <u>Kimberly Taylor</u>:   Upon information and belief, Ms. Taylor is the Claims Account Manager, working on behalf of AEIC with respect to the claims and Policies at issue in this Coverage Action.

- <u>Warren Wilkosz</u>:   Upon information and belief, Mr. Wilkosz is an Account Manager of Direct Claims at Resolute Management Inc., working on behalf of AEIC with respect to the claims and Policies at issue in this Coverage Action.

- <u>Sumi Yang</u>:   Upon information and belief, Ms. Yang is a former Account Manager of Direct Claims at Resolute Management Inc., working on behalf of AEIC with respect to the claims and Policies at issue in this Coverage Action.

## B.  Travelers

- <u>Amy Howard</u>:  Upon information and belief, Ms. Howard is the Senior Account Manager at Resolute Management, Inc., working on behalf of Travelers Indemnity Company ("Travelers") with respect to the claims and Policies at issue in this Coverage Action.

- <u>Jane E. Kelly</u>:   Upon information and belief, Ms. Kelly is a Senior Account Executive at Resolute Management Inc., working on behalf of Travelers with respect to the claims and Policies at issue in this Coverage Action.

- <u>Thomas Lane</u>:   Upon information and belief, Mr. Lane is the Regional Director of the Special Liability Group at Travelers, working on behalf of Travelers with respect to the claims and Policies at issue in this Coverage Action.

- <u>Diana Shoemaker</u>:   Upon information and belief, Ms. Shoemaker is a Claims Analyst at Strategic Resolution Group, working on behalf of

Travelers with respect to the claims and Policies at issue in this Coverage Action.

▪ <u>Kathryn Weitz</u>:   Upon information and belief, Ms. Weitz is a Claims Analyst at Strategic Resolution Group, working on behalf of Travelers with respect to the claims and Policies at issue in this Coverage Action.

## C.  AIC

▪ <u>Darrell McCarley</u>:   Upon information and belief, Mr. McCarley is a former Claims Adjuster at Allianz Insurance Company, working on behalf of the American Insurance Company ("AIC") with respect to the claims and Policies at issue in this Coverage Action.

▪ <u>Richard Sittner</u>:  Upon information and belief, Mr. Sittner is the Claims Director at Allianz Resolution Management, working on behalf of AIC with respect to the claims and Policies at issue in this Coverage Action.

▪ <u>Joey D. Soloman</u>:   Upon information and belief, Mr. Soloman is a Pollution Claims Specialist at Allianz Resolution Management, working on behalf of AIC with respect to the claims and Policies at issue in this Coverage Action.

## D.  North River

▪ <u>Kurt Fischer</u>:   Upon information and belief, Mr. Fischer is a Complex Claims Analyst at RiverStone Claims Management LLC, working on behalf of North River Insurance Company ("North River") with respect to the claims and Policies at issue in this Coverage Action.

▪ <u>Kylie Holladay</u>:  Upon information and belief, Ms. Holladay is a Claims Analyst at RiverStone Claims Management LLC, working on behalf of North River with respect to the claims and Policies at issue in this Coverage Action.

▪ <u>Garry Lane</u>:  Upon information and belief, Mr. Lane is a Claims Analyst at RiverStone Claims Management, LLC, working on behalf of North River with respect to the claims and Policies at issue in this Coverage Action.

## E.  First State

▪ <u>Aaron Abbott</u>:  Upon information and belief, Mr. Abott is a Manager of Strategic Claim Management at The Hartford, working on behalf of First State Insurance Company ("First State") with respect to the claims and Policies at issue in this Coverage Action.

- ▪ <u>Timothy Batteson</u>:  Upon information and belief, Mr. Batteson is a Claims Director at The Hartford, working on behalf of First State with respect to the claims and Policies at issue in this Coverage Action.

- ▪ <u>Joseph A. Juidiciani</u>:  Upon information and belief, Mr. Juidiciani is a Claims Specialist at The Hartford, working on behalf of First State with respect to the claims and Policies at issue in this Coverage Action.

- ▪ <u>Lynn Ward</u>:  Upon information and belief, Ms. Ward is a Claim Handler at The Hartford, working on behalf of First State with respect to the claims and Policies at issue in this Coverage Action.

- ▪ <u>Katherine Wendt</u>:  Upon information and belief, Ms. Wendt is a Senior Account Specialist in the Environmental Unit of Strategic Claim Management at The Hartford, working on behalf of First State with respect to the claims and Policies at issue in this Coverage Action.

**F.  All Defendants**

- ▪ <u>Defendants' Claims Handlers</u>:   Any and all claims handlers of Defendants with knowledge of Wolverine's claims and/or the Policies at issue in the Coverage Action, including, but not limited to, those disclosed by Defendants.

- ▪ <u>Defendants' Underwriters</u>:  Any and all underwriters of Defendants with knowledge of Wolverine's claims and/or the Policies at issue in the Coverage Action, including, but not limited to, those disclosed by Defendants.

- ▪ <u>Corporate Designee of Each Insurer</u>.  This designee has discoverable information regarding the negotiation, underwriting and sale of Insurers' Policies; the drafting and interpretation of the Policies; Wolverine's claims for insurance coverage for the Underlying Actions; Insurers' claims handling; and discoverable communications with Wolverine, the other Insurers, or other individuals who possess discoverable information.

- ▪ <u>Defendants' Phase I Disclosures</u>:  Wolverine incorporates herein all witnesses and persons disclosed by the Defendants in their Initial Disclosures and/or any and all Phase I discovery documents.

- • <u>Experts in the Underlying Actions</u>:  The following experts have been disclosed in the Underlying Actions and may have knowledge of the claims and defenses at issue in the Underlying Actions.  To the extent these experts prepared a report or reports or were deposed in the Underlying Actions, all such reports and

deposition transcripts and exhibits have already been provided to the Defendants.  They can be contacted through designated counsel.

- ▪ <u>Elizabeth Anderson</u>:   Upon information and belief, Dr. Anderson was disclosed by Wolverine in *Thomas J. Hula, et al. v. Wolverine World Wide, Inc.*, Case No. 17-11445-CZ ("Hula") and *Kurt Kapp et al. v. Wolverine World Wide, Inc.*, Case No. 18-08616-N1 ("Kapp") as an expert regarding toxicology, occupational and environmental exposure to chemicals, assessment of exposures and the potential for health effects, health risk assessment, the health effects, if any, of exposure to environmental chemicals (including PFAS), blood testing, and the alleged exposure, injuries and diseases that the Underlying Plaintiffs alleged were attributable to or caused by purported PFAS exposure.  Dr. Anderson produced expert reports in the Underlying Actions which have been produced to Defendants.

- ▪ <u>Frederick W. Boelter, CII-L PE, BCEE, FAIHA</u>:   Upon information and belief, Mr. Boelter was disclosed by Wolverine in *Seth McNaughton, et al. v. Wolverine World Wide, Inc., et al.*, Case No. 18-10099-CZ ("McNaughton"), *Andrew Debski, et al. v. Wolverine World Wide, Inc., et al.*, Case No. 18-00055-CZ ("Debski"), and *Ronald Brimmer, et al. v. Wolverine World Wide, Inc., et al.*, Case No. 18-01136-CZ ("Brimmer") as an expert regarding hazard communication, industry practice, and material safety data sheets.  Mr. Boelter produced expert reports in the Underlying Actions which have been produced to Defendants.

- ▪ <u>Linda Dell</u>:   Upon information and belief, Ms. Dell was disclosed by Wolverine in the *Brimmer*, *McNaughton*, *Hula*, and *Kapp* actions as an expert regarding epidemiology, the health effects, if any, of exposure to environmental chemicals (including PFAS), occupational and environmental exposure to chemicals, and the alleged exposure, injuries and diseases that Plaintiffs alleged were attributable to or caused by purported PFAS exposure.  Ms. Dell produced expert reports in the Underlying Actions which have been produced to Defendants.

- ▪ <u>Jeffrey G. Genzink</u>:   Mr. Genzink is a Certified General Appraiser at Genzink Appraisal Company.   Upon information and belief, Mr. Genzink was disclosed by Wolverine in the *Brimmer*, *Debski*, *Hula*, *Kapp*, and *McNaughton* actions as an expert regarding property valuations and the impact of PFAS detections on property value implicated in the Underlying Actions.  Mr. Genzink produced expert reports in the Underlying Actions which have been produced to Defendants.

- ▪ <u>Sean Gormley</u>:   Upon information and belief, Mr. Gormley was disclosed by Wolverine in the *Brimmer*, *Debski*, and *Kapp* actions as an

expert regarding the following topics:  PFAS, hydrogeology, geology, chemical fate transport, origin, and distribution, groundwater modeling, environmental site investigation and remediation, environmental engineering, environmental compliance, water filtration system and treatment, regulatory compliance (including under CERCLA, the Clean Water Act, Part 201 MEPA, RCRA, TSCA and other environmental laws), chemical handling and disposal practices groundwater monitoring, ground water/surface water interactions, and PFAS chemistry, including testing methodologies and sampling related to PFAS.  Mr. Gormley produced expert reports in the Underlying Actions which have been produced to Defendants.

- ▪ <u>Andrew MacGinnitie, MD, PhD</u>:  Upon information and belief, Dr. MacGinnitie was disclosed by Wolverine in the *McNaughton* action as an expert regarding the alleged injuries and diseases that Plaintiffs alleged were attributable to or caused by purported PFAS exposure.  Dr. MacGinnitie produced an expert report in the Underlying Actions which has been produced to Defendants.

- ▪ <u>Trevor Phillips</u>:    Upon information and belief, Mr. Phillips was disclosed by Wolverine in the *Brimmer*, *Debski*, *Hula*, *Kapp*, and *McNaughton* actions as an expert regarding property valuations and the impact of PFAS detections on property value implicated in the Underlying Actions.   Mr. Phillips produced expert reports in the Underlying Actions which have been produced to Defendants.

- ▪ <u>Allen Reilly</u>:   Upon information and belief, Mr. Reilly was disclosed by Wolverine in the *Brimmer*, *Debski*, *Hula*, *Kapp*, and *McNaughton* actions as an expert regarding the following topics:   PFAS, hydrogeology, geology, chemical fate transport, origin, and distribution, groundwater modeling, environmental site investigation and remediation, environmental engineering, environmental compliance, water filtration system and treatment, regulatory compliance (including under CERCLA, the Clean Water Act, Part 201 MEPA, RCRA, TSCA and other environmental laws), chemical handling and disposal practices groundwater monitoring, ground water/surface water interactions, and PFAS chemistry, including testing methodologies and sampling related to PFAS.  Mr. Reilly produced expert reports in the Underlying Actions which have been produced to Defendants.

- ▪ <u>Bryan Rose</u>:   Upon information and belief, Mr. Rose was disclosed by Wolverine as an expert regarding the following topics:   PFAS, hydrogeology, geology, chemical fate transport, origin, and distribution, groundwater modeling, environmental site investigation and remediation, environmental engineering, environmental compliance, water filtration system and treatment, regulatory compliance (including under CERCLA, the Clean Water Act, Part 201 MEPA, RCRA, TSCA

and other environmental laws), chemical handling and disposal practices groundwater monitoring, ground water/surface water interactions, and PFAS chemistry, including testing methodologies and sampling related to PFAS.  Mr. Rose was previously deposed in the Underlying Actions and all transcripts and exhibits associated with that deposition have been produced to Defendants.  Mr. Rose also produced expert reports in the Underlying Actions which have been produced to Defendants.  Mr. Rose may be contacted through counsel.

- ▪ David Strobl, DO:  Upon information and belief, Dr. Strobl was disclosed by Wolverine in the *McNaughton* action as an expert regarding the alleged injuries and diseases that Plaintiffs alleged were attributable to or caused by purported PFAS exposure.

- ▪ Marcia Williams:  Ms. Williams is the Principal Environmental Advisor at Gnarus Advisors LLC.  Upon information and belief, Ms. Williams was disclosed by Wolverine in the *Brimmer*, *Debski*, *Hula*, and *Kapp* actions as an expert regarding tannery operations, waste disposal practices, waste water treatment systems and practices, regulatory compliance (including under CERCLA, the Clean Water Act, Part 201, MEPA, RCRA, TSCA, and other environmental laws), and due care in accordance with industry standards and applicable law, including as related to waste water treatment, disposal, and management.  Ms. Williams produced expert reports in the Underlying Actions which have been produced to Defendants.

- ▪ David Woodward:  Upon information and belief, Mr. Woodward was disclosed by Wolverine in the *Brimmer*, *Debski*, *Hula*, *Kapp*, and *McNaughton* actions as an expert regarding the following topics:  PFAS, hydrogeology, geology, chemical fate transport, origin, and distribution, groundwater modeling, environmental site investigation and remediation, environmental engineering, environmental compliance, water filtration system and treatment, regulatory compliance (including under CERCLA, the Clean Water Act, Part 201 MEPA, RCRA, TSCA and other environmental laws), chemical handling and disposal practices groundwater monitoring, ground water/surface water interactions, and PFAS chemistry, including testing methodologies and sampling related to PFAS.  Mr. Woodward produced expert reports in the Underlying Actions which have been produced to Defendants.

- ▪ All other expert reports and expert deposition transcripts and exhibits related to Wolverine's defense/investigation of the Underlying Actions.

- • Other parties that may be identified through discovery with respect to Wolverine, Defendants, and/or any third parties.

- 18 -

## II.   A COPY—OR A DESCRIPTION BY CATEGORY AND LOCATION—OF ALL DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND TANGIBLE THINGS THAT THE DISCLOSING PARTY HAS IN ITS POSSESSION, CUSTODY, OR CONTROL AND MAY USE TO SUPPORT ITS CLAIMS OR DEFENSES, UNLESS SOLELY FOR IMPEACHMENT

Subject to the attorney-client privilege, work product doctrine, confidentiality, and any other applicable protections, Wolverine may use some or all of the following categories of documents and communications, which are in the possession, custody, or control of Wolverine at Wolverine's corporate headquarters located at 9341 Courtland Drive N.E., Rockford, MI 49351:

1. The Policies and any and all documents evidencing the underwriting of the Policies;

2. Defendant Insurers' claims and underwriting files for each of Wolverine's claims with respect to reach of the Underlying Actions and each of the Policies at issue;

3. Documents and communications in possession of Defendants and/or third parties related to any claims and defenses at issue in this Coverage Action;

4. Documents and communications in possession of and/or exchanged between and among Defendants and/or third parties related to the claims and defenses at issue here, the Underlying Actions, Wolverine's request for defense and indemnity concerning the Underlying Actions, and Defendants' failure and/or refusal to provide a defense and/or indemnity to Wolverine with respect to each of the Underlying Actions;

5. Documents and communications in the possession of Defendants and/or third-parties related to Defendants' underwriting, handling, and coverage positions with respect to Wolverine's claims and requests for defense and indemnity in relation to the Underlying Actions.

6. Documents and communications related to Defendants' underwriting, handling, and coverage positions with respect to other policyholders' insurance claims for

defense and indemnity under the same or similar insurance policies as those at issue in this action;

7.    Documents and communications in the possession of Defendants and/or third-parties related to Defendants' statements, communications, and/or representations to Wolverine and/or third-parties, including but not limited to other policyholders and insurance regulators, concerning the meaning, interpretation and effect of language included in or proposed to be in the Policies at issue in this litigation or similar insurance policies;

8.    Documents and communications related to any agreement or proposed agreement by and between and among any of the Defendants and each other or any third-parties related to Wolverine's claims for insurance coverage in this action, the Defendants' handling and coverage positions with respect to Wolverine's claims for insurance coverage in this action, the Underlying Actions, costs incurred by Wolverine in relation to the Underlying Actions, and/or Wolverine's claims and Defendants' defenses in this action;

9.    Documents and communications related to any investigation, analysis, research, or collection of information by or on behalf of any of the Defendants related to Wolverine's claim for insurance coverage in this action, the Defendants' handling of Wolverine's claim for insurance coverage in this action, the Underlying Actions, costs incurred by Wolverine in relation to the Underlying Actions, and/or Wolverine's claims and Defendants' defenses in this action;

10.    The Complaints and Amended Complaints in the Underlying Actions;

11.     Documents and communications exchanged between and/or among Wolverine, the Defendants, third-parties, and or brokers or representatives or reinsurers of Wolverine and/or Defendants concerning Wolverine's requests for insurance coverage for the Underlying Actions and Defendants' responses related to the same;

12.     Defense/investigation cost invoices of all law firms, consultants, vendors, and/or other third parties involved in the defense/investigations of each of the Underlying Actions and relevant communications between Wolverine and Defendants related to same;

13.     Settlement agreements in the Underlying Actions and communications with Defendants related thereto;

14.     Releases and/or settlement agreements concerning certain types or subsets of coverage under certain of the Policies issued by certain of the Defendants in this Coverage Action;

15.     Documents and communications with respect to the Underlying Actions, including, but not limited to, all relevant pleadings, exhibits to pleadings, briefings, exhibits to briefings, orders, discovery, hearing transcripts, depositions, exhibits to depositions, appendices and affidavits, and any documents produced pursuant to any request for production and/or subpoena in the Underlying Actions;

16.     All relevant documents or other items set forth by the Defendant Insurers in their Rule 26(a)(1) disclosures in this proceeding as well as copies of all pleadings, exhibits to pleadings, briefings, exhibits to briefings, orders, discovery, depositions, exhibits to depositions, appendices and affidavits, and any documents produced by

Wolverine, the Defendant Insurers, or any third-parties pursuant to any request for production and/or subpoena in this proceeding.

III.    **A COMPUTATION OF ANY CATEGORY OF DAMAGES CLAIMED BY THE DISCLOSING PARTY—WHO MUST ALSO MAKE AVAILABLE FOR INSPECTION AND COPYING AS UNDER RULE 34, THE DOCUMENTS OR OTHER EVIDENTIARY MATERIAL, UNLESS PRIVILEGED OR PROTECTED FROM DISCLOSURE, ON WHICH EACH COMPUTATION IS BASED, INCLUDING MATERIALS BEARING ON THE NATURE AND EXTENT OF THE <u>INJURIES SUFFERED</u>**

The following is a computation of damages claimed by Wolverine as of the date of these disclosures, which is based on documents and other information that Wolverine has and will continue to make available for inspection and copying, unless privileged or otherwise protected from disclosure under the work product doctrine and/or any other protections, privileges or confidentiality.  The accrual and computation of Wolverine's damages is ongoing because defense costs continue to be incurred by Wolverine in the Underlying Actions.  As such, Wolverine's damages computation will be further augmented based on additional information and future costs incurred.

Subject to the aforementioned, at present, the accrual and computation of Wolverine's damages is based on the following:

- Wolverine claims actual and consequential damages resulting from certain Defendants' breach of their duty to defend Wolverine from the Underlying Actions. As of Wolverine's most recent calculation on or around January 5, 2023, Wolverine's actual damages are in excess of $111,500,736.50 in defense/investigation costs incurred with respect to the defense/investigation of the Underlying Actions which includes fees and costs incurred through approximately June 2022.  Wolverine continues to incur defense/investigation costs through its ongoing defense/investigation of the Underlying Actions and this amount is subject to change as those costs continue to be incurred.

- Wolverine also seeks actual and consequential damages associated with the Defendants' breach of the duties and obligations to indemnify Wolverine in connection with any settlement(s) and/or judgment(s) and/or remediation costs in

- 22 -

the Underlying Actions.  To date, this includes, but is not limited to, the following amounts paid by Wolverine in connection with the Underlying Actions:

o  *McNaughton v. Wolverine World Wide, Inc., et al.*, Case No. 18-00086-CZ (Mich. Kent Cty. Cir.) – the settlement associated with this action is confidential but has been disclosed to Defendants;

o  *MDEQ v. Wolverine World Wide, Inc., et al.*, Case No. 1:18-cv-00039 (W.D. Mich.) – the settlement associated with this action is confidential but has been disclosed to Defendants;

o  *Hula, et al. v. Wolverine World Wide, Inc., et al.*, Case No. 17-11445-CZ (Kent County Circuit Court) – the settlement associated with this action is confidential but has been disclosed to Defendants;

o  *Kapp, et al. v. Wolverine World Wide, Inc. et al.*, Case No. 18-08616-NI (Kent Cty. Cir.) – the settlement associated with this action is confidential but has been disclosed to Defendants;

o  To the plaintiffs represented by Varnum LLP in the consolidated State Actions, *In re Nylaan*, 17-cv-10716 (Kent Cty. Cir.) – the settlement associated with this action is confidential but has been disclosed to Defendants;

o  To the plaintiffs represented by Motley Rice LLP in the consolidated State Actions, *In re Nylaan*, 17-cv-10716 (Kent Cty. Cir.) – the settlement associated with this action is confidential but has been disclosed to Defendants;

o  The plaintiffs represented by Motley Rice LLP in the class action, *Zimmerman, et al. v. The 3M Company, et al.*, Case No. 1:17-cv-1062 (W.D. Mich.) – the settlement associated with this action is confidential but has been disclosed to Defendants.

o  All past and future costs associated with remediation in connection with each of the Underlying Actions, the cost of which is confidential but has been disclosed and/or will be (with respect to future costs) to the Defendants.

•  Wolverine also seeks awards of pre-judgment and post-judgment interest, including but not limited to statutory interest pursuant to Michigan's Uniform Unfair Trade Practices Act § 500.2006, on its insurance claim in accordance with Michigan law and in an amount to be calculated and determined as more information becomes available.

•  Wolverine also seeks costs of court, attorneys' fees and costs/expenses associated with Wolverine being forced to bring this action, and such other relief to which it may be entitled in amounts to be calculated and determined as this matter progresses.

- 23 -

- Wolverine also seeks any and all additional actual and/or consequential damages sustained as a result of Defendants' respective breaches of the Policies and/or otherwise recoverable by contract or at law in this action.

- Wolverine also seeks any and all additional actual and/or consequential damages sustained as a result of Defendants' respective breaches of the covenant of good faith and fair dealing recoverable by contract or at law in this action.

- Wolverine also seeks any and all other actual and/or consequential and/or other categories of permissible damages allowable under applicable law and awarded by this Court.

Wolverine reserves the right to supplement, modify and/or amend each category of damages identified above as additional information becomes available.

**IV.    FOR INSPECTION AND COPYING AS UNDER RULE 34, ANY INSURANCE AGREEMENT UNDER WHICH AN INSURANCE BUSINESS MAY BE LIABLE TO SATISFY ALL OR PART OF A POSSIBLE JUDGMENT IN THE ACTON OR TO INDEMNIFY OR REIMBURSE FOR PAYMENTS MADE TO SATISFY THE JUDGMENT**

Wolverine incorporates by reference the Policies at issue in this matter and identified in, and attached to, the Complaint, as well as any responsive insurance policies alleged, missing, incomplete, or not yet to be identified that may provide coverage for this matter and/or the Underlying Actions.  Investigation is ongoing.

Dated: April 26, 2023

/s/ Kevin B. Dreher
Kevin B. Dreher
BARNES & THORNBURG LLP
One North Wacker Dr., Suite 4400
Chicago, IL 60606
Telephone: (312) 214-8308
kdreher@btlaw.com

Charles M. Denton
Erika P. Weiss
BARNES & THORNBURG LLP

- 24 -

171 Monroe Ave. NW, Suite 1000
Grand Rapids, MI 49503
Telephone: (616) 742-3930
Charles.Denton@btlaw.com
Erika.Weiss@btlaw.com

*Counsel for Wolverine World Wide, Inc.,*
*f/k/a Wolverine Shoe & Tanning*
*Corporation*

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

WOLVERINE WORLD WIDE, INC.,

     Plaintiff,

v.                                        Case No. 1:19-cv-00010-JTN-ESC

THE AMERICAN INSURANCE COMPANY, et al.,     Honorable Janet T. Neff
                                            Mag. Judge Ellen S. Carmody
     Defendants.                      Special Master Paula Manderfield

---

**CERTIFICATE OF SERVICE**

I, Kevin B. Dreher, an attorney, certify that on April 26, 2023, a true and correct copy of **PLAINTIFF WOLVERINE WORLD WIDE, INC.'S SUPPLEMENTAL PHASE II INITIAL DISCLOSURE STATEMENT** was served upon counsel for Defendants via U.S. Mail and e-mail, and that this certificate of service was filed with the Clerk of Court using the electronic court filing system, which will send notification of such filing to all Counsel of Record.


                                   *s/ Kevin B. Dreher*
                                     Kevin B. Dreher