# **EXHIBIT 6**

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

WOLVERINE WORLD WIDE, INC.,

    Plaintiff,

v

THE AMERICAN INSURANCE COMPANY, et al,

    Defendants.

Case No. 1:19-cv-00010

Judge Janet T. Neff
Magistrate Judge Sally J. Berens
Special Master Paula Manderfield

## OPINION AND ORDER REGARDING CENTURY INDEMNITY COMPANY'S MOTION TO COMPEL INTERROGATORY RESPONSES

Pending before the Special Master is Plaintiff Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America's ("Century" or "Chubb") Motion to Compel Interrogatory Responses, ECF No. 1699. Wolverine World Wide Inc. ("Wolverine") opposed the Motion in ECF No. 1747. The Special Master has reviewed all the filings, including extensive exhibits, and for the reasons stated below, the motion is GRANTED in Part and DENIED in Part.

### I. Background

Century's Motion requests an order compelling Wolverine to supplement its responses to Century's Second Set of Phase I Interrogatories and Document Requests and Century's Third Set of Phase II Interrogatories and Document Requests. In the alternative, Century moves the Court for an order precluding Wolverine from introducing any evidence of discrete, isolated "sudden and accidental" polluting events that Wolverine has not disclosed in response to Century's interrogatories.

On November 18, 2019, Century served its Second Set of Phase I Interrogatories to Wolverine requesting the identification of any "sudden and accidental" polluting events of which it is aware. On December 19, 2019, Wolverine responded with a series of objections and the statement that "Wolverine will not be providing information in response to this Interrogatory beyond what is contained in this answer."

On June 6, 2022, Century served its Third Set of Phase II Interrogatories to Wolverine requesting the identification of "each discrete isolated polluting event of which [it is] aware that is: (a) distinct from the overall leaking and discharges of PFAS into the environment outlined in the Underlying Actions; and (b) contributed to any actual or potential liability for which [Wolverine seeks] insurance coverage in this action." On August 3, 2022, Wolverine served supplemental responses which Century alleges directed them to millions of documents including all of the Underlying Complaints, depositions from the Underlying Actions, expert reports, websites, and other sources. Century alleges that Wolverine's responses fall woefully short of its discovery obligations. Further, Century alleges that Wolverine improperly relies on Federal Rule of Civil Procedure 33(d), which permits a party to respond by reference to "a party's business records" as the records it referred Century to are not Wolverine's business records.

Wolverine opposes Century's Motion mainly on four grounds, first being that this Court already held Wolverine's responses to Chubb's interrogatories to be sufficient. Wolverine points to this Court's Opinion Regarding Defendants' Motion to Compel Wolverine to Respond Fully to the Insurers' First Joint Set of Phase II Interrogatories wherein this Court stated that Wolverine's response was "more than appropriate." *See* ECF 1089. Wolverine argues that Defendant's prior motion to compel dealt with an identical request to compel nearly identical interrogatories. Wolverine stated that its response to Chubb's Third Set of Phase II Interrogatories followed the

same format and included the same detail as its response to the First Joint Set of Phase II Interrogatories.

Second, Wolverine argues that Century's Motion opposes positions Century itself asserted to validate its own interrogatory responses. Further, Wolverine states that Century's own responses to Wolverine's interrogatories direct Wolverine to documents it now objects to under Federal Rule of Civil Procedure 33(d).

Third, Wolverine argues Century seeks information in the interrogatories this Court already ruled is subject to a protective order. Wolverine directs this Court to Special Master Opinion and Order Regarding Plaintiff's Motion for Protective Order, ECF 326. In this Opinion and Order, which has not been withdrawn, Wolverine prevailed on its motion for protective order regarding interrogatory numbers 3-5 of Century's Second Set of Phase I Interrogatories which are substantially the same as the interrogatories which are the subject of the present Motion.

Lastly, Wolverine argues that the interrogatories call for information that is subject to ongoing fact discovery and expert discovery that has not started yet, and Wolverine has reserved its right to supplement its responses upon closure of fact and expert discovery. Wolverine counters Century's argument that Wolverine be precluded from producing evidence of "sudden and accidental" polluting events under Rule 37 by arguing that it is unsupported by the Federal Rules of Civil Procedure and applicable law. Wolverine states that it has not violated any discovery order and has provided appropriate fulsome responses to three sets of duplicative written discovery.

## II. Legal Standard

**Rule 33**

Federal Rule of Civil Procedure 33 governs interrogatories to parties. Rule 33(b)(3) states each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath. Rule 33(d) governs the option to produce business records and reads as follows:

> Option to Produce Business Records. If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
>> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
>>
>> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

**Rule 37**

Federal Rule of Civil Procedure 37 states in part that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Moreover, if a party fails to obey an order to provide discovery, or fails to supplement its discovery responses, that party can be prohibited from using such non-disclosed information to support or oppose designated claims or defenses, or from introducing designated matters in evidence, Fed. R. Civ. P. 37(b)(2)(A)(ii), or to supply such evidence on a motion, at a hearing, or at trial, Fed. R. Civ. P. 37(c)(1).

## III. Analysis

**A. Protective Order ECF No. 326 Related to Phase I Discovery**

On December 20, 2019, Wolverine moved for a protective order with respect to outstanding interrogatories from Chubb, arguing that the "sudden and accidental" interrogatories were outside the scope of Phase I. ECF 247, 248. This Court granted Wolverine's request for a protective order on February 28, 2020 and entered an order relieving Wolverine from answering these interrogatories. *See* ECF 326. However, to make the record clear, that prior order is no longer relevant to Phase II discovery in this matter. While the order is still in effect, this litigation has entered the second phase of discovery wherein the information requested is relevant to the duty to indemnify and must be produced with specificity. These interrogatories are no longer premature.

**B. Wolverine's Response to Century's Second Set of Phase I Interrogatories Is Insufficient**

The most critical issue remaining in Wolverine's claims against Century is whether the policies' pollution exclusions bar coverage for Wolverine's underlying environmental pollution claims (the "Underlying Actions"). There is no question that Century's request for this information is relevant. This Special Master made it clear on June 2, 2022 when she issued a Report & Recommendation (the "R&R") outlining,

> Under Michigan law, the insured has the burden of proving that the release of the hazardous wastes was "sudden and accidental" with respect to the application of the exception in the pollution exclusion. … Where the totality of the circumstances indicates a regular pattern of release of hazardous wastes, discrete incidents of sudden and accidental release will not satisfy the requirements of the "sudden and accidental" exception.

\* \* \*

> Wolverine must identify evidence of discrete isolated polluting events that are allegedly sudden and accidental … and distinguish them from the allegations of overall leaking and discharge of PFAS into the environment outlined in the Underlying Actions ….

ECF No. 1517, PageID.126970, 126972-73. In light of this R&R and the parties being in the Phase II Duty to Indemnify phase of this litigation, these interrogatories are not premature.

Fed. R. Civ. P. 26(b)(1) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…." Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Interrogatory numbers 3-5 of Century's Second Set of Interrogatories to Wolverine sought relevant information regarding "sudden and accidental" pollution discharges sufficient enough to invoke the exception to the pollution exclusion. The language of each interrogatory is as follows:

> No. 3: State whether You are aware of any "sudden and accidental" discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquid or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any course or body of water that is not alleged in the operative Complaint in any Underlying Action, but forms or possibly forms the basis of any claim asserted or alleged in any Underlying Action.
>
> No. 4: If Your answer to Interrogatory No. 3 is anything other than an unqualified "No," Identify and Describe each such "sudden and accidental" discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquid or gasses, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water of which You are aware.
>
> No. 5: State the following with respect to each "sudden and accidental" discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquid or gasses, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water identified in response to Interrogatory No. 4: (a) when and where the "sudden and accidental" discharge dispersal, release or escape took place; (b) the volume and contents of the "sudden and accidental" discharge dispersal, release or escape (c) a Description of the purported Property Damage and/or Bodily Injury resulting from such "sudden and accidental" discharge dispersal, release or escape; (d) an Identification of any Persons who have knowledge of such "sudden and accidental" discharge dispersal, release or escape; (e) an Identification and Description of any Communications regarding such "sudden and accidental" discharge dispersal,

6

>   release or escape of Pollutants; and (f) an Identification of any Documents which reference, describe, or relate to such "sudden and accidental" discharge dispersal, release or escape.

ECF No. 1702, Coffey Declaration, Ex. 1. Despite the relevancy of the request, Wolverine answered each interrogatory with a host of general objections and the general statement:

>   Accordingly, Wolverine will not be providing information in response to this Interrogatory beyond what was contained in this answer. Waiving none and preserving all of its rights, Wolverine will, if necessary, seek an order of protection from the Court, and recommendation from the Special Master if appropriate, further defining and limiting the scope of discovery in this action.

*Id.* Century alleges Wolverine directed them to millions of pages of documents, in fact, Wolverine directed Century to some thousands of documents that were Bates stamped and identified. In total, the number of pages of documents Wolverine referenced in its answers was not overwhelming considering the millions of pages of discovery exchanged between the parties. However, at this point in the litigation, narrative responses are required outlining what Wolverine believes to be sudden and accidental releases of pollution as distinguished from generalized leaking and leaching of PFAS into the groundwater. We are substantially down the road from Phase I discovery. The individual state court actions are resolved, and the consolidated class actions have received preliminary approval by the court of a proposed settlement. Wolverine's argument that this discovery could potentially prejudice Wolverine in its defense of the Underlying Actions is no longer valid. As stated in the R&R, it is Wolverine's burden to come forth and articulate what incidents of sudden and allegedly accidental releases of pollutants it intends to rely upon to meet the pollution exclusion in Century's policies.

Century has a right to obtain the "fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 500-501 (1947). This trial is not to proceed as "a game of a blind man's bluff." *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958). Even if

there was a Protective Order issued in Phase I of this litigation (Duty to Defend), that does not mean Wolverine can escape providing information requested in Phase II (Duty to Indemnify).

While Wolverine makes the argument that identification of the "sudden and accidental" interrogatories seek information squarely in the province of expert testimony, this Special Master is of the mindset that with the facts available to Wolverine, the description requested in Century's interrogatories can still be provided. Wolverine still has the right to supplement these responses after fact discovery and expert discovery has closed. Accordingly, based on the insufficiency of Wolverine's response, Wolverine is ordered to provide substantive responses to Century's Second Set of Interrogatories and identify any discrete, isolated "sudden" polluting events about which Wolverine has information and on which Wolverine will rely to try to establish that the limited exception to the pollution exclusion applies. As Wolverine has the burden of proof on this issue, it is incumbent on Wolverine to cull through the deposition testimony and other documents referenced in its response and provide a narrative response.

## C. Wolverine's Response to Century's Third Set of Phase II Interrogatories Is Insufficient

Century served Wolverine with two additional interrogatories asking Wolverine to identify any discrete isolated polluting events that could potentially trigger the "sudden and accidental" exception to the pollution exclusion. The language of both interrogatories is as follows:

> No. 1: Identify each discrete isolated polluting event of which You are aware that is: (a) distinct from the overall leaking and discharges of PFAS into the environment outlined in the Underlying Actions; and (b) contributed to any actual or potential liability for which You seek insurance coverage in this action.

> No. 2: For each event identified in response to Interrogatory No. 1, provide: (a) the date on which the event took place; (b) the source of the discharge; and (c) the amount of PFAS containing material discharged into the environment as a result of the event.

Coffey Declaration, Ex. 4. In response to both interrogatories, Century again alleges that Wolverine attached millions of documents for Century to root through, including but not limited to, the Underlying Complaints, deposition transcripts, expert reports, and websites. Wolverine's Responses identified the following incidents of discharges from deposition testimony:

1. Joe Azzerrello testimony where he speculated about forklift accidents or a potential "catastrophic" event; and Earl Tuff testimony describing washing down sludge that spilled on roads "while transporting away from the tannery." Koss Declaration, ECF No. 1748-2, Exhibit B *SEALED* PageID.133369.

2. Earl Tefft, testimony describing that "there was a couple time when [sludge] splashed out" from sludge buckets and onto the road while transporting away from the tannery. (49:22). Tefft also described an incident while transporting waste using a truck with a boom arm: "I backed up to the pit, and like this is the edge of the pit, thirty feet down, and I backed up and the ground caved, and so I went right over backwards . . . I went over backwards, and I dumped the [sludge] load." (130:16-131:9). (See UL2595652; UL2595570; UL2595594– 2595595). *Id.*

3. Guy Hayden testified that he observed sewage from the tannery overflowing from tanks in the disposal plant. (29:1–16). Hayden testified that the "chemical tanks in the tannery . . . would spring a leak once in a while." (29:18–23). Defendants asked Hayden: "Do you recall observing sludge overflowing the tanks in the disposal plant?" Hayden answered: "they overflowed once in a great while at the disposal plant." (30:17–20). Defendants asked Hayden: "Did you ever see instances where the effluent water didn't go down into the drain – and went someplace else?" Hayden answered: "One time that messed up, they couldn't figure out what was wrong . . . outside contractors took care of that. It was charted how much it was. What he found was a spider in there going up and down." (37:24–38:16). Hayden testified that he saw spills and overflows within the tannery itself (71:1); he also testified that overflows occurred at the wastewater treatment plant (71:23). Koss Declaration, ECF No. 1748-2, Exhibit B *SEALED* PageID.133371.

4. Gregory Mills, testified that, among other things, during his tenure at the Tannery, he was aware of several spills during the process whereby liquid and/or solid materials left either the spill tank or the lines leading out to the wastewater treatment plant, and that all such spills were "accidental." (106:6–25; 107:1–23). *Id.*

Soil condition[s] that appeared out of the ordinary" in various areas of the tannery, including the maintenance area. Coffey Declaration, Ex. 4.

Other than the above specific incidents, Wolverine referred to multiple deposition transcripts and documents, most with Bates number ranges. It is the opinion of the Special Master

9

that Wolverine's responses at this point should describe each incident it intends to rely upon rather than simply reference a portion of deposition transcript or a portion of a document as it is Wolverine's burden of proof.

The Federal Rules require that interrogatories be answered "fully" and "parties have a duty to provide true, explicit, responsive, complete and candid answers to discovery." Fed. R. Civ. P. 33(b)(3). Further, Rule 33(b) "requires a separate and full response in writing. A party may not incorporate deposition testimony or otherwise rely on future deposition testimony in lieu of offering a complete and separate response to each interrogatory …." It is the Special Master's Opinion that thousands of documents identified over eight pages does not satisfy Rule 33 as it is not a "separate and full response in writing" and is not explicit.

Fed. R. Civ. P. 33(d) governs the option to produce business records and permits the responding party to respond by "(1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries." The option afforded by Rule 33(d) is not a procedural device for avoiding the duty to give information. *In re G-1 Holdings, Inc.*, 218 F.R.D. 428, 438 (D. N.J. 2003).

While Wolverine did reference some business records, Wolverine also referenced tens of thousands of documents generated by other parties, non-parties, anticipated future depositions, expert reports, and a government website. These are not Wolverine's business records. Further, this Court does not find Wolverine's argument that deposition transcripts which it maintained by its in house legal department are business records to be persuasive. Wolverine's response is

accordingly inadequate and not in satisfaction of its obligation under Rule 33 to provide "true, explicit, responsive, complete and candid answers."

Further, Wolverine's response leaves Century without a level of detail sufficient to understand the sudden and accidental incidents upon which Wolverine relies. While the Special Master denied the Insurers prior Motion to Compel (ECF 1089), that is not the case for the present Motion as Wolverine has not stated the records to review in sufficient detail to enable Century to identify responsive materials and discern the answers to their interrogatories.

Based on the insufficiency of Wolverine's response, Wolverine is ordered to provide substantive responses to Century's Third Set of Phase II Interrogatories and identify any discrete, isolated "sudden" polluting events about which Wolverine has information and on which Wolverine will rely to try to establish that the limited exception to the pollution exclusion applies. Again, Wolverine has the burden of proof on this issue, and it is incumbent on Wolverine to cull through the deposition testimony and other documents referenced in its response and provide narrative responses.

The Special Master is not persuaded by Wolverine's argument that Century's Motion should be denied because Chubb itself responded to Wolverine's interrogatories in the same manner-by employing Rule 33(d) to direct Wolverine to documents Chubb deemed responsive.

**D. Wolverine Is Not Precluded from Introducing Further Evidence Of "Sudden and Accidental" Polluting Events As Phase II Fact Discovery Is Not Closed And Expert Discovery Has Not Started**

Federal Rule of Civil Procedure 37 outlines, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). If a party fails to obey an order to provide discovery, or fails to supplement as required, that party can be prohibited from using such non-disclosed information to support or oppose designated

claims or defenses, or from introducing designated matters in evidence, or to supply such evidence on a motion, at a hearing, or at trial. Fed. R. Civ. P. 37(b)(2)(A)(ii) and 37(c)(1). Unless the failure is harmless, "the penalty is not to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed. The purpose of these rules is to avoid surprise or trial by ambush." *AMEX v. Mopen, Inc.*, 215 F.R.D. 87, 93 (S.D. N.Y. 2002).

Since Phase II fact discovery is ongoing and was recently extended 120 days by stipulation of the parties and Phase II expert discovery has not started, the Special Master does not find that it can prohibit Wolverine from identifying and introducing at trial further incidents of sudden and accidental discharges at the House Street dump, Wolven/Jewel or Northeast Gravel locations. The Court notes that a party has a continuing obligation to supplement its interrogatory responses. Wolverine is not barred from introducing evidence of discrete isolated "sudden and accidental" polluting events beyond those already identified through supplemental responses to these interrogatories. Therefore, Century's request to prohibit Wolverine from introducing evidence of further incidents of sudden and accidental discharges at the House Street dump, Wolven/Jewel or Northeast Gravel locations under Fed. R. Civ. P. 37(a)(4) is Denied.

### IV. Conclusion and Order

The Special Master finds that Wolverine's responses are not sufficient under Michigan law.

IT IS HEREBY ORDERED that Wolverine supplement its interrogatory responses within thirty (30) days of this Order consistent with the above opinion.

IT IS FURTHER ORDERED that Century's Motion to Compel is GRANTED in Part and DENIED in Part.

IT IS FURTHER ORDERED that Century's Motion for an order prohibiting Wolverine from introducing evidence of further incidents of sudden and accidental discharges at the House

Street dump, Wolven/Jewel or Northeast Gravel locations under Fed. R. Civ. P. 37(a)(4) is DENIED.

                                                    PAULA J. MANDERFIELD
                                                    Special Master

Dated:    November 3, 2022        By:   /s/ Paula J. Manderfield
                                                          Special Master